TREG TAYLOR
ATTORNEY GENERAL
Thad Adkins (Alaska Bar No. 2205032)
Assistant Attorney General
Ronald W. Opsahl (Alaska Bar No. 2108081)
Senior Assistant Attorney General
Department of Law
1031 West 4th Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
Email: thad.adkins@alaska.gov
ron.opsahl@alaska.gov

Attorneys for State of Alaska

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, | ) |
| | ) |
| Plaintiff, | ) Case No. 3:23-cv-00203-HRH |
| | ) |
| v. | ) **COMPLAINT FOR** |
| | ) **DECLARATORY AND** |
| THE UNITED STATES | ) **INJUNCTIVE RELIEF** |
| DEPARTMENT OF AGRICULTURE; | ) |
| THE UNITED STATES | ) |
| DEPARTMENT OF AGRICULTURE | ) |
| FOREST SERVICE; TOM VILSACK, | ) |
| in his official capacity as Secretary of | ) |
| Agriculture; and RANDY MOORE, in | ) |
| his official capacity as Chief, Forest | ) |
| Service, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff State of Alaska hereby brings this civil action against the above-listed

defendants for declaratory and injunctive relief. The Court has jurisdiction under 28 U.S.C.

§§ 1331 and 1361 as more completely stated hereunder. Plaintiff alleges as follows:

**INTRODUCTION**

1.      This is an action by the State of Alaska (Alaska or State) seeking a judgment declaring that by promulgating its final decision (Decision) on January 27, 2023, repealing the 2020 Alaska Roadless Rule[1] (Alaska Rule), and reinstating the 2001 Roadless Area Conservation Final Rule and Record of Decision (Roadless Rule) to the Tongass National Forest (Tongass) the United States Department of Agriculture (USDA), the USDA Forest Service (Forest Service), Tom Vilsack, in his official capacity as Secretary of Agriculture, and Randy Moore, in his official capacity as Chief of the Forest Service, (collectively, Defendants), violated the Alaska Statehood Act, Pub. Law 85-508; 72 Stat. 339; the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706; the Organic Administration Act (OAA), 16 U.S.C. § 551; the Multiple-Use Sustained-Yield Act (MUSYA), 16 U.S.C. §§ 528-531; the Forest Roads and Trails Act (FRTA), 16 U.S.C. §§ 532-538; Rights-of-way for dams, reservoirs, or water plants for municipal, mining or milling purposes, 16 U.S.C. § 524; the National Forest Management Act (NFMA), 16 U.S.C. § 1600 *et seq*.; the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332; 16 U.S.C. § 1608; the Alaska National Interest Lands Conservation Act (ANILCA), 16 U.S.C § 3101 *et seq*.; the Tongass Timber Reform Act (TTRA), 16 U.S.C. § 539d; the Wilderness Act, 16 U.S.C. § 1131 *et seq*.; the 2015 Defense Appropriations Act; the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users

---

[1]      Formerly at 36 C.F.R. Part 294, Subpart E.

(SAFTEA-LU), § 4407;[2] the United States Constitution article I, § 1; and the respective implementing regulations. By failing to follow these laws and by applying them to the Tongass in an arbitrary and capricious manner, Defendants have directly and significantly harmed the State and impermissibly interfered with its sovereign powers.

## JURISDICTION AND VENUE

2.     This action is brought pursuant to the APA, 5 U.S.C. §§ 701 to 706, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and 28 U.S.C. § 1361, and to vacate unlawful agency action under 5 U.S.C. § 706. The United States has waived sovereign immunity. 5 U.S.C. § 702.

3.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1361 because this case arises under the APA, ANILCA, TTRA, NFMA, MUSYA, FRTA, OAA, Wilderness Act, U.S. Constitution, and other federal laws.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) & (e) because the Tongass is located entirely within the boundaries of the State, and because this action is brought against officers of agencies in the United States in their official capacities and against the USDA and Forest Service. Further, the consequences of the actions and decisions challenged by this lawsuit are borne in Alaska. Venue is similarly appropriate to challenge agency action under 5 U.S.C. § 703.

---

[2]     Pub. L. No. 109-59 § 4407, 119 Stat. 1144, 1777, as amended by Pub. L. No. 114-94 § 1446(c), 129 Stat. 1312, 1438 ("Section 4407")

# PARTIES

5.      Plaintiff, Alaska, is a sovereign state of the United States. The State has suffered ongoing injury through the reimposition of the Roadless Rule upon the Tongass through Defendant's Decision repealing the Alaska Rule. Because the Tongass comprises the vast bulk of land in Southeast Alaska, application of the Roadless Rule stifles the State's interest in facilitating economic and social development in the region. The Roadless Rule negatively impacts State revenues,[3] and increases State operating costs for everything from diesel-based power in many local communities to the need for the operation and maintenance of the Alaska Marine Highway System due to the lack of road connections. The State owns and manages land that is contiguous to, or effectively surrounded by, national forest lands such that management practices of the Forest Service on national forest lands have direct consequences for the management of intermingled State, Alaska Native and other private lands. Similarly, the geographic overlay of the Tongass prevents the opportunity for economic or societal development and elevates Tongass management decisions to play an outsized role governing the fate of the region. Injury is clearly traced to the Decision, and its vacatur and reinstatement of the Alaska Rule would redress such injury.

---

[3]      The State was found to have sufficient standing in each challenge to the Roadless Rule, including *Organized Village of Kake v U.S. Dep't of Agric.*, 795 F.3d 956, 963-966 (9th Cir. 2015), and *Alaska v. U.S. Dep't of Agric.*, 273 F. Supp. 3d 102, 113-115 (D. Alaska 2017), and the State continues to suffer the injuries found in those cases, including lost timber receipts and jobs.

6.      Defendant USDA is the department of the executive branch responsible for overseeing the activities of the Forest Service, the agency charged with the administration of the national forests.

7.      Defendant Forest Service is an agency of the USDA and is charged with the administration of the national forests, including the Tongass.

8.      Defendant Tom Vilsack is the Secretary of Agriculture and is sued in his official capacity for his supervision of the Forest Service repeal of the Alaska Rule. (See 88 Fed Reg. 5252 (2023)). The Forest Service is an agency of the USDA and is subject to the direction and control of defendant Vilsack in his official capacity. Mr. Vilsack also directly supervised and directed Jewell Bronough, then-Deputy Secretary of Agriculture, who signed the Record of Decision (ROD) to repeal the Alaska Rule.

9.      Defendant Randy Moore is the Chief of the Forest Service and is sued in his official capacity for supervisory actions related to the repeal of the Alaska Rule. Defendant Moore is responsible for operations and activities of the Forest Service on national forest system lands under delegations of authority from the Secretary of Agriculture to the Chief of the Forest Service.

## STATEMENT OF FACTS

10.     The Tongass National Forest comprises 80% of the land base of Southeast Alaska (with an additional 15% in other federal ownership), and at almost 17 million acres it is the largest forest in the National Forest System.

11.     Defendants' Decision to repeal the Alaska Rule reinstated Roadless Rule protections to approximately 9.3 million acres of the Tongass designated as Inventoried Roadless Area (IRA), effectively prohibiting road building, rebuilding, or timber harvest.

12.     Congress has repeatedly expressed through legislative actions its intention of establishing a more balanced set of land management principles on the Tongass that allow for adequate safeguarding of resources while simultaneously providing for social and economic growth.

13.     Section 6(a) of the Alaska Statehood Act granted to the State 400,000 acres of lands within the national forests in Alaska "[f]or the purposes of furthering the development of and expansion of communities." Congress directed that the selected lands "shall be adjacent to established communities or suitable for prospective community centers and recreation areas." The purpose of this and all other land grants under the Alaska Statehood Act is to serve the overall economic and social well-being of the State and its people.

14.     Congress passed ANILCA in 1980, and in doing so struck a deliberate and hard-fought compromise between preservation and development.

15.     ANILCA established more than 100 million acres of federal land across Alaska as new or expanded Conservation System Units (CSUs), including fourteen Wilderness Areas and two National Monuments in the Tongass, while simultaneously enshrining a unique framework for land management and safeguarding traditional and intensive uses on federal lands.

16.     Section 101(d) of ANILCA plainly expresses the congressional intent that the established CSUs provide "sufficient protection for the national interest in the scenic, natural, cultural and environmental values on the public lands in Alaska, and at the same time [provide] adequate opportunity for satisfaction of the economic and social needs of the State of Alaska and its people."

17.     In ANILCA § 101(d), Congress determined that ANILCA's protection of "scenic, natural, cultural and environmental values" on Alaska lands resulted in the appropriate balance between protection and development and accordingly that "Congress believes that the need for future legislation designating new conservation units, new conservation areas, or new national recreation areas has been obviated thereby."

18.     Congress stated in ANILCA § 708(a)(2) that it had made its own review and examination of national forest system roadless areas in Alaska and of the environmental impacts associated with alternate allocations of such areas.

19.     Congress signaled its clear intention to strike a final balance between protection and development, where ANILCA § 1326 (a) & (b) (16 U.S.C. § 3213(a) & (b)) required congressional approval both for any further executive designation of public land in excess of 5,000 acres that would no longer be available for "more intensive use and disposition[,]" or even the study of federal lands in Alaska for the "purpose of considering the establishment of a conservation system unit, national recreation area, national conservation area, *or for related or similar purposes*[.]" (emphasis added).

20.    Through this and subsequent legislative Acts, Congress reserved for itself the authority to further restrict access and resource development in the Tongass.

21.    Congress continued to speak to Tongass management when it passed the TTRA in 1990. The TTRA created a statutory mandate for the Forest Service to seek to meet annual timber demand and established six additional Wilderness Areas and twelve Land Use Designation (LUD) II Special Management Areas (SMAs), which are to be "managed in a roadless state to retain their wildland character." In LUD II SMAs, "Ecological processes and natural conditions are only minimally affected by past or current human uses or activities."

22.    The TTRA further demonstrated Congressional intention to balance preservation and development and retain Congressional review over such determinations rather than delegate such decision making to the administering agencies.

23.    While adopting the Alaska Rule to exempt the Tongass from the Roadless Rule, Defendants noted in the October 29, 2020, ROD that the LUD II SMAs are "substantially similar" to IRAs, only differing in a way that "does not make a meaningful difference to the level of conservation." See 85 Fed. Reg. 68,689-68,690 (Oct. 29, 2020).

24.    In LUD II SMAs, "Ecological processes and natural conditions are only minimally affected by past or current human uses or activities."

25.    The Wilderness Act, P.L. 88-577 (16 U.S.C. 1131-1136), established specific areas set aside for wilderness in the Tongass, further demonstrating that

Congress performed an examination and review of such lands for their suitability for wilderness, and continued to do so over the years.

26.     The Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015 (FY 2015 Defense Authorization Act) in part established eight additional LUD II areas in the Tongass.

27.     The congressionally designated wilderness and LUD II areas, established and expanded through these laws, protect the wilderness and roadless character of approximately 6.8 million acres of the Tongass. These statutory protections achieve the balance prescribed by Congress in Section 101(d) of ANILCA to allow for multiple use, sustained yield management to occur on the Tongass.

28.     In making wilderness and LUD SMA determinations, Congress evaluated the Tongass and spoke to which lands it considered appropriate for preservation and which were established for other productive uses.

29.     The OAA, 16 U.S.C. § 475, and the MUSYA, 16 U.S.C. §§ 528, 529, and 531, authorize the Secretary to exercise limited and defined discretion to establish rules regulating access and use of national forests consistent with Congress' policy.

30.     The Defendants' Decision to re-impose the Roadless Rule upon the Tongass substantively withdraws approximately 9.3 million acres of IRAs (more than twice the size of Connecticut) through executive action, making them functionally unavailable for renewable energy development, geothermal leasing, mining for critical minerals and other metals, hatchery and aquaculture, and for any other development or

activity requiring or facilitated by roads. This greatly affects the economic and social needs of the State.

31.     Defendants justified the Decision to establish 9.3 million acres of IRAs as *de facto* LUD II SMA withdrawals on the Tongass because:

> [T]he USDA believes that this alternative strikes the appropriate balances among the various values that the Department must consider when managing the Tongass. In particular, the USDA believes that Alternative 1 best addresses the needs and concerns of local communities, including Tribal communities. These needs include the need for stability and predictability after over two decades of shifting management, which can best be served by restoring the familiar framework of the 2001 Roadless Rule.[4]

32.     Defendants further emphasized their intent to make the IRAs "lasting" unroaded withdrawals by admitting:

> The 2016 Forest Plan was designed to be consistent with the 2001 Roadless Rule, and in adopting the Plan, the Forest Supervisor concluded that "the best way to bring stability to the management of the roadless areas on the Tongass is to not recommend any modifications to the Roadless Rule." (2016 Forest Plan ROD at 4, 19)."[5]

33.     The Secretary's discretion is limited under the authorities granted by the OAA and MUSYA to promulgating and enforcing rules that (a) protect against the destruction or deterioration of natural resources, and (b) enable continued public access and reasonable economic or socially beneficial uses of the national forests.

---

[4]     88 Fed. Reg. Page 5252 at 5255 January 27, 2023.

[5]     88 Fed. Reg. Page 5252 at 5256 January 27, 2023.

34.     Neither the OAA, nor the MUSYA, delegate authority to Defendants to designate or unconditionally preserve Roadless Areas in the Tongass. Accordingly, such designations are in derogation of Congress's sole authority to dispose of land under article IV, § 3, clause 2 of the United States Constitution.

35.     The MUSYA requires that the national forests be "administered for outdoor recreation, range, timber, watershed, and wildlife and fish purposes" and that the Forest Service "develop and administer the renewable surface resources of the National Forests for multiple use and sustained yield of the several products and services obtained therefrom." (16 U.S.C. §§ 528 and 529, respectively.)

36.     The multiple use standard requires that Defendants manage various forest resources to maximize their combined utility, without impairment of the land's productivity. (16 U.S.C. § 531(a)).

37.     The sustained yield standard requires Defendants to maintain at least a regular periodic output from the renewable forest resources, without impairment of the land's productivity. (16 U.S.C. § 531(b)).

38.     These principles of multiple use and sustained yield are incorporated into the NFMA and its regulations. (16 U.S.C. §§ 1600, 1602 and 1604).

39.     Congress has clearly provided direction for the development and maintenance of easements and road networks in national forests. Defendants are required to grant municipal and mining related rights of way across all national forests by 16 U.S.C. § 524, and in 1964, the same year that the Wilderness Act was passed,

Congress declared in 16 U.S.C. § 532 "that the construction and maintenance of an adequate system of roads and trails within and near the national forests and other lands administered by the Forest Service is essential if increasing demands for timber, recreation, and other uses of such lands are to be met[.]"

40.     Taken in measure with the congressional designation of 5.8 million acres of the Tongass as wilderness and 878,694 acres of the Tongass as LUD II SMAs (functionally equivalent to IRAs), Defendants' Decision to repeal the Alaska Rule and designate 9.3 million acres of IRAs as *de facto* LUD II SMAs, results in the application of a regulatory barrier on approximately 90 percent of the Tongass, and by extension, most of Southeast Alaska.

41.     The Roadless Rule bars a wide array of economic and recreational uses including hydropower, wind and geothermal development, construction and maintenance of transmission lines necessary for greater renewable buildout, mining claims and mining development access, transportation easements and rights of way, most forms of motorized recreation, and for any other development or activity that requires or is made possible by roads. Defendants' Decision fundamentally cripples Southeast Alaska's economic and community growth and corresponding state revenues by inflating capital costs for projects and inflating state administrative and operational costs and expenses.

42.     Defendants promulgated the national Roadless Rule in 2001, which included the Tongass despite considering alternatives singling out the Tongass for

Case 3:23-cv-00203-HRH   Document 1   Filed 09/08/23   Page 12 of 40

different treatment throughout the rulemaking process. See background in 2003 Tongass Exemption, at 68 Fed. Reg. 75,136 (Dec. 20, 2003).

43.    Defendants found in the Roadless Rule final environmental impact statement (FEIS) that the economic effects of the rule's application to the Tongass would cause mill closures and reduce logging activity. The Roadless Rule FEIS estimated that the total direct and indirect job and income losses from application of the prohibition alternatives on the Tongass would be 864 to 895 jobs along with a loss at the time calculated to be $37.3 to $38.7 million dollars in income. (FEIS at 3-379 to 3-380).

44.    The Roadless Rule ROD concluded "the long-term ecological benefits to the nation of conserving these inventoried roadless areas outweigh the potential economic loss to those local communities and that a period of transition for affected communities would still provide certain and long-term protection of these lands." See 66 Fed. Reg. at 3255 (Jan. 12, 2001).

45.    On December 30, 2003, the Forest Service promulgated an interim rule, 36 C.F.R. 294.14(d), temporarily exempting the Tongass from the Roadless Rule. (68 Fed. Reg. 75,136 (Dec. 30, 2003)). In so doing, the Forest Service acknowledged that ANILCA and TTRA "provide important Congressional determinations, findings, and information relating to management of national forest lands on the Tongass National Forest," and determined that exempting the Tongass from the Roadless Rule was "how to best implement the letter and spirit of congressional direction." (*Id*. at 75,142).

Case 3:23-cv-00203-HRH   Document 1   Filed 09/08/23   Page 13 of 40

46.     In explaining why it was exempting the Tongass from the Roadless Rule in 2003 after selecting the Tongass Not Exempt alternative in 2001, the Forest Service stated that the Roadless Rule ROD had concluded that ensuring lasting protection of roadless values outweighed socioeconomic costs to local communities, but the Forest Service now believed that: "[C]onsidered together the abundance of roadless values on the Tongass, the protection of roadless values included in the Tongass Forest Plan, and the socioeconomic costs to local communities of applying the roadless rule's prohibitions to the Tongass, all warrant treating the Tongass differently from the national forest outside Alaska." (*Id*. at 75,139).

47.     In addition, the Forest Service stated: "Because most Southeast Alaska communities are nearly surrounded on land by inventoried roadless areas of the Tongass, the roadless rule significantly limits the ability of communities to develop road and utility connections that almost all other communities in the United States take for granted." (*Id*. at 75,137).

48.     Through SAFETEA-LU § 4407[6] Congress once again evaluated the appropriate balance of uses and granted access across certain areas of the Tongass for transportation and utility systems connecting a limited number of Southeast Alaskan communities to each other and to Canada. Again demonstrating congressional intent to

---

[6]     Pub. L. No. 109-59 § 4407, 119 Stat. 1144, 1777, as amended by Pub. L. No. 114-94 § 1446(c), 129 Stat. 1312, 1438 ("Section 4407")

authorize roadbuilding and facilitate otherwise ordinary economic activities in the Tongass.

49. In an order in *State of Alaska v. United States Forest Service*, Case No. 1:16-cv-00018-RRB, dated June 11, 2019, the district court observed:

> The Court DECLARES that Section 4407 established *in praesenti* property rights allowing Plaintiff's permanent access across National Forest System lands to construct, operate and maintain transportation and utility infrastructure to improve connections between the communities of Southeast Alaska.

50. On December 22, 2009, the Organized Village of Kake and other plaintiffs filed a complaint challenging the Tongass exemption on the ground that its adoption violated the APA and NEPA. See *Organized Village of Kake v. U.S. Dep't of Agric.*, 776 F. Supp. 2d 960 (D. Alaska, 2011). On March 4, 2011, the district court vacated the Tongass exemption and reinstated the Roadless Rule's application to the Tongass on the ground that the promulgation of the Tongass exemption was arbitrary and capricious. That court determined that the reasons proffered by the Forest Service in support of the exemption were implausible, contrary to the evidence in the record, and contrary to Ninth Circuit precedent. *Id.*, at 976.

51. In *Organized Village of Kake v. U.S. Dep't of Agric.*, 746 F.3d 970 (9th Cir. 2014), the Ninth Circuit initially overturned the decision on appeal by Alaska, but it was reheard and ultimately upheld in a split *en banc* ruling in *Organized Village of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956 (9th Cir. 2015).

52.     In December of 2016, the Forest Service significantly amended the Tongass Land and Resource Management Plan (Forest Plan), which enacted a separate, often redundant, layer of management restrictions prohibiting timber harvest in IRAs and other designated areas. (81 Fed. Reg. 88657 (Dec. 8, 2016)) and the FEIS (Executive Summary 10-14).[7]

53.     On January 19, 2018, Alaska petitioned then-USDA Secretary Sonny Purdue for a state-specific rule exemption of the Roadless Rule for the Tongass, as well as a revision of the Tongass Forest Plan. (88 Fed. Reg. 5253).

54.     Secretary Perdue ultimately accepted the State's petition, and the Forest Service issued a DEIS in 2019, and a FEIS on October 29, 2020, specifically addressing repeal of the Roadless Rule for the Tongass. (88 Fed. Reg. 5253).

55.     The Alaska Rule FEIS identified that by lifting the Roadless Rule, a mere 168,000 additional acres would be available for timber production, with an additional accompanying 46 miles of expected roads over a 100-year timeframe. (88 Fed. Reg. 5253 at 5255).

56.     The USDA published the Alaska Rule on October 29, 2020, which again lifted Roadless Rule prohibitions on the Tongass and directed the Forest Service to change the administrative designation of areas deemed unsuitable for roads in the Tongass Forest Plan solely due to application of the Roadless Rule. See 85 Fed. Reg. 68,688 (Oct. 29, 2020).

---

[7]     https://www.fs.usda.gov/Internet/FSE_DOCUMENTS/fseprd507736.pdf

57.     In its Alaska Rule ROD, USDA specifically recognized that it sought to accommodate "the unique biological, social, and economic situation found in and around the Tongass National Forest." *Id.* at 68,689.

58.     The Alaska Rule ROD acknowledged that the balance congressionally prescribed by § 101(d) of ANILCA would be better achieved in the Tongass without the Roadless Rule, stating: "The Tongass Forest Plan along with other conservation measures, will assure protection allowing roadless area values to prevail on the Tongass National Forest while offering additional flexibility to achieve other multiple use benefits." *Id.* at 68,688.

59.     The Alaska Rule ROD determined that:

> The USDA concludes in light of the FEIS that a policy change for the Tongass National Forest can be made without major adverse impacts to the recreation, tourism, and fishing industries, while providing benefits to the timber and mining industries, increasing opportunities for community infrastructure, and eliminating unnecessary regulations.[8]

60.     USDA's Alaska Rule ROD stated that the decision was based on the factual determination that the 2016 Tongass Forest Plan and statutory restrictions would adequately protect roadless values on the Tongass:

> The USDA and Forest Service believe that both roadless area conservation and other multiple-use values with important local socio-economic consequences are meaningfully addressed through local and regional forest planning on the Tongass, without the 2001 Roadless Rule prohibitions on timber harvest and road construction/reconstruction.[9]

---

[8]     *Id.* at 68,691.

[9]     *Id*. at 68689.

61.     On January 20, 2021, President Biden issued Executive Order 13990, which directed executive agencies to immediately review and take action to address regulations promulgated by the previous administration.

62.     On November 23, 2021, USDA published a notice of proposed rulemaking to repeal the Alaska Roadless Rule. (86 Fed. Reg. 66,498).

63.     The State submitted timely and comprehensive comments that opposed repeal of the Alaska Rule and provided a detailed rationale for why the Roadless Rule should not apply to the Tongass given its unique situation relative to other national forests.

64.     Relying on the analysis for the 2020 EIS for the Alaska Rule and without performing any other substantive review apart from soliciting public comments, USDA published its Decision in the Federal Register on January 27, 2023, which constituted the final decision to repeal the Alaska Rule and impose Tongass Roadless Rule protections on 9.3 million acres of IRAs. (88 Fed. Reg. 5252-5272).

65.     The Decision made little to no mention of the significant opposing comments received from the State and other Alaskan stakeholders and community members.

66.     The Decision stated that:

> [T]he USDA now believes that the adverse consequences of exempting the Tongass from the 2001 Roadless Rule, particularly the increase in acreage available for timber production, the increase in road construction, and the lack of consideration for the views of Tribal Nations, outweigh the benefits of "decreasing federal

regulation" and the other advantages cited in the 2020 Alaska Roadless Rule."[10]

67. Defendants' Decision acknowledged that adoption of the Alaska Rule had been based on the factual determination that the 2016 Tongass Forest Plan would adequately protect roadless values on the Tongass:

> At the time of the rulemaking in 2020, USDA stated that the land use designations, standards, and guidelines in the 2016 Tongass Land Management Forest Plan (2016 Forest Plan) along with other conservation measures, would assure protection of roadless values on the Tongass while offering modest additional flexibility to achieve other multiple use benefits.[11]

68. Defendants did little more in the 2023 ROD than recite the previously considered projection of 188,000 additional acres of timber and 46 additional miles of roads[12] anticipated under the Alaska Rule FEIS as justification for the change but failed to adequately justify its abrupt pivot to apply the Roadless Rule to over 9.3 *million* acres of the Tongass.

69. Defendants' Decision failed to update its analysis or consider impacts to the Southeast Alaskan economy, which were not adequately examined during consideration of the Alaska Rule due to its opposite anticipated outcome.

70. Defendants did not identify any new issues raised in the comments or claim that there were any and acknowledged that the decision was "based on a reevaluation of

---

[10]    88 Fed. Reg. 5255 (Jan. 27, 2023).

[11]    88 Fed. Reg. 5253 (Jan. 27, 2023).

[12]    88 Fed. Reg. 5255 (Jan. 27, 2023).

the social value of the various uses of the Tongass, rather than on new factual findings."

See 88 Fed. Reg. 5255 (Jan. 27, 2023).

71.     The Roadless Rule significantly impacts the mining, power, transportation,

timber, and other sectors of the State by limiting access in and through remote areas of

the Tongass, thereby increasing uncertainty, cost, and delay in the permitting processes,

which have, in turn, negatively impacted Southeast Alaska's communities and economy.

Many projects are simply not considered, or are quickly shelved, due to the imposition of

the Roadless Rule and are therefore not readily captured among the associated impacts.

72.     Defendants did not identify its Decision as a major rule as required by 5

U.S.C. § 801.

73.     Greater connectivity among Southeast Alaskan communities would

enormously improve community resilience, health, safety, and economic well-being,

but the Roadless Rule erects access and regulatory barriers to improved community

connection in Southeast Alaska and limits the State's ability to perform basic

governmental functions.

74.     The timber industry, and accompanying timber receipts to the State,

have been decimated since the original implementation of the Roadless Rule.

75.     Electric utility and transportation sectors face significant barriers from the

Roadless Rule, negatively affecting important infrastructure projects that would connect

communities through transmission lines, roads, and shorter ferry routes, and help replace

fossil fuel-reliant energy generation with more affordable renewable power. Such impacts

will greatly complicate adoption of electric vehicles, ships, and other electric-reliant technologies, affecting the availability of federal funding for supporting infrastructure, and effectively leaving Southeast Alaska behind in the national transformation of the electrical grid and associated economic transition.

76.     Renewable and other cost-effective energy projects are needed to help shift Southeast communities to lower-cost electrical generation than current diesel fuel-based power, which often far exceed national or state average rates, stifling economic growth and increasing State operational costs.

77.     Surface access to mineral claims in IRAs is limited by the Roadless Rule, which impacts the timing, scope, and scale of mineral exploration in Southeast Alaska, further impacting State royalties and other receipts. The Roadless Rule prevents the region from contributing to the supply of critical minerals desperately needed to facilitate the current federal goals of reducing dependence on foreign sources, or similarly shifting away from burning fossil fuels.

**CLAIMS FOR RELIEF**
**FIRST CLAIM**

**(Administrative Procedure Act)**

78.     A court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory authority," or "without observance of procedures required by law." (5 U.S.C. § 706(2)).

79.     The Supreme Court, in *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 514-515 (2009), established a four-part test to determine if an agency's policy change complies with the APA. It held that an agency of the federal government complies with the APA if it: 1) displays an "awareness that it is changing position[;]" 2) shows that the "new policy is permissible under the statute[;]" 3) believes that the new policy is better; and 4) provides good reasons for the new policy, which must include a reasoned explanation when "disregarding facts and circumstances that underlay or were engendered by the prior policy."

80.     In *Organized Village of Kake v U.S. Dep't of Agriculture*, 795 F. 3d 956, 966-970 (9th Cir. 2015) (*en banc*), the panel applied the *Fox* rule to a separate challenge to the 2003 repeal of the Roadless Rule where USDA reversed its decision two years after the passage of the Roadless Rule on the basis of the same factual record. The panel determined that USDA failed to provide a reasoned explanation for its reversal.

81.     In its Decision to repeal the Alaska Rule, Defendants have again failed to provide a reasoned explanation for reversing course and almost immediately abandoning the Alaska Rule, in violation of the APA.

82.     Defendants failed to provide a reasonable explanation for why, approximately two years later, *on the basis of the same record and without making new factual findings*, the "adverse consequences of exempting the Tongass from the 2001 Roadless Rule, particularly the increase in acreage available for timber production, the increase in road construction, and the lack of consideration for the views of Tribal

Nations, "[13] was justified where it had previously found "that a policy change for the Tongass National Forest can be made without major adverse impacts to the recreation, tourism, and fishing industries, while providing benefits to the timber and mining industries, increasing opportunities for community infrastructure, and eliminating unnecessary regulations."[14]

83.  Defendants failed to provide a reasoned explanation for the reversal in violation of the APA. The court in *Organized Village of Kake v. U.S. Dep't of Agriculture*, 795 F.3d 956, 969 (9th Cir. 2015) (*en banc*), struck the 2003 Tongass exemption under the same overall circumstances and rationale.

84.  The same prejudice now mandates vacatur of Defendants' final rule established in the January 27, 2023, ROD and a reinstatement of the Alaska Rule.

85.  Defendants' Decision ignored the earlier factual findings from the Alaska Rule "that both roadless area conservation and other multiple-use values with important local socio-economic consequences are meaningfully addressed through local and regional forest planning on the Tongass"[15] in their final repeal without providing a reasoned explanation for doing so.

---

[13]   88 Fed. Reg. 5255 (Jan. 27, 2023).

[14]   85 Fed. Reg. 68,691 (Oct. 29, 2020).

[15]   85 Fed. Reg. 68689 (Oct. 29, 2020).

86.     Defendants abrupt policy reversal stated in the Decision inversely mirrored

the violation found in *Organized Village of Kake v. U.S. Dep't of Agriculture*, 795 F.3d

956, 968 (9th Cir. 2015) (*en banc*):

> By contrast, the USDA now believes that the adverse consequences of
> exempting the Tongass from the 2001 Roadless Rule, particularly the
> increase in acreage available for timber production, the increase in
> road construction, and the lack of consideration for the views of tribal
> nations, outweigh the benefits of decreasing federal regulation and the
> other advantages cited in the 2020 Alaska Roadless Rule.[16]

87.     Defendants' Decision provides no explanation why these concerns are not

"meaningfully addressed through local and regional forest planning on the Tongass,

without the 2001 Roadless Rule prohibitions on timber harvest and road

construction/reconstruction" as USDA asserted they would be in its October 29, 2020,

promulgation of the Alaska Rule. *See* 85 Fed. Reg. 68,689 (Oct. 29, 2020).

88.     The "timber production" justification in the January 27, 2023, ROD

repealing the Alaska Rule runs counter to the evidence and is factually inconsistent with

Defendants' admission in the January 27, 2023, decision that the 2016 Forest Plan

prohibition on timber sales in IRAs had not been changed despite the direction to do so in

the final ROD for the Alaska Rule.  *See* 88 Fed. Reg. 5261 (Jan. 27, 2023).

89.     Defendants erred in partially grounding the repeal of the Alaska Rule on the

need for stability and predictability. *See* 88 Fed. Reg. 5255 (Jan. 27, 2023).

---

[16]     88 Fed. Reg. 5255 (Jan. 27, 2023).

90.     The justification of stability and predictability is analogous to the objective

to avoid further litigation, which was previously examined and rejected in relation to the

2003 Tongass exemption in *Organized Village of Kake v U.S. Dep't of Agriculture,* 795

F.3d 956, 968 (9th Cir. 2015) (*en banc*)*.*

91.     In *Organized Village of Kake v U.S. Dep't of Agriculture*, 795 F.3d 956,

970 (9th Cir. 2015) (*en banc*) the circuit court stated:

> The 2003 ROD states that "[a]dopting this final rule reduces the
> potential for conflicts regardless of the disposition of the various
> lawsuits" over the Roadless Rule.
> -              -              -              -
> …[T]he Department could not have rationally expected that the
> Tongass Exemption would even have brought certainty to litigation
> about this particular forest. It predictably led to this lawsuit and did
> not even prevent a separate attack by Alaska on the Roadless Rule
> itself. At most, the Department deliberately traded one lawsuit for
> another.

92.     Given the extensive litigation resulting from every change in Roadless Rule

application status to the Tongass, Defendants violated the APA by continuing to rely on

this rationale as justification for a change that was certain to elicit legal challenges and

that was previously rejected by the circuit court in *Organized Village of Kake* at 970.

93.     Defendants' justification for repealing the Alaska Rule on the basis that it is

"more responsive to the vast majority of comments" violates the APA, again under the

same rationale applied in *Organized Village of Kake,* at 968:

> The second of the three reasons given by the Department in the 2003
> ROD for promulgating the Tongass Exemption was "comments
> received on the proposed rule." 68 Fed. Reg. at 75,137. But the 2003
> ROD expressly conceded that these "comments raised no new issues"
> beyond those "already fully explored in the [Roadless Rule FEIS]."

*Id.* at 75,139. It is implausible that comments raising "no new issues" regarding alternatives "already fully explored" motivated the adoption of the final Roadless Rule.

94.     Even though the Roadless Rule effectively curtails new mining development, Defendants failed to update or examine U.S. Bureau of Mines and USGS critical minerals studies from the 1970s, 1980s, and 1990s before repealing the Alaska Rule, and therefore failed to evaluate and consider the impact on critical minerals production.

95.     Defendants' failure to update these reports, as requested by the State of Alaska, Senator Lisa Murkowski, and twenty Alaska organizations and associations in 2022, was arbitrary and capricious because Defendants failed to consider all the relevant factors before they acted.

96.     Defendants violated the APA by failing to consider the impacts of repeal of the Alaska Rule on renewable energy projects in and adjacent to the Tongass, which in many cases are at least partially regulated by the State, and impact State operations and revenues.

97.     On November 13, 2000, Congress authorized construction of a Southeast-Alaska-wide intertie, which included the Tongass. Public Law 106-511 Title VI provides:

> [T]here is hereby authorized to be appropriated to the Secretary of Energy such sums as may be necessary to assist in the construction of the Southeastern Alaska Intertie system as generally identified in Report #97–01 of the Southeast Conference. Such sums shall equal 80 percent of the cost of the system and may not exceed $384,000,000. Nothing in this title shall be construed to limit or waive any otherwise applicable State or Federal law.

98. Notwithstanding Defendants' claim that they considered the environmental, social, and economic consequences of the immediate application of the Roadless Rule to Southeast Alaska, Defendants did not reference or consider Public Law 106-511 or Report #97–01 of the Southeast Conference[17] in their Decision, or how application of the Roadless Rule complicates efforts to complete this and other power line and generation facilities.

99. Defendants' failure to consider Public Law 106-511 or Report #97–01 of the Southeast Conference was arbitrary and capricious because Defendants failed to consider all the issues relevant to their decision before they acted.

100. Defendants' failure to consider the Southeast Alaska Intertie was arbitrary and capricious because Defendants failed to consider all the issues relevant to their decision before they acted.

101. Repealing the Alaska Rule prohibits road construction or reconstruction within the IRAs, with limited exceptions subject to agency review and discretion.

102. Roadless Rule exceptions are constraining and arbitrarily applied due to the excessive discretion reserved to the responsible Forest Service official. The Roadless Rule exceptions for road construction or reconstruction violate the APA because they are arbitrarily applied, rather than applied consistently, predictably, and fairly across the Tongass.

---

[17]     Southeast Conference Report #97- 01, which was prepared in 1998, provides for a Southeast-Alaska-wide hydropower intertie that could lower the cost of power in Southeast Alaska.

103.     Making the exceptions "needs based" violates 16 U.S.C. § 524, which

authorizes:

> Rights-of-way for the construction and maintenance of dams,
> reservoirs, water plants, ditches, flumes, pipes, tunnels, and canals,
> within and across the national forests of the United States, are granted
> to citizens and corporations of the United States for municipal or
> mining purposes, and for the purposes of the milling and reduction of
> ores, during the period of their beneficial use, under such rules and
> regulations as may be prescribed by the Secretary of the Interior, and
> subject to the laws of the State or Territory in which said forests are
> respectively situated.

104.     Requiring helicopter access to mining claims and helicopter maintenance of

hydropower dams and transmission lines is not in accordance with, and arbitrarily and

capriciously conflicts with, 16 U.S.C. § 524, unnecessarily constrains the economic and

social needs of Southeast Alaska, and greatly increases the cost of power in a number of

Southeast Alaskan communities.

## SECOND CLAIM

### (Alaska National Interest Lands Conservation Act § 708, Tongass Timber Reform Act, FY 2015 Defense Authorization Act, Wilderness Act, SAFETEA-LU § 4407, & U.S. Const. Art. I, §1)

105.     In setting out the purposes of ANILCA in 1980, Congress declared in

§ 101(d) (16 U.S.C. 3101(d)) that it "provides sufficient protection for the national

interest in the scenic, natural, cultural and environmental values on the public lands in

Alaska[.]"

106.     Having purposefully and thoughtfully achieved a carefully negotiated

balance between such protections and the "economic and social needs of the State[,]"

§ 101(d) explicitly stated that Congress believed that it had obviated "the need for future

legislation designating new conservation system units, new national conservation areas, or new national recreation areas[.]"

107.   Congress established a unique, Alaska-specific statutory framework with the passage of ANILCA, the TTRA, the FY 2015 Defense Authorization Act, and the SAFETEA-LU § 4407. These express statutory directives may not be contravened by regulations designed for broad application to national forests, as they are preempted by Congress' specific determinations to establish different terms for land management governance in Alaska. *See Sturgeon v. Frost*, 139 S.Ct. 1066 (2019).

108.   Defendants are preempted by the Alaska-specific statutory framework from making the binding, long-term regulatory designations of the Roadless Rule, which is specifically intended "to provide lasting protection for IRAs in the context of overall multiple-use management." *See* 88 Fed. Reg. 5253 (Jan. 27, 2023).

109.   Congress expressly stated its intention in ANILCA § 101(d) to preempt any other lasting land designation by a federal agency which would destroy its intentionally calibrated balance between protection and development.

110.   In Title II of the TTRA, Congress designated 12 areas as LUD II SMAs, which are to be "managed in a roadless state to retain their wildland character."

111.   The FY 2015 Defense Authorization Act designated an additional eight areas as LUD II SMAs.[18]

---

[18]     There are 878,694 acres on the Tongass that Congress has thus legislatively designated as LUD II SMAs.

112. In the October 29, 2020, ROD exempting the Tongass, USDA determined that LUD II SMAs are "substantially similar but slightly different" from IRAs in a manner that "does not make a meaningful difference to the level of conservation." See 85 Fed. Reg. 68690 (Oct. 29, 2020).

113. Defendants' Decision to designate 9.3 million acres of the Tongass as IRAs, which are *de facto* LUD II SMAs, arbitrarily and capriciously increased the acreage of protected lands well in excess of the careful balance specified by Congress, destroying the balance mandated in Section 101(d) of ANILCA.

114. Defendants' designation of 9.3 million acres of IRAs for lasting unroaded protection greatly exceeds the carefully determined balance of ANILCA § 101(d), and impermissibly contravenes through regulation both the express and implied intent of Congress to reserve further lands from preservation.

115. Defendants have arbitrarily and capriciously, and in violation of the APA (5 U.S.C. § 706(2)(C)), substituted their judgment regarding the appropriate amount of lasting land use designations for that of Congress, which struck "the appropriate balances among the various values" in ANILCA § 101(d).

116. By passage of ANILCA, the TTRA, the Wilderness Act, and the FY 2015 Defense Authorization Act, Congress has clearly spoken to which lands should be designated for protections necessary to achieve the ANILCA § 101(d) goal of maintaining a balance between preservation and development, and Defendants may not make additional designations by rule.

117.    The IRAs designated on the Tongass through Defendants' Decision mimic and replicate the protections of the TTRA LUD II SMAs established in 1990.

118.    Through its Decision, Defendants added millions of acres of IRAs as *de facto* LUD II SMAs in excess of the 878,694 acres specified by Congress, in conflict with Congress' sole authority to "dispose of land" under article IV, § 3, clause 2 of the United States Constitution.

119.    Through its Decision, Defendants impermissibly upset Congress' balance between preservation and development noted by ANILCA § 101(d).

120.    Through SAFETEA-LU § 4407, which authorizes roads in the Tongass, Congress demonstrated that it considered roadbuilding to establish necessary transportation connections across the Tongass to be consistent with its ANILCA § 101(d) prescription for the balance between preservation and development.

121.    Congress has preempted the designation of roadless areas in the Tongass, and Defendants' Decision contrary to this explicit congressional determination violates the separation of powers in this case reserved to Congress in article I, section 1, of the U.S. Constitution.

### THIRD CLAIM

### (Alaska National Interest Lands Conservation Act)

122.    In setting out the purposes of ANILCA, Congress declared in § 101(d) (16 U.S.C. 3101(d)) that it "provides sufficient protection for the national interest in the scenic, natural, cultural and environmental values on the public lands in Alaska[.]" Having purposefully and thoughtfully achieved a carefully negotiated balance between

such protections and the "economic and social needs of the State[,]" § 101(d) explicitly stated that Congress believed that it had obviated "the need for future legislation designating new conservation system units, new national conservation areas, or new national recreation areas[.]"

123. Congress further outlined the contours of its intended balance between protection and development, where ANILCA § 1326(a)&(b) (16 U.S.C. 3213(a)& (b)) required Congressional approval both for any further executive designation of public land in excess of 5,000 acres that would no longer be available for "more intensive use and disposition[,]" or even the study of federal lands in Alaska for the "purpose of considering the establishment of a conservation system unit, national recreation area, national conservation area, *or for related or similar purposes*[.]" (Emphasis added).

124. Defendants' Decision to impose the Roadless Rule upon the Tongass substantively withdraws approximately 9.3 million acres of IRAs (more than twice the size of Connecticut) through executive action, making them unavailable for timber harvest, renewable energy development, geothermal leasing, mining for critical minerals, and for any other development or activity requiring roads. This greatly impacts the economic and social needs of the State.

125. There has been no joint resolution of approval by Congress as required by ANILCA § 1326(a), and thus Defendants violated ANILCA §§ 101, 708, and 1326 by effectively withdrawing approximately 9.34 million acres of IRAs.

## FOURTH CLAIM

### (Multiple-Use Sustained Yield Act and Organic Administration Act)

126.    The OAA and MUSYA authorize the Secretary to exercise limited and defined discretion to establish rules regulating access and use of national forests consistent with congressional direction. The Secretary's discretion is limited to promulgating and enforcing rules that both (a) protect against the destruction or deterioration of natural resources, and (b) enable continued public access and reasonable economic or socially beneficial uses of the national forests.

127.    Neither the OAA nor the MUSYA authorize or delegate authority to Defendants to deny access, and reasonable economic and socially beneficial uses, over vast portions of the Tongass by designating lasting IRA protection for 9.3 million acres of the Tongass.

128.    Defendants' designation of the IRAs in the Tongass through repeal of the Alaska Rule are *ultra vires* and "in excess of statutory jurisdiction, authority, or limitations," in violation of 5 U.S.C. § 706(2)(C), and unconstitutionally conflict with Congress' sole authority to "dispose of land" under article IV, § 3, clause 2 of the United States Constitution.

129.    Defendants' designation of the IRAs in the Tongass through repeal of the Alaska Rule violates the non-delegation doctrine because neither the OAA nor MUSYA "lay down an intelligible principle" for the USDA to designate lasting IRAs. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001).

130.    MUSYA does not provide a sufficient intelligible principle upon which Defendants could rest its determination to extend Roadless Rule protections to the Tongass and no other statutory provision supplies an alternate basis to guide Defendants in making a policy decision to preserve 9.3 million acres of the Tongass.

### FIFTH CLAIM

**(Multiple-Use Sustained Yield Act, Organic Administration Act, Forest Roads and Trails Act, & Tongass Timber Reform Act)**

131.    Neither the OAA nor the MUSYA delegate authority to Defendants to designate lasting Roadless Areas in the Tongass. Accordingly, such designations are in derogation of Congress' sole authority to dispose of land under article IV, § 3, clause 2 of the United States Constitution.

132.    The Roadless Rule bars most economic and recreational uses including hydropower, wind, biomass, and geothermal development, construction and maintenance of transmission lines necessary for greater renewable power generation, mining claims and mining development access, transportation easements and rights of way guaranteed by 16 U.S.C. § 524, roads and trails required by 16 U.S.C. § 532, and for any other development or activity requiring or made possible by roads, in violation of MUSYA and the FRTA.

133.    Defendants' Decision designating 9.3 million acres of IRAs as *de facto* LUD II SMAs on the Tongass violates the MUSYA, 16 U.S.C. §§ 524, 528, 529, and 531, and the FRTA, 16 U.S.C. § 532, which allows and expressly or implicitly requires roads by statute to provide for intensive use, protection, development, and

management of these lands under principles of multiple use and sustained yield of products and services.

134.    Although Defendants have discretion in the management of national forest lands pursuant to the OAA, Congress preempted any authority to designate IRAs on the Tongass when it evaluated and designated specific LUD II SMAs and separate wilderness areas.

135.    Defendants' Decision to designate 9.3 million acres of IRAs as *de facto* LUD II SMAs for a single use violates the mandates of the MUSYA (16 U.S.C. §§ 528-531) which requires multiple use management specifically including timber production, requires due consideration of the relative values of the various resources in particular areas, and violates the FRTA (16 U.S.C. § 532), which declares that construction and maintenance of an adequate road system within and near the national forests is essential to meet increasing demands for timber, recreation, and other uses.

136.    The OAA, 16 U.S.C. § 475, expressly sets out the furnishing of "a continuous supply of timber for the use and necessities of citizens of the United States[,]" as one of the primary purposes for establishing national forests.

137.    Although the Forest Service has discretion in the management of national forest lands, Defendants noted in the ROD for the Alaska Rule that MUSYA and OAA mandate the Forest Service to manage for multiple uses and sustained yield of the various renewable surface resources to meet the needs of the American people. See 85 Fed. Reg. 68691 (Oct. 29, 2020). Elevating preservation across over 9.3 million acres of the

Tongass to the exclusion of all other uses violated the provisions of the MUSYA and the OAA, is arbitrary and capricious, and an abuse of discretion. This is especially true here where the prohibited uses constitute core purposes of the MUSYA and OAA.

138. Defendants' treatment of the MUSYA and OAA objectives of maintaining a continuous supply of timber as an unlawful activity to be protected against by Defendants' Decision violated the core intentions of both MUSYA and the OAA.

139. Because Defendants' Decision to designate 9.3 million acres of Tongass IRAs for lasting protection is almost 11 times more than the roadless areas designated by Congress in the form of LUD II SMAs, such action arbitrarily and capriciously exceeds Defendants' discretion because it unreasonably and fatally restricts Defendants ability "to improve and protect the forest within the boundaries," or "to furnish a continuous supply of timber for the use and necessities of citizens of the United States" as directed by the OAA.

## SIXTH CLAIM

### (Alaska Statehood Act & Forest Roads and Trails Act)

140. At section 6(a) of the Alaska Statehood Act, Congress granted 400,000 acres of national forest land to Alaska for the development and expansion of its communities. Congress gave the explicit instruction that the selected and transferred lands would include all interests of the United States, including all mineral interests, "without [the United States'] limiting the use thereof." These Statehood entitlement lands are intermingled with and surrounded by national forest lands and access restrictions

across adjacent federal lands limit development of those non-federal lands and limit expansion of Southeast Alaska communities.

141.    The congressional findings of the FRTA, 16 U.S.C. § 532, reads:

> The Congress hereby finds and declares that the construction and maintenance of an adequate system of roads and trails within and near the national forests and other lands administered by the Forest Service is essential if increasing demands for timber, recreation, and other uses of such lands are to be met; that the existence of such a system would have the effect, among other things, of increasing the value of timber and other resources tributary to such roads; and that such a system is essential to enable the Secretary of Agriculture (hereinafter called the Secretary) to provide for intensive use, protection, development, and management of these lands under principles of multiple use and sustained yield of products and services.

142.    The Roadless Rule's limitations on roaded access across national forest lands to the intermingled non-federal lands throughout the Tongass are in direct contravention of Congress' declaration of policy and clear directive that the use of the State's selected lands—including development of timber and mineral resources—would not be limited by the United States.

## SEVENTH CLAIM

### (APA)

143.    Under the APA (5 U.S.C. § 706), an agency action must be held unlawful and set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

144.    For the reasons set forth in claims one through six, Defendants' Decision to repeal the Alaska Rule and apply the Roadless Rule is arbitrary, capricious, an abuse of

discretion, not in accordance with the law, and an action taken by the Defendants in excess of statutory authority, or limitations, or short of statutory right. These actions have caused and will continue to cause immediate, direct, adverse and irreversible harm to the State of Alaska and its citizens.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a.      A declaration that pursuant to the Alaska National Interest Lands Conservation Act, Tongass Timber Reform Act, Wilderness Act, FY 2015 Defense Authorization Act, and United States Constitution article I, § 1, only Congress is authorized to withdraw lands in the Tongass National Forest from non-conservation purposes such as road construction, energy infrastructure, timber harvest, and other resource development.

b.      A declaration that by setting aside 9.3 million acres of Inventoried Roadless Areas in the Tongass without congressional authorization, Defendants have interfered with congressional authority to decide how much of the Tongass should be set aside for roadless areas and thereby violated §§ 101, 708, and 1326 of the Alaska National Interest Lands Conservation Act.

c.      A declaration that neither the Organic Administration Act, 16 U.S.C. § 475, nor the Multiple-Use Sustained-Yield Act, 16 U.S.C. §§ 528, 529, and 531, authorize Defendants to designate roadless areas in the Tongass, and Defendants' Decision violates the mandates of 16 U.S.C. §§ 528, 529, 531, and 532.

d.       A declaration that Defendants' Decision violates the Organic

Administration Act, 16 U.S.C. § 475, Multiple-Use Sustained-Yield Act, 16 U.S.C. §§

528, 529, and 531, and Forest Roads and Trails Act, 16 U.S.C. § 532.

e.       A declaration that Defendant's Decision violates the Alaska

Statehood Act and Forest Roads and Trails Act.

f.       A declaration that Defendant's Decision violates the

Administrative Procedure Act.

g.       An order invalidating and vacating Defendants' repeal of the 2020

Alaska Roadless Rule and enjoining the Defendants from applying the 2001 Roadless

Area Conservation Final Rule and Record of Decision to the Tongass National Forest.

h.       An order setting aside the January 27, 2023, Record of Decision

repealing the Alaska Rule and any actions taken by Defendants in reliance on the Record

of Decision as void.

i.       An order directing Defendants to comply with the Alaska National

Interest Lands Conservation Act, Tongass Timber Reform Act, National Forest

Management Act, Wilderness Act, FY 2015 Defense Authorization Act, Multiple-Use

Sustained-Yield Act, Alaska Statehood Act, Forest Roads and Trails Act, Organic

Administration Act, and United States Constitution.

j.       An award of the costs incurred by plaintiff and such other fees as

may be allowed by applicable law.

k.       Such other relief as the Court deems appropriate.

DATED this 8th day of September, 2023.

TREG TAYLOR
ATTORNEY GENERAL

By: s/Thad Adkins/
Thad Adkins (Alaska Bar No. 2205032)
Assistant Attorney General
Ronald W. Opsahl (Alaska Bar No. 2108081)
Senior Assistant Attorney General
Department of Law
1031 West 4th Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
Email:       thad.adkins@alaska.gov
                ron.opsahl@alaska.gov