Katharine S. Glover
Eric P. Jorgensen
EARTHJUSTICE
325 Fourth Street
Juneau, AK 99801
907.586.2751
kglover@earthjustice.org
ejorgensen@earthjustice.org

Jeremy C. Lieb
EARTHJUSTICE
441 W 5th Avenue Suite 301
Anchorage, AK 99501
907.277.2500
jlieb@earthjustice.org

Ian Fein
NATURAL RESOURCES
DEFENSE COUNCIL
111 Sutter Street, 21st Floor
San Francisco, CA 94104
415.875.6147
ifein@nrdc.org

Garett R. Rose
NATURAL RESOURCES
DEFENSE COUNCIL
1152 15th Street NW
Washington DC 20005
202.289.6868
grose@nrdc.org

*Attorneys for [Proposed] Intervenor-Defendants Organized Village of Kake, Hoonah Indian Association, Ketchikan Indian Community, Organized Village of Kasaan, The Boat Company, Uncruise Adventures, Alaska Longline Fishermen's Association, Alaska Wilderness League, Center for Biological Diversity, Defenders of Wildlife, Friends of the Earth, Natural Resources Defense Council, Sierra Club, Southeast Alaska Conservation Council, The Wilderness Society, and Women's Earth and Climate Action Network*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 3:23-cv-00203-SLG |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| AGRICULTURE *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| _____ | ) | |

| | |
|---|---|
| INSIDE PASSAGE ELECTRIC COOPERATIVE *et al.* | ) ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) ) |
| UNITED STATES DEPARTMENT OF AGRICULTURE *et al.*, | ) ) ) ) |
| Defendants. | ) ) |
| GOVERNOR FRANK H. MURKOWSKI, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| TOM VILSACK *et al.*, | ) ) ) |
| Defendants. | ) ) |

Case No. 3:23-cv-00204-SLG

Case No. 1:23-cv-0010-SLG

**ORGANIZED VILLAGE OF KAKE *ET AL.*'s MOTION TO INTERVENE**

# TABLE OF CONTENTS

I. BACKGROUND ........................................................................................... 2

    A. The Tongass ................................................................................. 2

    B. The 2001 Roadless Rule ............................................................. 3

    C. Subsequent Developments .......................................................... 5

    D. The 2023 Reinstatement Rule ..................................................... 7

    E. These Consolidated Cases .......................................................... 10

II. ARGUMENT ............................................................................................ 11

    A. Movants Are Entitled to Intervene as of Right. ......................... 11

    B. Alternatively, This Court Should Grant Permissive Intervention. ............... 18

III. CONCLUSION ........................................................................................ 19

These consolidated cases concern whether the Roadless Area Conservation Rule, commonly referred to as the Roadless Rule, will continue to apply in the Tongass National Forest. The Roadless Rule prohibits most, but not all, logging and road construction in the remaining largely pristine areas of national forests. Organized Village of Kake *et al.*—a collection of Alaska Native Tribes, tourism businesses, a commercial fisheries advocacy group, and nonprofit environmental organizations[1]—move to intervene under Federal Rule of Civil Procedure 24 to defend their interests in protecting these special areas of the Tongass.

Movants have worked for years to secure the roadless protections at issue in these cases. Indeed, several Movants intervened successfully in similar earlier lawsuits brought by the State of Alaska (Alaska) challenging roadless area protections. The Court should grant this motion as well, because it is timely and the Movants' interests in Tongass roadless areas may be impaired if these latest lawsuits succeed. Moreover, the long litigation history here shows that Federal Defendants may not adequately represent Movants' interests; nearly all Movants have previously sued Federal Defendants to restore Tongass roadless protections. Movants therefore respectfully seek to intervene in these cases to defend, once again, their longstanding interests in protecting an intact and

---

[1] Movant-Intervenors are Organized Village of Kake, Hoonah Indian Association, Ketchikan Indian Community, Organized Village of Kasaan, The Boat Company, UnCruise Adventures, Alaska Longline Fishermen's Association, Alaska Wilderness League, Center for Biological Diversity, Defenders of Wildlife, Friends of the Earth, Natural Resources Defense Council, Sierra Club, Southeast Alaska Conservation Council, The Wilderness Society, and Women's Earth and Climate Action Network.

*State of Alaska v. U.S. Dep't of Agric.,*
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

1

healthy Tongass ecosystem.

Federal Defendants take no position on this motion. Plaintiffs take no position at this time, but reserve the right to object depending on the contents of the motion.

## I.  BACKGROUND

### A.  The Tongass

The Tongass National Forest is the traditional homeland of the Tlingit, Haida, and Tsimshian people, who have lived in and depended on the forest since time immemorial. Citizens of Alaska Native Tribes—including Movants Organized Village of Kake, Organized Village of Kasaan, Hoonah Indian Association, and Ketchikan Indian Community—rely on lands in the Tongass for fishing, hunting, and gathering foods and traditional medicines.[2] These foods are an important part of the local economy and comprise a significant portion of household diets.[3]

At 16.7 million acres, the Tongass is the country's largest national forest and represents the world's largest remaining intact old-growth temperate rainforest.[4] Its naturally fragmented island ecosystem is home to towering stands of old-growth spruce and cedar trees, as well as rare wildlife species—including Alexander Archipelago wolves, Pacific marten, black and brown bears, Queen Charlotte goshawks, Sitka black-tailed deer, and Prince of Wales flying squirrels, and spruce grouse—some of which are

---

[2] Ex. 6, p. 3, ¶4; Ex. 7, ¶6; Ex. 8, ¶4; Ex. 9, ¶5.

[3] *See* Ex. 6, p. 6, ¶14; *see also* Ex. 1 at 35-39.

[4] Ex. 1 at 5-6.

*State of Alaska v. U.S. Dep't of Agric.,*
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

2

found nowhere else on earth.[5]

Free-flowing streams and rivers in the Tongass provide important spawning, rearing, and migratory habitat for commercially caught salmon.[6] The seafood industry provides nearly 4,000 jobs for the region and almost $240 million in annual earnings, making it the second largest private sector contributor to the regional economy.[7]

A healthy Tongass ecosystem is also key to the visitor and tourism industry—the largest private sector contributor to the regional economy. The visitor industry provides over 8,000 jobs and almost $250 million in earnings to the region each year.[8]

Finally, old-growth forests in the Tongass are a major carbon sink, making it a critical defense against climate change. The Tongass stores more carbon than any other national forest in the United States.[9]

### B.    The 2001 Roadless Rule

In 2001, the U.S. Department of Agriculture (USDA) adopted the Roadless Rule to limit road construction and logging in "inventoried roadless areas" that the agency had identified in the country's national forests.[10] These large, relatively undisturbed areas of forest provide many ecological and social benefits. Inventoried roadless areas are

---

[5] *Id.* at 14-34.

[6] *Id.* at 13; 88 Fed. Reg. 5252, 5266 (Jan. 27, 2023).

[7] Ex. 1 at 10.

[8] *Id.*

[9] 88 Fed. Reg. at 5260.

[10] 66 Fed. Reg. 3244 (Jan. 12, 2001).

*State of Alaska v. U.S. Dep't of Agric.,*                                                      3
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

important sources of clean drinking water; they function as biological strongholds for threatened or endangered species; they serve as bulwarks against the spread of non-native invasive plant species; they provide high-quality scenic landscapes that support recreation and tourism; and they help protect traditional cultural properties and sacred sites.[11]

To preserve and enhance these ecological and social benefits in national forests, the Roadless Rule prohibited most logging and road construction in inventoried roadless areas. The rule included several important exceptions, however—such as allowing road construction for some mining, federal-aid highways, and other forms of community infrastructure.[12]

As adopted in 2001, the Roadless Rule applied in the Tongass National Forest.[13] Several of the present Movants submitted comments or otherwise advocated for including the Tongass in that initial rule.[14] USDA recognized at the time that the Tongass's "high degree of overall ecosystem health is due to its largely undeveloped nature including the quantity and quality of inventoried roadless areas," and that applying the Roadless Rule to such areas would help preserve the Tongass's "extraordinary ecological values."[15]

---

[11] *Id.* at 32,45-47.

[12] *See* 36 C.F.R. § 294.12(b)(1)-(7) (2001) (road construction exemptions); *id.* § 294.13(b)(1)-(4) (2001) (timber cutting exemptions).

[13] 66 Fed. Reg. at 3254-55, 3266.

[14] *See, e.g.*, Ex. 14, ¶9; Ex. 15, ¶4; Ex. 18, ¶5; Ex. 19, ¶4; Ex. 20, ¶5; Ex. 21, ¶4.

[15] 66 Fed. Reg. at 3254.

## C.     Subsequent Developments

Shortly after USDA promulgated the Roadless Rule, Alaska challenged it in this Court.[16] Several of the present Movants also intervened in that case to help defend the Roadless Rule.[17] Alaska voluntarily dismissed the suit in 2003, a few months before USDA promulgated a new rule that temporarily exempted the Tongass from the Roadless Rule.[18]

Several of the present Movants challenged the 2003 Tongass exemption in this Court.[19] In 2011, the Court held that the exemption was arbitrary and capricious and invalid under the Administrative Procedure Act (APA), thereby reinstating the Roadless Rule in the Tongass.[20] The Court's judgment made explicit, however, that the Roadless Rule's prohibitions did not apply to road construction or timber cutting for several hydroelectric and other community infrastructure projects in southeast Alaska.[21] The

---

[16] Ex. 2.

[17] *See* Ex. 3 at 1-2 (granting intervention as defendants to Defenders of Wildlife, Natural Resources Defense Council, Sierra Club, Southeast Alaska Conservation Council, The Wilderness Society, and other groups).

[18] 68 Fed. Reg. 75,136 (Dec. 30, 2003).

[19] Ex. 4 (identifying as plaintiffs Organized Village of Kake, The Boat Company, Center for Biological Diversity, Defenders of Wildlife, Natural Resources Defense Council, Sierra Club, and Southeast Alaska Conservation Council).

[20] *Organized Vill. of Kake v. U.S. Dep't Agric.*, 776 F. Supp. 2d 960, 976 (D. Alaska 2011).

[21] Judgment, *Organized Vill. of Kake v. U.S. Dep't Agric.*, No. 1:09-cv-00023-JWS (D. Alaska May 24, 2011).

Court's judgment was ultimately affirmed by an en banc panel of the Ninth Circuit.[22]

Shortly after this Court reinstated the Roadless Rule in the Tongass, Alaska in 2011 filed another lawsuit challenging the Roadless Rule, this time in the U.S. District Court for the District of Columbia.[23] Several of the present Movants also intervened defensively in that suit.[24] Several plaintiffs from the instant litigation also intervened as plaintiffs in support of Alaska's suit.[25] The district court ultimately rejected all of Alaska's and plaintiff-intervenors' claims, including their Tongass-specific ones— finding, for example, that USDA adequately considered the Roadless Rule's impacts on mining and other energy projects in the Tongass.[26] Alaska and the plaintiff-intervenors appealed the district court's decision to the D.C. Circuit.

While that case was on appeal, Alaska in 2018 submitted a rulemaking petition to

---

[22] *See Organized Vill. of Kake v. U.S. Dep't Agric.*, 795 F.3d 956, 970 (9th Cir. 2015) (en banc).

[23] Ex. 5.

[24] *Alaska v. U.S. Dep't of Agric.,* 273 F. Supp. 3d 102 (D.D.C. 2017), *vacated in part on other grounds, appeal dismissed in part by* 17 F.4th 1224 (D.C. Cir. 2021) (caption identifying as defendant-intervenors The Boat Company, Center for Biological Diversity, Defenders of Wildlife, Natural Resources Defense Council, Sierra Club, Southeast Alaska Conservation Council, and The Wilderness Society).

[25] *Id.* (caption identifying as plaintiff-intervenors Alaska Electric Light & Power, Alaska Marine Lines, Inc., Alaska Miners Association, Alaska Power & Telephone, First Things First Foundation, Hyak Mining Co., Inc., Juneau Chamber of Commerce, Ketchikan Gateway Borough, Southeast Alaska Power Agency, Southeast Conference, and Southeast Stevedoring Corp.).

[26] *Alaska v. U.S. Dep't of Agric.,* 273 F. Supp. 3d at 122-26.

USDA, asking it to again exempt the Tongass from the Roadless Rule.[27] USDA under the Trump administration published a rule ("2020 Exemption Rule") in October 2020 doing just that.[28] In light of the 2020 Exemption Rule, the D.C. Circuit dismissed as moot Alaska's pending appeal of its claims challenging the Roadless Rule's application in the Tongass.[29]

Nearly all of the present Movants filed suit in this Court challenging the 2020 Exemption Rule.[30] They voluntarily dismissed that suit in March 2023, however, after USDA under the Biden administration reinstated the Roadless Rule in the Tongass.

### D.     The 2023 Reinstatement Rule

USDA in January 2023 published a Reinstatement Rule ("2023 Reinstatement Rule") that repealed the 2020 Exemption Rule and, once again, reinstated the Roadless Rule in the Tongass.[31] USDA concluded that the "needs and concerns of local communities"—including the "need for stability and predictability after over two decades of shifting management"—would "best be served by restoring the familiar framework of

---

[27] 85 Fed. Reg. 68,688, 68,688 (Oct. 29, 2020).

[28] 85 Fed. Reg. at 68,688.

[29] *Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1231 (D.C. Cir. 2021).

[30] Compl., *Organized Vill. of Kake v. Perdue*, No. 1:20-cv-00011-SLG (Dec. 23, 2020), Doc. 1 (identifying among the plaintiff group Organized Village of Kake, Hoonah Indian Association, Ketchikan Indian Community, The Boat Company, UnCruise Adventures, Alaska Longline Fishermen's Association, Center for Biological Diversity, Defenders of Wildlife, Friends of the Earth, Natural Resources Defense Council, Sierra Club, Southeast Alaska Conservation Council, The Wilderness Society, Women's Earth and Climate Action Network).

[31] 88 Fed. Reg. at 5252.

the 2001 Roadless Rule."[32] USDA asserted that "strong support for restoring the 2001 Roadless Rule, especially from some local municipal and all the Tribal governments that were consulted, reflects the extraordinary ecological values of the Tongass National Forest and the cultural, social, and economic needs of the local forest dependent communities in Southeast Alaska."[33]

USDA emphasized the role that Alaska Native Tribes—including Movant tribes—played in the agency's decisionmaking. As part of the rulemaking, USDA held formal consultation sessions with twelve tribes, including four Movants, in southeast Alaska.[34] USDA explained that "[r]oadless areas on the Tongass hold immense cultural significance for Alaska Native peoples," and that reinstating Roadless Rule protections was the "overwhelming consensus recommendation of Alaskan Native Tribes as expressed through formal consultation."[35] USDA asserted that reinstating the Roadless Rule reflected the administration's "commitment to strengthening nation-to-nation relationships, and incorporating indigenous knowledge, stewardship, and priorities into land management decision-making."[36]

USDA also explained that roadless areas in the Tongass "provide important

---

[32] *Id.* at 5255.

[33] *Id.* at 5256.

[34] *Id.* at 5253, 5267-68.

[35] *Id.* at 5255-56.

[36] *Id.* at 5261.

ecosystem services" including, but not limited to: undisturbed soil, water, and air; sources of clean public drinking water; and habitat for threatened, endangered, and other sensitive species.[37] USDA projected that leaving the Tongass exempted from the Roadless Rule would have made 168,000 more acres of old-growth forest available for timber production and resulted in nearly 46 miles of additional roads on national forest land over the next 100 years—compromising many of the forest's important ecological values.[38] Reinstating the Roadless Rule, by contrast, would "support retention of the largest and most extensive tracts of undeveloped land for the roadless values, watershed protection, and ecosystem health those lands provide."[39]

Furthermore, USDA recognized that because roadless areas in the Tongass "include watersheds and areas important for fishing, hunting, outdoor recreation, and tourism," reinstating the Roadless Rule would help "build on the region's primary private-sector economic drivers of tourism and fishing" and "support revenue and jobs in Southeast Alaska as well as local community well-being."[40]

At the same time, USDA observed that the Roadless Rule "would not have major adverse impacts to the timber, energy, and mining industries."[41] Since 2009, USDA had

---

[37] *Id.* at 5255.

[38] *Id*.

[39] *Id.* at 5261.

[40] *Id*.

[41] *Id.* at 5256.

approved all 59 project proposals that it had received—for mineral, energy, recreation, and transportation projects in Tongass roadless areas—that included tree removal or road construction authorized by Roadless Rule exceptions.[42] This led USDA to conclude that roadless area protections "will continue to accommodate access for qualified mining, energy, and community infrastructure needs while also conserving the multiple ecologic, social, cultural, and economic values supported by roadless areas on the forest."[43]

## E.    These Consolidated Cases

In September 2023, Alaska and other plaintiffs filed three cases challenging the 2023 Reinstatement Rule in this Court.[44] Two of the cases raise some claims similar to those that were rejected in the earlier litigation in the U.S. District Court for the District of Columbia.[45]

The Court consolidated the three cases on December 11, 2023.[46] Federal

---

[42] *Id.*

[43] *Id.* at 5263.

[44] Compl., *Alaska v. U.S. Dep't of Agric.*, No. 3:23-cv-203-SLG (Sept. 8, 2023), Doc. 1; Compl., *Inside Passage Elec. Coop. v. U.S. Dep't of Agric.*, No. 3:23-cv-204-SLG (Sept. 8, 2023), Doc. 1; Compl., *Murkowski v. Vilsack*, No. 1:23-cv-10-SLG (Sept. 8, 2023), Doc. 1.

[45] *Compare, e.g.*, Compl., *Alaska v. U.S. Dep't of Agric.*, No. 3:23-cv-203-SLG, Doc. 1 at 32, ¶¶124-25 (alleging that the Roadless Rule's application in the Tongass constituted an unlawful withdrawal of public land under Section 1326 of the Alaska National Interest Lands Conservation Act (ANILCA)); Compl., *Murkowski v. Vilsack*, No. 1:23-cv-10-SLG, Doc. 1 at 48-49, ¶¶67-68 (same), *with Alaska*, 273 F. Supp. 3d at 124-25 (rejecting claim that the Roadless Rule's application in the Tongass constituted an unlawful withdrawal of public land under Section 1326 of ANILCA).

[46] Doc. 16. Unless otherwise noted, all docket entry citations are to No. 3:23-cv-00203-SLG.

*State of Alaska v. U.S. Dep't of Agric.*,                                                          10
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 21   Filed 01/30/24   Page 13 of 26

Defendants filed their answers to the complaints on December 12, 2023,[47] and filed the administrative record on January 19, 2024.[48] Plaintiffs' opening dispositive briefs are due March 12, 2024, or possibly later, if Federal Defendants file a supplementation of the record.[49]

## II.    ARGUMENT

### A.    Movants Are Entitled to Intervene as of Right.

The Court considers four factors for intervention as of right under Federal Rule of Civil Procedure 24(a)(2), analyzing whether: (1) the motion is timely; (2) the movants claim a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may as a practical matter impair or impede the movants' ability to protect their interests; and (4) the movants' interests are inadequately represented by other parties.[50] These factors are "broadly interpreted in favor of intervention."[51]

Movants are entitled to intervene as of right under these factors.

First, the motion is timely. This litigation remains at an early stage, and any prejudice to the existing parties from intervention is nonexistent. The administrative

---

[47] *See, e.g.*, Doc. 18.

[48] Doc. 20.

[49] Doc. 17 at 4.

[50] *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)).

[51] *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)).

*State of Alaska v. U.S. Dep't of Agric.*,                                                11
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 21   Filed 01/30/24   Page 14 of 26

record was filed only recently, and Movants will not seek to complete or supplement that record. Moreover, Plaintiffs' opening dispositive briefs are not due until March 12, 2024, at the earliest.[52] Movant-Intervenors can therefore participate in the forthcoming dispositive briefing without prejudicing any other existing party. Under such circumstances, the motion to intervene is timely.[53]

Second, Movants have significant protectable interests in the Tongass roadless areas that are the subject of this action. The 2023 Reinstatement Rule explained that such areas "provide important ecosystem services," including clean drinking water and habitat for sensitive species; help facilitate the region's primary private-sector economic drivers of outdoor recreation, tourism, and fishing; and "hold immense cultural significance for Alaska Native peoples."[54] Movants are a collection of Alaska Native Tribes, tourism businesses, a commercial fisheries advocacy group, and nonprofit environmental organizations whose members enjoy and benefit from these roadless values.[55]

---

[52] Doc. 17 at 4.

[53] *See Cook Inletkeeper v. U.S. Dep't of the Interior*, No. 3:22-cv-00279-SLG, 2023 WL 3892486, at *1 (D. Alaska June 8, 2023) (intervention timely where "no dispositive motions had been filed"); *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (intervention timely where it was sought at an "early stage of the proceedings, the parties would not have suffered prejudice from the grant of intervention at that early stage, and intervention would not cause disruption or delay in the proceedings").

[54] 88 Fed. Reg. at 5255-56, 5256.

[55] *See* Ex. 6, p. 2-5; Ex. 7, ¶¶1, 6; Ex. 8, ¶¶3-4; Ex. 9, ¶¶3,5; Ex. 10, ¶¶1, 19-23; Ex. 11, ¶¶1, 6-7; Ex. 12, ¶¶1-2, 8; Ex. 13, ¶¶2-3, 10; Ex. 14, ¶¶2, 11; Ex. 15, ¶¶2, 9; Ex. 16, ¶¶4, 7; Ex. 17, ¶¶4, 7; Ex. 18, ¶¶4, 8; Ex. 19, ¶¶2, 7; Ex. 20, ¶¶2, 7; Ex. 21, ¶¶2, 9-10; Ex. 22, ¶¶2-3, 10.

*State of Alaska v. U.S. Dep't of Agric.,*                                          12
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 21   Filed 01/30/24   Page 15 of 26

Tongass roadless areas contain numerous traditional cultural properties and sacred sites and are integral to the ways-of-life of Movant Tribes.[56] Citizens of Movant Tribes rely on such areas to hunt, fish for salmon and other species, gather traditional foods and medicines, and support their cultures and traditions.[57] As the Tribal President of Hoonah Indian Association explains, "[c]ulturally and spiritually, the Tongass holds special power for the Huna Tlingit. The forest is alive, and the trees are our relatives."[58] The President of the Organized Village of Kake adds that hunting, fishing, and gathering food on lands now protected under the Roadless Rule is "who we are—it's how we've survived for hundreds of years."[59]

Members of Movant Alaska Longline Fishermen's Association rely on roadless areas to sustain their livelihoods; they participate in commercial salmon fisheries that "depend on the productivity of salmon streams and aquatic systems within Tongass National Forest roadless areas."[60] In addition, part of the Association's mission is to

---

[56] Ex. 6, p. 3, ¶6 ("Many sites that are sacred to our [Organized Village of Kake] Tribal citizens are within roadless areas, and our Tribal citizens use these areas for spiritual and religious practices . . . ."); Ex. 8, ¶4 ("The Tongass, and in particular areas currently protected by the Roadless Rule, are important to the [Ketchikan Indian Community's] Tribal citizens for the protection of our way of life and the integrity of our sovereignty.").

[57] Ex. 6, pp. 2-4, 7-8; Ex. 7, ¶¶6, 8; Ex. 8, ¶¶3-4; Ex. 9, ¶5.

[58] Ex. 7, ¶6.

[59] Ex. 6, p. 8, ¶6.

[60] Ex. 12, ¶8; *see* 88 Fed. Reg. at 5256, 5265-66 (noting that Tongass roadless areas support healthy watersheds that sustain abundant salmon populations important to commercial fisheries).

*State of Alaska v. U.S. Dep't of Agric.,*                                                    13
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 21   Filed 01/30/24   Page 16 of 26

advocate for conservation of salmon habitat in the Tongass.[61]

Movants The Boat Company and Uncruise Adventures use roadless areas of the Tongass to provide remote ecotourism experiences for clients. Both organizations conduct multi-day boat tours in southeast Alaska that include sport fishing, hikes, kayaking, and wildlife viewing opportunities.[62] Because there are limitations on access to many undeveloped areas of the forest for tour operators, these organizations rely heavily on access to Tongass roadless areas to provide remote experiences for their clients.[63]

Movant environmental organizations have long advocated for protection of the roadless areas of the Tongass. Their members and supporters rely on such areas for subsistence, guiding, fishing, hunting, hiking, bird watching, camping, skiing, photography, painting, and other recreational activities, as well as the scenic beauty and sense of solitude and relief these areas provide.[64] According to a member of one organization, roadless areas of the Tongass are among the "most interesting, inspiring, and beautiful areas [he has] seen in a lifetime of visiting natural landscapes."[65]

Reflecting their long-standing interests in the Roadless Rule, nearly all Movants have been a party in at least one earlier lawsuit involving the Roadless Rule's application

---

[61] Ex. 12 ¶¶14, 20.

[62] *See* Ex. 10, ¶7; Ex. 11, ¶¶4-7.

[63] Ex. 10, ¶¶16-23 Ex. 11 ¶7.

[64] *See* Ex. 13, ¶¶3, 10; Ex 14, ¶¶11, 14-17; Ex. 15, ¶9; Ex. 16, ¶7; Ex. 17, ¶7; Ex. 18, ¶4; Ex. 19, ¶7; Ex. 20, ¶7; Ex. 21, ¶10; Ex. 22, ¶10.

[65] Ex. 18, ¶4.

*State of Alaska v. U.S. Dep't of Agric.,*                                    14
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 21   Filed 01/30/24   Page 17 of 26

in the Tongass, and some Movants have been a party in several such suits.[66] Both this Court and the District Court for the District of Columbia allowed several Movants to intervene in earlier suits by the State of Alaska challenging the Roadless Rule.[67] Moreover, Movants' successful litigation in this Court resulting in the Roadless Rule's reinstatement in the Tongass in 2011 demonstrates that their interests in preserving and enjoying relatively undisturbed Tongass roadless areas are legally protected.[68] And the Movant Tribes, in particular, have significant cultural and subsistence rights in Tongass roadless areas that are legally protected.[69] Movants therefore have significant protectable interests in the roadless areas that are the subject of this action.

Third, because Movants have substantial interests in protecting Tongass roadless areas, it follows naturally that a decision in these cases removing those protections would impair or impede those interests. If Plaintiffs obtain the relief they seek, Tongass roadless

---

[66] *See supra* pp. 5-7; *see also, e.g.*, Ex. 10, ¶10; Ex. 14, ¶10; Ex. 15, ¶¶5-8; Ex. 18, ¶¶6-7; Ex. 19, ¶¶5-6; Ex. 20, ¶6; Ex. 21, ¶6.

[67] *See supra* pp. 5-7.

[68] *See Citizens for Balanced Use*, 647 F.3d at 895, 897-98 (environmental groups had legally protectable interest in conserving and enjoying national forest areas, allowing them to intervene to help defend an order restricting vehicle use); *Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 526, 528 (9th Cir. 1983) (environmental groups had legally protectable interest in wildlife and habitat preservation, allowing them to intervene to help defend a conservation area on federal land).

[69] *See* 88 Fed. Reg. at 5256 (recognizing that Tongass roadless areas "hold immense cultural significance for Alaska native peoples"); *Alaska Indus. Dev. & Exp. Auth. v. Biden*, No. 3:21-CV-00245-SLG, 2022 WL 1137312, at *2 (D. Alaska Apr. 18, 2022) (explaining that tribal citizens' "significant cultural and subsistence interests" in lands at issue are legally protected).

*State of Alaska v. U.S. Dep't of Agric.,*                                                    15
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 21   Filed 01/30/24   Page 18 of 26

areas will lose protections for which Movants have worked and advocated—once again subjecting these special areas to potential logging and roads that could harm the roadless values that Movants use and enjoy.[70] Such a result could impair Tribes' ability to hunt and gather traditional foods that rely on intact ecosystems and to practice their cultures, and could put hunters as risk as they are forced to travel farther to find traditional foods.[71] It could also displace tour operators from the limited areas available for their boat tours and reduce the quality of the visitor experience they offer clients;[72] impair intact habitat that sustain salmon populations supporting the region's commercial fisheries;[73] and impede environmental groups' members' access to natural areas that they use for recreation and other activities.[74]

Fourth, Federal Defendants may not adequately represent Movants' interests. "The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate."[75] Although

---

[70] *See Citizens for Balanced Use*, 647 F.3d at 898 (if plaintiff prevailed in enjoining enforcement of an order that limited motorized vehicle use in a certain area of a national forest, environmental groups' interest in conserving and enjoying that area "may, as a practical matter, be impaired").

[71] Ex. 6, pp. 5-6, 8-9; Ex. 7, ¶¶6, 8; Ex. 8,¶ 6; Ex. 9, ¶¶4,8.

[72] *See* Ex. 10, ¶¶17, 20, 23; Ex. 11, ¶12.

[73] Ex. 12, ¶¶20, 22, 26-27.

[74] Ex. 13, ¶¶10-11; Ex. 14, ¶¶12, 19; Ex. 15, ¶10; Ex. 16, ¶¶7-8; Ex. 17, ¶7; Ex. 19, ¶8; Ex. 20, ¶7; Ex. 21, ¶10; Ex. 22, ¶¶8, 10-11.

[75] *W. Watersheds Project v. Haaland*, 22 F.4th 828, 840 (9th Cir. 2022) (quoting *Citizens for Balanced Use*, 647 F.3d at 898).

*State of Alaska v. U.S. Dep't of Agric.,*                                             16
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 21   Filed 01/30/24   Page 19 of 26

Movants and Federal Defendants presently share the same desired disposition of these cases, any presumption of adequate representation is rebutted by the history of litigation between them.[76] Indeed, several Movants have sued USDA twice to reinstate Roadless Rule protections on the Tongass. Given that Federal Defendants have "held differing positions" from Movants on Tongass Roadless Rule protections in the past, they will not "undoubtedly" present all of Movants' potential arguments in these cases.[77] In any event, the Court may benefit from hearing the "unique perspective" of parties who have consistently supported roadless area protections in the Tongass.[78]

Furthermore, Federal Defendants represent the interests of the general public, while Movants represent "specialized interests" that seek preservation of the

---

[76] *See supra* pp. 5-7; *see also United States v. Alaska*, No. 1:22-CV-00054-SLG, 2023 WL 6690508, at *4 (D. Alaska Oct. 12, 2023) (referencing the "long history of litigation" between movant-intervenors and the federal government in concluding that the movants' interests were not adequately represented by existing parties).

[77] *Cook Inletkeeper*, 2023 WL 3892486, at *2; *see also Alaska v. Nat'l Marine Fisheries Serv.*, No. 3:22-cv-00249-JMK, 2023 WL 2789352, at *9 (D. Alaska Apr. 5, 2023) ("adversarial history" between environmental group and federal agency was an "important consideration in determining adequacy of representation and suggests [the agency] may not be capable of or willing to make all arguments the [environmental group] would make").

[78] *W. Watersheds Project*, 22 F.4th at 842.

*State of Alaska v. U.S. Dep't of Agric.,*                                          17
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 21   Filed 01/30/24   Page 20 of 26

"subsistence, cultural, and [environmental] aspects of the lands at issue."[79] And the Movant Tribes occupy a "unique role" in representing the interests of their citizens and vindicating their rights as sovereigns.[80] Finally, the particular litigation history over Tongass roadless areas demonstrates the potential significance of Movants' right to participate in any subsequent appeal, should that become necessary at a later time.[81]

## B. Alternatively, This Court Should Grant Permissive Intervention.

Even if intervention as of right were not warranted here, the Court nonetheless should still allow Movants to intervene permissively under Rule 24(b). Movants timely seek to present a defense of the 2023 Reinstatement Rule, the validity of which is the central question of law at issue in these cases. Movants' long history advocating for and litigating in favor of the Roadless Rule's application in the Tongass will provide the Court with important context, relevant expertise, and a unique perspective. The Court

---

[79] *See Alaska Indus. Dev.*, 2022 WL 1137312, at *2; *see also Citizens for Balanced Use*, 647 F.3d at 899 ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (quoting *WildEarth Guardians v. U.S. Forest Serv.,* 573 F.3d 992, 996 (10th Cir. 2009))); *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1254-56 (10th Cir. 2001) (federal government may not adequately represent interests of intervenor environmental groups, even though both seek to defend designation of a national monument, because the government's obligation is to represent the public interest generally).

[80] *Cook Inletkeeper*, 2023 WL 3892486, at *2.

[81] *See Organized Vill. of Kake*, 795 F.3d at 963 (noting that Federal Defendants declined to appeal the adverse district court decision, but Alaska, as a defendant-intervenor, did); *Alaska*, 2023 WL 6690508, at *4 (including right to participate in subsequent appeal as consideration relevant to adequacy of representation).

*State of Alaska v. U.S. Dep't of Agric.,*                                    18
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 21   Filed 01/30/24   Page 21 of 26

should therefore allow Movants to intervene, whether as-of-right or permissively.[82]

## III.    CONCLUSION

For the reasons above, Movants respectfully request that the Court grant their

motion to intervene.

Respectfully submitted this 30th day of January, 2024,

> *s/ Katharine S. Glover*
> Katharine S. Glover (Alaska Bar No. 0606033)
> EARTHJUSTICE

> *s/ Eric P. Jorgensen*
> Eric P. Jorgensen (Alaska Bar No. 8904010)
> EARTHJUSTICE

> *s/ Jeremy C. Lieb*
> Jeremy C. Lieb (Alaska Bar No. 1810088)
> EARTHJUSTICE

> *s/ Ian Fein*
> Ian Fein (CA Bar No. 281394) (*pro hac vice pending*)
> NATURAL RESOURCES DEFENSE COUNCIL

> *s/ Garett R. Rose*
> Garett R. Rose (D.C. Bar No. 1023909) (*pro hac vice pending*)
> NATURAL RESOURCES DEFENSE COUNCIL

> *Attorneys for [Proposed] Intervenor-Defendants*

---

[82] *See, e.g.*, *Alaska Indus. Dev.*, 2022 WL 1137312, at *3 (noting that "even if Movants were not entitled to intervene as of right, the Court would allow each of them to intervene permissively").

*State of Alaska v. U.S. Dep't of Agric.*,                                                                   19
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 21   Filed 01/30/24   Page 22 of 26

## CERTIFICATE OF COMPLIANCE WITH WORD LIMITS

I certify that this document contains 2,937 words, excluding items exempted by Local Civil Rule 7.4(a)(4), and complies with the word limits of Local Civil Rule 7.4(a)(2).

*s/ Katharine S. Glover*
Katharine S. Glover
EARTHJUSTICE

*State of Alaska v. U.S. Dep't of Agric.,*                                                      20
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 21   Filed 01/30/24   Page 23 of 26

## CERTIFICATE OF SERVICE

I certify that on January 30, 2024, a copy of foregoing ORGANIZED VILLAGE

OF KAKE *ET AL.*'s MOTION TO INTERVENE, with attachments, was served

electronically on Paul G. Freeborne, Emma L. Hamilton Thad Adkins, Ronald W.

Opsahl, Luke A. Wake, Damien M. Schiff, Jeffrey W. McCoy, Charles T. Yates, and

James F. Clark.

*s/ Katharine S. Glover*
Katharine S. Glover
EARTHJUSTICE

*State of Alaska v. U.S. Dep't of Agric.,*                                                     21
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 21   Filed 01/30/24   Page 24 of 26

# TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 1 | United States Forest Service, Final Environmental Impact Statement, Rulemaking for Alaska Roadless Areas (Sept. 2020) (excerpts) |
| 2 | Complaint, *Alaska v. U.S. Dep't of Agric.*, No. 3:01-cv-00039-JKS (D. Alaska Jan. 31, 2001) |
| 3 | Order Granting Motion to Intervene, *Alaska v. U.S. Dep't of Agric.*, No. 3:01-cv-00039-JKS (D. Alaska Mar. 5, 2001) |
| 4 | Complaint, *Organized Vill. of Kake v. U.S. Dep't Agric.*, No. 1:09-cv-00023-JWS (D. Alaska Dec. 22, 2009) |
| 5 | Complaint, *Alaska v. U.S. Dep't of Agric.,* No. 11-cv-1122-RJL (D.D.C. June 17, 2011) |
| 6 | Declaration of Joel Jackson |
| 7 | Declaration of Frank Wright, Jr. |
| 8 | Declaration of Norman Skan |
| 9 | Declaration of Michael Jones |
| 10 | Declaration of Hunter McIntosh |
| 11 | Declaration of Dan Blanchard |
| 12 | Declaration of Linda Behnken |
| 13 | Declaration of Andrew Alton Moderow |
| 14 | Declaration of Robin D. Silver, M.D. |
| 15 | Declaration of Michael Senatore |
| 16 | Declaration of Hallie Templeton |

*State of Alaska. v. U.S. Dep't. of Agriculture et al.,*                    i
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 21   Filed 01/30/24   Page 25 of 26

| | |
|---|---|
| 17 | Declaration of Gina Trujillo |
| 18 | Declaration of Nathaniel Lawrence |
| 19 | Declaration of Andrea Feniger |
| 20 | Declaration of Maggie Rabb |
| 21 | Declaration of Josh Hicks |
| 22 | Declaration of Osprey Orielle Lake |

*State of Alaska. v. U.S. Dep't. of Agriculture et al.,*                                         ii
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 21   Filed 01/30/24   Page 26 of 26