James F. Clark Alaska Bar #6907025
Law Office of James F. Clark
1109 C Street
Juneau, Alaska 99801
Tel: (907) 586-0122
Email: jfclarkiii@gmail.com
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, *et al.* | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES | ) |
| DEPARTMENT OF AGRICULTURE, | ) |
| *et al.,* | ) |
| | ) |
| Defendants, | ) Case No. 3:24-cv-00203-SLG |
| | )     CONSOLIDATED |
| ORGANIZED VILLAGE OF KAKE, | )     LEAD CASE |
| *et al.,* | ) |
| | ) |
| Intervenor – Defendants. | ) |
| | ) |
| | ) |

PLAINTIFF GOVERNOR FRANK H. MURKOWSKI *et al.* OPENING
BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Case No. 1:23-cv-000010-SLG
CONSOLIDATED

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

I.  SUMMARY OF ARGUMENT ................................................................. 2

II. BACKGROUND ......................................................................................... 5

   A. Federal Law Affecting the Application of the Rule to
      The Tongass Enacted Prior to 2001 ............................................. 5

   B. History of the Rulemaking that Applied the 2001 Roadless
      Rule to The Tongass.......................................................................... 7

   C. History of Alaska's Litigation Opposing Application of the
      2001 Roadless Rule to the Tongass .............................................. 9

      1. The 2001 Roadless Rule's General Statement of Purpose
         and Need does not Justify Defendants' January 27, 2023,
         Reapplication of the Roadless Rule to the Tongass .............. 9

      2. Alaska's Continuing Effort to Exempt the Tongass
         from the 2001 Roadless Rule............................................... 12

III. ARGUMENT.............................................................................................. 16

   A. Introduction ..................................................................................... 16

   B. Congress Reserved to itself the Authority to make "Lasting"
      Land Designations on the Tongass. Defendants Selection of
      9.7 Million Acres of "Lasting" "Unmodifiable" Roadless Areas
      on the Tongass Exceeds their Authority and Usurps and Distorts
      Conflicts with Congress's ANILCA § 101(d) "Conservation-
      Development" Balance ..................................................................... 17

   C. Defendants' Reimposition of the Roadless Rule to the
      Tongass Violates Congressional Intent and Direction Set
      out in ANILCA §101(d), §708, and § 1326 ............................... 18

      1. § 1326 (a). Congress Has Not Passed a Joint Resolution
         Approving Defendants' Regulatory Selection of

*SOA v. U.S. DOS, et al*, Case No. 3.23-cv-00203-SLG
MUKOWSKI PLAINTIFF'S OPENING BRIEF                                        i

9.7 Million Acres of "Lasting" Roadless Areas on the
Tongass. ............................................................................................ 18

    a.  History of ANILCA § 1326 –
        the No More Provision......................................................... 20

    b.  What Is an ANILCA §1326 (a) "Withdrawal" as
        that Term is Applied to USDA Land Set Asides
        in the National Forests in Alaska?....................................... 23

    c.  The Colloquy Between Senator Stevens and
        Senator Tsongas Demonstrates Their Intent to
        Treat a "Lasting" "Unmodifiable" IRA
        (*De Facto* LUD II Management Area) Promulgated
        By Regulation (88 Fed. Reg. 5252, FS 1039505)
        as a "Withdrawal" For Purposes ff ANILCA
        § 1326 (a) .......................................................................... 25

2.  Defendants Have Violated § 1326 (b) of ANILCA
    Because their January 27, 2023, ROD is a Study
    Having the Single Purpose of Re-establishing IRAs
    on the Tongass .................................................................... 27

    a.  IRAs, Nation Recreation Areas, and National
        Conservation Area Have Related and Similar Purpose ................. 27

    b.  The January 27, 2023, ROD is a Single Purpose Study ............... 28

3.  ANILCA § 708................................................................... 29

4.  Read Together ANILCA §§ 101(d), 1326(a), and
    708(b) Prohibit USDA from Promulgating the
    Roadless Rule.................................................................... 31

5.  By SAFETEA-LU § 4407, 16 U.S.C. § 524, and
    16 U.S.C. § 532 Congress Demonstrated Its Intent for,
    and Authorized, Continued Roadbuilding in the Tongass
    notwithstanding Defendants' Reimposition of the 2001
    Roadless Rule.................................................................... 32

IV.     CONCLUSION .............................................................. 34

CERTIFICATE OF SERVICE ........................................................................ 34

CERTIFICATE OF COMPLIANCE ...............................................................35

**TABLE OF AUTHORITIES**

**CASES**

*California ex rel. Lockyer v. U.S. Dep't of Agric.,*
459 F. Supp. 2d 874, 919 (N.D. Cal. 2006) .................................... 13

*Conocophillips Alaska, Inc. v. Alaska Oil & Gas
Conservation Comm'n*, 3:22-cv-00121-SLG, at *20
(D. Alaska Mar. 8, 2023)............................................................. 21-22

*Governor Frank H. Murkowski, et al., v. Tom Vilsack, et al.*,
Case No. 1:23-cv-00010-SLG............................................................ 16

*Inside Passage Electric Cooperative and Alaska Power Association
v. U.S. Department of Agriculture and Thomas Vilsack,*
Case No. 3:23- cv-00204-SLG ........................................................... 16

*Kleppe v. New Mexico*, 426 U.S. 529 (1976) ................................ 18

*Montana Wilderness Association v. United States Forest Service*,
655 F.2d 951 (9th Cir. 1981) ....................................................... 22-23

*New Mexico v. Watkins*, 969 F.2d 1122, 1124 (D.C. Cir.1992)...... 19

*Organized Village of Kake v. Vilsack et al.,*
Case No. 1:20-cv-00011 SLG .......................................................... 14

*Organized Village of Kake v. USDA*, 776 F. Supp. 2d 960
(D. Alaska 2011)..................................................................... Passim

*Organized Village of Kake v. USDA*, 795 F.3d 956, 968
(9th Cir. 2015) ................................................................................ 14

*Sierra Club v. Lyons*, No. J00-0009 CV [JKS] [D. Alaska]) ............... 11, 26, 29

*Southeast Conference v. Vilsack*, 684 F. Supp. 2d 135, 143

*SOA v. U.S. DOS, et al*, Case No. 3.23-cv-00203-SLG

MUKOWSKI PLAINTIFF'S OPENING BRIEF                                    iii

(D.D.C. 2010)............................................................................................... 19

*State of Alaska v. U.S. Department of Agriculture, et al.*,
273 F. Supp. 3d 102, 124 (D.D.C. 2017)....................................................19, 23

*State of Alaska v. U.S. Dep't. of Agric., et al.*,
Case No. A01-039-cv filed Jan. 31, 2001 ...................................................... 12

*State of Alaska v. U.S. Department of Agriculture, et al.*,
Case No. 3:23-cv-00203-SLG.......................................................................... 15

*State of Alaska v. United States Forest Service*,
Case No. 1:16-cv-00018 .................................................................................. 32

*Sturgeon v. Frost*, 139 S. Ct. 1066, 1075 (2019).........................................5, 11

*Wilderness Soc. v. U.S. Fish & Wildlife Serv.*,
316 F.3d 913, 928 (9th Cir. 2003) .................................................................... 5

**FEDERAL RULES**

36 CFR § 294 .................................................................................................. 15

16 U.S.C. § 524 ..........................................................................................32-34

16 U.S.C. § 532 ..........................................................................................32-34

43 U.S.C. § 1702(j)....................................................................................19, 23

66 Federal Register Issue 9 (January 12, 2001).................................... Passim

68 Federal Register Issue 249 (December 30, 2003) ........................ 12-13, 31

70 Federal Register Issue 92 (May 13, 2005) ................................................ 13

85 Federal Register Issue 210 (October 29, 2020)................................ Passim

88 Federal Register Issue 223 (November 23, 2021)............................. Passim

Federal Rule of Civil Procedure (FRCP) 42 ................................................ 16

## AUTHORITIES PRINCIPALLY RELIED UPON

Alaska National Interest Land Conservation Act (ANILCA)................................... Passim

Alaska Omnibus Act of June 25, 1959 (73 Stat. 141) ...................................... 33

American Heritage Dictionary ...................................................................... 25

Black's Law Dictionary Six Edition................................................................ 25

Carl Levin and Howard P. "Buck" McKeon National
Defense Authorization Act....................................................................... Passim

Congressional Record Volume 126
(daily ed. Aug. 18, 1980) ...................................................................... 20-21

Federal Land Policy and Management Act § 204 (FLPMA)................................... Passim

Forest Service Manual (FSM) 2700-90-1, 2761.01 ......................................... 24

National Forest Management Act of 1976 (NFMA) ................................... Passim

Roadless Area Review and Evaluation II (RARE II)....................................6, 29

Safe, Accountable, Flexible, Efficient Transportation
Equity Act: A Legacy for Users (SAFETEA-LU) §44O7 ................................ Passim

Tongass National Forest Land Management Plan (TLMP)................................ Passim

Tongass Timber Reform Act (TTRA)....................................................... Passim

United States Constitution Article IV, § 3, Clause 2 ................................ Passim

## CORPORATE DISCLOSURE STATEMENTS FOR PLAINTIFFS

Required Pursuant to Fed. R. Civ. P. 7.1.

Plaintiff Governor Frank H. Murkowski is a private citizen.

Plaintiffs, Alaska Electric Light & Power, Alaska Marine Lines, Inc., Southeast

Stevedoring Corporation, Tyler Rental Inc., First Bank, Temsco Helicopters, Inc., Samson

*SOA v. U.S. DOS, et al*, Case No. 3.23-cv-00203-SLG
MUKOWSKI PLAINTIFF'S OPENING BRIEF                                    v

Tug and Barge Company, Boyer Towing, Inc., Coastal Helicopters, Inc., and Hyak Mining Co., Inc. are privately held corporations.

Plaintiff, Alaska Power & Telephone is an employee-owned corporation.

Plaintiffs, The Southeast Conference, the Alaska Miners Association, the Resource Development Council of Alaska (RDC), Associated General Contractors of Alaska, First Things First Foundation (FTF), The Alaska Chamber, The Juneau Chamber of Commerce, Greater Ketchikan Chamber of Commerce, and The Alaska Bankers Association are non-profit corporations or cooperatives.

Plaintiffs, The Ketchikan Gateway Borough, and the City of Ketchikan are Alaska Municipal Corporations.

Plaintiff, Southeast Alaska Power Agency is an Alaska public corporation.

Plaintiff, Alaska Electric Light & Power is a subsidiary of Avista Corporation, a Washington State publicly traded corporation. Avista Corporation has been purchased by Hydro-One, a Canadian Corporation.

**INTRODUCTION.**

This case challenges Defendants' January 27, 2023, reapplication of the 2001 Roadless Rule to the Tongass National Forest (Tongass). *See* 88 Fed. Reg. 5252 (Jan. 27, 2023), FS 1039505. Whether the 2001 Roadless Rule should apply to the Tongass has been the subject of rulemaking, counter-rulemaking, and litigation in Alaska since the Rule was first promulgated and applied to Alaska's National Forests in January 2001. *See* 66 Fed. Reg. 3244 (Jan. 12, 2001), FS 13317.

In October 2020, the United States Department of Agriculture (USDA) exempted the Tongass from the 2001 Roadless Rule pursuant to 85 Fed. Reg. 68689 (Oct 29, 2020), FS 813775 (2020 Tongass Exemption). But on January 20, 2021, there was a change in Presidential Administrations. Soon thereafter, Defendant, United States Department of Agriculture (USDA), published a notice of proposed rulemaking (88 Fed. Reg. 66498 (Nov. 23, 2021)), FS 909760 to repeal the 2020 Tongass Exemption. And on January 27, 2023, USDA issued a new Rule that did just that. 88 Fed. Reg. 5252, 5253 (Jan. 27, 2023) FS 1039505-1039506.

By repealing the October 2020 Tongass Exemption on January 27, 2023, Defendants administratively reapplied the 2001 Roadless Rule to the Tongass. Defendants' regulatory action set aside 9.7 million acres of "lasting" Inventoried Roadless Areas on the Tongass (known as IRAs). IRAs have management characteristics similar to Congressionally

designated LUD II Management Areas and are *de facto* LUD II Management Areas.[1] By reapplying the 2001 Roadless Rule to the Tongass, Defendants have arbitrarily and illegally usurped the authority which Article IV of the Constitution reserved for Congress, grossly distorted the "conservation – development" balance that Congress found in ANILCA § 101 (d) that it had established in Alaska, including on the Tongass, and violated ANILCA §§ 708 and 1326.

The State of Alaska, the Inside Passage Electric Cooperative (IPEC) and the Alaska Power Association (APA) represented by the Pacific Legal Foundation (PLF), and the twenty-four Plaintiffs in this action including former Governor Frank H. Murkowski, municipal corporations, energy providers, mining groups, Chambers of Commerce, transportation providers, and others (hereinafter referred to as the "Murkowski Plaintiffs") have formed a consolidated Plaintiff group to challenge the legality of the January 27, 2023, reapplication of the 2001 Roadless Rule to the Tongass.

For these reasons, explained in detail below, the Murkowski Plaintiffs respectfully request that the Court grant summary judgment in their favor and reinstate the 2020 Tongass Exemption from the 2001 Roadless Rule.

## I.    SUMMARY OF ARGUMENT

By passage of the Alaska National Interest Land Conservation Act (ANILCA) in 1980 (16 U.S.C. 3101 *et seq*.) (PL 96-487; 94 STAT. 2377, December 2, 1980), the Tongass

---

[1] LUD II Management Areas are "substantially similar but slightly different" from IRAs in a manner that "does not make a meaningful difference to the level of conservation." (85 Fed. Reg. 68689-90), FS 813775-813776.
*SOA v. U.S. DOS, et al*, Case No. 3.23-cv-00203-SLG
MUKOWSKI PLAINTIFF'S OPENING BRIEF                                                      2

Timber Reform Act (TTRA) in 1990 (16 U.S.C. 539d *et seq*.) (PL 101-626; 104 STAT. 4426 November 28, 1990); and the Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015 PL 113-291 December 19, 2014, Sec. 3002 (f) (FY 2015 Defense Authorization Act), Congress exercised its Article IV power to make land designations in Alaska, including on the Tongass, calculated to achieve its ANILCA § 101 (d) goal of creating a balance between conservation and development on the Tongass sufficient to "obviate" the "need" for "legislating" future conservation units.

The statutory language of these laws describes how and where Congress wanted land on the Tongass designated in furtherance of its ANILCA § 101 (d) goal. For example, ANILCA § 708 released the Tongass from further Roadless Area Review and Evaluation (RARE) II review for Wilderness designation because Congress had met its balancing goal by designating 5.7 million acres of the Tongass as Wilderness and contemplated no other Wilderness designation.[2] ANILCA § 1326 added the "No More" Clause requested by the Alaska Legislature: ANILCA § 1326 (a) prohibits future Executive Branch withdrawals of more than 5,000 acres without a Congressional resolution of approval made within one year of the withdrawal; and ANILCA § 1326 (b) prohibits further studies "for the single purpose of considering the establishment of a conservation system unit, national recreation

---

[2] ANILCA was enacted in 1980 when Congress achieved its ANILCA § 101 (d) balancing goal solely through Wilderness designation. In 1990 Congressionally designated LUD II Management Areas were added as a means of meeting its ANILCA § 101 (d) balancing goal. USDA selection of Roadless Areas in the National Forest nationwide or in Alaska did not become an issue until the Clinton Administration in 1999. Congress at no time authorized "lasting" Roadless area selection to meet its ANILCA § 101 (d) balancing goal.

area, national conservation area, or for related or similar purposes unless authorized by a further Act of Congress."

Instead of deferring to Congress, Defendants have administratively selected "lasting" IRAs to substitute their own vision of what the conservation-development balance for the Tongass should be. Specifically, in the January 27, 2023, Rule reapplying the 2001 Roadless Rule to the Tongass, Defendants forthrightly said that their objective was to provide "lasting protection for IRAs in the context of overall multiple-use land management." (88 Fed. Reg. 5252-53 (Jan. 27, 2023)), FS 1039505-1039506.[3] Defendants reinforced and interlocked its "lasting" Roadless Rule with the 2016 Tongass Forest Plan. As Defendants explained in the January 27, 2023, Rule:

> The 2016 Forest Plan was designed to be consistent with the 2001 Roadless Rule, and in adopting the Plan, the Forest Supervisor concluded that "the best way to bring stability to the management of the roadless areas on the Tongass is to not recommend any modifications to the Roadless Rule. (2016 Forest Plan ROD at 4, 19)." (88 Fed. Reg. 5252, 5256 (Jan 27. 2023)) FS 1039505, 1039509.

By their excessive administrative selection of an additional 9.7 million acres of "lasting," "unmodifiable" IRAs in the Tongass, Defendants arbitrarily and capriciously destroyed what Congress had found in ANILCA § 101(d) to be "the appropriate balance between protection and development."[4] Defendants' selection of 9.7 million acres of

---

[3] USDA said the exact same thing in the 2001 Roadless Rule Record of Decision (ROD). (66 Fed. Reg. 3244 (Jan 12, 2001)), FS 13317.

[4] Because Defendants intend them as "lasting," "unmodifiable" unroaded "protection" of the Tongass, the IRAs conflict with Congress's exclusive authority under Article IV, Sec. 3, Clause 2 of the Constitution to make land designations. Congress has delegated no authority to Defendants to designate "lasting," "unmodifiable" IRAs in the Tongass.

"lasting," "unmodifiable" IRAs has erected access barriers to mining exploration, hydropower development, and transportation to 29 of 32 communities within Southeast Alaska. In short, Defendants have hijacked the conservation – development balance Congress attempted to achieve by its Article IV designations in the Tongass. Because of the Rule's adverse socio-economic impacts to Southeast Alaska, every Alaska Governor, Senator, and Congressperson since the 2001 Rule was imposed has supported this and earlier Roadless litigation to exempt the Tongass from the 2001 Roadless Rule.

## II.    BACKGROUND

### A. Federal Law Affecting the Application of the Rule to the Tongass Enacted Prior to 2001.

"Congress views Alaska as unique and [often] intends Alaska-specific laws to trump more general laws." *Wilderness Soc. v. U.S. Fish & Wildlife Serv.*, 316 F.3d 913, 928 (9th Cir. 2003). In *Sturgeon v. Frost*, 139 S. Ct. 1066, 1075 (2019), the Supreme Court recognized Congress's clear policy goal in ANILCA of making the land designations necessary to achieve "the appropriate balance between protection and development:"

> Starting with the statement of purpose in its first section, ANILCA sought to "balance" two goals, often thought conflicting. 16 U.S.C. § 3101(d). The Act was designed to "provide sufficient protection for the national interest in the scenic, natural, cultural and environmental values on the public lands in Alaska." *Ibid*. "[A]nd at the same time," the Act was framed to "provide adequate opportunity for satisfaction of the economic and social needs of the State of Alaska and its people." *Ibid.* So if, as you continue reading, you see some tension within the statute, you are not mistaken: It arises from Congress's twofold ambitions.

Two Alaska-specific federal laws enacted prior to promulgation of the 2001 Rule significantly affect management of the Tongass: ANILCA and the TTRA.[5] In 1980, Congress passed ANILCA, which established more than 100 million acres of federal land across Alaska as new or expanded Conservation System Units (CSUs). ANILCA included fourteen Wilderness Areas totaling 5,361,000 acres and two National Monuments in the Tongass.

1. Section 101(d) of ANILCA found that Congressional land set asides in ANILCA provide "sufficient protection for the national interest in the scenic, natural, cultural and environmental values on the public lands in Alaska, and at the same time [provide] adequate opportunity for satisfaction of the economic and social needs of the State of Alaska and its people." "[T]hus, Congress believes that the need for future legislation designating new conservation system units, new national conservation areas, or new national recreation areas has been obviated thereby."

ANILCA also includes § 708 releasing the Tongass from further RARE II review, and the § 1326 "No More" Clause prohibiting future "withdrawals" from the Tongass without a Congressional joint resolution of approval (discussed in detail in this brief below).

2. In 1990, Congress passed the TTRA. In § 202 it designated six additional Tongass Wilderness Areas totaling 722,482 acres. In § 201 the TTRA amended § 508 of ANILCA and "allocated [twelve areas] to LUD II as described in the Tongass National Forest Land Management Plan (TLMP), completed March 1979, and amended Winter 1985 – 1986, [which] shall be managed by the Secretary of Agriculture in perpetuity in accordance with such designation." At page 8 the ROD for the 1985-1986 TLMP Amendment explains: "Areas allocated to LUD II are to be managed in a roadless state to retain their wildland character, but this

---

[5] Sec. 3002 (f) (FY 2015 Defense Authorization Act) also affects the Tongass but was not passed until December 19, 2014. That Act finalized the outstanding Alaska Native Claims Settlement Act land entitlements of Sealaska Regional Native Corporation by establishing eight additional LUD II Management Areas in the Tongass totaling 53,042.

*SOA v. U.S. DOS, et al*, Case No. 3.23-cv-00203-SLG
MUKOWSKI PLAINTIFF'S OPENING BRIEF                                        6

would permit wildlife and fish habitat improvement and primitive recreational facility development."[6]

In the October 29, 2020, ROD exempting the Tongass from the 2001 Roadless Rule, USDA observed that the LUD II Management Areas are "substantially similar but slightly different" from IRAs in a manner that "does not make a meaningful difference to the level of conservation." (85 Fed. Reg. 68689-90), FS 813775-813776. In other words, IRAs are *de facto* LUD II Management Areas.

Defendants' January 27, 2023, reapplication of the 2001 Roadless Rule to the Tongass disregards USDA's prior assertion (in its October 29, 2020, Rule exempting the Tongass) that the goals Congress set out in § 101(d) of ANILCA would be better achieved in the Tongass without the 2001 Roadless Rule: "The Tongass Forest Plan along with other conservation measures, would assure protection of roadless values on the Tongass while offering additional flexibility to achieve other multiple use benefits." FS 01039377.

### B. History of the Rulemaking that Applied the 2001 Roadless Rule to The Tongass.

The 2001 Roadless Rule was promulgated on all the National Forests in the United States, including the Tongass. (66 Fed. Reg. 3244), FS 13317. Because the USDA

---

[6] As USDA explained in its October 29, 2020 ROD that exempted the Tongass from the Roadless Rule: "LUD II areas are statutory land use designations managed in a roadless state to retain their wildland character as defined in Section 201 of the TTRA and the 1979 Tongass Land Management Plan (as amended in 1985-1986) and the National Defense Authorization Act for Fiscal Regulations Year 2015 (Pub. L. 113–291, 128 Stat.3729, Section 3002 (f))." 85 Fed. Reg. 68689-90, FS 813775-813776. In LUD II Management Areas "Ecological processes and natural conditions are only minimally affected by past or current human uses or activities."

recognized the "unique" situation presented by the Tongass, no other national forest received such special consideration during USDA's 1999-2001 nationwide assessment of the proposed Roadless Rule. First, in contrast to many units in the National Forest System, the Tongass is largely unroaded and undeveloped. Second, the Tongass is unique from a social and economic perspective: 29 of the 32 communities within the Tongass are unconnected to the nation's highway system, and many lack some of the basic access and infrastructure necessary to provide for reasonable services, economic stability, and growth. Third, in 1979 Region 10 of the Forest Service had prepared a "first-in- the-nation" Tongass Land and Resource Management Plan (TLMP) to comply with the National Forest Management Act of 1976 (NFMA), 16 U.S.C. § 1601 *et seq.* Congress determined that as amended in 1985-1986, the TLMP met Congress's ANILCA § 101(d) goal of conservation-development balance sufficiently to incorporate its LUD II designations into the TTRA, 85 Fed. Reg. 68689-90, FS 813775-813776.

During preparation of the 2000 Roadless Rule EIS, the USDA considered four Tongass specific alternatives: (1) "Tongass Not Exempt," which included an option of delaying application of the rule until 2004; (2) "Tongass Exempt," which would leave management of the Tongass to the TLMP; (3) "Tongass Deferred," under which a decision about whether to apply the Roadless Rule's restrictions to the Tongass would be made as part of the 5-year review of the 1997 TLMP; and (4) "Tongass Selected Areas," which would apply the Rule only in those IRAs classified as Old Growth, Semi-Remote

Recreation, Remote Recreation and LUD II under the TLMP. *Organized Village of Kake v. USDA,* 776 F. Supp. 2d. 960, 963 (D. Alaska 2011).

The 2000 Roadless Rule EIS's comprehensive examination of the Rule's impacts revealed that "the effects of implementing the prohibitions may be more dramatic on the Tongass than on other NFS lands." The EIS also found that, in contrast to many of the National Forests, if the Tongass were exempt from the Roadless Rule, loss of habitat and species abundance would not pose an unacceptable risk to biodiversity in the Forest. 66 Fed. Reg. at 3254, FS 13327.

Accordingly, the 1999 interim rule prohibiting new road construction, which served as a prelude to the Roadless Rule, entirely exempted the Tongass. The draft EIS issued in May 2000 proposed not applying the Rule to the Tongass. The preferred alternative in the 2000 FEIS included the Tongass in the Roadless Rule but proposed delaying the effective date of the Rule on the Tongass for four years to reduce the rule's negative economic and social impacts. 66 Fed. Reg. at 3254, FS 13327. Yet, the Tongass was included in the final ROD on January 12, 2001 – eight days before President Clinton left office. *Id.*

### C. History of Alaska's Litigation Opposing Application of the 2001 Roadless Rule to the Tongass.

#### 1. The 2001 Roadless Rule's General Statement of Purpose and Need Does not Justify Defendants' January 27, 2023, Reapplication of the Rule to the Tongass.

The 2001 Roadless Rule Preamble at 66 Fed. Reg. at 3254, FS 13326, provides no reason for its immediate application to the Tongass other than that the proposed alternative

to defer a decision that was recommended in the FEIS "would not have assured long-term protection of the Forest's unique ecological values and characteristics." *Id.*

The 2001 Roadless Rule contained no statement of Purpose and Need specific to the Tongass. The general statement of Purpose and Need for the 2001 Roadless Rule did not give a rational explanation for applying the Rule to the Tongass:

> At the national level, Forest Service officials have the responsibility to consider the "whole picture" regarding the management of the National Forest System, including inventoried roadless areas. … If management decisions for these areas were made on a case-by-case basis at a forest or regional level, inventoried roadless areas and their ecological characteristics and social values could be incrementally reduced through road construction and certain forms of timber harvest. 66 Fed. Reg. at 3246, FS 13319.

Specifically, the 2001 Rule's general statement of Purpose and Need did not explain then or now why USDA needed to make a "national level, whole picture" review of roadless areas in the Tongass given that Congress had already undertaken two such reviews in ANILCA and the TTRA and pursuant to which Congress had already designated Wilderness and LUD II Management (roadless areas) sufficient to satisfy Congress's 1980, 1990, and future conservation goals.

There had even been a third national review of Tongass roadless areas conducted personally by former Undersecretary of Agriculture Jim Lyons and his Washington, D.C.-based planning teams (pointedly without the participation of the Alaska Region of the Forest Service's Planning Team). Claiming that he could make the 1997 Forest Plan "better," the Undersecretary personally "issued" a Record of Decision in April 1999 that

set aside 18 areas (234,000 acres) as roadless areas. (Record of Decision, Tongass National Forest Land and Resource Management Plan April 1999 at 1).[7]

Finally, there was a fourth review. Pursuant to NFMA 16 U.S.C. § 1601, the Alaska Region of the Forest Service had produced the "first-in-the-nation" TLMP in 1979, amended it in 1985-1986, and revised it in 1997. Congress was fully aware of this review and embraced it as seen by Congress's use of the TMLP's LUD II concept to designate twelve LUD II Management Areas in TTRA § 201.

All of this proves that the general statement of Purpose and Need did not support a need to apply the Roadless Rule to the Tongass and does not support the January 27, 2023, reapplication now. By 2001 Congress had already had a 20 year "whole picture" understanding of the Tongass which it had used to balance environmental values with economic and social needs on the Tongass in ANILCA. *See Sturgeon*, 139 S. Ct. 1066. Congressional enactment of ANILCA in 1980 and the TTRA in 1990 had already pre-empted and contradicted USDA's "need" for a "national" "whole picture" review of the Tongass when USDA applied the Rule to the Tongass in 2001. In short, the only "purpose and need" for applying the Rule to the Tongass in 2001, and for reapplying it on January

---

[7] The Undersecretary's ROD was set aside by Judge Singleton in an Order in *Sierra Club et al. v. Lyons, et al.,* Case No. J99-013 CV, dated March 30, 2001: "In sum, the Court finds that the 1999 ROD amended the 1997 ROD. The Forest Service's decision not to provide a SEIS nor provide for proper public participation in the decision, was unreasonable, arbitrary, and capricious."

27, 2023, was to substitute (and try to lock in) Defendants' judgment for Congress's regarding the amount of land that needed to be set aside for conservation in the Tongass.

### 2. Alaska's Continuing Effort to Exempt the Tongass from the 2001 Roadless Rule.

Then Alaska Governor Tony Knowles challenged application of the Roadless Rule to the National Forest. in Alaska in 2001. Alaska's litigation asserted that denying or hindering road access to 9.7 million acres of IRAs violated the "No More" clause (§ 1326 (a)) of ANILCA. The State's Complaint emphasized the adverse socioeconomic impacts of the Rule on communities in Southeast Alaska. (*State of Alaska v. U.S. Dep't. of Agric., et al.,* Case No. A01-039-cv filed Jan. 31, 2001).

In 2003, then Alaska Governor Frank H. Murkowski settled the State's litigation. 68 Fed. Reg. 75136 (Dec. 30, 2003), FS 11. USDA agreed to temporarily exempt the Tongass from the 2001 Roadless Rule because "most Southeast Alaska communities are nearly surrounded on land by inventoried roadless areas of the Tongass, the Roadless Rule significantly limits the ability of communities to develop road and utility connections that almost all other communities in the United States takes for granted," 68 Fed. Reg. at 75137 (Dec. 30, 2003) FS 12, and because "the roadless values on the Tongass are sufficiently protected under the Tongass Forest Plan and the additional restrictions associated with the roadless rule are not required." 68 Fed. Reg. at 75137 (Dec. 30, 2003), FS 12. The 2003 ROD stated:

> The Department now believes that, considered together, the abundance of roadless values on the Tongass, the protection of roadless values included in the Tongass Forest Plan, and the socioeconomic costs to local communities

of applying the roadless rule's prohibitions to the Tongass, all warrant treating the Tongass differently from the national forests outside of Alaska. 68 Fed. Reg. at 75139, FS 14.

The 2003 ROD concluded:

> that the social and economic hardships to Southeast Alaska outweigh the potential long-term ecological benefits because the Tongass Forest plan adequately provides for the ecological sustainability of the Tongass. 68 Fed. Reg. at 75141-42, FS 16-17.

In May 2005, the "State Petitions for Inventoried Roadless Area Management Rule" (State Petitions Rule) superseded the Roadless Rule and the 2003 Tongass Exemption. 70 Fed. Reg. 25654 (May 13, 2005). (*See People ex rel. Lockyer v. United States Department of Agriculture*, 459 F. Supp. 2d 874, 918 (N.D. Cal. 2006). The State Petitions Rule established a voluntary process under which States were invited to submit a petition seeking to adjust the management requirements for the IRAs within the state.

The State Petitions Rule also spurred litigation. It was declared invalid by the District Court for the Northern District of California. *California ex rel. Lockyer v. U.S. Dep't of Agric.,* 459 F. Supp. 2d 874, 919 (N.D. Cal. 2006), *aff'd*, 575 F.3d 999 (9th Cir. 2009). As a remedy, that Court reinstated the 2001 Roadless Rule as well as the 2003 Tongass Exemption.

In 2009, the Organized Village of Kake challenged the 2003 Tongass Exemption. Alaska and USDA vigorously defended the 2003 Tongass Exemption in that litigation. However, the U.S. District Court for the District of Alaska issued an order vacating it and reinstating the 2001 Roadless Rule's application to the Tongass on the ground that the 2003

Tongass Exemption "arbitrarily and capriciously violated the APA." *Organized Village of Kake v. USDA*, 776 F. Supp. 2d. 96. (D. Alaska 2011).

Alaska appealed the District Court's decision, but USDA did not. A three-judge panel of the Ninth Circuit reversed the District Court and upheld the 2003 Exemption. But, in a 6 – 5 *en banc* decision in *Organized Village of Kake v. USDA*, 795 F.3d 956, 968 (9th Cir. 2015), the Ninth Circuit held that the 2003 Tongass Exemption was invalid because USDA failed to provide a reasoned explanation for contradicting the findings of the 2001 ROD and restored the 2001 Rule. *Id.* at 75138, FS 13.

In January 2018, then Alaska Governor Bill Walker petitioned USDA for an Alaska-specific Rule exempting the Tongass from the 2001 Roadless Rule. A FEIS was released on September 24, 2020, and the final rule exempting the Tongass was published on October 29, 2020. 85 Fed. Reg. 68688, FS 813774. The preamble to the 2020 Tongass Exemption stated:

> The USDA and Forest Service believe that both roadless area conservation and other multiple-use values with important local socio-economic consequences are meaningfully addressed through local and regional forest planning on the Tongass, without the 2001 Roadless Rule prohibitions on timber harvest and road construction/ reconstruction. 85 Fed. Reg. 68689, FS 813775.

As a reason for Exemption the preamble went on to say:

> The forest planning process is more flexible than the 2001 Roadless Rule's regulatory approach, because plans are expected to be designed and attuned to local circumstances and are intended to be periodically reviewed. The 2001 Rule's prescriptive approach forecloses a full balancing of interests during future forest planning processes. The final rule [i.e. Exemption] will allow local decision makers the flexibility to address roadless management based on changed local conditions, new unforeseen issues, and take into

account state and local economic development plans. 85 Fed. Reg. 68694, FS 813780.

On December 23, 2020, a group of environmental organizations filed a Complaint challenging USDA's October 29, 2020, Tongass Exemption. *Organized Village of Kake v. Vilsack et al.* Case No. 1:20-cv-00011 SLG. On February 23, 2021, USDA requested the first of multiple stays of the litigation brought by environmental groups "to allow the Department of Agriculture time to review the Alaska Roadless Rule that is being challenged."[8] On November 23, 2021, the USDA published a notice of proposed rulemaking to repeal the October 29, 2020, Tongass Exemption which initiated a comment period that ended on January 24, 2022. 88 Fed. Reg. 66498 (Nov. 23, 2021), FS 909760. On January 27, 2023, USDA repealed its October 29, 2020, Tongass Exemption thereby reinstating the 2001 Roadless Rule. 88 Fed. Reg. 5252 (Jan. 27, 2023), FS 1039505.

---

[8] Def's. Status Report and Mot. to Extend Stay. *Organized Village of Kake et al. v. Vilsack et al.,* Case No. 1:20-cv-00011-SLG Doc. 29 Filed 06/25/21 stated:

> On January 20, 2021, the White House Briefing Room issued a "Fact Sheet: List of Agency Actions for Review" identifying "a non-exclusive list of agency actions that heads of the relevant agencies will review" in accordance with Executive Order 13990, also issued on January 20, 2021. One item the Fact Sheet identified for review is the "Special Areas; Roadless Area Conservation; National Forest System Lands in Alaska, 85 Fed. Reg. 68688 (Oct. 29, 2020), FS 813774, i.e., the "Alaska Roadless Rule," challenged in the Complaint.

> Consistent with section 2 of Executive Order 13990, "Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis," the Department of Agriculture has reviewed the Alaska Roadless Rule and proposes to repeal or replace subpart E of 36 CFR § 294 exempting the Tongass National Forest from the 2001 Roadless Rule.

## III.  ARGUMENT

### A. Introduction.

Plaintiffs "Governor Frank H. Murkowski, et al." in Case No. 1:23-cv-00010-SLG (Murkowski Plaintiffs) have asserted Five Claims in their Complaint: 1. Defendants' Reimposition of the Roadless Rule to the Tongass Violates the Administrative Procedures Act; 2. Defendants' Reimposition of the Roadless Rule to the Tongass Violates ANILCA §708, TTRA, the FY 2015 Defense Authorization Act, and SAFETEA-LU §44O7; 3. Defendants' Reimposition of the Roadless Rule to the Tongass violates the "No More" clause of ANILCA; 4. Congress Has Not Delegated Authority to Defendants to Apply the Roadless Rule to the Tongass; and 5. Defendants' Reimposition of the Roadless Rule to the Tongass Violates the Non-Delegation Doctrine.

Pursuant to FRCP Rule 42 and the stipulation of the parties,  on December 12,  2023, the Court ordered the cases *Inside Passage Electric Cooperative and Alaska Power Association v. U.S. Department of Agriculture and Thomas Vilsack*, Case No. 3:23- cv-00204-SLG, and *Governor Frank H. Murkowski, et al., v. Tom Vilsack, et al*., Case No. 1:23-cv-00010-SLG, to be consolidated, but not merged, with *State of Alaska v. U.S. Department of Agriculture, et al*., Case No. 3:23-cv-00203-SLG. Consolidation was ordered because of the similarity of the cases and parties, shared questions of facts and law, and in the interests of efficiency and judicial economy.

Consistent with the Order's purpose of efficiency and judicial economy the Murkowski Plaintiffs hereby incorporate by reference the arguments made by the State of

Alaska regarding the Murkowski Plaintiffs' First Claim and the arguments made by the

PLF Plaintiffs regarding the Murkowski Plaintiffs' Fourth and Fifth Claims.

> **B. Congress Reserved to itself the Authority to make "Lasting" Land Designations on the Tongass. Defendants' Selection of 9.7 Million Acres of "Lasting" "Unmodifiable" Roadless Areas on the Tongass Exceeds their Authority and Usurps and Distorts Congress's ANILCA § 101(d) "Conservation-Development" Balance.**

In ANILCA § 101(d), Congress found:

> **This Act provides sufficient protection for the national interest in the scenic, natural, cultural and environmental values on the public lands in Alaska**, and at the same time provides adequate opportunity for satisfaction of the economic and social needs of the State of Alaska and its people; **accordingly the designation and disposition of the public lands in Alaska pursuant to this act _are found_ to represent a proper balance between the reservation of national conservation system units and those public lands necessary and appropriate for more intensive use and disposition**, and thus Congress believes that the need for future legislation designating new conservation system units, new national conservation areas, or new national recreation areas, has been obviated thereby. (Emphasis added.)

In its 2001 Roadless Rule preamble USDA said:

> Social and economic considerations were key factors in analyzing those alternatives, along with the unique and sensitive ecological character of the Tongass National Forest, the abundance of roadless areas where road construction and reconstruction are limited, and the high degree of ecological health. _**In developing the proposed action, the agency sought to balance the extraordinary ecological values of the Tongass National Forest against the needs of the local forest dependent communities in Southeast Alaska**. Id._ (Emphasis added).

A comparison of the two statements makes clear that Congress and USDA made

land allocations having the same objective - to balance national conservation interests with

the socio-economic needs of Southeast Alaska. By the 2001 Roadless Rule and by its

January 27, 2023, reimposition, USDA has administratively usurped the conservation –

development balance that Congress **found** it had already achieved on the Tongass through

its ANILCA land designations in 1980. In so doing, Defendants arbitrarily and capriciously,

and in violation of the Property Clause of the Constitution, substituted their judgment for

the number and acreage of "lasting" "unmodifiable" land selections needed to "strike the

appropriate balance between" conservation and development on the Tongass.

Under Article IV, § 3, Clause 2 of the Constitution only Congress can make

permanent land designations on federal land. *See generally Kleppe v. New Mexico*, 426

U.S. 529 (1976). Accordingly, USDA's 9.7 million acres of "lasting" "unmodifiable" IRAs

must yield to Congress's legislative finding, and land designations confirming, that its

designation of 5.7 million acres of Wilderness and 854,000 acres of legislated LUD II

Management Areas "provides sufficient protection" for the Tongass and thereby "obviates"

the need for Defendants' January 27, 2023, reimposition of the 2001 Roadless Rule.

For Defendants' blatant disregard of the Constitution alone, the Murkowski

Plaintiffs respectfully request that the Court grant summary judgment in their favor.

 **C.** **Defendants' Reimposition of the Roadless Rule to the Tongass Violates Congressional Intent and Direction Set out in ANILCA §101(d), §708, and § 1326.**

 **1.** **§ 1326 (a). Congress Has Not Passed a Joint Resolution Approving Defendants' Regulatory Selection of 9.7 Million Acres of "Lasting" "Unmodifiable" Roadless Areas on the Tongass.**

ANILCA § 1326 (a) prohibits "future executive branch action" that "withdraws"

more than 5,000 acres without Congressional passage of a joint resolution of approval

"within one year after the notice of such withdrawal has been submitted." Congress has not passed a joint resolution approving the regulatory selection of 9.7 million acres of "lasting" "unmodifiable" (*de facto* LUD II Management Areas) IRAs on the Tongass and more than one year has passed. Accordingly, whatever authority Defendants may have had to reselect "lasting" "unmodifiable" IRAs through its January 27, 2023, rulemaking has terminated.

The proponents of application of the IRAs to the Tongass will argue that ANILCA § 1326 (a) does not apply because IRAs are not Federal Land Policy and Management Act of 1976 (FLPMA), 43 U.S.C. § 1701(j), "withdrawals" as that term was applied by the Courts in *Southeast Conference v. Vilsack*, 684 F. Supp. 2d. 135, 143 (D.D.C. 2010), and *State of Alaska v. U.S. Dep't of Agric.*, 273 F. Supp. 3d 102, 124 (D.D.C. 2017). In *Southeast Conference*, the Court used the FLPMA definition of the term "withdrawal" because it was not defined in ANILCA. In *State of Alaska v. U.S. Dep't of Agric.*, the Court cited *Southeast Conference* and *New Mexico v. Watkins*, 969 F.2d 1122, 1124 (D.C. Cir.1992), as authority for applying the FLPMA definition.

An analysis of the purpose and legislative history of ANILCA § 1326 (a)'s application to national forests in Alaska, which neither Court undertook, proves otherwise. There are two uses of the term "withdrawal" in ANILCA – one defined and one undefined. Some ANILCA provisions like §§ 206, 402(c), 403, 404, 1309, 1311, and 1312 explicitly apply the classic FLPMA definition of "withdrawal" to specific subjects – *i.e.*, mining in the National Parks "established or expanded" by ANILCA (§ 206), mining in the Steese National Conservation Area (§ 402(c)), mining in the White Mountain National Recreation

Area (§§ 403, 404, and 1312 (b)), and Parks Scenic Highway Study (§ 1311). So, Congress demonstrably knew how to apply the classic FLPMA definition of "withdrawal" in the sections of ANILCA in which it intended the classic definition to apply. Yet it did not specify that the FLPMA definition of "withdrawal" be used in ANILCA § 1326.

Congress's failure to define the term "withdrawal" for use in ANILCA § 1326 (a), and, more specifically, with respect to the national forests in Alaska, suggests that the term was hastily selected for its ordinary meaning (rather than FLPMA's) and should be interpreted in accordance with its purpose, context, and legislative history.

a. **History of ANILCA § 1326 – the "No More" Provision.**

There are no committee reports that parse the meaning of the term "withdrawal" as used in ANILCA § 1326. That is because the language that ultimately became ANILCA § 1326 was included in a floor amendment in the nature of a substitute for the Senate Energy Committee-reported bill, that was co-sponsored by Senator Tsongas.[9] There is thus little direct legislative history on this provision.

Section 1326 was the ANILCA provision intended to enact the "No More" Clause on which the Alaska Legislature insisted as one of the prices for Alaska's support for ANILCA. Senator Stevens spoke to the Alaska Legislature's insistence on the "No More" clause on the Senate floor.[10] He said that the purpose of the "No More" clause was "to

---

[9] Amendment No. 1961 (As Modified), Calendar No. 442; 126 Congressional Record. S11063 (daily ed. Aug. 18, 1980) (Sen. Tsongas calling up the modified amendment).

[10] "Our State legislature asked us to address seven points. We call them the consensus points."

*SOA v. U.S. DOS, et al*, Case No. 3.23-cv-00203-SLG
MUKOWSKI PLAINTIFF'S OPENING BRIEF                                                20

provide congressional oversight for major modifications of areas established or expanded by [ANILCA] and to require congressional approval for future major executive withdrawals of certain public lands in Alaska." 126 Congressional Record S11504.

The principal sponsor of the legislation, Senator Tsongas, agreed with Senator Stevens and described the intent of ANILCA § 1326. Specifically, by including this amendment the legislation would:

> add a "no more" provision. This is one of the State [of Alaska's] seven consensus points... . Basically, it provides that any future executive withdrawal for conservation system unit purposes would terminate if not ratified by passing a joint resolution of Congress within one year after the notice of such withdrawal has been submitted to Congress.

126 CONG. REC. S11118 (daily ed. Aug. 18, 1980) (remarks of Sen. Tsongas).

Congress thus meant something different than the FLPMA definition of "withdrawal" when employing the term in ANILCA §1326. The Court should consider the purpose and legislative history  and the circumstances in which Congress applied the word "withdrawal" as used in ANILCA § 1326. As the Court said in *Conocophillips Alaska, Inc.*

---

The fifth injunction of the legislature was to be sure that there is what we call a no-more provision. This was a provision I insisted on in 1978. It was in the so-called Huckaby bill. It was in the bill that almost was approved in 1978. That clause is not in the committee bill. It is in the revised Tsongas substitute because the agreement we had in committee that when the bill had reached its final version on the floor of the Senate, the committee would agree to the no more clause. Realizing that the Tsongas revised substitute may be final version, the Senator from Massachusetts, at my request, has included that.

Congressional Record – Senate August 18, 1980, pg. S11047.
*SOA v. U.S. DOS, et al*, Case No. 3.23-cv-00203-SLG
MUKOWSKI PLAINTIFF'S OPENING BRIEF                                                21

*v. Alaska Oil & Gas Conservation Comm'n*, 3:22-cv-00121-SLG, at *20 (D. Alaska Mar. 8, 2023):

> When "language is ambiguous or is capable of more than one reasonable interpretation, [courts] 'consult the legislative history, to the extent that it is of value, to aid in [their] interpretation.'" Courts also look to a "statute's 'purpose'" to guide their analysis.

The Ninth Circuit proceeded this way in *Montana Wilderness Association v. United States Forest Service*, 655 F.2d 951 (9th Cir. 1981). The question before that Court was whether the term "National Forest System" as used in § 1323(a) was limited to national forests in Alaska or included all U.S. national forests. "We note at the outset that the bare language of § 1323(a) does not, when considered by itself, limit the provision of access to Alaskan land. We must look, however, to the context of the section to determine its meaning." *Montana Wilderness Ass'n*, 665 F.2d at 954.

The *Montana Wilderness* Court exhaustively reviewed ANILCA's legislative history, including legislation enacted eight days after ANILCA's passage. *Montana Wilderness Ass'n*, 665 F.2d at 953-58.[11] ANILCA §1323 was included in the same floor amendment as the ANILCA §1326 "No More" clause in the Tsongas Substitute.[12] The Murkowski Plaintiffs respectfully ask the Court to look beyond the FLPMA definition of "withdrawal" and review the purpose and legislative history of ANILCA §1326 "No More"

---

[11] See footnotes 4 -10 at pages 956 – 958 of *Montana Wilderness Ass'n*, which show the extent to which the Court plumbed ANILCA's legislative history in search of the meaning of ANILCA §1323.

[12] *Montana Wilderness Ass'n,* 665 F.2d at 957, n.6.

clause in the same way that the *Montana Wilderness* Court reviewed the context and legislative history of ANILCA §1323.

> **b.    What Is an ANILCA § 1326 (a) "Withdrawal" as that Term is Applied to USDA Land Set Asides in the National Forests in Alaska?**

The Courts did not consider the legislative history of ANILCA § 1326 in *Southeast Conference*, 684 F. Supp. 2d. at 143, or in *State of Alaska v. U.S. Dep't of Agric.*, 273 F. Supp. 3d. at 124. Rather, they simply held that in the absence of a definition of "withdrawal" in ANILCA § 1326 they would use the classic FLPMA definition[13] and decide the case. *Southeast Conference* at 144.[14]

Use of the FLPMA definition of "withdrawal" to define its use in ANILCA § 1326 has a significant impact on the application of ANILCA to the national forests in Alaska that the Courts did not discuss and probably did not intend. It  eliminates Congress's authority

---

[13] Under that statute, a withdrawal is statutorily defined as a "withholding [of] an area of Federal land from settlement, sale, location, or entry, under some or all of the general land laws, for the purpose of limiting activities under those laws in order to maintain other public values in the area or reserving the area for a particular public purpose or program." 43 U.S.C. § 1702(j).

[14] *Southeast Conference* decided that an old growth timber reserve designated pursuant to a land use management plan authorized by NFMA was not a "withdrawal." *Southeast Conference* is distinguishable from the case at bar because the issue there was whether an old growth timber reserve designated pursuant to a land use management plan required by NFMA was a "withdrawal." Forest Plans are not lasting – they are to be revised "when the Secretary finds conditions in a unit have significantly changed, but at least every fifteen years." 16 U.S.C. § 1604(f)(5)(A).  Here Defendants have no statutory obligation to set aside IRAs on the Tongass or make changes in those they designate because the IRAs do not result from a NFMA-required land use plan or other statutory requirement.  Rather, they are exactly what Defendants expressly declare them to be - "lasting" land use designation made pursuant to reimposition of a Roadless Rule regulation they do not intend to modify.

*SOA v. U.S. DOS, et al*, Case No. 3.23-cv-00203-SLG
MUKOWSKI PLAINTIFF'S OPENING BRIEF                                     23

to act on USDA administrative land set asides on the Tongass or the Chugach under ANILCA § 1326 because USDA has no constitutional or statutory authority to make a FLPMA "withdrawal."[15] In other words, no USDA administrative land set aside on the national forests in Alaska, no matter how restrictive or extensive, could ever being defined as a FLPMA "withdrawal" under ANILCA § 1326 (a), thereby allowing Defendants to avoid the intent of ANILCA § 1326 (a).

The colloquy between Senator Stevens and Senator Tsongas makes clear that they had worked out a compromise process for Congressional approval of future land set asides on all federal land in Alaska. It beggars belief that by their unfortunate use of the word "withdrawal" in that compromise they intended to exempt USDA administrative land designations on the national forests in Alaska, such as the 9.7 million acres of "lasting" "unmodifiable" IRAs (*de facto* LUD II Management Areas) involved here, from ANILCA § 1326 (a) – *i.e*., the "No More" clause.

Given the purpose and the legislative history of ANILCA § 1326 (a), the most reasonable interpretation is that the Senators intended the term "withdrawal" as applied to the national forests in Alaska to mean something like "any land use designation, that has

---

[15] Forest Service Manual (FSM) 2700 – Special Use Management. WO Amendment 2700-90-1.
2761.01 - Authorities
    1. Section 204 of The Federal Land Policy and Management Act of 1976 (43 U.S.C. 1714) (FLPMA) gives the Secretary of the Interior general authority to make, modify, extend, or revoke most withdrawals on public or reserved Federal lands. The Forest Service must apply to the Secretary of the Interior for withdrawal actions on National Forest lands.

the effect of prohibiting or significantly limiting resource uses allowed the day before passage of ANILCA." Surely, they at least intended the dictionary definition of "withdrawal"[16] to apply. Setting aside a "lasting" "unmodifiable" roadless area by regulation is USDA's strongest means of "taking away" access to land and creating a barrier to natural resource development and must have been included in what they meant by "withdrawal."

> ### c. The Colloquy Between Senator Stevens and Senator Tsongas Demonstrates Their Intent to Treat a "Lasting" "Unmodifiable" IRA (*De Facto* LUD II Management Area) Promulgated By Regulation (88 Fed. Reg. 5252, FS 1039505) as a "Withdrawal" For Purposes of ANILCA§ 1326 (a).

"Lasting" "unmodifiable" IRAs mimic, and are the functional equivalent of, TTRA § 201 Congressional LUD II Management Areas used by Congress to impose barriers to roaded development on the Tongass for conservation purposes. "Lasting" "unmodifiable" IRAs as applied by Defendants should be considered to be a "withdrawal" as that term was intended by Senators Stevens and Tsongas for use in ANILCA § 1326 (a) because:

1. the USDA itself acknowledges that an IRA is synonymous with a LUD II Management Area: "LUD II Management Areas are "substantially similar but slightly different" from IRAs in a manner that "does not make a meaningful difference to the level of conservation." 85 Fed. Reg. 68689-90, FS 813775-813776.

2. the "lasting" IRAs selected in the January 27, 2023, reapplication of the Roadless Rule to the Tongass resulted from a Court order requiring "the

---

[16] Black's Law Dictionary Sixth Edition defines "withdraw" as "to take back what has been enjoyed; to take from." The American Heritage Dictionary, Second College Edition defines "withdraw" as "to take back or away; remove."

*SOA v. U.S. DOS, et al*, Case No. 3.23-cv-00203-SLG
MUKOWSKI PLAINTIFF'S OPENING BRIEF 25

Forest Service to prepare a SEIS evaluating roadless areas on the Tongass for wilderness recommendations" in connection with the 1997 TLMP.[17]

3. At 9.7 million acres the total acreage of Defendants' "lasting" "unmodifiable" IRA "withdrawals" is nine times larger than Congress's TTRA § 201 LUD II Management Area designations.

Using a dictionary definition of "withdrawal" and reading it in context, thus shows that ANILCA § 1326 was meant to prevent federal agencies from "taking away" for conservation purposes more than 5,000 acres of land then open to roaded natural resource development without obtaining a joint resolution of approval from Congress within one year. Congress's acceptance of the floor amendment not only accommodated Alaska's request for the "No More" provision, but it also protects Congress's conservation – development balance described in ANILCA § 101 (d).

Because Congress did not pass a joint resolution approving Defendants' January 27, 2023, regulatory reimposition of 9.7 million acres of "lasting" "unmodifiable" IRAs on the Tongass and more than one year has passed, whatever authority Defendants may have had to reselect "lasting" "unmodifiable" IRAs through its January 27, 2023, rulemaking has terminated.

---

[17] In *Sierra Club v. Lyons*, No. J00-0009 CV [JKS] [D. Alaska] (Mar. 30, 2001), the Court found that the 1997 Tongass Forest Plan should have considered making wilderness recommendations in the Final EIS. The Court ordered the Forest Service to prepare a SEIS evaluating roadless areas on the Tongass for wilderness recommendations and to consider the relative contribution of these areas to the National Wilderness Preservation System in its Analysis of the Management Situation.
*See* also page 2 Tongass National Forest Land Management Plan Revision Supplemental Environmental Impact Statement Roadless Area Evaluation for Wilderness Recommendations Record of Decision USDA Forest Service Alaska Region (February 2003).

*SOA v. U.S. DOS, et al*, Case No. 3.23-cv-00203-SLG
MUKOWSKI PLAINTIFF'S OPENING BRIEF                                    26

### 2. Defendants Have Violated § 1326 (b) of ANILCA Because their January 27, 2023, ROD is a Study Having the Single Purpose of Re-establishing IRAs on the Tongass.

To maintain Congressional control of land designations in Alaska, ANILCA § 1326 (b) prohibits "any further studies of Federal lands in the State of Alaska for the single purpose of considering the establishment of a conservation system unit, national recreation area, national conservation area *or for related or similar purposes* shall be conducted unless authorized by this Act or further Act of Congress." (Emphasis added).

### a. IRAs, National Recreation Areas, and National Conservation Areas Have Related and Similar Purposes.

While a roadless area is not a conservation system unit, a roadless area has a conservation purpose "similar and related" to the listed land reservations, particularly national recreation areas and national conservation areas. For example, the purpose of the Steese National Conservation Area designation is to "provide for the immediate and future protection of the lands in federal ownership within the framework of a program of multiple use and sustained yield and for the maintenance of environmental quality…" (ANILCA § 401). The White Mountains National Recreation Area is to be administered "in accordance with the provisions of section 1312 and other applicable provisions of this act, the Federal Land Policy and Management Act of 1976 and other applicable law." (ANILCA § 403). ANILCA § 1312 applies specifically to the White Mountains National Recreation Area and requires that it be administered by the Secretary "in order to provide the public outdoor recreation use and enjoyment and for the conservation of the scenic, scientific, historic, fish and wildlife, and other values contributing to the public enjoyment of such area."

Defendants describe the purposes of IRAs as follows:

As the 2020 FEIS notes, roadless areas on the Tongass provide important ecosystem services such as high quality or undisturbed soil, water and air; sources of public drinking water; diversity of plant and animal communities; habitat for threatened, endangered, proposed, candidate, and sensitive species; primitive and semi-primitive classes of dispersed recreation; reference landscapes; natural appearing landscapes with high scenic quality; traditional cultural properties and sacred sites; and other locally identified unique characteristics. 88 Fed. Reg. at 5255 (Jan 27, 2023), FS 1039508.

Although the purposes of the specific Steese National Conservation Area and White Mountain National Recreation Area are not precisely the same as the purposes of IRAs, they are certainly similar and related in their emphasis on protection of the resources within their areas. Moreover, ANILCA § 101 (d) equates the conservation values of national recreation areas and national conservation areas with "scenic, natural, cultural and environmental values" all of which are "similar and related" to IRAs.

### b. The January 27, 2023, ROD is a Single Purpose Study.

The January 27, 2023, ROD is a single purpose study, limited to doing nothing more than determining whether to "repeal the 2020 Alaska Roadless Rule and reinstate the 2001 Roadless Rule as provided for in the U.S. District Court for the District of Alaska's Judgement in *Organized Village of Kake v. USDA*, 776 F. Supp. 2d 960 (D. Alaska 2011)." 88 Fed. Reg. at 5253, FS 1039506. It thus violates § 1326 (b). Therefore, Defendants' January 27, 2023, Rule reimposing the 2001 Roadless Rule on the Tongass should be declared in violation of ANILCA § 1326 (b) and vacated by the Court.

### 3. ANILCA § 708.

ANILCA § 708 (a) specifically states that Congress reviewed the roadless areas on the Tongass and found that –

  (1)  "the Department of Agriculture has completed the second roadless area review and evaluation program (RARE II); and

  (2)  the Congress has made its own review and examination of the national forest system roadless areas in Alaska and of the environmental impacts associated with the alternative allocations of such areas."

Section 708 (b)(2) went on to find that the 1979 RARE II Review was "adequate consideration of the suitability of such lands for inclusion in the National Wilderness Preservation System, and the Department of Agriculture shall not be required to review the wilderness option prior to the revision of the initial plans and in no case prior to the date established by law for completion of the initial planning cycle."

Logically, if Congress deemed its RARE II review of the Tongass "adequate" for USDA consideration of the Tongass IRAs as *wilderness*, it was also a sufficient review for *roadless* designation which the Court ordered USDA to review for potential wilderness recommendations.[18] While Congress did not designate any IRAs in ANILCA, it effectively did so to the extent it wanted roadless areas in the Tongass by designating LUD II

---

[18] In *Sierra Club v. Lyons*, No. J00-0009 CV [JKS] [D. Alaska] (Mar. 30, 2001), the Court found that the 1997 Tongass Forest Plan should have considered making wilderness recommendations in the Final EIS. The Court ordered the Forest Service to prepare a SEIS evaluating roadless areas on the Tongass for wilderness recommendations and to consider the relative contribution of these areas to the National Wilderness Preservation System in its Analysis of the Management Situation.

Management Areas[19] in TTRA § 201 (amending ANILCA § 508) and in § 3002 (f)) of the FY 2015 Defense Authorization Bill.

By its designation of the LUD II Management Areas (i.e., IRAs) and its ANILCA § 708(b)(3) release of roadless areas not selected from further study, Congress preempted Defendants' authority to select "lasting" "unmodifiable" IRAs in two ways:

1. As discussed above, "unless authorized by this Act or further Act of Congress," ANILCA § 1326 (b) forbade Defendants from undertaking their own single purpose study to consider "the establishment of a conservation system unit, national recreation area, national conservation area or *for related or similar purposes.*" (Emphasis added).

As shown in Section III. C. 2 of this brief above, IRAs have a purpose related to and similar to the purposes of national recreation and national conservation areas. Neither the 2001 Roadless Rule nor the January 27, 2023, reimposition was authorized by Congress. As admitted in the text of its own Rule, USDA undertook a single purpose study to Repeal the 2020 Tongass Exemption and reinstate the 2001 Roadless Rule,[20] thereby violating ANILCA § 1326 (b).

2. To the same effect ANILCA § 708(b)(4) provides that:

---

[19] LUD II Management Areas are "substantially similar but slightly different" from IRAs in a manner that "does not make a meaningful difference to the level of conservation." (85 Fed. Reg. 68689-90), FS 813775-813776.

[20] "Consistent with these Presidential directives, the U.S. Department of Agriculture (USDA or Department), proposes to repeal a final rule promulgated in 2020 that exempted the Tongass National Forest (Tongass or the Forest) from the 2001 Roadless Area Conservation Rule (2001 Roadless Rule). …. Repealing the Subpart E exemption would reinstate application of the 2001 Roadless Rule to the Tongass (as provided for in the U.S. District Court for the District of Alaska's Judgment in *Organized Village of Kake v. USDA*)."

> unless expressly authorized by Congress the Department of
> Agriculture shall not conduct any further statewide roadless area
> review and evaluation of National Forest System Lands in the State
> of Alaska for the purpose of determining their suitability for inclusion
> in the National Wilderness Preservation System.

The Clinton Administration's 2001 Regulation selecting roadless areas in the Tongass was

contrary to the Congressional directive in ANILCA § 708(b)(4) because Congress did not

expressly authorize the review. Nor did Congress authorize Defendants' January 27, 2023,

reapplication of the 2001 Roadless Rule to the Tongass which also violates § 708(b)(4).

Some have argued that because the 2001 Roadless Rule only involved the Tongass,

and not the Chugach National Forest, the roadless area review was not *statewide* and thus

ANILCA § 708(b)(4) does not apply. The intent of Congress to make the decisions

regarding roadless designation in the National Forests in Alaska is clear in ANILCA §§ 101

(d), 1326 (a), 1326 (b), as well as 708(b)(4). Defendants should not be allowed to avoid

that clear intent by performing a roadless area review and evaluation in one National Forest

at a time.

### 4. Read Together ANILCA §§ 101(d), 1326, and 708(b) Prohibit USDA from Promulgating the Roadless Rule.

Two years after promulgating the Roadless Rule on a nationwide basis, USDA

acknowledged in its 2003 Rule temporarily exempting the Tongass from the 2001 Roadless

Rule that "Congress believed that the need for future legislation designating new

conservation units, new national conservation areas, or new recreation areas, had been

obviated by provisions in ANILCA." 68 Fed. Reg. at 75142, FS 17. USDA further stated

that ANILCA and the TTRA "provide important congressional determinations, findings,

*SOA v. U.S. DOS, et al*, Case No. 3.23-cv-00203-SLG
MUKOWSKI PLAINTIFF'S OPENING BRIEF                                          31

and information relating to management of National Forest System lands on the Tongass National Forest," and that exempting the Tongass was the best way to "implement the letter and spirit of congressional direction along with public values... ." *Id.*

Defendants USDA and the Forest Service thus fully understand and have acknowledged that read separately and together ANILCA §§ 101(d), 1326, and 708(b) prohibit them from selecting "lasting" "unmodifiable" roadless areas in the Tongass without Congress's approval. Their January 27, 2023, reapplication of the 2001 Roadless Rule to the Tongass should be declared illegal and vacated.

> **5. By SAFETEA-LU § 4407,[21] 16 U.S.C. § 524, and 16 U.S.C. § 532 Congress Demonstrated its Intent for, and Authorized, Continued Roadbuilding in the Tongass notwithstanding Defendants' Reimposition of the 2001 Roadless Rule.**

In an Order in *State of Alaska v. United States Forest Service*, Case No. 1:16-cv-00018, dated June 11, 2019, the Court held:

> The Court DECLARES that Section 4407 established in praesenti property rights allowing Plaintiff's [Alaska's] permanent access across National Forest System lands to construct, operate and maintain transportation and utility infrastructure to improve connections between the communities of southeast Alaska.

Such 4407 roads and utility corridors specific to Alaska are in addition to the easements and rights of way Congress authorized in all national forests by 16 U.S.C. § 524 and are

---

[21] Pub. L. No. 109-59 § 4407, 119 Stat. 1144, 1777, as amended by Pub. L. No. 114-94 § 1446(c), 129 Stat. 1312, 1438 ("Section 4407"). "SEC. 4407. RIGHTS-OF-WAY: "Notwithstanding any other provision of law, the reciprocal rights-of-way and easements identified on the map numbered 92337 and dated June 15, 2005, are hereby enacted into law."

also in addition to the roads and trails Congress authorized for all national forests in 16 U.S.C. § 532. Defendants should be ordered to produce a map showing all known rights of access on the Tongass under these statutes.

Defendants clearly did not consider or take into account the property rights Congress granted Alaska in the Statehood Act, SAFETEA-LU § 4407, or the rights applicable in all national forests 16 U.S.C. § 524, and 16 U.S.C. § 532, including those in Alaska, when they reapplied the 2001 Roadless Rule to the Tongass on January 27, 2023. In addition, Defendants did not take account of RS 2477's and the easements or rights of way granted by Congress to the State by quitclaim deed in the Statehood or Omnibus Acts.[22]

Congress enacted SAFETEA-LU § 4407, authorizing roads and utility corridors in the Tongass after promulgation of the 2001 Roadless Rule; failed to amend 16 U.S.C. § 524 to preclude rights of way "for municipal or mining purposes" in the Tongass or 16 U.S.C. § 532 to preclude roads and trails after promulgation of the 2001 Roadless Rule; and failed to eliminate RS 2477's or the easements or rights of way granted by Congress to the State by quitclaim deed in the Statehood or Omnibus Act. These actions demonstrate that Congress intended continued roadbuilding and utility corridor construction on the Tongass.

---

[22] Quitclaim deed to the State of Alaska pursuant to Section 21 of the Alaska Omnibus Act of June 25, 1959 (73 Stat. 141), and accompanying material.

As Congressional enactments SAFETEA-LU § 4407, 16 U.S.C. § 524, 16 U.S.C. § 532, RS 2477's and the easements or rights of way granted by Congress to the State by quitclaim deed in the Statehood or Omnibus Act pre-empt and override Defendants January 27, 2023, administrative reimposition of the 2001 Roadless Rule.

## IV.     CONCLUSION

For the foregoing reasons, the Murkowski Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment, vacate, and enjoin Defendants' January 27, 2023, reimposition of the 2001 Roadless Rule on the Tongass, and restore the Tongass Exemption set out in Defendants October 29, 2020, Rule.

Respectfully submitted this 2nd day of April 2024.

<div style="margin-left: 40%">

*s/ James F. Clark*
James F. Clark, Alaska Bar #6907025
1109 C Street Juneau, Alaska 99801
Email: jfclarkiii@gmail.com
Ph:(907) 586-0122; Cell: (907) 723-6952
Attorney for Plaintiffs

</div>

# CERTIFICATE OF SERVICE

I certify that on April 2, 2024, true and correct copies of the Murkowski Plaintiffs

Opening Brief were served by electronic means through the ECF/CM system.

*s/ James F. Clark*
James F. Clark
LAW OFFICE OF JAMES F. CLARK
Alaska Bar #6907025

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Fed. R. App.P. 32(A)(7)(B) because:

This brief contains 9480 words, excluding the parts of the brief exempted by Local Civil Rule 7.4(a).

*s/ James F. Clark*
James F. Clark
LAW OFFICE OF JAMES F. CLARK
Alaska Bar #6907025