TREG TAYLOR
ATTORNEY GENERAL
Thad Adkins (Alaska Bar No. 2205032)
Assistant Attorney General
Ronald W. Opsahl (Alaska Bar No. 2108081)
Senior Assistant Attorney General
Department of Law
1031 West 4th Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5100
Facsimile: (907) 276-3697
Email: thad.adkins@alaska.gov
 ron.opsahl@alaska.gov

*Attorneys for State of Alaska*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | | |
|---|---|---|
| STATE OF ALASKA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:23-cv-00203-SLG |
| | ) | |
| v. | ) | CONSOLIDATED |
| | ) | |
| THE UNITED STATES | ) | LEAD CASE |
| DEPARTMENT OF AGRICULTURE, | ) | |
| *et al.*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| ORGANIZED VILLAGE OF KAKE, | ) | |
| *et al.*, | ) | |
| | ) | |
| Intervenors- | ) | |
| Defendants. | ) | |
| INSIDE PASSAGE ELECTRIC | ) | |
| COOPERATIVE, *et al.*, | ) | |
| | ) | Case No. 3:23-cv-00204-SLG |
| Plaintiffs, | ) | |
| | ) | CONSOLIDATED |
| v. | ) | |

|  |  |  |
|---|---|---|
| THE UNITED STATES DEPARTMENT OF AGRICULTURE, *et al.*, | ) ) ) ) | |
| and | ) ) | |
| Defendants, | ) ) | |
| ORGANIZED VILLAGE OF KAKE, *et al.*, | ) ) ) | |
| Intervenor-Defendants. | ) ) ) | |
| GOVERNOR FRANK MURKOWSKI, *et al.* | ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 1:23-cv-00010-SLG |
| v. | ) ) | CONSOLIDATED |
| TOM VILSACK, *et al.*, | ) ) ) | |
| and | ) ) | |
| Defendants, | ) ) | |
| ORGANIZED VILLAGE OF KAKE, *et al.*, | ) ) ) ) | |
| Intervenor-Defendants. | ) ) ) | |

**STATE OF ALASKA'S OPENING BRIEF UNDER LOCAL RULE 16.3(c)**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... iii

TABLE OF AUTHORITIES ................................................................................ v

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................ 3

    **I.**     **The Tongass Exemption was developed to balance community needs, Congressional intent, and resource conservation.** ..................................... 3

    **II.**     **After extensive analysis, a Ninth Circuit *en banc* panel remanded the Tongass Exemption, necessitating the additional rulemaking of the Alaska Rule.** ................................................................................................ 6

    **III.**     **Despite the legal wranglings over the Alaska Rule, the Tongass Forest Plan has continuously placed substantive restrictions on road development.** ....................................................................................... 6

    **IV.**     **Following *Kake*, at the request of the State, Defendants developed the Alaska Rule to address Southeast Alaska community development and connectivity within the Tongass.** ......................................................... 7

    **V.**     **The Biden administration's unjustified, unlawful departure from the Alaska Rule.** ............................................................................................ 11

STANDARD OF REVIEW .................................................................................. 14

ARGUMENT ...................................................................................................... 15

    **I.**     **Ninth Circuit *en banc* analysis in *Kake* supports reversal of Defendants' repeal of the Alaska Rule.** ....................................................................... 15

        **A.**     **The Tongass Forest Plan includes development restrictions, but in the absence of the Roadless Rule, retains some flexibility to consider projects needed for Southeast community development.** .................................................................................... 19

        **B.**     **Stakeholders were appropriately engaged during the Alaska Rule promulgation and the purported need for additional consultations was simply pretext for an otherwise unsupported change in policy position.** ...................................................................................... 23

    **II.**     **Defendants did not provide reasoned explanation required by *Fox*.** ... 25

    **III.**     **Defendants' revised position fails to provide any stability or predictability in forest management for Southeast Alaskans.** ............. 28

IV.     Comments to the 2023 rulemaking provided no new information beyond
        that already analyzed and cannot justify departure from the Alaska
        Rule. ...........................................................................................................29

V.      Defendants did not adequately consider the impacts of the Roadless Rule
        on renewable energy projects when it repealed the Alaska Rule. ..........31

CONCLUSION ...............................................................................................................34

# TABLE OF AUTHORITIES

**Cases**

*Burlington Truck Lines, Inc. v. United States*,
    371 U.S. 156 (1962) ...................................................................................... 14-15

*Earth Island Inst. v. U.S. Forest Serv.*,
    87 F.4th 1054 (9th Cir. 2023) ....................................................................... 32-33

*F.C.C. v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) .......................................................................... 14, 18, 25-27

*Friends of Wild Swan, Inc. v. U.S. Fish & Wildlife Serv.*,
    12 F. Supp. 2d 1121 (D. Or. 1997) ..................................................................... 27

*Fund for Animals v. Babitt*,
    903 F. Supp. 96 (D.D.C. 1995) ........................................................................... 15

*Marsh v. Or. Nat. Res. Council*,
    490 U.S. 360 (1989) .................................................................................... 32-33

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ........................................................................... 14-15, 25-27

*Organized Village of Kake v. U.S. Dep't of Agric.*,
    776 F. Supp. 2d 960 (D. Alaska 2011) ............................................................ 6, 16

*Organized Village of Kake v. U.S. Dep't of Agric.*,
    746 F.3d 970 (9th Cir. 2014) ........................................................................... 6, 16

*Organized Village of Kake v. U.S. Dep't of Agric.*,
    795 F.3d 956 (9th Cir. 2015) ...................................... 6, 15-19, 21, 25, 28-29

*State of Alaska v. USDA*,
    Case No. 3:01-cv-00039(JKS) ............................................................................ 16

*United States v. Snoring Relief Labs Inc.*,
    210 F.3d 1081 (9th Cir. 2000) ............................................................................ 24

**Federal Statutes**

5 U.S.C. § 706 ................................................................................................................. 14

16 U.S.C. § 3101(d) ......................................................................................................... 5

16 USC § 3102(4) ............................................................................................................. 5

*Alaska National Interest Land Conservation Act (ANILCA)*,
    16 U.S.C. § 3101 *et seq.* ................................................................................. 3-6

Alaska Omnibus Act of June 25, 1959 (73 Stat. 141) ................................................. 3, 5

Inflation Reduction Act, Pub. Law No. 117-169 (Aug. 16, 2022) ..............................31-33

Tongass Timber Reform Act (TTRA),
    16 U.S.C. § 539d ....................................................................................3-4

## Federal Regulations

36 C.F.R. § 294.14(d) ................................................................................ 4

40 C.F.R. § 1502.9(d)(1)(ii) .................................................................... 32

## Rules

Fed. R. Civ. P. 42.................................................................................... 15

Fed. R. Civ. P. 56.................................................................................... 3

L.Civ.R. 7.1 ........................................................................................... 3

L.Civ.R. 16.3(c) ...................................................................................... 3

## Other Authorities

Draft Environmental Impact Statement, Rulemaking for Alaska Roadless Areas
    Forest Service Alaska Region (Oct. 2019),
    https://www.fs.usda.gov/project/?project=54511 ................................... 8

E.O. 13990, Protecting Public Health and the Environment and Restoring
    Science to Tackle the Climate Crisis, The White House (Jan. 20, 2021),
    https://rb.gy/shmxfs ............................................................................ 11

Final Environmental Impact Statement, Rulemaking for Alaska Roadless Areas
    Forest Service Alaska Region (Sept. 2020),
    https://www.fs.usda.gov/project/?project=54511 ................6-10, 12, 20, 22, 31, 33

Notice of Proposed Rulemaking,
    86 Fed. Reg. 66,498 (Nov. 23, 2021) .................................................... 11

Southeast Alaska Transportation Plan, Alaska Department of Transportation and Public
    Facilities (Aug. 2004),
    https://dot.alaska.gov/sereg/projects/satp/assets/FinalSATP.pdf .......................... 10

Southeast Alaska Sustainability Strategy, USDA Forest Service (July 15, 2021),
    https://www.fs.usda.gov/detail/r10/landmanagement/resourcemanagement/?cid=F
    SEPRD950023 .................................................................................. 20, 31

Special Areas; Roadless Area Conservation,
    66 Fed. Reg. 3244 (Jan. 12, 2001)............................................1, 3, 17-19

Special Areas; Roadless Area Conservation; Applicability to the Tongass National
    Forest, Alaska,
    68 Fed. Reg. 75,136 (Dec. 30, 2003) .................................................. 1, 3-4, 6, 16-18

Special Areas; Roadless Area Conservation; National Forest System Lands in Alaska,
    85 Fed. Reg. 68,688 (Oct. 29, 2020) .............................................................. *passim*

Special Areas; Roadless Area Conservation; National Forest System Lands in Alaska,
    88 Fed. Reg. 5252 (Jan. 27, 2023)................................................................... *passim*

Tongass National Forest Land and Resource Management Plan Amendment,
    81 Fed. Reg. 88,657 (Dec. 8, 2016) ........................................... 2, 6-8, 19-21, 26-27

# INTRODUCTION

The Tongass National Forest (Tongass) is unique among other national forests in the United States, due both to the extent to which forest land use decisions impact the broader region, and its relatively undeveloped condition. Many Southeast Alaskan communities lack basic essential road and utility connections to the rest of the region. The nearly 17-million-acre Tongass envelops around 80% of Southeast Alaska, and application of the 2001 Roadless Area Conservation Final Rule and Record of Decision (Roadless Rule) to approximately 9.4 million of those acres essentially freezes the social and economic development of the region to a degree not comparable with other areas of the country.

The unique situation of the Tongass was recognized during the scoping and deliberations surrounding the Roadless Rule, but in the race to finalize the rule the Tongass' status eroded from full exclusion, to delayed implementation, to immediate application in the final rule. Given the disproportionate impacts of application of the Roadless Rule to national forests in Alaska, the State of Alaska (State) quickly filed suit and in 2003, the United States Department of Agriculture, Forest Service (Forest Service) recognized the unsuitability of the Roadless Rule for the Tongass and issued a rule exempting the Tongass (Tongass Exemption).

In an action challenging the 2003 Tongass Exemption from the Roadless Rule, this Court ultimately vacated the exemption on March 4, 2011, and returned the rule to the agency for further review. Nonetheless, the State has continuously and adamantly resisted application of the Roadless Rule to the Tongass and has pressed multiple challenges to the

rule. In 2018, the State petitioned the Secretary of the United States Department of Agriculture (USDA), to again exempt the Tongass from the onerous restrictions of the Roadless Rule. After extensive consideration and analysis including the preparation of draft and final environmental impact statements, on October 29, 2020, Defendants published the 2020 Alaska Roadless Rule (Alaska Rule). The Alaska Rule once more exempted the Tongass from the broad applicability of the Roadless Rule and directed the corresponding amendment of the *2016 Land and Resource Management Plan for the Tongass* (Forest Plan) to reclassify certain management unit designations.

Before the Alaska Rule was allowed to function, however, the USDA did a political 180 degree turn and repealed the rule on January 27, 2023, but failed to provide any reasoned explanation for the reversal. The State and a broad coalition of impacted Southeast plaintiffs are therefore once again before the Court requesting that the arbitrary and capricious actions of Defendants be held unlawful and set aside.

At the outset, it is important to note that this Court is not pressed to choose between environmental destruction or economic devastation. The State and other plaintiffs merely ask this Court to restore a reasonable balance to land management decisions on the Tongass, one that preserves roadless values protections where appropriate, yet still allows for a more flexible pathway for economic and societal development where necessary. Any potential later development would remain subject to the full array of environmental reviews and public scrutiny afforded any land use decision on the Tongass, but vacatur of Defendants' repeal of the Alaska Rule would allow Southeast Alaska to move vital projects forward that are once again stymied by the Roadless Rule.

*Alaska v. U.S. Dep't. of Agric., et al.*                                              Case No. 3:23-cv-00203-SLG
State's Opening Brief                                                                       Page 2 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 9 of 43

Defendants' actions were arbitrarily and capricious, and violated numerous federal statutes and regulations, including *inter alia* the Alaska Statehood Act, Pub. Law 85-508; 72 Stat. 339; the Alaska National Interest Lands Conservation Act (ANILCA), 16 U.S.C. § 3101 *et seq*.; and the Tongass Timber Reform Act (TTRA). The State was prejudiced by Defendants' actions. Pursuant to Fed. R. Civ. P. 56, L.Civ.R.s 7.1, and L.Civ.R. 16.3(c), Plaintiff respectfully moves for summary judgment and requests that this Court hold unlawful and set aside Defendants' administrative repeal of the Alaska Rule, thereby reinstating the Alaska Rule to exempt the Tongass from the Roadless Rule.

## FACTUAL BACKGROUND

I.  **The Tongass Exemption was developed to balance community needs, Congressional intent, and resource conservation.**

Defendants promulgated a nationwide Roadless Rule in 2001 through a rushed process; surprisingly, that broad brush also swept in the Tongass despite it being identified for exclusion or delayed implementation in the preceding stages of the rulemaking process. *See* 68 Fed. Reg. 75,136 (Dec. 20, 2003); FS 11[1] (*see* 2003 Tongass Exemption ROD, included in the numbered portion of the Administrative Record for this case as an attachment to correspondence; *see also* FS 813776). Among other provisions, the Roadless Rule prohibits road construction and reconstruction and timber harvest on Inventoried Roadless Areas (IRAs) on the Tongass. 85 Fed. Reg. 68,688 (Oct. 29, 2020); FS 813,774 (well-summarized in Defendants' 2020 ROD adopting the Alaska Rule). The State

---

[1]      Citations to materials included in the Administrative Record lodged on January 25, 2024 and described in Defendants' Notice at ECF 20, utilize the "FS 000000" designations appearing therein supplied by Defendants.

immediately challenged the application of the Roadless Rule and reached a settlement with USDA in 2003 that eventually prompted the Tongass Exemption. *Id.*

The Tongass Exemption went into effect as a temporary measure on December 30, 2003 through the Forest Service's promulgation of an interim rule adopted into regulation at 36 C.F.R. § 294.14(d). 68 Fed. Reg. 75,136 (Dec. 30, 2003); FS 11. In so doing, the Forest Service acknowledged that ANILCA and the TTRA "provide important Congressional determinations, findings, and information relating to management of national forest lands on the Tongass National Forest," and determined that exempting the Tongass from the Roadless Rule was "how to best implement the letter and spirit of congressional direction." *Id.*, at 75,142; FS 17.

Indeed, Defendants themselves unequivocally determined that the Roadless Rule was not appropriate or needed to protect roadless values on the Tongass in the 2003 Decision adopting the Tongass Exemption. The Forest Service concluded that: "[C]onsidered together the abundance of roadless values on the Tongass, the protection of roadless values included in the Tongass Forest Plan, and the socioeconomic costs to local communities of applying the roadless rule's prohibitions to the Tongass, all warrant treating the Tongass differently from the national forest outside Alaska." *Id.* at 75,139; FS 14. In addition, the Forest Service found that "[b]ecause most Southeast Alaska communities are nearly surrounded on land by inventoried roadless areas of the Tongass, the roadless rule significantly limits the ability of communities to develop road and utility connections that almost all other communities in the United States take for granted." *Id.* at 75,137; FS 12.

*Alaska v. U.S. Dep't. of Agric., et al.*  Case No. 3:23-cv-00203-SLG
State's Opening Brief  Page 4 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 11 of 43

Congress clearly spoke to its intention that Alaskan communities situated in or near the national forests should be allowed to develop similarly to the rest of the United States in the Alaska Statehood Act. In Section 6(a), Congress expressly granted 400,000 acres of national forest land to Alaska "for the purposes of furthering the development of and expansion of communities." Pub. L. 85-508, 72 Stat. 339 § 6(a). These Statehood entitlement lands are intermingled with and surrounded by national forest lands in the Tongass, and access restrictions across adjacent federal lands limit development of those non-federal lands and limit expansion of Southeast Alaska communities. Defendants' exemption of the application of the Roadless Rule through the promulgation of the Alaska Rule removed a serious impediment to its obligations to provide access required by the Alaska Statehood Act.

Further, Section 101(d) of ANILCA, passed in 1980, removed any questions surrounding congressional intent where it plainly established that the existing Conservation System Units (CSUs), defined in 16 USC § 3102(4), provide "sufficient protection for the national interest in the scenic, natural, cultural and environmental values on the public lands in Alaska, and at the same time [provide] adequate opportunity for satisfaction of the economic and social needs of the State of Alaska and its people." Congress designated multiple wilderness areas and LUD II CSUs in the Tongass, but specifically chose not to include the majority of the Tongass as designated CSUs.

Instead of allowing the ability to create vital connections linking these isolated communities to the rest of the world, the Roadless Rule cuts off the cities and villages

*Alaska v. U.S. Dep't. of Agric., et al.*        Case No. 3:23-cv-00203-SLG
State's Opening Brief                              Page 5 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 12 of 43

within the Tongass from all hope of connection. The Alaska Rule was expressly designed to remedy that harm and allow for community connectivity and development.

## II. After extensive analysis, a Ninth Circuit *en banc* panel remanded the Tongass Exemption, necessitating the additional rulemaking of the Alaska Rule.

Although the Tongass did not suffer environmental harm during its exemption from the Roadless Rule, on December 22, 2009, the Organized Village of Kake and other plaintiffs filed a complaint challenging the Tongass Exemption on the ground that its adoption violated the APA and NEPA. *See Organized Village of Kake v. U.S. Dep't of Agric.*, 776 F. Supp. 2d 960 (D. Alaska 2011). On March 4, 2011, this Court vacated the Tongass Exemption and reinstated the Roadless Rule's application to the Tongass on the ground that the promulgation of the Tongass Exemption was arbitrary and capricious.

On appeal, the Ninth Circuit initially reversed the district court decision. *Organized Village of Kake v. U.S. Dep't of Agric.*, 746 F.3d 970 (9th Cir. 2014). However, an *en banc* panel affirmed the district court ruling. *Organized Village of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956 (9th Cir. 2015); FS 56-124. The *Kake* panel held that the 2003 ROD did not provide a reasoned explanation for why an action originally found to pose a prohibitive risk was, two years later, merely minor. *Id.*

## III. Despite the legal wranglings over the Alaska Rule, the Tongass Forest Plan has continuously placed substantive restrictions on road development.

In December of 2016, the Forest Service significantly amended the Forest Plan for the Tongass. FS 812918. The 2016 Forest Plan amendments specifically incorporated the Roadless Rule prescriptions. FS 449862-450238. The Forest Service issued the Final Environmental Impact Statement (FEIS) for the Alaska Rule on September of 2020, which

*Alaska v. U.S. Dep't. of Agric., et al.*                    Case No. 3:23-cv-00203-SLG
State's Opening Brief                                              Page 6 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 13 of 43

evaluated and described aspects of the Forest Plan. FS 812901-813595. The FEIS noted

that "[e]xcept for the timber land suitability determinations [ordered as a part of the 2020

ROD], none of the alternatives would make any changes to the Forest Plan." FS 812953.

> In evaluating Alternative 6 (the Alaska Rule) in the FEIS, Defendants noted:

> Acres removed from roadless designation would continue to be managed by
> the Forest Plan and in accordance with applicable statutory instructions
> (see Map 6 in map packet or on thumb drive). Existing protections to
> roadless characteristics provided by Forest Plan non-development LUDs
> (including LUD II, Remote Recreation, Semi-remote Recreation, Old-growth
> Habitat, Special Interest Area, Wild River, Scenic River, and others) would
> remain in place.

FS 812968. Defendants also noted that specific projects would remain subject to

NEPA and other analysis:

> Projects that include timber harvest, road construction, and/or road reconstruction
> would undergo environmental analysis when they are proposed to comply with the
> NEPA. None of the alternatives considered in this FEIS waive any applicable
> requirements regarding environmental analysis, public involvement, consultation
> with tribes and other agencies, or compliance with other applicable laws.

FS 812954. The Forest Plan and other environmental review requirements have thus

continuously forced the same substantive restrictions on the Tongass as those decreed by

the Roadless Rule since at least 2016 to the present.

## IV. Following *Kake*, at the request of the State, Defendants developed the Alaska Rule to address Southeast Alaska community development and connectivity within the Tongass.

On January 19, 2018, compelled by the deleterious impacts from the Roadless Rule

on the Southeast region, Alaska petitioned then-USDA Secretary Sonny Purdue for a state-

specific rule exemption of the Roadless Rule for the Tongass, as well as a revision of the

Forest Plan. FS 1-237. Secretary Perdue ultimately accepted the State's petition. FS 246,

*Alaska v. U.S. Dep't. of Agric., et al.*          Case No. 3:23-cv-00203-SLG
State's Opening Brief                                        Page 7 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 14 of 43

250. The Forest Service thereafter issued a Draft Environmental Impact Statement (DEIS) in 2019. FS 449862-450238. The Forest Service issued the FEIS in September of 2020. FS 812901-813595. The FEIS specifically noted that USDA's "assessment of policy preferences regarding roadless management rests primarily on the different weights ascribed to. . . ecological, social and economic factors rather than any specific data or scientific findings." FS 812943. In performing its assessment, the USDA identified three key issues "with striking similarity to the issues highlighted in 2001" that it analyzed: (1) Roadless Area Conservation; (2) Support local and regional socioeconomic well-being, Alaska Native culture, rural subsistence activities, and economic opportunity across multiple economic sectors; and (3) Conserve terrestrial habitat, aquatic habitat, and biological diversity. FS 812944-45.

In describing the roadless areas evaluated under Alternative 1 in the FEIS (retention of the Roadless Rule), Defendants noted that:

> roadless areas consist of 110 IRAs [inventoried roadless areas] identified in the 2001 Roadless Rule. These IRAs were originally mapped in 1996 for the Tongass Forest Plan Revision and the provisions of the 2001 Roadless Rule (as provided for by the Court's reinstatement Order) would apply to those IRAs. As a result of ownership changes and boundary alignment corrections recognized during this rulemaking these IRAs actually encompass 9.37 million acres of NFS land. Under this alternative, the prohibitions of the 2001 Roadless Rule would continue to apply across the 110 IRAs, encompassing approximately 56 percent of the Tongass.

FS 812961. In evaluating Alternative 6 in the FEIS (the full exemption under the Alaska Rule), Defendants found that in the absence of the Roadless Rule:

> Former roadless areas would be managed in accordance with the 2016 Forest Plan. Existing protections to roadless characteristics provided by Forest Plan non-development LUDs [land use designations] (including LUD II,

*Alaska v. U.S. Dep't of Agric., et al.*
State's Opening Brief
Case No. 3:23-cv-00203-SLG
Page 8 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 15 of 43

Remote Recreation, Semi-remote Recreation, Old-growth Habitat, Special Interest Area, Wild River, Scenic River, and others) would remain in place.

\* \* \*   \* \* \*   \* \* \*

Viewed in terms of suitable acres, the removal of regulatory roadless area prohibitions would result in the conversion of about 168,000 acres of previously unsuitable old growth to suitable old growth that would be available for harvest.

\* \* \*   \* \* \*   \* \* \*

The projected harvest on suitable acres is not expected to change because of Forest Plan limitations, but would be spread over a wider pool of lands.

FS 813007.

The FEIS outlined a number of existing restrictions that adequately protect roadless values. The FEIS noted that the Forest Plan includes the Tongass Forest Plan Old-growth Habitat Conservation Strategy, which "was developed to maintain the integrity of the old-growth forest ecosystem, and thereby conserve biological diversity across the Forest, by retaining intact, largely undisturbed habitat." FS 813053. In its cumulative effects analysis in the FEIS, the Forest Service noted that timber management in the Tongass is guided by a 2013 memorandum from the USDA Secretary directing management of Tongass timber resources away from old growth timber and towards second-growth or young-growth forests. FS 813334. The young-growth transition is also incorporated into the 2016 Forest Plan for the Tongass. Even in the absence of the Roadless Rule, these and other layers of regulation create restrictions on the utilization of the Tongass timber resources or other developments.

*Alaska v. U.S. Dep't. of Agric., et al.*                    Case No. 3:23-cv-00203-SLG
State's Opening Brief                                          Page 9 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 16 of 43

The FEIS identified a number of significant hurdles to transportation and energy development for the Southeast region. The FEIS examined the constrained road transportation network in Southeast Alaska, noting that "[a] roaded transportation system has developed on NFS lands, largely in support of timber harvesting, but for the most part does not connect communities except on Prince of Wales Island." FS 813144. Defendants acknowledged that road construction to connect communities largely requires Forest Service authorization because the State's Southeast Alaska Transportation Plan "lies largely within the Tongass National Forest's boundaries[.]" *Id*. FS 813144. The FEIS also noted that "[t]he existing transmission system in Southeast Alaska is limited." *Id*. FS 813145. The FEIS identified a wide range of impacts worsened by the Roadless Rule, and determined that an exemption from the Roadless Rule was warranted.

The USDA published its Decision (2020 ROD) promulgating the Alaska Rule on October 29, 2020, which again lifted Roadless Rule prohibitions on the Tongass and directed the Forest Service to change the administrative designation of areas deemed unsuitable for roads in the Tongass Forest Plan solely due to application of the Roadless Rule. 85 Fed. Reg. 68,688 (Oct. 29, 2020); FS 813,774-789.

In the 2020 ROD, USDA specifically recognized that it sought to accommodate "the unique biological, social, and economic situation found in and around the Tongass National Forest." FS 813,775.

The 2020 ROD for the Alaska Rule determined that:

> The USDA concludes in light of the FEIS that a policy change for the
> Tongass National Forest can be made without major adverse impacts to the
> recreation, tourism, and fishing industries, while providing benefits to the

*Alaska v. U.S. Dep't. of Agric., et al.*        Case No. 3:23-cv-00203-SLG
State's Opening Brief                              Page 10 of 36
Case 3:23-cv-00203-SLG    Document 39    Filed 04/02/24    Page 17 of 43

timber and mining industries, increasing opportunities for community infrastructure, and eliminating unnecessary regulations.

FS 813,777.

The 2020 ROD further provided that USDA's decision was based on the factual determination that the Forest Plan and statutory restrictions would adequately protect roadless values on the Tongass:

> The USDA and Forest Service believe that both roadless area conservation and other multiple-use values with important local socio-economic consequences are meaningfully addressed through local and regional forest planning on the Tongass, without the 2001 Roadless Rule prohibitions on timber harvest and road construction/reconstruction.

FS 813,775.

## V. The Biden administration's unjustified, unlawful departure from the Alaska Rule.

Almost before the ink had dried on the Alaska Rule, in one of the new administration's first acts in office, President Biden issued Executive Order 13990 on January 20, 2021, which directed executive agencies to immediately review and take action to address regulations promulgated by the previous administration. FS 909,760. Following that review, on November 23, 2021, USDA published a notice of proposed rulemaking to repeal the Alaska Rule. 86 Fed. Reg. 66,498; FS 909,760-767.

Relying on the analysis for the 2020 FEIS for the Alaska Rule and without performing any substantive review apart from soliciting public comments, USDA published its 2023 Decision (2023 ROD) in the Federal Register on January 27, 2023, which constituted the final decision to repeal the Alaska Rule and impose

Tongass Roadless Rule protections on 9.4 million acres of IRAs. 88 Fed. Reg. 5252-5272;

FS 1039505-525.

The 2023 ROD provided that:

[T]he USDA now believes that the adverse consequences of exempting the Tongass from the 2001 Roadless Rule, particularly the increase in acreage available for timber production, the increase in road construction, and the lack of consideration for the views of Tribal Nations, outweigh the benefits of "decreasing federal regulation" and the other advantages cited in the 2020 Alaska Roadless Rule.

FS 1039508.

Defendants' 2023 ROD acknowledged that adoption of the Alaska Rule had been

based on the factual determination that the Forest Plan would adequately protect roadless

values on the Tongass:

At the time of the rulemaking in 2020, USDA stated that the land use designations, standards, and guidelines in the 2016 Tongass Land Management Forest Plan (2016 Forest Plan) along with other conservation measures, would assure protection of roadless values on the Tongass while offering modest additional flexibility to achieve other multiple use benefits.

FS 1039506.

Defendants did little more in the 2023 ROD than recite the previously considered

projection of 188,000 additional available acres of timber and 46 additional miles of roads

anticipated under the Alaska Rule FEIS as justification for the change but failed to

adequately justify the abrupt pivot to apply the Roadless Rule to over 9.4 million acres of

the Tongass. FS 1039508. Those projections, taken in part from the Roadless Rule and

forest plan rulemaking processes, evaluated against the profoundly more restrictive

regulatory framework that had developed in the interim, led Defendants to conclude in

2020 that the Alaska Rule was appropriate.

*Alaska v. U.S. Dep't. of Agric., et al.*                    Case No. 3:23-cv-00203-SLG
State's Opening Brief                                         Page 12 of 36
Case 3:23-cv-00203-SLG    Document 39    Filed 04/02/24    Page 19 of 43

Defendants did not identify any new issues raised in the comments and acknowledged that the decision was "based on a reevaluation of the social value of the various uses of the Tongass, rather than on new factual findings." FS 1039508. Defendants provided no reasoned explanation in the 2023 ROD for how the minimal projected increase in timber harvest and roads anticipated by the 2001 Roadless Rule, well over two decades later, justified reapplication of the Roadless Rule in light of the heavy layering of duplicative protections identified and considered in the 2020 ROD.

The Tongass National Forest comprises 80% of the land base of Southeast Alaska. FS 812918. An additional 15% of Southeast Alaska is in other federal ownership. FS 14, FS 812944. The Tongass encompasses almost 17 million acres. FS 0044981, FS 813221. It is the largest forest in the National Forest System. FS 812919. Defendants' application of the Roadless Rule in the context of the Tongass' footprint over Southeast Alaska is truly unique relative to its application in other states, and effectively stifles State and local efforts to establish even basic infrastructure or rudimentary economic foundations. Defendants' Decision to repeal the Alaska Rule reinstated Roadless Rule restrictions to approximately 9.4 million acres of the Tongass designated as IRAs, effectively prohibiting road building, rebuilding, or timber harvest. FS 01039505-506. Defendants' Decision disregarded the social and economic well-being of the Southeast region while ignoring the well-balanced protections identified when it adopted the Alaska Rule.

## STANDARD OF REVIEW

The Administrative Procedure Act (APA), 5 U.S.C. § 706, requires that a reviewing court must "(2) hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

Defendants' repeal of the Alaska Roadless Rule is subject to the same APA "arbitrary and capricious" standard of review, where an agency's rescission of a regulation "is subject to the same test." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41 (1983). To evaluate whether an agency policy change such as Defendants' reversal of the Alaska Rule under review here complies with the APA, the Supreme Court in *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) formulated a four-prong test. First, an agency must "display awareness that it *is* changing position." *Id.* (emphasis in original). Second, an agency must show that "the new policy is permissible under the statute." *Id.* Third, an agency must show that it "*believes* [the new policy is] better." *Id.* (emphasis in original). Fourth, an agency must provide "good reasons for [the new policy]." *Id.*

The Court must also determine whether Defendants "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs.*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 (1962), internal quotes omitted). The decision to repeal the Alaska Rule is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem" or "offered an

*Alaska v. U.S. Dep't. of Agric., et al.*                      Case No. 3:23-cv-00203-SLG
State's Opening Brief                                         Page 14 of 36
Case 3:23-cv-00203-SLG    Document 39    Filed 04/02/24    Page 21 of 43

explanation for its decision that runs counter to the evidence before the agency." *Id.* This Court must consider "whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors." *Fund for Animals v. Babitt*, 903 F. Supp. 96, 105 (D.D.C. 1995).

## ARGUMENT

As an initial matter, the State has asserted numerous claims in its Complaint. Pursuant to Fed. R. Civ. P. 42 and the stipulation of the parties, on December 12, 2023, the Court ordered the above-captioned cases to be consolidated, but not merged, with the State's case.

Consistent with the intent of efficiency and judicial economy, the State hereby incorporates by reference the arguments made by the *Murkowski* Plaintiffs regarding the State's Second and Third Claims and the arguments made by the *I.P.E.C.* Plaintiffs regarding the State's Fourth and Fifth Claims. The other plaintiffs in this consolidated case are uniquely positioned to offer the Court additional analysis on Defendants' unlawful repeal of the Alaska Rule, and the State fully endorses all arguments set forth in the plaintiffs' respective summary judgment memoranda and adopts them as its own.

## I. Ninth Circuit *en banc* analysis in *Kake* supports reversal of Defendants' repeal of the Alaska Rule.

Perhaps unsurprisingly, given the extensive litigation history of the Roadless Rule, the Court is not without a lantern with which to examine Defendants' actions. An *en banc* Ninth Circuit panel took up this identical review, complete with virtually the same litigants

*Alaska v. U.S. Dep't of Agric., et al.*                    Case No. 3:23-cv-00203-SLG
State's Opening Brief                                    Page 15 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 22 of 43

and issues, in *Organized Village of Kake v. U.S. Dep't of Agriculture*, 795 F.3d 956 (9th Cir. 2015). While the postures of the litigants and the status of the application of the Roadless Rule to the Tongass were the inverse of that presented here, the reasoning of the Ninth Circuit in *Kake* is highly instructive in the present matter, where it directly pertains to Defendants' rescission of the Alaska Rule.

Plaintiffs in the underlying case (many now appearing in the instant matter as Defendant-Intervenors) secured this Court's determination that the adoption of the 2003 Tongass Exemption from the Roadless Rule violated the APA on the basis that "the reasons proffered by the Forest Service in support of the Tongass Exemption were implausible, contrary to the evidence and contrary to Ninth Circuit precedent." *Kake*, 776 F. Supp. 2d at 976. There, this Court was confronted by a challenge to the Forest Service reversal of the Roadless Rule through a December 30, 2003, final rule and ROD temporarily exempting the Tongass from the Roadless Rule. *Id*. at 965. This about face was prompted by a settlement agreement with the State resolving its first challenge to the rule in *State of Alaska v. USDA*, Case No. 3:01-cv-00039(JKS). *Kake,* 776 F. Supp 2d at 964. The need for a follow-up rule to the Tongass Exemption was later determined unnecessary in a May 2005 Record of Decision. *Id*. at 966. The Tongass Exemption remained in effect for the Tongass from 2003 until this Court vacated the rule in 2011. *Id*. at 977. That ruling was temporarily overturned on appeal by a three-judge panel in *Organized Village of Kake v. U.S. Dep't of Agric.*, 746 F.3d 970 (9th Cir. 2014), although the exemption was not reinstated.

In taking up its review, the Ninth Circuit *en banc* panel in *Kake* found that the agency, acting on the same record, "did not simply rebalance old facts to arrive at the new policy. Rather, it made factual findings directly contrary to the 2001 ROD and expressly relied on those findings to justify the policy change." *Kake*, 795 F.3d at 968.

In the present case, Defendants determined in the 2020 ROD adopting the Alaska Rule "that increasing rural economic activity, decreasing federal regulation, and streamlining federal government services" clearly justified a policy change for the Tongass where "it can be made without major adverse impacts to the recreation, tourism, and fishing industries, while providing benefits to the timber and mining industries, increasing opportunities for community infrastructure, and eliminating unnecessary regulations." FS 813777. Yet in the 2023 ROD repealing the Alaska Rule, Defendants determined, on the basis of the same record, that the "adverse consequences of exempting the Tongass from the Roadless Rule, particularly the increase in acreage available for timber production, the increase in road construction, and the lack of consideration for the views of Tribal Nations" justified the repeal. FS 1039524.

The *Kake en banc* panel faced the same situation in reverse, where the 2001 ROD found that the Tongass Exemption and continuation of management under the then-current Forest Plan would risk the loss of roadless values, but the 2003 ROD directly contradicted that finding and instead determined that Roadless Rule protection was not needed to maintain roadless values. *Kake*, 795 F.3d at 968.

Here, Defendants similarly contradicted the 2020 ROD by grounding the 2023 reversal to a large degree on the fact that the Alaska Rule made 168,000 acres of old-

growth forest *available* for timber production and could result in 46 additional miles of roads. FS 1039508. Yet Defendants ignored the duplicative restrictions of the Forest Plan in the 2023 ROD, and failed to address the fact that the 2020 ROD very clearly explained that while the Alaska Rule increased overall availability of IRAs for timber harvest, the Roadless Rule restrictions were unnecessary because the Forest Plan "has a greater influence" over timber harvest. FS 813777. Defendants' determination in the 2023 ROD thus fundamentally contradicted the 2020 ROD findings that Forest Plan restrictions adequately safeguarded against a sudden shift to some old growth harvest or moderate amounts of road building in IRAs.

In *Kake,* the majority found the similar determination to be "a critical underpinning of the Tongass Exemption. The 2003 ROD states that '[t]he Department has concluded that the social and economic hardships to Southeast Alaska outweigh the potential long-term ecological benefits because the Tongass Forest Plan adequately provides for the ecological sustainability of the Tongass.'" *Id.* at 968.

The *Kake* Panel determined that, rather than merely revaluing its identified concerns:

> [t]he 2003 ROD rests on the express finding that the Tongass Forest Plan poses only "minor" risks to roadless values; this is a direct, and entirely unexplained, contradiction of the Department's finding in the 2001 ROD that continued forest management under precisely the same plan was unacceptable because it posed a high risk to the "extraordinary ecological values of the Tongass." 66 Fed.Reg. at 3254. The Tongass Exemption thus plainly "rests upon factual findings that contradict those which underlay its prior policy." *Fox*, 556 U.S. at 515, 129 S.Ct. 1800. The Department was required to provide a "reasoned explanation…for disregarding" the "facts and circumstances that underlay its previous decision." Id. at 516, 129 S.Ct 1800; Perez, 135 S.Ct. at 1209. It did not.

*Alaska v. U.S. Dep't. of Agric., et al.*                    Case No. 3:23-cv-00203-SLG
State's Opening Brief                                         Page 18 of 36
Case 3:23-cv-00203-SLG     Document 39     Filed 04/02/24     Page 25 of 43

*Id*. at 968.

### A. The Tongass Forest Plan includes development restrictions, but in the absence of the Roadless Rule, retains some flexibility to consider projects needed for Southeast community development.

Defendants' fundamental determination in the 2023 ROD that Roadless Rule

protection was needed despite the clear contrary findings in the 2020 ROD was exactly the

same type of direct, unexplained contradiction the *Kake en banc* panel rejected. *Kake*, 795

F.3d at 968. This was especially true because, as Defendants noted in the 2020 ROD, the

Forest Plan was amended in 2016 "to directly implement the 2001 Roadless Rule's timber

harvesting prohibitions despite the 2001 Roadless Rule's express admonition that it did

not compel the amendment or revision of any land and resource management plan."

FS 813781. Such prohibitions remained in the Forest Plan, as acknowledged by

Defendants in the 2023 ROD by observing that "no change has been made to the suitable

timber lands designation in the 2016 Forest Plan." FS 01039514.

Yet in the 2020 ROD, Defendants found that "it is unlikely that a significant portion

of the areas previously designated as IRAs would be considered for harvest because the

focus for timber harvesting will shift to the previously roaded, young growth areas[,]" and

"the projected amount of old-growth harvest and percent of original productive old-growth

remaining over the next 100 years *would remain unchanged* from implementation of the

Roadless Rule." FS 813779-80 (emphasis added). "Additionally, the Forest Plan's young-

growth transition strategy will transition harvest locations away from roadless areas

containing old growth and into areas where timber harvest has previously occurred,

avoiding or reducing effects to roadless areas." *Id*. FS 813780.

*Alaska v. U.S. Dep't of Agric., et al.*                     Case No. 3:23-cv-00203-SLG
State's Opening Brief                                                    Page 19 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 26 of 43

While Defendants made much of the 188,000 acres of forested acres made *available* for harvest by the Alaska Rule in its 2023 ROD, Defendants failed to acknowledge that the 2020 FEIS determined that under Alternatives 4-6 (providing the least roadless designations, with Alternative 6 being the Alaska Rule), only "an estimated 8,000 acres of old-growth harvest would occur over 100 years within the logical extension areas as with Alternative 3, and an additional 6,000 to 7,000 acres of estimated old-growth harvest would occur in areas more distant from roads that are removed from roadless by these alternatives. The remaining 27,500 to 28,500 acres of estimated old-growth harvest would occur in roaded and altered areas." FS 812971.

The 2020 ROD and FEIS established a compelling catalogue of factors mitigating any potential anticipated impacts to timber harvest or roadbuilding under the Alaska Rule. Such factors included the Tongass Forest Plan Old-growth Habitat Conservation Strategy, the Southeast Alaska Sustainability Strategy, the young-growth transition policy, and various land use designations that effectively operated to restrict timber harvest and road construction in IRAs. None of these other plans or strategies have been challenged, and all remain available during the implementation of the Alaska Rule.

Rather than provide any analysis or explanation for why the robust existing restrictions of the Forest Plan were no longer adequate, Defendants simply provided a long list of "USDA policy priorities" purportedly advanced by reinstatement of the Roadless Rule, "including promoting the continued health and resilience of mature and old-growth forests; retaining and enhancing carbon storage; conserving biodiversity; mitigating the risk of wildfires; enhancing climate resilience; enabling subsistence and cultural uses; providing

*Alaska v. U.S. Dep't. of Agric., et al.*                    Case No. 3:23-cv-00203-SLG
State's Opening Brief                                        Page 20 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 27 of 43

outdoor recreational opportunities; and promoting sustainable local economic development." *Id.*; FS 01039508. USDA's perfunctory recitation of a list of the current administration's policy priorities was no substitute for a reasoned explanation, however, for why Roadless Rule restrictions were necessary in light of the underlying contrary determinations of the 2020 ROD.

Defendants' reliance on those Forest Plan restrictions provided detailed analysis and justification for adopting the Alaska Rule, especially when coupled with the anticipated benefits to rural economic development. In the 2023 ROD, however, Defendants directly contradicted their previous determination that the Forest Plan and other policy restrictions provided adequate protections. Defendants rested the Alaska Rule repeal on the asserted need to avoid hypothetical adverse consequences potentially associated with a miniscule increase in the acreage merely *available* for timber production, and a similarly negligible increase in roads (desperately needed for the economic advancement of Southeast Alaska). These supposed impacts, however dubious, inarguably constituted a critical underpinning to the 2023 ROD decision to repeal the Alaska Rule. That underpinning rested upon the facts established both in the long history of the Roadless Rule and forest planning processes, and more specifically, on Defendants' findings and conclusions of the 2020 Alaska Rule. Under the rationale provided by the *Kake en banc* panel in setting aside the 2003 Tongass Exemption, Defendants fatally erred here by simply pointing to the projections for timber harvest and road building as justification for repeal of the Alaska Rule without providing a reasoned explanation for why the existing demonstrated restrictions identified in the 2020 rulemaking did not sufficiently protect roadless values.

Instead of providing a reasoned justification for the changed position, Defendants baldly stated in the 2023 ROD that "[r]estoring the 2001 Roadless Rule will reduce the amount of potential new road construction and thereby minimize the potential for road and harvest operations to increase sediment displacement or delivery, thus minimizing associated adverse effects on fisheries and providing more durable protections under the forest plan." FS 1039509. Yet this directly contradicted another key finding in the 2020 ROD, that adoption of the Alaska Rule could "be made without major adverse impacts to the recreation, tourism, and fishing industries." FS 813777. Similarly, this contradicted the 2020 FEIS, which determined that "[o]verall effects to fish are expected to be negligible under all alternatives, because of the strong protections to fish habitats provided by Forest Plan LUDs, Forest-wide standards and guidelines including the riparian management strategy, and the lack of old-growth harvest or associated road construction allowed in the T77 watersheds and TNC/Audubon Conservation Priority Areas." FS 812976. And "actual impacts on water quality anticipated from any alternative would be small in magnitude and scattered over a wide geographic area." *Id.*; FS 812996.

Similarly, Defendants' observations related to sedimentation and fish impacts directly contradicted the previous express findings of the 2023 ROD, without providing explanation for the abrupt shift. The record clearly demonstrated that the vast majority of road impacts were attributable to existing and anticipated new roads that were expected in any case, with or without the Roadless Rule.

*Alaska v. U.S. Dep't. of Agric., et al.*                    Case No. 3:23-cv-00203-SLG
State's Opening Brief                                              Page 22 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 29 of 43

**B.      Stakeholders were appropriately engaged during the Alaska Rule promulgation and the purported need for additional consultations was simply pretext for an otherwise unsupported change in policy position.**

Defendants offered only one other rationale in the 2023 ROD for the repeal of the Alaska Rule, finding that there was a "lack of consideration for the views of Tribal Nations." FS 01039514. In their zeal to justify the near-immediate abandonment of the Alaska Rule, Defendants mischaracterized their previous weighing of competing priorities as a lack of consideration, when the record clearly revealed that Defendants extensively considered Tribal input in promulgating the Alaska Rule.

Indeed, this distortion again grossly contradicts the record for the adoption of the Alaska Rule. The 2020 ROD noted that "tribal government cooperating agencies expressed concern about removal of the 2001 Roadless Rule but expressed an interest in expanded regulatory flexibility within their traditional territories." FS 813777. Defendants thus clearly acknowledged in the 2020 ROD the input received from tribal governments, and Defendants acknowledged "differences in perspective and opinion as to how to best shape restrictions that protect a beloved resource while providing cultural, social, and economic benefit for both local communities and the nation," but determined "that the best mechanism to account for these many and competing interests is to return the regulatory landscape back to what it was prior to the promulgation of the 2001 Roadless Rule and to allow land management to be governed through the NFMA [National Forest Management Act] forest planning process." FS 813777-78.

Defendants clearly acknowledged and considered the input of tribal cooperating agencies, noting in the 2020 ROD that "[t]he participation and advice of tribal cooperating

agencies improved the analyses and alternatives." FS 813782. Defendants directly contradicted the record in the 2023 ROD by stating otherwise. In *United States v. Snoring Relief Labs Inc.*, 210 F.3d 1081, 1085 (9th Cir. 2000), the Ninth Circuit held that "[a] decision is arbitrary and capricious if the agency. . . offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or product of agency expertise." (internal citations omitted). By mischaracterizing the record to suit its determination to repeal the Alaska Rule, Defendants could not rely on an implausible rationale that in this case is contradicted by the written record in the 2020 ROD and elsewhere in the administrative record.

Indeed, Defendants' numerous descriptions in the 2023 ROD of the additional outreach and consultation with Tribal Nations performed after the Alaska Rule uncover no input related to the Roadless Rule that was not well established and considered leading up to the 2020 rulemaking. *See* FS 1039514-15, 1039520-21, 1039523, & 1039525. While Tribal input requested Traditional Homelands Conservation Rule and increased co-management authority, those requests were decidedly not accommodated through Defendants' reinstatement of the Roadless Rule, and Defendants similarly ignored the Tribal request for expanded regulatory flexibility in the 2023 repeal. Defendants could not rely on a failure to consider the views expressed by Tribal Nations, where such views were clearly described and considered in the 2020 ROD, and additional consultations added no new considerations to the process leading up to Defendants' 2023 repeal.

*Alaska v. U.S. Dep't. of Agric., et al.*                    Case No. 3:23-cv-00203-SLG
State's Opening Brief                                                      Page 24 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 31 of 43

## II. Defendants did not provide reasoned explanation required by Fox.

Defendants' determination to repeal the Alaska Rule was deficient where it merely discarded one policy for another without fully providing any reasoned explanation. Given the rationale espoused through the promulgation of the Alaska Rule, Defendants were required to do more than pointed cursorily to the "increase in acreage available for timber production, the increase in road construction, and the lack of consideration for the views of Tribal Nations" as justification for repeal in the 2023 ROD. FS 01039514. Yet that is precisely what Defendants did in repealing the Alaska Rule.

The *Kake en banc* panel distilled the four-part *Fox* test governing APA review of Defendants' reversal of the Alaska Rule to require that the agency: "(1) displays awareness that it is changing position, (2) shows that the new policy is permissible under the statute, (3) believes the new policy is better, and (4) provides good reasons for the new policy, which, if the new policy rests upon factual findings that contradict those which underlay its prior policy, must include a reasoned explanation for disregarding facts and circumstances that underlay or were engendered by the new policy." *Kake*, 795 F.3d at 966 (*citing F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)) (quotations omitted).

A fundamental question in this case is whether Defendants provided a reasoned explanation for why roadless values in the Tongass found in the 2020 ROD to be abundantly represented and well protected were, absent any noted changes, in need of the overlapping Roadless Rule restrictions in 2023.

In formulating the fourth prong of the *Fox* test, which is most relevant to Defendants' repeal of the Alaska Rule, the *Fox* Court held that an agency changing its

position must provide "a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." *Fox,* 556 U.S. at 514 (*citing to Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 42 (1983) (internal quotations omitted)). The *State Farm* Court held that "an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when it does not act in the first instance." *State Farm*., 463 U.S. at 42.

Defendants failed to provide a reasonable explanation for the 2023 ROD determination, on the basis of the same record for the Alaska Rule, that the "adverse consequences of exempting the Tongass from the Roadless Rule, particularly the increase in acreage available for timber production, the increase in road construction, and the lack of consideration for the views of Tribal Nations" justified the repeal. FS 1039524.

As noted above through a mere sampling of the 2020 ROD and FEIS, Defendants concretely established when promulgating the Alaska Rule that existing Tongass Forest Plan and other policy restrictions accomplished redundant functions to the Roadless Rule, while avoiding wreaking havoc on the ability of local communities to develop basic utility and transportation connections and other crucial economic functions hampered by the lack of flexibility. Rather than acknowledge this overlapping framework in the 2023 ROD and analyze and explain why such independent restrictions were no longer sufficient to protect roadless values, Defendants simply ignored them. Even when acknowledging direct comments pointing out the duplicative restrictions in the 2023 ROD, Defendants responded in part that "Restoring the 2001 Roadless Rule protections reflects this Administration's

*Alaska v. U.S. Dep't. of Agric., et al.*     Case No. 3:23-cv-00203-SLG
State's Opening Brief     Page 26 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 33 of 43

priorities to build on the region's primary private-sector economic drivers of tourism and fishing." FS 1039517-18. Defendants thus evaded even the bare acknowledgement that duplicative restrictions existed, while deceptively implying they did not.

What Defendants did not do at any point in its 2023 ROD, was provide the "reasoned analysis" required by *State Farm* or the "reasoned explanation" noted in *Fox* required when an agency changes its course on a regulation. Defendants' failure to do so in connection with the repeal of the Alaska Rule was arbitrary and capricious.

Instructively, Defendants similarly failed to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made[,]" as required in *Friends of Wild Swan, Inc. v. U.S. Fish & Wildlife Serv.*, 12 F. Supp. 2d 1121, 1131 (D. Or. 1997) (*quoting State Farm*, 463 U.S. at 43). Given the adequate existing restrictions clearly identified in the 2020 ROD, Defendants failed to establish a rational connection between protecting roadless values and reimposing the Roadless Rule. The Defendants' own record profoundly failed to demonstrate that such protections were needed.

This was especially true where such projections for timber harvest acreage and roads were drawn from the Forest Plan documents and the record from 2001 rulemaking for the Roadless Rule and did not account for the additional restrictions that had been incorporated in 2008 and 2016 into the Forest Plan, which Defendants determined to be largely duplicative and redundant to the Roadless Rule.

**III.    Defendants' revised position fails to provide any stability or predictability in forest management for Southeast Alaskans.**

Defendants partially grounded the repeal of the Alaska Rule through the 2023 ROD on the need for "stability and predictability after over two decades of shifting management, which can best be served by restoring the familiar framework of the 2001 Roadless Rule." FS 10039508. Although the Ninth Circuit *en banc* panel in *Kake* indicated that the failure "to provide a reasoned explanation for contradicting the findings in the 2001 ROD," was sufficient to determine the rule invalid, it did also consider the rationale put forward in the 2003 ROD that the Tongass Exemption was justified due to the subsequent legal challenges to the rule and efforts to quell them. *Kake*, 795 F.3d at 969-970. The *Kake* court noted that "[t]he 2003 ROD states that '[a]dopting this final rule reduces the potential for conflicts regardless of the disposition of the various lawsuits' over the Roadless Rule." *Id*. 970. Despite the then-brief litigation history of the Roadless Rule, "the Department could not have rationally expected that the Tongass Exemption would even have brought certainty to the litigation about this particular forest." *Id*.

Given that the Roadless Rule has now spawned "over two decades" of litigation directly involving Defendants as litigants, and given that Defendants were a party to the litigation in *Kake* that specifically faulted USDA for grounding its previous Tongass Exemption partially on this very point, Defendants cannot reasonably expect that the 2023 repeal of the Alaska Rule would restore "stability and predictability" to Tongass management. FS 10039508. Defendants' justifications otherwise are spurious and should be rejected.

*Alaska v. U.S. Dep't. of Agric., et al.*                                    Case No. 3:23-cv-00203-SLG
State's Opening Brief                                                          Page 28 of 36
Case 3:23-cv-00203-SLG    Document 39    Filed 04/02/24    Page 35 of 43

Moreover, as clearly demonstrated by the background provided by Defendants in the 2020 ROD, the Roadless Rule was not imposed on the Tongass until 2001, after which brief period it was exempted in 2003, then resurrected in 2011, exempted again in 2020, and resurrected once more with Defendants' 2023 repeal challenged in this case. FS 813774-75. Instead of leading to finality, the Defendants' back-and-forth policy decisions have created a situation where the only predictable feature has been the irregularity of Roadless Rule application to the Tongass. As the Ninth Circuit *en banc* panel held in *Kake*, Defendants' determination to partially rest repeal of the Alaska Rule on these grounds violated the APA.

## IV. Comments to the 2023 rulemaking provided no new information beyond that already analyzed and cannot justify departure from the Alaska Rule.

Defendants appeared to partially ground the repeal of the Alaska Rule on the finding in the 2023 ROD that "this final rule also *is more responsive to the vast majority of comments received as part of the 2020 rulemaking* as well as in response to this rulemaking." FS 01039509 (emphasis added). The Ninth Circuit *en banc* panel in *Kake* also considered and rejected a similar rationale where "the 2003 ROD expressly conceded that these comments raised no new issues beyond those already fully explored in the Roadless Rule FEIS." *Kake*, 795 F.3d at 969 (internal quotes removed). The *Kake* court held that it was "implausible that comments raising 'no new issues' regarding alternatives 'already fully explored' motivated the adoption of the final Roadless Rule." *Id*.

The 2020 ROD noted that:

[a] large majority of written comments and oral subsistence testimony supported retaining the 2001 Roadless Rule on the Tongass National Forest.

*Alaska v. U.S. Dep't. of Agric., et al.*                Case No. 3:23-cv-00203-SLG
State's Opening Brief                                              Page 29 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 36 of 43

Notably, a significant proportion of the 267,000 comments letters were from outside Alaska. A significant proportion of southeast Alaska municipal and tribal governments submitted resolutions supporting the 2001 Roadless Rule's application on the Tongass National Forest. However, many of the State's elected officials, including the Governor, the federal delegation, and some municipal governments support changing the 2001 Roadless Rule. The USDA considered all substantive comments as part of the rulemaking, including testimony given at the subsistence hearings.

FS 813782.

Certainly, Defendants did note in the 2023 ROD that "[t]he NEPA and rulemaking public comment processes are not vote counting processes." FS 1039522. But despite Defendants' assurances that "[n]o interest group's views or comments are given preferential treatment or consideration, and comments are considered without regard to their origin, commenter's affiliation, or number received[,]" those assurances fail to bely Defendants contrary statements. These statements, considered against Defendants' action to repeal the Alaska Rule, indicate that Defendants did in fact allow the decision to be steered by the number of comments. While Defendants were required to consider the comments it received in response to the proposed action to repeal the Alaska Rule, Defendants did not identify any new issues not discussed in the 2020 ROD or explain why it was placing new emphasis on comments expressed therein, and therefore acted in an arbitrary and capricious manned by relying on comments previously evaluated in the 2020 ROD. Beyond failing a perceived popularity contest, the Alaska Rule was developed and targeted at Alaska-specific issues; comments associated with the 2023 ROD provide nothing to support the Defendants' flip-flop on the issue.

*Alaska v. U.S. Dep't. of Agric., et al.*
State's Opening Brief
Case No. 3:23-cv-00203-SLG
Page 30 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 37 of 43

**V. Defendants did not adequately consider the impacts of the Roadless Rule on renewable energy projects when it repealed the Alaska Rule.**

Defendants note in the 2020 FEIS that "[t]he existing transmission system in Southeast Alaska is limited." FS 00813145. While Defendants went to great lengths in the 2020 FEIS and elsewhere to reassure that the Roadless Rule does not directly prohibit a number of the renewable energy and related utility projects, Defendants necessarily acknowledged the reality that "[t]emporary or permanent roads are not permitted in IRAs, with exceptions, though temporary linear construction zones can be authorized. The restriction on road building, including construction access roads, may pose a challenge for routes that cross IRAs, potentially increasing construction and maintenance costs." *Id*. FS 00813146. Also, "[r]oadbuilding is currently prohibited for any new leasable projects, including geothermal projects, within IRAs." *Id*. FS 00813038.

While Defendants similarly note the potential for some narrow exceptions to be granted under the Roadless Rule, they acknowledge in the 2020 FEIS that "[a]lthough these projects can be permitted under Alternative 1 [Roadless Rule], there is likely to be improvement for project development under each of the action alternatives because of the broadening of the rule language regarding access for the construction, expansion, or maintenance of facilities." *Id*.; FS 00813146.

Meanwhile, the passage of the Inflation Reduction Act, Public Law 117-169 on August 16, 2022, constituted a significant new circumstance that required Defendants to perform a renewed evaluation and analysis of the impacts prior to promulgating the 2023 ROD to reinstate the Roadless Rule on the Tongass. The Inflation Reduction Act

*Alaska v. U.S. Dep't. of Agric., et al.*                    Case No. 3:23-cv-00203-SLG
State's Opening Brief                                                    Page 31 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 38 of 43

constituted a dramatic national pivot towards renewable sources of power generation, and especially since Defendants' nationwide policies encourage such development, Defendants should have reexamined whether the effects analysis in the FEIS remained adequate before reinstating roadless limitations. Yet in responding to comments noting that separate new information or changed circumstances existed (related to the USDA Southeast Sustainability Strategy and private timber owner shifts away from logging), Defendants in the 2023 ROD made no note of any consideration of the Inflation Reduction Act, and clearly did not consider its impacts with regard to energy and utility projects on the Tongass. *See discussion at* FS 1039523-24.

The Ninth Circuit has held that "NEPA requires agencies to prepare a supplemental EA when '[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts.' 40 C.F.R. § 1502.9(d)(1)(ii) (2020). 'New circumstances' are circumstances which significantly change the underlying project, and 'new information' is intervening information not already considered." *Earth Island Inst. v. U.S. Forest Serv.*, 87 F.4th 1054, 1069 (9th Cir. 2023) (internal citations omitted). Where the Inflation Reduction Act initiated a dramatic shift in the cost analysis applicable to many renewable energy projects, Defendants should have performed supplemental analysis to the FEIS to determine whether the Roadless Rule posed an unacceptable hurdle to newly invigorated power generation possibilities.

While the *Earth Island* court noted that every new circumstance did not require a NEPA supplemental analysis, it held that "new information or circumstances must show that the action will affect the quality of the human environment in a significant manner or

to an extent not already considered." *Id.* at 1069 (*citing Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 376 (1989)). The FEIS, published in September of 2020, identified "five proposed or unconstructed renewable energy projects in IRAs." FS 813145. Given the substantial boost given to such projects by the IRA, Defendants violated the APA by failing to adequately consider the impacts of repeal of the Alaska Rule on renewable energy projects, including geothermal and hydroelectric projects, and potential transmission routes in and adjacent to the Tongass. At a minimum, Defendants should reevaluate whether the Roadless Rule continues to make sense for the Tongass after the Inflation Reduction Act, given the need to shift Southeast communities away from expensive, fossil fuel-reliant power generation and the improved funding situation for such projects.

Defendants, in denying utility and power projects road access, in many cases force State, local, and private entities to rely on helicopters or other means of access to hydropower dams, transmission lines and other facilities. This results in unnecessary constraints on the economic and social needs of Southeast Alaska, reduces reliability, increases the costly and carbon-intensive reliance on diesel-based generation in many small communities, and greatly increases the cost of power to all Southeast Alaskan communities. Providing approval for projects that cannot be built due to the unreasonable costs associated with the conditions of approval does not sidestep the problem, and Defendants' failure to provide a reasonable explanation for the change was arbitrary and capricious.

*Alaska v. U.S. Dep't. of Agric., et al.*                    Case No. 3:23-cv-00203-SLG
State's Opening Brief                                        Page 33 of 36
Case 3:23-cv-00203-SLG    Document 39    Filed 04/02/24    Page 40 of 43

# CONCLUSION

For the foregoing reasons, the Court should grant the State's Motion for Summary Judgment, and vacate Defendants' administrative repeal of the Alaska Rule, restoring that rule to application to the Tongass.

DATED this 2nd day of April, 2024.

TREG TAYLOR
ATTORNEY GENERAL

By: */s/ Thad Adkins*
Thad Adkins (Alaska Bar No. 2205032)
Assistant Attorney General
Ronald W. Opsahl (Alaska Bar No. 2108081)
Senior Assistant Attorney General
Department of Law
1031 West 4th Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5100
Facsimile: (907) 276-3697
Email:        thad.adkins@alaska.gov
              ron.opsahl@alaska.gov

*Alaska v. U.S. Dep't. of Agric., et al.*                    Case No. 3:23-cv-00203-SLG
State's Opening Brief                                         Page 34 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 41 of 43

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

This document complies with the word limit of Local Civil Rule 7.4(a)(1) because, excluding the parts of the document exempted by Local Civil Rule 7.4(a)(4), this document contains 9,010 words.

*/s/ Thad Adkins*
Thad Adkins
Assistant Attorney General

*Alaska v. U.S. Dep't. of Agric., et al.*      Case No. 3:23-cv-00203-SLG
State's Opening Brief      Page 35 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 42 of 43

# CERTIFICATE OF SERVICE

I certify that on April 2, 2024, true and correct copies were served by electronic means through the ECF/CM system.


*/s/ Christian S. Faatoafe*
Christian S. Faatoafe
Law Office Assistant II

*Alaska v. U.S. Dep't. of Agric., et al.*     Case No. 3:23-cv-00203-SLG
State's Opening Brief     Page 36 of 36
Case 3:23-cv-00203-SLG   Document 39   Filed 04/02/24   Page 43 of 43