TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

PAUL G. FREEBORNE
Trial Attorney
VA State Bar No. 33024
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 532-5271
Fax: (202) 305-0275
Email: paul.freeborne@usdoj.gov

EMMA L. HAMILTON
Trial Attorney
CA State Bar No. 325360
Natural Resources Section
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1361
Email: emma.hamilton@usdoj.gov

*Counsel for Federal Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:23-cv-00203-SLG |
| ) | |
| v. ) | CONSOLIDATED |
| ) | |
| THE UNITED STATES ) | LEAD CASE |
| DEPARTMENT OF AGRICULTURE, ) | |
| *et al.*, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| ORGANIZED VILLAGE OF KAKE, ) | |

*et al.*,                                   )
                                            )
    Intervenor-         )
    Defendants          )

INSIDE PASSAGE ELECTRIC                     )
COOPERATIVE, *et al.*,                      )
                                            )   Case No. 3:23-cv-00204-SLG
    Plaintiffs,         )
                                            )   CONSOLIDATED
      v.       )
                                            )
THE UNITED STATES                           )
DEPARTMENT OF AGRICULTURE,                  )
*et al.*,                                   )
                                            )
    Defendants,         )
                                            )
ORGANIZED VILLAGE OF KAKE,                  )
*et al.*,                                   )
                                            )
    Intervenor-         )
    Defendants          )

GOVERNOR FRANK MURKOWSKI,                   )
*et al.*,                                   )
                                            )   Case No. 1:23-cv-00010-SLG
    Plaintiffs,         )
                                            )   CONSOLIDATED
      v.       )
                                            )
TOM VILSACK, *et al.*,                      )
                                            )
    Defendants,         )
                                            )
ORGANIZED VILLAGE OF KAKE,                  )
*et al.*,                                   )
                                            )
    Intervenor-         )
    Defendants          )

**FEDERAL DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT AND
<u>OPPOSITION TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT</u>**

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.    i
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 3 of 80

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 4

    I.    2001 Roadless Rule Background ................................................................. 4

    II.    Litigation Over the 2001 Roadless Rule ................................................... 7

    III.    The 2020 Alaska Rule .............................................................................. 10

    IV.    The 2023 Final Rule Repealing the Alaska Rule ..................................... 12

    V.    Plaintiffs' Allegations .............................................................................. 14

LEGAL BACKGROUND ........................................................................................ 16

    I.    The Organic Administration Act .............................................................. 16

    II.    The Multiple-Use Sustained-Yield Act of 1960 ...................................... 17

    III.    The National Environmental Policy Act ................................................. 17

    IV.    The National Forest Management Act ..................................................... 18

STANDARD OF REVIEW ..................................................................................... 18

ARGUMENT ....................................................................................................... 19

    I.    Plaintiffs Fail to Establish Article III Standing ....................................... 19

        A.    The State and Murkowski Plaintiffs Fail to Submit Evidence of Standing ............................................................................................ 20

        B.    The IPEC Plaintiffs' Speculative Allegations Fail to Establish Standing ............................................................................................ 21

    II.    Plaintiffs' Statutory Challenge to the 2023 Final Rule Fails on the Merits ...................................................................................................... 25

        A.    USDA Has Broad Discretion to Manage NFS Lands .................... 26

        B.    Neither the Organic Act nor MUSYA Prohibits the 2023 Final Rule ................................................................................................. 29

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG

Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   ii

Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 4 of 80

i.      The plain text of the Organic Act supports the application of Roadless Rule management to the Tongass ............................................................. 29

ii.     The 2023 Final Rule does not violate MUSYA's multiple use direction.......................................... 34

C.      The Alaska-Specific Statutes Plaintiffs Invoke Do Not Displace USDA's Authority to Apply Roadless Rule Management to the Tongass .......................................... 35

i.      ANILCA § 101(d) does not prohibit the Roadless Rule ...... 36

ii.     The Roadless Rule is not a "withdrawal" subject to ANILCA § 1326(a) .............................................. 38

iii.    The Roadless Rule is not a "single purpose study" and does not violate ANILCA § 1326(b) ................................... 45

iv.     ANILCA § 708 does not prohibit the Roadless Rule .......... 47

v.      Neither the Alaska Statehood Act, SAFETEA-LU, 16 U.S.C. § 524, 16 U.S.C. § 534, nor the "intent" of any of those statutes prohibits the Roadless Rule...................... 48

III.    The "Major Questions" Doctrine is Not Implicated by the 2023 Final Rule ............................................................................................. 50

IV.     The Non-Delegation Doctrine is Not Implicated by the 2023 Rule............. 52

V.      USDA Adequately Explained its Change in Position in the 2023 Rule....... 57

A.      USDA Provided a Reasoned Explanation for its Change in Position........................................................................... 58

B.      USDA's Change in Position Was Not Based on New Factual Findings........................................................................... 59

VI.     Should the Court Reach Remedy, Vacatur is Inappropriate ...................... 64

CONCLUSION ............................................................................................. 65

*SOA v. USDA, et al.*, No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.    iii
Case 3:23-cv-00203-SLG    Document 44    Filed 06/26/24    Page 5 of 80

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*A.L.A. Schecter Poultry Corp. v. United States,*
  295 U.S. 495 (1935) ................................................................ 54

*Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.,*
  594 U.S. 758 (2021) ................................................................ 51

*Alaska Indus. Dev. & Exp. Auth. v. State of Alaska,*
  No.3:21-cv-00245-SLG, 2023 WL 5021555 (D. Alaska Aug. 7, 2023) ...................... 57

*Alaska v. U.S. Dep't of Agric.,*
  17 F.4th 1224 (D.C. Cir. 2021) ...............................................9, 12, 21

*Alaska v. U.S. Dep't of Agric.,*
  273 F. Supp. 3d 102 (D.D.C. 2017) .........................................9, 10, 39, 40

*Am. Power & Light Co. v. Securities & Exch. Comm'n,*
  329 U.S. 90 (1946) ................................................................ 53

*Bob Marshall All. v. Hodel,*
  852 F.2d 1223 (9th Cir. 1988) ................................................ 10, 40

*Califano v. Yamasaki,*
  442 U.S. 682 (U.S. Hawaii, 1979) ................................................. 65

*California Communities Against Toxics v. EPA,*
  688 F.3d 989 (9th Cir. 2012) ..................................................... 65

*Citizens for Better Forestry v. U.S. Dep't of Agric.,*
  341 F.3d 961 (9th Cir. 2003) ..................................................... 18

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) .........................................................20, 22, 24

*Conn. Nat'l Bank v. Germain,*
  503 U.S. 249 (1992) .............................................................. 47

*Consumer Prod. Safety Comm'n v. GTE Sylvania,*
  447 U.S. 102, (1980) ............................................................. 43

*Ctr. for Biological Div. v. U.S. Forest Serv.,*
  80 F.4th 943 (9th Cir. 2023) ..................................................... 27

*Dastervignes v. United States,*
  122 F. 30 (9th Cir. 1903) ........................................................ 30

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   iv

Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 6 of 80

*Dep't of Fish & Game v. Fed. Subsistence Bd.,*
  No. 3:20-cv-00195-SLG, 2023 WL 7282538 (D. Alaska Nov. 3, 2023) .................... 51

*Encino Motorcars, LLC v. Navarro,*
  579 U.S. 211 (2016) ......................................................................................... 57

*F.C.C. v. Fox Television Station, Inc.,*
  556 U.S. 502 (2009) .................................................................... 3, 57, 58, 61

*F.D.A. v. Brown & Williamson Tobacco Corp.,*
  529 U.S. 120 (2000) ......................................................................................... 50

*Fed. Power Comm'n v. Hope Nat. Gas Co.,*
  320 U.S. 591 (1944) ......................................................................................... 54

*Fla. Power & Light Co. v. Lorion,*
  470 U.S. 729 (1985) ......................................................................................... 64

*George v. McDonough,*
  596 U.S. 740 (2022) ......................................................................................... 40

*Gundy v. United States,*
  588 U.S. 128 (2019) ................................................................................... 52, 53

*Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.,*
  861 F.3d 944 (9th Cir. 2017) .......................................................................... 16

*Khatib v. Cnty. of Orange,*
  639 F.3d 898 (9th Cir. 2011) .......................................................................... 47

*Kleppe v. New Mexico,*
  426 U.S. 529 (1976) ......................................................................................... 54

*Kootenai Tribe of Idaho v. Veneman,*
  313 F.3d 1094 (9th Cir. 2002) ................................................... 2, 8, 28, 32

*Light v. United States,*
  220 U.S. 523 (1911) ................................................................... 17, 27, 56

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ................................................................... 19, 20, 25

*Marathon Oil Co. v. Babbitt,*
  966 F. Supp. 1024 (D. Colo. 1997) ............................................................... 24

*McMichael v. United States,*
  355 F.2d 283 (9th Cir. 1965) ................................................... 31, 32, 55

*Mistretta v. United States,*
  488 U.S. 361 (1989) ................................................................................... 53, 54

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.    v

Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 7 of 80

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ........................................................................... 19

*Mountain States Legal Found. v. Glickman,*
  92 F.3d 1228 (D.C. Cir. 1996) ........................................................ 34

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife,*
  551 U.S. 644 (2007) ........................................................................ 42

*Nat'l Broad. Co. v. United States,*
  319 U.S. 190 (1943) ........................................................................ 54

*Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs,*
  384 F.3d 1163 (9th Cir. 2004) ........................................................ 18

*Nat'l Wildlife Fed'n. v. U.S Forest Serv.,*
  592 F. Supp. 931 (D. Or. 1984) ...................................................... 56

*Nat'l Wildlife v. Espy,*
  45 F.3d 1337 (9th Cir. 1995) .......................................................... 64

*Native Ecosystems Council v. Weldon,*
  697 F.3d 1043 (9th Cir. 2012) ........................................................ 18

*Navajo Nation v. U.S. Forest Serv.,*
  535 F.3d 1058 (9th Cir. 2008) ........................................................ 63

*New Mexico ex rel. Richardson v. Bureau of Land Mgmt.,*
  565 F.3d 683 (10th Cir. 2009) ........................................................ 35

*New Mexico v. Watkins,*
  969 F.2d 1122 (D.C. Cir. 1992) ...................................................... 39

*Norton v. S. Utah Wilderness All.,*
  542 U.S. 55 (2004) .......................................................................... 35

*Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.,*
  531 F.3d 1114 (9th Cir. 2008) ........................................................ 28

*Or. Nat. Res. Council v. Thomas,*
  92 F.3d 792 (9th Cir. 1996) ............................................................ 16

*Osborne v. United States,*
  145 F.2d 892 (9th Cir. 1944) .......................................................... 31

*Panama Refin. Co. v. Ryan,*
  293 U.S. 388 (1935) ........................................................................ 54

*Perkins v. Bergland,*
  608 F.2d 803 (9th Cir. 1979) .......................................................... 28

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.    vi

Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 8 of 80

*Pub. Lands for the People v. U.S. Dep't of Agric.*,
  697 F.3d 1192 (9th Cir. 2012)................................................................. 31

*Raines v. Byrd*,
  521 U.S. 811 (1997)............................................................................... 20

*Rattlesnake Coal. v. EPA*,
  509 F.3d 1095 (9th Cir. 2007)............................................................... 18

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock*,
  993 F.2d 800 (11th Cir. 1993)............................................................... 24

*Robertson v. Methow Valley Citizens Council*,
  490 U.S. 332 (1989)............................................................................... 18

*Rocky Mountain Oil & Gas Ass'n v. U.S. Forest Serv.*,
  157 F. Supp. 2d 1142 (D. Mont. 2000).................................................. 40

*Sabin v. Butz*,
  515 F.2d 1061 (10th Cir. 1975).............................................................. 31

*Safari Club Int'l v. Haaland*,
  31 F.4th 1157 (9th Cir. 2022)....................................................35, 38, 42

*Southeast Conference v. Vilsack*,
  684 F. Supp. 2d 135 (D.D.C., 2010)................................................ 39, 41

*Stacey v. Jewell,*
  No. 3:13-cv-00113-RRB, 2015 WL 926271 (D. Alaska Mar. 3, 2015)................ 15, 16

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)................................................................................. 19

*Strickland v. Morton*,
  519 F.2d 467 (9th Cir. 1975)........................................................... 28, 57

*Sturgeon v. Frost*,
  587 U.S. 28 (2019)................................................................................. 38

*Taggart v. Lorenzen*,
  587 U.S. 554 (2019)............................................................................... 40

*Touby v. United States*,
  500 U.S. 160 (1991)......................................................................... 54, 56

*United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*,
  484 U.S. 365 (1988)............................................................................... 42

*United States v. Grimaud*,
  220 U.S. 506 (1911)...................................................................17, 27, 55, 56

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   vii

Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 9 of 80

*United States v. Hymans,*
   463 F.2d 615 (10th Cir. 1972) ................................................................... 31

*United States v. Karma,*
   394 F.3d 1236 (9th Cir. 2007) ................................................................... 15

*United States v. Melgar-Diaz,*
   2 F.4th 1263 (9th Cir. 2021) ............................................................... 53, 54

*United States v. Nw. Pine Prods., Inc.,*
   914 F. Supp. 404 (D. Or. 1996) ................................................................. 31

*United States v. Texas,*
   599 U.S. 670 (2023) ................................................................................... 64

*United States v. Weiss,*
   642 F.2d 296 (9th Cir. 1981) ............................................................... 32, 33

*Vill. of Kake v. U.S. Dep't of Agric.,*
   776 F. Supp. 2d 960 (D. Alaska 2011) ........................................... 8, 14, 21

*Vill. of Kake v. U.S. Dep't of Agric.,*
   795 F.3d 956 (9th Cir. 2015) ................................................................. 9, 60

*Vt. Yankee Nuclear Power Corp. v. Nat'l Res. Def. Council,*
   435 U.S. 519 (1978) ................................................................................... 17

*W. Virginia v. Env't Prot. Agency,*
   597 U.S. 697 (2022) ............................................................................. 50, 51

*Wasco Prods., Inc. v. Southwall Techs., Inc.,*
   435 F.3d 989 (9th Cir. 2006) ..................................................................... 63

*Whitman v. Am. Trucking Ass'ns,*
   531 U.S. 457 (U.S. 2001) ........................................................................... 54

*WildEarth Guardians v. U.S. Forest Serv.,*
   70 F.4th 1212 (9th Cir. 2023) ................................................................... 20

*Wilderness Ass'n v. U.S. Forest Serv.,*
   655 F.2d 951 (9th Cir. 1981) ............................................................... 42, 43

*Wilderness Soc'y v. U.S. Fish & Wildlife Serv.,*
   353 F.3d 1051 (9th Cir. 2003) ................................................................... 37

*Wyoming v. Dep't of Agric.,*
   568 U.S. 928 (U.S., Oct. 1, 2012) ............................................................. 52

*Wyoming v. U.S. Dep't of Agric.,*
   661 F.3d 1209 (10th Cir. 2011) ................................... 4, 5, 8, 28, 34, 47

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots. viii
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 10 of 80

*Yakus v. United States*,
321 U.S. 414 (1944) ................................................................ 54

**Statutes**

16 U.S.C. § 1604(a) ............................................................... 18

16 U.S.C. § 1604(i) ................................................................ 18

16 U.S.C. § 3101(d) ......................................................... 36, 37

16 U.S.C. § 3102(4) ............................................................... 44

16 U.S.C. § 3141 .................................................................... 46

16 U.S.C. § 3209(a) ............................................................... 42

16 U.S.C. § 3213 .................................................................... 38

16 U.S.C. § 3213(a) ....................................................39, 42, 45

16 U.S.C. § 3213(b) ............................................................... 45

16 U.S.C. § 475 ..................................................................... 33

16 U.S.C. § 478 ..................................................................... 33

16 U.S.C. § 524 ............................................................... 48, 49

16 U.S.C. § 528 ...................................................17, 26, 30, 34

16 U.S.C. § 529 ............................................................... 26, 34

16 U.S.C. § 531(a) ..........................................................17, 26, 34

16 U.S.C. § 532 ..................................................................... 48

16 U.S.C. § 534 ..................................................................... 48

16 U.S.C. § 551 ..................................................2, 17, 26, 29, 30

42 U.S.C. § 4332(2)(C) .......................................................... 18

42 U.S.C. §§ 4321-4370m-12 ................................................ 17

43 U.S.C. § 1702 ................................................................... 39

43 U.S.C. § 1702(j) ............................................................... 39

43 U.S.C. § 932 ..................................................................... 49

5 U.S.C. § 706(2)(A) ............................................................. 18

Pub. L. No. 109–59, 119 Stat. 114 (2005) ............................. 49

Pub. L. No. 113-291, 128 Stat. 3292 (2014) ........................... 38

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.    ix

Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 11 of 80

Pub. L. No. 115-31, 131 Stat. 135 (2017) ..................................................... 38

Pub. L. No. 94-579, 90 Stat. 706 (1976) ....................................................... 49

Pub. L. No. 96–487, 94 Stat. 708 (1980) ...................................................... 47

**Regulations**

36 C.F.R. § 220.4(j) ............................................................................... 13

36 C.F.R. § 251.50 ................................................................................. 24

36 C.F.R. § 251.54 ................................................................................. 24

36 C.F.R. § 261.6(a) .............................................................................. 31

36 C.F.R. § 294.12(a) (2001) ................................................................... 6

36 C.F.R. § 294.12(b)(1) ......................................................................... 6

36 C.F.R. § 294.12(b)(3) ............................................................... 6, 23, 49

36 C.F.R. § 294.12(b)(6) ......................................................................... 6

36 C.F.R. § 294.12(b)(7) ......................................................................... 6

36 C.F.R. § 294.12(c) (2001) ................................................................. 23

43 C.F.R. § 2310.1 ................................................................................ 45

64 Fed. Reg. 56,306 (Oct. 19, 1999) .......................................................... 4

64 Fed. Reg. 67,822 (Dec. 3, 1999) ........................................................... 5

66 Fed. Reg. 3,244 (Jan. 12, 2001) ............................................................ 6

66 Fed. Reg. 3,244, (Jan 12, 2001) ............................................................ 5

66 Fed. Reg. 3,248, (Jan 12, 2001) ............................................................ 5

66 Fed. Reg. 3,252 (Jan. 12, 2001) ........................................................... 28

66 Fed. Reg. 3,254 (Jan. 12, 2001) ............................................................ 6

66 Fed. Reg. 3,256 (Jan. 12, 2001) ........................................................... 40

66 Fed. Reg. 3,272 (Jan. 12, 2001) ......................................................... 6, 7

68 Fed. Reg. 41,864 (July 15, 2003) .......................................................... 8

68 Fed. Reg. 75,136 (Dec. 30, 2003) ......................................................... 8

85 Fed. Reg. 68,688 (Oct. 29, 2020) ........................... 10, 11, 12, 28, 58, 59

88 Fed. Reg. 5,252 (Jan. 27, 2023) ........................ 1, 12, 14, 23, 24, 28, 33, 58

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG

Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.    x

Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 12 of 80

88 Fed. Reg. 5,254 (Jan. 27, 2023) .................................................................. 13

88 Fed. Reg. 5,272 (Jun. 27, 2021) .................................................................. 13

Pub. L. No. 86-70, 73 Stat. 141 (1959) ........................................................... 49

**Other Authorities**

H.R. 2596, 100th Cong. (1988) ......................................................................... 38

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG

Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.    xi

Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 13 of 80

## INTRODUCTION

The question of how to manage roadless areas in the National Forest System ("NFS") has been the subject of controversy and litigation for decades. Recently the Secretary of the United States Department of Agriculture ("USDA") opted to return the Tongass National Forest to the preexisting management regime by repealing a 2020 Tongass exception to the 2001 Roadless Rule—which generally prohibits road construction in existing inventoried roadless areas—finding it would foster ecosystem health, permit sustained local economic development, and protect roadless areas that are important to local populations and Native peoples. *See* Special Areas; Roadless Conservation; NFS Lands in Alaska, 88 Fed. Reg. 5,252 (Jan. 27, 2023) ("2023 Final Rule"). While Plaintiffs disagree with this policy decision, it falls well within the Secretary's broad authority to manage NFS lands and should be upheld under the Administrative Procedure Act's ("APA's") deferential standard of review.

The Court should reject Plaintiffs' claims and grant Federal Defendants summary judgment. At the outset, the Court should reject Plaintiffs' challenge because they have not shown they have Article III standing. The State and Murkowski Plaintiffs fail to offer any evidence to carry their burden of establishing standing. And while the Inside Passage Electric Cooperative ("IPEC") Plaintiffs do offer standing declarations, those declarations provide no more than speculation that USDA will refuse to authorize projects in which they have an interest. But the Roadless Rule provides exceptions for mineral, energy, recreation, and transportation projects. The IPEC Plaintiffs' speculation that future projects

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.    1
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 14 of 80

will not be deemed to fall within those exceptions is insufficient to demonstrate the concrete harm Article III standing requires.

Even if Plaintiffs could establish standing, their claims fail on the merits. As for Plaintiffs' claim that the Secretary lacks statutory authority to regulate NFS lands on the Tongass, the Ninth Circuit has previously concluded that the general rulemaking authority of the 1897 Organic Administration Act, 16 U.S.C. § 551, alone, "is sufficient to support the Roadless Rule's promulgation to achieve the objects of our National Forest System." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1117 n.20 (9th Cir. 2002). Plaintiffs' repeated assertions that "Alaska-specific" statutes trump the Secretary's broad statutory discretion fail to counter this longstanding precedent.

Plaintiffs' attempt to invoke the "major questions" doctrine fails because the Secretary is acting within the heartland of statutory direction that has been exercised and upheld for over a century. It is thus not novel or unprecedented, as in the cases Plaintiffs rely upon. Plaintiffs' non-delegation doctrine challenge similarly fails; while the Secretary's statutory authority to protect NFS lands is broad, the Supreme Court long ago rejected non-delegation challenges to that authority.

Lastly, the reinstatement of the 2001 Roadless Rule and return to the preexisting management regime on the Tongass does not violate the APA. In accordance with the four-part test in *FCC v. Fox Television Stations, Inc.* ("*Fox*"), the Secretary [1] displayed an awareness that he was changing position in reinstating the preexisting management regime; [2] had broad statutory discretion to change position; [3] explained that there were "good

*SOA v. USDA, et al.*, No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.    2
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 15 of 80

reasons for" reinstating the preexisting management regime; and [4] explained why he believes that the policy change better serves the public by protecting the Tongass. 556 U.S. 502, 515 (2009).

Contrary to Plaintiffs' assertion, the Secretary's decision to reinstate the Roadless Rule on the Tongass did not rest on new factual determinations that required further justification. The Secretary's 2023 decision rests on the same Environmental Impact Statement ("EIS") and facts as the agency's October 2020 Rule; the Secretary simply reached a different judgment based upon those facts. In 2020, USDA determined that the adverse consequences of exempting the Tongass from the Roadless Rule were acceptable. Based on the same EIS and facts, the Secretary has now changed position, placing greater emphasis on ecosystem health, climate resiliency, subsistence and cultural uses, outdoor recreational opportunities, and sustainable local economic development. There was nothing arbitrary and capricious about that change in policy, which comports with *Fox* and APA principles and the Secretary's statutory authority.

Because the 2023 Rule is fully compliant with the Secretary's statutory mandates and because the Secretary explained the change in position from the 2020 Rule, Plaintiffs' motions for summary judgement should be denied, and Federal Defendants' cross-motion for summary judgement should be granted.

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.     3
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 16 of 80

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    2001 Roadless Rule Background

USDA has administratively designated and protected undeveloped lands within the National Forest System for more than 100 years. *See* Anne Riddle & Adam Vann, Cong. Rsch. Serv., R46504, *Forest Service Inventoried Roadless Areas* 2-3 (2020). USDA established the first administrative wilderness area in 1924, and in 1929 established a series of land classifications ("the L-20 regulations") designating natural areas for scientific and educational purposes; experimental forests and ranges for long-term research unfettered by other management objectives; and primitive areas "to maintain primitive conditions of transportation, subsistence, habitation, and environment to the fullest degree compatible with their highest public use." *Id.*

In the 1970s, USDA undertook a "Roadless Area Review and Evaluation project (RARE II)," which identified Inventoried Roadless Areas ("IRAs") across the nation that were potentially suitable for inclusion in the National Wilderness Preservation System. *See Wyoming v. U.S. Dep't of Agric.*, 661 F.3d 1209, 1222 (10th Cir. 2011). Congress subsequently designated some IRAs as "Wilderness," while the remaining IRAs continued to be managed on a forest-by-forest basis. *Id.* In the late 1990s, USDA again reevaluated its road-management and undeveloped lands policies and issued a notice of intent to begin a rulemaking on management of IRAs within the National Forest System.

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.    4
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 17 of 80

64 Fed. Reg. 56,306 (Oct. 19, 1999); RR0150[1]; *see Wyoming*, 661 F.3d at 1222-26 (discussing history of IRAs). To solicit public comment on the scope of alternatives and to gather information on issues raised by roadless area conservation, USDA held nearly 190 public meetings around the country, which were attended by some 16,000 people. *See* 66 Fed. Reg. 3,244, 3,248 (Jan 12, 2001); RR5796 at 6. These "scoping" meetings consisted of ten regional and national meetings, as well as local meetings on every National Forest System unit, including the Tongass. *Id.*

In Alaska, USDA held more than a dozen meetings in communities throughout the State. 64 Fed. Reg. 67,822, 67,825-29 (Dec. 3, 1999); RR0149. Recognizing that the Tongass represented a unique ecological, social, and economic situation, USDA considered additional alternatives specific to the Tongass. These alternatives included not applying the Rule to the Tongass, deferring the decision of applying the Rule to the Tongass so that it could be made as part of the 5-year review of the 1999 Tongass Forest Plan, and applying the Rule to only certain IRA lands within the Tongass. RR4608.

---

[1] USDA lodged the Administrative Record on January 19, 2024. ECF No. 20. The Administrative Record includes: [1] the Administrative Record for the 2023 Final Rule challenged in this case, [2] the Administrative Record for the 2001 Roadless Rule, and [3] the Administrative Record for the 2003 Alaska Exemption. *See id.* at 2-3. Materials in the Administrative Records for the 2001 and 2003 Rules are identified by document numbers with numeric pagination, while materials in the Administrative Record for the 2023 Final Rule are identified by a unique Bates number on each page. The citation format for materials in the 2023 Final Rule Record is FS followed by the eight-digit Bates number. The citation format for materials in the 2001 Roadless Rule Record is RR followed by the four-digit document number. The citation format for materials in the 2003 Alaska Exemption Record is AE followed by an alphanumeric document number. Here and below, this brief provides parallel citations to Federal Register Notices and their location in the Administrative Record.

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.    5
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 18 of 80

After taking and considering public comment on its environmental analysis, USDA adopted the final Roadless Rule in January 2001. 66 Fed. Reg. 3,244 (Jan. 12, 2001); RR5796. USDA determined that the risks to watersheds, wildlife habitat, and other unique "roadless area characteristics" outweighed the benefits of allowing road building and timber harvest within IRAs. *Id*. at 3,244-47, 3,267-68; RR5796 at 2-5, 25-26. The Final Rule applied to the Tongass. 66 Fed. Reg. at 3,254-55; RR5796 at 12-13.

The 2001 Roadless Rule prohibits road construction and reconstruction in IRAs. 66 Fed. Reg. at 3,272; RR5796 at 30 (36 C.F.R. § 294.12(a) (2001)). But the general prohibition is subject to several exceptions, including when a road is "needed to protect public health and safety in cases of an imminent threat of flood, fire, or other catastrophic event that, without intervention, would cause the loss of life or property," 66 Fed. Reg. at 3,272; RR5796 at 30 (§ 294.12(b)(1) (2001)); when a road is "needed pursuant to reserved or outstanding rights, or as provided for by statute or treaty," 66 Fed. Reg. at 3,272; RR5796 at 30 (§ 294.12(b)(3) (2001)); when the Secretary determines, under specified circumstances, to permit a Federal Aid Highway project, 66 Fed. Reg. at 3,272; RR5796 at 30 (§ 294.12(b)(6) (2001)); or when a road is needed "in conjunction with the continuation, extension, or renewal of a mineral lease on lands" under lease as of January 12, 2001, 66 Fed. Reg. at 3,272-73; RR5796 at 30-31 (§ 294.12(b)(7) (2001)).

As for timber harvest, the Roadless Rule prohibits the cutting, sale, or removal of timber from IRAs, subject to four exceptions. Under the Rule's so-called stewardship exemption, USDA may allow harvest of "generally small diameter timber," where it will

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   6
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 19 of 80

"maintain or improve" one or more "roadless area characteristics," and is undertaken to "improve threatened, endangered, proposed, or sensitive species habitat" or to "maintain or restore . . . ecosystem composition and structure, such as to reduce the risk of uncharacteristic wildfire effects." 66 Fed. Reg. at 3,273; RR5796 at 31 (§ 294.13(b)(1) (2001)). Timber harvest is also permitted where it is "incidental to the implementation of [an allowed] management activity," *id*. (§ 294.13(b)(2) (2001)); "needed and appropriate for personal or administrative use," *id*. (§ 294.13(b)(3) (2001)); or in specific areas where "[r]oadless characteristics have been substantially altered" by past road construction and timber harvest, *id*. (§ 294.13(b)(4) (2001)).

Because of litigation over the 2001 Roadless Rule's application to the Tongass, discussed below, the 2001 Roadless Rule applied to and governed roadless area management on the Tongass for only a few months in 2003, and later from 2011 to 2020. During that time, USDA approved dozens of requests to allow activities within IRAs on the Tongass, including timber harvest, mining projects, hydropower projects, electrical intertie projects, recreation projects, geothermal leases, and road and trail construction. *See* FS01039209-10.

## II.    Litigation Over the 2001 Roadless Rule

Upon promulgation, the 2001 Roadless Rule triggered multiple challenges, including a lawsuit filed by the State of Alaska. The history of the litigation surrounding the Roadless Rule is byzantine, but ultimately resulted in the Ninth and Tenth Circuits upholding the Rule. In *Kootenai Tribe of Idaho v. Veneman*, the Ninth Circuit reversed an

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.    7
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 20 of 80

Idaho district court's injunction against the Rule, finding the plaintiffs unlikely to succeed in claiming that the Rule was promulgated in violation of the National Environmental Policy Act ("NEPA"), the National Forest Management Act ("NFMA"), and the Organic Administration Act of 1897 ("Organic Act"). 313 F.3d 1094 (9th Cir. 2002). In *Wyoming v. U.S. Department of Agriculture*, the Tenth Circuit concluded that the agency complied with NEPA, NFMA, the Multiple-Use Sustained-Yield Act ("MUSYA"), and the Wilderness Act in promulgating the Rule. 661 F.3d at 1266-72.

Alaska's original challenge to the Roadless Rule was resolved in June 2003 through a settlement under which USDA agreed to publish a proposed rule which, if adopted, would temporarily exempt the Tongass from application of the Rule. *See* 68 Fed. Reg. 41,864, 41,865 (July 15, 2003); AE0401_wo_t051. In December 2003, after a public process, USDA issued a rule temporarily exempting the Tongass from the Rule. 68 Fed. Reg. 75,136 (Dec. 30, 2003); AE0401_ii301 ("2003 Tongass Exemption").

In 2011, this Court invalidated the 2003 Tongass Exemption and reinstated the Roadless Rule on the Tongass. *Org. Vill. of Kake v. U.S. Dep't of Agric.*, 776 F. Supp. 2d 960, 976 (D. Alaska 2011). The Court held, however, that portions of three previously authorized timber sales that included harvest and road construction in IRAs could move forward, and mentioned a number of other projects in IRAs that would not be affected by reapplication of the Roadless Rule, including the Kake-Petersburg Intertie Project and three other utility/transportation corridor projects, five mining projects, and nine hydroelectric projects. No. 1:09-cv-00023-JWS (D. Alaska 2011), ECF No. 85. The

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.     8
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 21 of 80

Ninth Circuit upheld this ruling in 2015. *Org. Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 970 (9th Cir. 2015).

Following reinstatement of the 2001 Roadless Rule on the Tongass, the State of Alaska again challenged the Roadless Rule, this time in the District of Columbia.[2] In September 2017, the U.S. District Court for the District of Columbia rejected each of the State's procedural and substantive challenges to the Rule, both nationally and as applied to Alaska. *Alaska v. U.S. Dep't of Agric.*, 273 F. Supp. 3d 102, 126 (D.D.C. 2017), *vacated in part, appeal dismissed in part*, 17 F.4th 1224 (D.C. Cir. 2021).

In *Alaska*, the D.C. District Court held that the Forest Service's environmental analysis of the Roadless Rule complied with NEPA's procedural requirements, *id.* at 117-22, and that the Roadless Rule as applied to the Tongass does not violate the Tongass Timber Reform Act ("TTRA"), the Alaska National Interest Lands Conservation Act ("ANILCA"), or NEPA, *id.* at 122-26. The court explained that, "[a]lthough Alaska [was] disappointed with the decision the USDA reached, there can be no doubt that the USDA considered market demand and sought to meet market demand under the TTRA while balancing its obligations to consider multiple uses under the MUSYA, the NFMA, and the Organic Act." *Id.* at 124. As for ANILCA, the court held that "the Rule does not withdraw the IRAs from the mineral leasing laws; it regulates the IRAs within the bounds

---

[2] Plaintiffs State of Alaska, IPEC, Southeast Conference, Alaska Electric Light and Power, Alaska Power and Telephone, Alaska Miners Association, Alaska Marine Lines, Inc., First Things First Foundation, Juneau Chamber of Commerce, City of Ketchikan, Ketchikan Gateway Borough, Southeast Stevedoring Corp, Hyak Mining Co, Inc., and the Southeast Alaska Power Agency were also plaintiffs in the 2011 challenge.

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.    9
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 22 of 80

of the mineral leasing laws." *Id.* (citing *Bob Marshall All. v. Hodel*, 852 F.2d 1223, 1229-30 (9th Cir. 1988)). Alaska appealed.

## III.    The 2020 Alaska Rule

In January 2018, in the wake of the D.C. District Court's decision upholding application of the Roadless Rule to the Tongass and while its appeal was pending, Alaska petitioned USDA, pursuant to the APA, to consider a state-specific rule to exempt the Tongass from the Roadless Rule. FS00813774. Secretary Perdue accepted the State's petition and agreed to review the State's concerns over roadless management and economic opportunities in southeast Alaska through a rulemaking. *Id.* USDA released an EIS under NEPA in September 2020. FS00812901-3595.

In October 2020, USDA issued a final rule exempting the Tongass from the Roadless Rule. 85 Fed. Reg. 68,688 (Oct. 29, 2020); FS00813774-89 ("2020 Alaska Rule"). In doing so, USDA relied on its "broad authority to protect and administer the NFS through regulation as provided by the Organic Administration Act . . . , [MUSYA], and [NFMA]," which "provide the Secretary of Agriculture with discretion to determine the proper uses within any area, including the appropriate resource emphasis and mix of uses." 85 Fed. Reg. at 68,691; FS00813777. USDA also recognized that "[r]oadless area management, like all multiple-use land management, is fundamentally an exercise in discretion and policy judgment concerning the best use of the NFS lands and resources, informed by the underlying facts and reasonable projections of possible social, economic, and environmental consequences." *Id.* USDA's change in policy thus did not "rest on

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   10
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 23 of 80

new factual findings contradicting the factual findings" USDA made in the Rule. *Id.*

The 2020 EIS examined six alternatives under NEPA to assess the potential environmental impact of the change in position. Alternative 1, the "no action" alternative, would continue applying the Roadless Rule to the Tongass. 85 Fed. Reg. at 68,689; FS00813775. Alternative 6, USDA's preferred alternative, exempted the Tongass from the Rule. *Id.* Of the about 14.7 million acres of IRAs on the Tongass, USDA determined that exempting the Tongass from the Rule would make 188,000 more acres available for timber production. FS00812997; 85 Fed. Reg. at 68,695; FS00813781. And exempting the Tongass from the Roadless Rule would increase road construction, from 994 miles to 1,043 miles over the next 100 years. FS00813116. USDA believed at the time it promulgated the 2020 Alaska Rule that these adverse consequences were acceptable considering the administration's emphasis at that time on "increasing rural economic opportunity, decreasing federal regulation, and streamlining federal government services." 85 Fed. Reg. at 68,691; FS00813777. USDA's change in policy in 2020—from applying the Roadless Rule to the Tongass to exempting the Tongass—was thus "the result of [USDA] assigning different value or weight to the various multiple uses" and not one that rested on "new factual findings contradicting the factual findings the USDA made in its 2001 Roadless Rule." *Id.*

USDA explained in the 2020 Alaska Rule that "[t]he Tongass Forest Plan[,] along with other conservation measures, will assure protection allowing roadless area values to prevail on the Tongass National Forest while offering additional flexibility to achieve

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   11
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 24 of 80

other multiple-use benefits." 85 Fed. Reg. at 68,688; FS00813774. USDA also explained

that "[t]he forest planning process is more flexible than the 2001 Roadless Rule's

regulatory approach, because plans are expected to be designed and attuned to local

circumstances and are intended to be periodically reviewed." 85 Fed. Reg. at 68,694;

FS00813780. USDA decided that permitting such management flexibility was the best

way to advance its overarching policy prerogative at the time, which was to "balance

economic development and environmental protection."[3] *Id.*

  In light of the 2020 Alaska Rule, the D.C. Circuit dismissed Alaska's appeal and

vacated as moot the portions of the district court's opinion that addressed applicability of

the 2001 Rule to the Tongass. *Alaska v. U.S. Dep't of Agric.*, 17 F.4th at 1231.

## IV. The 2023 Final Rule Repealing the Alaska Rule

  On November 23, 2021, USDA proposed repealing the 2020 Alaska Rule as part

of its review of the regulations promulgated by the prior administration and its review of

Tribal consultation policies and practices. 86 Fed. Reg. 66498 (Nov. 23, 2021);

FS00910030. USDA received about 112,000 comment letters whose majority favored the

proposed repeal. 88 Fed. Reg. at 5,253; FS01039506. Besides the comments, it received

fourteen petitions with over 130,000 names attached, all in favor of repeal. *Id.*

  For the 2023 rulemaking, USDA reviewed the 2020 EIS that it prepared when

---

[3] A coalition of Tribes, conservation groups, and sportsmen groups sued challenging the
2020 Alaska Rule. *Org. Vill. of Kake v. Vilsack*, Case No. 1:20-cv-00011-SLG. That
litigation was dismissed in March 2023 after USDA issued the 2023 Rule. *See id.* at ECF
Nos. 54-55.

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots. 12
Case 3:23-cv-00203-SLG Document 44 Filed 06/26/24 Page 25 of 80

analyzing alternatives for the 2020 Alaska Rule. 88 Fed. Reg. at 5,254; FS01039507. At that time, the 2020 EIS had been prepared less than two years prior and included an effects analysis for six alternatives covering a broad range of roadless management options, including both operation under, and exemption from, the 2001 Roadless Rule's prohibitions. Under USDA's NEPA regulations, it may prepare a Determination of NEPA Adequacy ("DNA") to determine whether an existing environmental analysis may be used in its entirety for a new proposed action. 36 C.F.R. § 220.4(j). If the Responsible Official determines that an existing NEPA analysis such as an EIS adequately assesses the environmental effects of the proposed action and reasonable alternatives, the existing analysis may be used rather than a new environmental analysis. *Id*. USDA prepared a DNA and determined that the 2020 EIS could be used in determining the potential environmental effects of reinstating the Roadless Rule on the Tongass. FS01039364-74; *see also* 88 Fed. Reg. at 5,270-71; FS01039523-24.

USDA also invited consultation with 19 Tribes in Southeast Alaska regarding the repeal of the 2020 Alaska Rule. 88 Fed. Reg. at 5,272; FS01039525. USDA held four formal tribal consultation sessions beginning in July 2021, with 12 of the 19 Tribes represented in at least one session. *Id.* The Tribes represented at these consultations expressed their strong desire to return management in the Tongass to the Roadless Rule. *Id.*

On January 27, 2023, USDA issued its final rule and record of decision ("ROD") selecting Alternative 1 to repeal the 2020 Alaska Rule and "return roadless management

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   13
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 26 of 80

on the Tongass to the regulatory regime previously in force, resulting in the reinstatement of the 2001 Roadless Rule as provided for in the U.S. District Court for the District of Alaska's 2011 judgment in *Organized Village of Kake v. USDA*, 776 F. Supp. 2d 960 (D. Alaska 2011)." 88 Fed. Reg. at 5,253; FS01039506. USDA again relied on its authority to protect and administer the National Forest System through regulation as provided by the Organic Act and MUSYA, which "provide the Secretary of Agriculture with discretion to determine the proper uses within any area, including the appropriate resource emphasis and mix of uses." 88 Fed. Reg. at 5,257; FS01039510. And "[l]ike the 2020 Alaska Roadless Rule," the 2023 Final Rule reinstating the Roadless Rule on the Tongass was "based on a reevaluation of the social value of the various uses of the Tongass, rather than on new factual findings" that contradicted those underlying the 2020 Alaska Rule. 88 Fed. Reg. at 5,255; FS01039508. USDA believes that the adverse consequences of exempting the Tongass from the Roadless Rule, including the effects of making more old-growth acreage available for timber production, the environmental effects of increased road construction, and the previous rule's undervaluing of the views of Tribal Nations, "outweigh the benefits of 'decreasing federal regulation' and the other advantages cited in the 2020 Alaska Roadless Rule." *Id.*

## V. Plaintiffs' Allegations

Plaintiffs challenged the 2023 Final Rule in September 2023. *State of Alaska v. USDA ("SOA")*, No. 3:23-cv-00203-SLG, Compl., ECF No. 1; *Inside Passage Elec. Coop. v. USDA ("IPEC")*, No. 3:23-cv-00204-SLG, Compl., ECF No. 1; *Murkowski v.*

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.    14
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 27 of 80

*Vilsack ("Murkowski")*, No. 1:23-cv-00010-SLG, Compl., ECF No. 1. The Court granted the parties' joint motion to consolidate, but not merge, the three cases. ECF No. 16.

All Plaintiffs allege that reinstating the Roadless Rule on the Tongass was in excess of USDA's authority under the Organic Act and MUSYA. *SOA* Compl. ¶¶ 126-30 (Count IV); *Murkowski* Compl. ¶¶ 69-71 (Count IV); *IPEC* Compl. ¶¶ 51-58 (Count I). these arguments are carried forward by the IPEC Plaintiffs. *See* ECF No. 38 at 19-26.

The State and Murkowski Plaintiffs also allege that an "Alaska-specific statutory framework" preempts USDA's authority to apply the 2001 Roadless Rule to the Tongass. *SOA* Compl. ¶¶ 105-121 (Count II), *Murkowski* Compl. ¶¶ 63-65 (Count II). This argument is carried forward by the Murkowski Plaintiffs. *See* ECF No. 37 at 17-18, 31-34.

The State and Murkowski Plaintiffs also allege that the 2023 Final Rule violates ANILCA's "no more" clause. *SOA* Compl. ¶¶ 122-25 (Count III), *Murkowski* Compl. ¶¶ 66-68 (Count III). And the State's Complaint alleges that application of the Roadless Rule to the Tongass violates MUSYA, the Forest Roads and Trails Act, the TTRA, and the Alaska Statehood Act. *SOA* Compl. ¶¶ 131-42 (Counts V and VI). These arguments largely appear in the Murkowski Plaintiffs' brief. *See* ECF No. 37 at 16-34.[4]

---

[4] No Plaintiff has carried forward a claim that the 2023 Rule violates the TTRA, so this claim has been waived. *See Stacey v. Jewell,* No. 3:13-cv-00113-RRB, 2015 WL 926271, at *3 n.13 (D. Alaska Mar. 3, 2015) (holding argument not advanced in Plaintiffs' opening brief abandoned) (citing *United States v. Karma*, 394 F.3d 1236, 1238 (9th Cir. 2007) (noting an issue is waived if it is not specifically argued in an appellant's opening brief)).

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   15
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 28 of 80

All Plaintiffs allege that the 2023 Final Rule violates the non-delegation and separation of powers doctrines. *SOA* Compl. ¶¶ 126-30 (Count IV); *Murkowski* Compl. ¶¶ 72-75 (Count V); *IPEC* Compl. ¶¶ 59-67 (Count II). This argument is carried forward in the IPEC Plaintiffs' opening brief. *See* ECF No. 38 at 13-19, 27-34.

The State also asserts a stand-alone violation of the APA. *SOA* Compl. ¶¶ 143-44 (Count VII). This claim is not carried forward in any of Plaintiffs' summary judgment briefs and is thus waived.[5] *See* ECF No. 41-1; *Stacey*, 2015 WL 926271, at *3 n.13.

The State and Murkowski Plaintiffs allege that USDA violated the APA by failing to provide a reasoned explanation for the 2023 Final Rule's change in policy under the rule in *Fox*. *SOA* Compl. ¶¶ 93-104 (Count I); *Murkowski* Compl. ¶¶ 52-62 (Count I). This claim is carried forward in the State's opening brief. *See* ECF No. 40-1 at 15-31.

## LEGAL BACKGROUND

### I. The Organic Administration Act

The Property Clause of the U.S. Constitution empowers Congress "to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. Through the Organic Act, enacted in 1897, Congress delegated to the Secretary of Agriculture the broad authority to

---

[5] Even if this claim were not waived, it would still fail on the merits because a plaintiff must identify a specific statutory obligation that it alleges USDA violated to have a cognizable claim under the APA. Courts cannot review alleged free-standing APA violations that are not rooted in a specific statute, because there would be no "law to apply," and "no meaningful standard against which to judge the agency's exercise of discretion." *Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996); *see also Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*, 861 F.3d 944, 954-55 (9th Cir. 2017).

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   16
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 29 of 80

"make such rules and regulations . . . as will insure the objects of [national forest] reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction." 16 U.S.C. § 551. For more than a century, USDA has relied on this authority to regulate occupancy and use of NFS lands to balance and best meet the nation's resource needs—and courts have upheld that use of authority. *See, e.g.*, *United States v. Grimaud*, 220 U.S. 506 (1911); *Light v. United States*, 220 U.S. 523 (1911).

## II.     The Multiple-Use Sustained-Yield Act of 1960

In MUSYA, Congress declared that national forests "are established and shall be administered" for multiple uses, including "outdoor recreation, range, timber, watershed, and wildlife and fish purposes." 16 U.S.C. § 528. "Multiple use" means, among other things, the "most judicious use of the land for some or all resources or related services over areas large enough to provide sufficient latitude for periodic adjustments in use to conform to changing needs and conditions." 16 U.S.C. § 531(a). Through MUSYA, Congress directed USDA to give "consideration . . . to the relative values of the various resources, and not necessarily the combination of uses that will give the greatest dollar return or the greatest unit output." *Id.* Congress specified that "some land will be used for less than all of the resources." *Id.*

## III.     The National Environmental Policy Act

Congress enacted NEPA, 42 U.S.C. §§ 4321-4370m-12, to establish a process for federal agencies to consider the environmental impacts of major federal actions. *Vt. Yankee Nuclear Power Corp. v. Nat'l Res. Def. Council*, 435 U.S. 519, 558 (1978).

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   17
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 30 of 80

NEPA imposes procedural rather than substantive requirements, *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350-51 (1989), and requires federal agencies to prepare an environmental impact statement for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C); *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1105 (9th Cir. 2007).

## IV. The National Forest Management Act

"NFMA and its implementing regulations provide for forest planning and management by the Forest Service on two levels: [1] forest level and [2] individual project level." *Native Ecosystems Council v. Weldon*, 697 F.3d 1043, 1056 (9th Cir. 2012). At the forest level, NFMA directs the agency to "develop, maintain, and, as appropriate, revise [forest plans] for units of the National Forest System." 16 U.S.C. § 1604(a). A forest plan establishes overall management direction for each administrative unit of the National Forest System. *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 966 (9th Cir. 2003). Subsequent site-specific projects must be consistent with the management requirements set out in the forest plan. 16 U.S.C. § 1604(i).

## STANDARD OF REVIEW

Section 706 of the APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, . . . otherwise not in accordance with law[,] . . . or in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C). "The standard is a narrow one, and [a court] may not substitute [its] judgment for that of the agency." *Nat'l Wildlife*

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   18
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 31 of 80

*Fed'n v. U.S. Army Corps of Eng'rs*, 384 F.3d 1163, 1170 (9th Cir. 2004). A decision is arbitrary and capricious if it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Furthermore, a court must defer to the agency's policy choices if the agency has shown a "rational connection between the facts found and the choice made."  *Id.*

## ARGUMENT

### I.      Plaintiffs Fail to Establish Article III Standing

Before this Court considers the merits of Plaintiffs' statutory and constitutional claims, it must determine whether it has Article III jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998). Plaintiffs shoulder the burden of establishing three elements that are the prerequisite of standing: [1] injury-in-fact that is concrete, particularized, and actual or imminent; [2] traceability, which requires a showing that the challenged conduct caused that injury; and [3] that it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Because none of the Plaintiffs carry their burden here of establishing standing, the Court should reject Plaintiffs' claims.

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   19
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 32 of 80

## A. The State and Murkowski Plaintiffs Fail to Submit Evidence of Standing

The State and the Murkowski Plaintiffs do not even try to carry their burden of establishing standing. Both apparently believe that their complaints' allegations are sufficient at the summary judgment phase to establish standing. But "[t]he plaintiff has the burden of establishing standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *WildEarth Guardians v. U.S. Forest Serv.*, 70 F.4th 1212, 1215 (9th Cir. 2023) (quoting *Lujan*, 504 U.S. at 561). And at the summary judgment stage, Plaintiffs must "'set forth' by affidavit or other evidence 'specific facts'" establishing the "irreducible constitutional minimum of standing" under Article III's three requirements. *Lujan*, 504 U.S. at 560-61. Because neither the State nor the Murkowski Plaintiffs present any evidence of standing, the Court lacks Article III jurisdiction to consider their claims. *See* ECF Nos. 37 (Murkowski); 40 (State).

The law of Article III standing is "built on separation-of-powers principles[ that] serve[] to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Adhering to Article III principles is especially important here, where Plaintiffs seek to challenge actions of the executive branch and the constitutionality of the 2023 Final Rule. *See id*. (recognizing that the standing inquiry is especially rigorous "'when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches . . . was unconstitutional.'" (quoting *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997)).

That the State was found to have sufficient standing to bring prior challenges to

*SOA v. USDA, et al.*, No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   20
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 33 of 80

the 2001 Roadless Rule, *see SOA* Br. 4 n.3, does not automatically establish standing in

this case. *See Alaska*, 17 F.4th at 1230 (dismissing the State's claims challenging the

Roadless Rule as it applied to the Chugach National Forest and noting that "Alaska had

to show actual harm—not merely allege it").

When the Ninth Circuit upheld this Court's 2011 reinstatement of the Roadless

Rule on the Tongass, it found the State had established injury-in-fact because the decline

in timber harvest predicted under the Rule, which at that time had not applied to the

Tongass for more than seven years, would reduce the State's payments under the

National Forest Receipts program. *Org. Vill. of Kake*, 776 F. Supp. 2d at 975-76. In this

challenge, brought more than a decade later, the State has provided no evidence that such

alleged injuries either occurred when the Roadless Rule was in effect on the Tongass, are

likely to occur now that the Rule has been reinstated on the Tongass, or that any such

alleged injuries were caused by the Roadless Rule. Indeed, to the contrary, the State now

argues that exempting the Tongass from the Roadless Rule will lead to "miniscule" and

"negligible" increases in timber production and road construction. ECF No. 40 at 21.

The State's and the Murkowski Plaintiffs' Complaints should thus both be

dismissed for want of standing.

### B.  The IPEC Plaintiffs' Speculative Allegations Fail to Establish Standing

While the IPEC Plaintiffs do proffer standing declarations, they rely on allegations

that are too speculative and conjectural to carry their burden.

The Supreme Court has "repeatedly reiterated that threatened injury must be

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   21
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 34 of 80

certainly impending to constitute injury in fact, and that standing allegations of *possible* future injury alone are not sufficient." *Clapper*, 568 U.S. at 409 (cleaned up). Yet the IPEC Plaintiffs present no evidence of certainly impending harm from reinstating the 2001 Roadless Rule on the Tongass. Instead, the IPEC Plaintiffs assert injury because their members have "held off taking even preliminary steps to develop project ideas" based on their belief that such proposals are "effectively foreclosed by the Roadless Rule." Decl. of Krystal Enkvist, ECF No. 1-2 ¶ 9; *see also* Decl. of Johanna Mitchell, ECF No. 1-1 ¶ 13 ("[T]he Roadless Rule inhibits IPEC from pursuing its infrastructure goals because IPEC cannot justify devoting resources to hiring consultants and engineers to draw plans, or to otherwise explore potential projects, knowing that the Roadless Rule precludes road access through the Tongass."); Enkvist Decl. ¶ 12 (contending harm because Plaintiffs will need to develop new energy sources, including hydroelectric projects, in the future but "a hydroelectric project is infeasible without road access.").[6]

But Plaintiffs do not assert that they sought approval for any development projects and were denied because of the Roadless Rule.[7] And "USDA is not aware of any early-

---

[6] The standing allegations in the Murkowski Plaintiffs' Complaint are also rife with speculative allegations that the Roadless Rule *could* impact the ability to build or maintain roads that *might* be necessary for maintenance and hydropower projects. *See, e.g.*, *Murkowski* Compl. ¶ 12(c).

[7] IPEC argues that its proposal for a special use permit to build a Kake-Petersburg intertie on the Tongass was approved with unfavorable conditions "because of the Roadless Rule," making the project financially untenable. Mitchell Decl. ¶¶ 15-17. To the contrary, USDA approved the project as it was proposed by the project proponent. *See* Kake to Petersburg Transmission Line Intertie Project Final Record of Decision at 3, *available at* https://www.fs.usda.gov/project/?project=31761. Moreover, the 2023 Final Rule provides

---

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   22
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 35 of 80

stage road development projects on the Tongass which rely on the 2020 Alaska Roadless Rule." FS01039520. Rather, Plaintiffs have chosen not to propose projects at all based on their view that such projects could never be approved—a position that overlooks the various Roadless Rule exceptions. *See* Enkvist Decl. ¶ 9-11, Mitchell Decl. ¶ 13.

The Roadless Rule includes several exceptions that allow the agency to consider and approve road access, including for "reserved or outstanding rights, or as provided for by statute or treaty." (36 C.F.R. § 294.12(b)(3) (2001). And under the Federal Power Act, "if [the Federal Energy Regulatory Commission] decides that a road is necessary for facility development, the USDA cannot veto the project or road," Roadless Rule prohibitions notwithstanding. *See* 88 Fed. Reg. at 5,263; FS01039516. Maintenance of classified roads is also permissible in IRAs under the Roadless Rule, 36 C.F.R. § 294.12(c) (2001), and "temporary linear construction zones can be authorized to facilitate the construction of transmission lines, along with other applicable exceptions set forth in the 2001 Roadless Rule." 88 Fed. Reg. at 5,263; FS01039516.

Indeed, the preamble to the 2023 Final Rule notes that since USDA began tracking project proposals in IRAs, the Tongass National Forest has "received 59 project

---

for reapplication of 2001 Roadless Rule to the Tongass "as provided for in the U.S. District Court for the District of Alaska's Judgment in" *Organized Vill. of Kake* v. *USDA*." FS01039506. And the district court's judgment in *Organized Village of Kake* specifically stated: "Nothing in this judgment shall be construed to prohibit otherwise lawful road construction, road reconstruction, or cutting or removal of timber if and when approved by the U.S. Forest Service to effectuate the following projects: . . . The Kake-Petersburg Intertie, as described in the Notice of Intent to prepare an Environmental Impact Statement published in the Federal Register on May 7, 2010." No. 1:09-cv-00023 JWS (D. Alaska 2011), ECF No. 85 at 2.

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.  23
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 36 of 80

proposals in IRAs that included tree removal and/or road construction using the

exceptions authorized by the Roadless Rule, including for mineral, energy, recreation,

and transportation projects," and all 59 were approved. 88 Fed. Reg. 5,256; FS01039509.

USDA has approved even more such projects in the Tongass since then. FS01039209-10.

Given this history of approvals, Plaintiffs cannot establish harm by unilaterally deciding

their proposals would be denied and refusing to even file an application. "[S]elf-inflicted

injuries" are not "fairly traceable" to the 2023 Final Rule. *Clapper*, 568 U.S. at 418.

Even assuming the IPEC Plaintiffs' self-inflicted injury of not seeking approvals

or planning infrastructure projects because of the uncertainty over whether they will be

approved, Enkvist Decl. ¶ 11, is a sufficient injury-in-fact, Plaintiffs fail to satisfy the

causation or redressability prongs of standing. Even if the 2023 Rule were invalidated

and the Tongass exempt from the Roadless Rule, Plaintiffs would not be guaranteed

project approvals or road access. Whether the Roadless Rule is in place or not, USDA

retains broad discretion in deciding whether to consider and approve proposed timber

harvest, energy transmission, and road construction projects on NFS lands. *See* 36 C.F.R.

§§ 251.50, 251.54 ("A proposal to obtain a special use authorization does not grant any

right or privilege to use National Forest System lands."); *see also Region 8 Forest Serv.

Timber Purchasers Council v. Alcock*, 993 F.2d 800, 808-09 (11th Cir. 1993) (alleged

harm based on reduced timber harvest not redressable when whether the relief plaintiffs

requested would actually redress their injuries was "purely speculative" because "[t]he

amount of timber available in the future is based upon site-specific analyses"); *Marathon*

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.  24
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 37 of 80

*Oil Co. v. Babbitt*, 966 F. Supp. 1024, 1026 (D. Colo. 1997) (no redressability when requested relief would require a court order impermissibly interfering with the executive branch's discretionary leasing process), *aff'd*, 166 F.3d 1221, 1999 WL 3362 (10th Cir. 1999) (unpublished table decision).

In sum, Plaintiffs either proffer only conclusory allegations that are inadequate to demonstrate standing at the summary judgment stage, *see Lujan*, 504 U.S. at 561, or their allegations are so speculative and untethered from the actual effects of Roadless Rule management on the Tongass that they fail to establish injury-in-fact, causation, or redressability. Plaintiffs' claims should therefore be dismissed for lack of jurisdiction.

## II.     Plaintiffs' Statutory Challenge to the 2023 Final Rule Fails on the Merits

Even if Plaintiffs could establish Article III standing, their statutory claims fail on the merits. Plaintiffs present an assortment of statutory arguments that attempt to overcome over a century's worth of precedent recognizing the Secretary's broad Organic Act authority to manage NFS lands, based on readings that are not supported by text, plain reading, or logic. Faced with the fact that the 2023 Final Rule does not violate any of the Alaska-specific statutes they invoke, Plaintiffs argue unpersuasively that the general "intent" of those statutes, taken together, prevents USDA from applying the Roadless Rule to the Tongass. These arguments fail to establish any statutory or other legal violation under the APA.

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   25
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 38 of 80

## A. USDA Has Broad Discretion to Manage NFS Lands

Congress has granted USDA broad authority to protect and administer NFS lands. The Organic Act of 1897 provides USDA with the discretion to "make such rules and regulations . . . to regulate . . . occupancy and use and to preserve the forests . . . from destruction." 16 U.S.C. § 551. And six decades later, Congress specifically affirmed in MUSYA the Secretary of Agriculture's broad authority to manage NFS lands like the Tongass for "multiple use[s]," 16 U.S.C. § 529, including ecological and wilderness values. *See id.* § 528 (directing USDA to administer NFS surface resources for uses including "outdoor recreation," "range," "timber," "watershed," and "fish and wildlife").

Congress also made clear in MUSYA that, in doing so, the agency should give consideration "to the relative values of the various resources," to "mak[e] the most judicious use of the land for some or all . . . resources," and to use "some land . . . for less than all of the resources." *Id.* § 531(a). These statutory provisions leave no doubt that USDA has the discretion to manage federal lands for some uses (e.g., "outdoor recreation," "watershed[s]," and "wildlife") to the exclusion of others (e.g., "timber" harvests and road building) and expressly authorizes USDA to manage lands to further "wilderness"[8] values. *Id.* § 528.

Indeed, the Secretary of Agriculture's broad authority to regulate NFS lands for

---

[8] MUSYA's use of the term "wilderness" in 1960, 16 U.S.C. § 529, predates by four years the later enactment of the Wilderness Act of 1964 establishing the National Wilderness Preservation System (commonly referred to as "Wilderness Areas") and is properly understood as referencing the agency's various administrative land classifications, not the yet to be enacted 1964 legislation.

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.  26
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 39 of 80

their protection has consistently been upheld since the Organic Act was enacted in 1897. In

*United States v. Grimaud*, decided in 1911, the Supreme Court upheld the Secretary's

authority to issue regulations under the Organic Act penalizing unauthorized grazing to

protect NFS lands. 220 U.S. at 509. And in *Light v. United States*, decided the same term,

the Court also upheld the Secretary's authority to penalize unauthorized grazing on NFS

lands under the Organic Act's authority to "fix the terms on which its property" in national

forests "may be used." 220 U.S. at 536-38. The Secretary's broad Organic Act authority to

manage NFS lands like the Tongass is now well understood and firmly established in this

Circuit's precedent. *See, e.g.*, *Ctr. for Biological Div. v. U.S. Forest Serv.*, 80 F.4th 943,

947 (9th Cir. 2023) (recognizing that "Congress has vested [USDA] with broad authority to

regulate activities on, and occupancy of, national forests" in the Organic Act).

    In MUSYA, along with declaring that NFS lands must be administered for outdoor

recreation, range, timber, watershed, and wildlife and fish purposes, Congress also

expressly declared that "[t]he establishment and maintenance of areas of wilderness are

consistent with the purposes and provisions of sections 528 to 531 of this title." 16 U.S.C.

§ 529. Thus, MUSYA contains an express Congressional authorization recognizing

USDA's longstanding practice of assigning administrative land classifications to protect

various undeveloped lands and interests as part of its multiple use mission. That USDA has

long operated in a such a manner is now an undisputable historical fact. *See Wilkinson,*

*Land, and Resource Planning in the National Forests*, Oregon Law Review, 64 OR. L.

REV. 1, 317-321 (1985) (explaining USDA's over 100-year administrative practice of

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   27
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 40 of 80

setting aside lands for protective purposes).

Courts have repeatedly emphasized that the discretion afforded to federal land management agencies under their multiple-use statutes is "very broad." *Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 531 F.3d 1114, 1135 (9th Cir. 2008); *see also Perkins v. Bergland*, 608 F.2d 803, 806 (9th Cir. 1979) (explaining MUSYA's multiple-use language "breathe(s) discretion at every pore") (citation omitted); *Strickland v. Morton*, 519 F.2d 467, 469 (9th Cir. 1975) (recognizing the language and legislative history of BLM's Classification and Multiple Use Act of 1964 "emphasize . . . that Congress intended [the] Act to be a general grant of authority to the Secretary to administer the retention and disposal of . . . public lands under his domain as he felt would best comport with the national interest and the public welfare").

Indeed, the Ninth Circuit has applied those principles in holding that the Organic Act, alone, "is sufficient to support the Roadless Rule's promulgation to achieve the objects of our National Forest System" and to apply such rules to forests like the Tongass. *Kootenai Tribe of Idaho*, 313 F.3d at 1117 n.20. The Tenth Circuit has also recognized that "MUSYA give[s] the Forest Service broad discretion to regulate NFS lands for a wide variety of purposes," including "those protected by the Roadless Rule." *Wyoming*, 661 F.3d at 1235. USDA properly relied on this authority in promulgating the 2001 Roadless Rule, 66 Fed. Reg. at 3,252; RR5796 at 10, the 2020 Alaska Rule exempting the Tongass, 85 Fed. Reg. at 68,691; FS00813777, and the 2023 Final Rule reinstating the 2001 Roadless Rule on the Tongass. 88 Fed. Reg. at 5,257; FS01039510. None of Plaintiffs' statutory

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   28
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 41 of 80

arguments to the contrary have merit.

### B.  Neither the Organic Act nor MUSYA Prohibits the 2023 Final Rule

Plaintiffs assert that the text of the Organic Act and MUSYA "prohibit the Roadless Rule" because both statutes "guarantee that NFS lands will remain open for reasonable access and use." *IPEC* Br. 19. But Plaintiffs identify no language in either the Organic Act or MUSYA that even suggests—much less directs—that USDA must make available all NFS lands on the Tongass to road construction or timber harvest.

### i.  The plain text of the Organic Act supports the application of Roadless Rule management to the Tongass.

The Organic Act provides the Secretary broad authority to "make such rules and regulations and establish such service as will insure the objects of [NFS] reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction . . . ." 16 U.S.C. § 551. Focusing myopically on the word "destruction," Plaintiffs cobble together a narrow definition of that term that would limit USDA's authority to the regulation of "conduct that threatens to lay waste to public resources" *IPEC* Br. 20, or that is tantamount to the "depredation caused by the ravages of war— which may lay waste to an entire landscape," *id.* at 21. Plaintiffs assert that "[a] carefully engineered road that is designed to minimize environmental harms can hardly be viewed as a 'depredation' on the land," and thus cannot be prohibited by USDA under its Organic Act authority.[9] *Id.* at 20.

_____

[9] Plaintiffs posit that, "of course, the Secretary has authority to impose reasonable

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   29
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 42 of 80

But Plaintiffs' cherry-picked definitions of "destruction" cannot defeat the statute as a whole, which plainly supports USDA's authority. The Organic Act states that the Secretary is empowered to make rules and regulations that "insure" the purposes of the reservation both by "regulat[ing] use and occupancy" *and* by preserving forests from destruction. *See* 16 U.S.C. § 551. Indeed, in 1960 Congress affirmed that authority by declaring that "the national forests are established and shall be administered for outdoor recreation, range, timber, watershed, and wildlife and fish purposes." 16 U.S.C. § 528. The Roadless Rule directly regulates "use and occupancy" of NFS lands by identifying particular areas in which certain actions will not be undertaken. And, in prohibiting road building and timber harvest in IRAs based on the adverse environmental effects of those activities, the Roadless Rule falls under the Secretary's authority to "preserve the forests . . . from destruction." *See id.*; 88 Fed. Reg. at 5,257; FS01039510.

Moreover, Plaintiffs' interpretation is also foreclosed by caselaw. Courts have long upheld the Secretary's regulation and prohibition of certain uses and activities on NFS lands even where the prohibited activity is not comparable to "the ravages of war," would not "lay waste to an entire landscape," or could be "carefully engineered . . . to minimize environmental harms," *IPEC* Br. 20-21. *See, e.g.*, *Dastervignes v. United States*, 122 F. 30, 31 (9th Cir. 1903) (recognizing Secretary's authority under the Organic

---

restrictions to minimize environmental impacts," *IPEC* Br. 20, but do not explain how "reasonable" environmental regulation of roadbuilding fits under their interpretation of Organic Act authority to prevent "laying waste" to entire ecosystems, while prohibitions on roadbuilding in certain portions of NFS lands do not.

*SOA v. USDA, et al.*, No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   30
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 43 of 80

Act to promulgate a rule prohibiting "pasturing of sheep and goats on the public lands in the forest reservation"); *Osborne v. United States*, 145 F.2d 892, 894 (9th Cir. 1944) (recognizing Secretary's "general power to regulate forest reserves" and to "exclude sheep and cattle therefrom"); *Pub. Lands for the People v. U.S. Dep't of Agric.*, 697 F.3d 1192, 1197 (9th Cir. 2012) (recognizing that Secretary's "extensive statutory authority" under Organic Act "dooms" challenge to regulation restricting motorized access to NFS lands); *United States v. Hymans*, 463 F.2d 615, 617-18 (10th Cir. 1972) (upholding regulation issued under Organic Act prohibiting "indecent conduct" even though its underlying purpose was not to preserve forests from destruction).[10] Plaintiffs' restrictive reading of USDA's authority to prohibit conduct on NFS lands cannot be reconciled with these holdings and must be rejected.

Indeed, the Ninth Circuit previously rejected a similar challenge to USDA's L-20 regulations (establishing land classifications since the 1920s) as exceeding the agency's statutory authority under the Organic Act. In *McMichael v. United States*, 355 F.2d 283 (9th Cir. 1965), the plaintiffs argued that "establishing primitive, wilderness and wild areas and providing limitations upon the use to be made of such areas are not authorized by" the Organic Act because "while such regulations may relate to 'occupancy and use,'

_____

[10] *See also Sabin v. Butz*, 515 F.2d 1061, 1066 (10th Cir. 1975) (upholding Forest Service's promulgation of a policy prohibiting individuals from operating concessions or ski schools on NFS lands without an individual permit); *United States v. Nw. Pine Prods., Inc.*, 914 F. Supp. 404, 407 (D. Or. 1996) (holding USDA regulations which "impose strict liability on anyone, including timber purchasers, for cutting undesignated timber and for failing to follow load ticket procedures," 36 C.F.R. § 261.6(a) and (e), are "valid regulations reasonably related to regulating the use and occupancy of the forest . . . .").

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.  31
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 44 of 80

still, their purpose must be to 'preserve the forests thereon from destruction.'" *Id.* at 284-85. The Ninth Circuit rejected that argument; the court explained that "[t]he authority to administer recreation and wildlife habitat resources of the national forest has been recognized in numerous appropriation acts and comes from the authority contained in the [Organic Act], to regulate the 'occupancy and use' of the national forest." *Id.* (quoting S. Rept. No. 1407 at 7 and H. Rept. No. 1551, 86th Cong., 2d Sess.). In upholding the Secretary's authority to promulgate the 2001 Roadless Rule, the Ninth Circuit specifically cited to *McMichael* in recognizing that the USDA's "general rulemaking authority" under the Organic Act is sufficient to support the Roadless Rule "to achieve the objects of our National Forest System." *Kootenai*, 313 F.3d at 1117 n.20.

Plaintiffs do not address or try to distinguish this controlling caselaw. Instead they cite *United States v. Weiss*, 642 F.2d 296, 298 (9th Cir. 1981), claiming it demonstrates that "the authority for rules to protect forestlands from 'destruction' is limited to rules targeted at conduct that threatens to lay waste to public resources." *See IPEC* Br. 20. But nothing in *Weiss* limits USDA's authority to promulgate the 2001 Roadless Rule under the Organic Act. To the contrary, the Ninth Circuit in *Weiss* underscored the Secretary's broad authority under the Organic Act to "regulate activity on [NFS] lands" and how that authority had been repeatedly upheld by the Supreme Court and in this Circuit. *See Weiss*, 642 F.2d at 298 (summarizing caselaw, including *Grimaud* and *McMichael*, upholding that authority). Moreover, *Weiss* involved a challenge by owners of unpatented mining claims on federal lands who argued that USDA's mining regulations

*SOA v. USDA, et al.*, No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   32
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 45 of 80

impermissibly interfered with their statutory mining rights. *Id.* at 297. Not only did the Ninth Circuit uphold the regulations as valid, *see id.* at 298, this analysis is inapposite here. Statutory access rights like those at issue in *Weiss* are already recognized as exceptions to the Roadless Rule. *See* 88 Fed. Reg. at 5,265; FS01039518.

Plaintiffs next claim that the 2023 Final Rule conflicts with provisions in the Organic Act ensuring that "actual settlers residing within the boundaries of national forests" retain access to their property and homes, 16 U.S.C. § 478, directing that individuals may "enter" NFS lands for all proper and lawful purposes, *id.*, and providing that national forests *may* be established to "furnish[] a continuous supply of timber for the use[s] and necessities of [] citizens of the United States," 16 U.S.C. § 475, asserting that USDA cannot "categorically foreclose roads and trails." *IPEC* Br. 22. These arguments similarly fail. Plaintiffs are not "actual settlers residing within" the Tongass, and the 2001 Roadless Rule explicitly provides for access to any private property within IRAs in any event. RR4609 at 336-37 (2001 EIS). Nor does the Rule prohibit entry on NFS lands for lawful purposes; it prohibits discretionary road construction that would facilitate the method of access Plaintiffs prefer in *a portion of* all NFS lands. *See* 88 Fed. Reg. at 5,262; FS01039515 (listing activities not prohibited); 88 Fed. Reg. at 5,264; FS01039517 (describing fishing, hunting, outdoor recreation, and tourism in IRAs). And the 2023 Final Rule does not foreclose all timber harvest in the Tongass. 88 Fed. Reg. at 5,265; FS01039518 ("this final rule is not expected to alter projections for timber jobs and income compared to those under the 2020 Alaska Roadless Rule.").

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   33
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 46 of 80

### ii. The 2023 Final Rule does not violate MUSYA's multiple use direction.

Plaintiffs also allege that the Roadless Rule "violates Congress' clear directive that NFS lands should be open to 'multiple use and sustained yield.'" *IPEC* Br. 12. But MUSYA makes clear that USDA may "use some land . . . for less than all of the resources," 16 U.S.C. § 531(a), and that USDA has statutory authority to classify and manage certain lands to further "wilderness" (i.e., undeveloped) values. *Id.* § 529. The Tenth Circuit also rejected the same argument Plaintiffs make here, holding that "the Roadless Rule does not violate MUSYA's multiple-use mandate." *Wyoming*, 661 F.3d at 1268.

Plaintiffs' argument that sustained yield cannot be met if certain uses are "categorically prohibited" in IRAs also fails. *See IPEC* Br. 24-25. To start, application of the 2001 Roadless Rule to the Tongass does not "categorically prohibit" any one resource use across all NFS lands or even across the Tongass. And MUSYA's multiple use direction does not require maximization of a given resource use. *See Wyoming*, 661 F.3d at 1268-69 (holding 2001 Roadless Rule "conforms to the multiple-use mandate of MUSYA, including management of NFS lands for 'outdoor recreation,' 'watershed,' and 'wildlife and fish purposes'" and "[a]lthough the Roadless Rule does not permit all uses specifically identified in MUSYA—namely, 'timber' purposes—this is not required under MUSYA" (citing 16 U.S.C. § 528)); *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1238 (D.C. Cir. 1996) ("Timber harvesting is clearly a major goal of the forest management statutes . . . . But this does not mean that logging must be maximized

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   34
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 47 of 80

at the expense of all other values.").

Indeed, the Supreme Court has recognized that through the nearly identical "multiple use" provisions in the Federal Land Policy and Management Act ("FLPMA"), Congress empowered land management agencies to decide how best to "strik[e] a balance among the many competing uses to which land can be put" to provide for the multiple use and sustained yield of resources—an "enormously complicated task." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 58 (2004). And, like MUSYA, FLPMA "does not mandate that every use be accommodated on every piece of land." *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 710 (10th Cir. 2009) (citing *Norton*, 542 U.S. at 58); *Safari Club Int'l v. Haaland*, 31 F.4th 1157, 1168 (9th Cir. 2022) (holding that Department of Interior's Fish and Wildlife Service "may restrict State-authorized hunting in the Kenai Refuge to, *inter alia*, conserve wildlife"); *see also New Mexico ex rel. Richardson*, 565 F.3d at 710 (The "obligation to manage for multiple use does not mean that development *must* be allowed . . . . Development is a *possible* use, which [the agency] must weigh against other possible uses—including conservation to protect environmental values"). The Secretary considered the relative values and uses of these lands and made a reasoned choice in the 2001 Roadless Rule and the 2023 Final Rule reapplying that management regime to the Tongass. No more is required.

### C. The Alaska-Specific Statutes Plaintiffs Invoke Do Not Displace USDA's Authority to Apply Roadless Rule Management to the Tongass

Plaintiffs also argue that a suite of Alaska-specific statutes enacted after the Organic Act and MUSYA, when stacked together, somehow "preempt" and "override"

*SOA v. USDA, et al.*, No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   35
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 48 of 80

the broad statutory rulemaking authority described above and prohibit reapplication of Roadless Rule management in IRAs on the Tongass. *See Murkowski* Br. 2-5, 17-34. But none of these statutes explicitly or implicitly, individually or cumulatively, deprives USDA of the authority and discretion to apply the Roadless Rule to the Tongass.

### i. ANILCA § 101(d) does not prohibit the Roadless Rule.

Plaintiffs assert that § 101(d) of ANILCA, codified at 16 U.S.C. § 3101(d), precludes application of the 2001 Roadless Rule to the Tongass because ANILCA balanced "reservation of national conservation system units and those public lands necessary and appropriate for more intensive use and disposition" and Congress stated that it believed "the need for future legislation designating new conservation system units, new national conservation areas, or new national recreation areas, has been obviated thereby." *Murkowski* Br. 17-18. Plaintiffs argue that, through this language, Congress "reserved to itself the authority to make 'lasting' land designations on the Tongass," *id.* at 17 (cleaned up), and that the 2023 Final Rule thus violates the Constitution[11] and ANILCA's "Congressional intent." *Id.* at 18.

Plaintiffs' arguments fail at the outset because, on its face, § 101(d)'s discussion of striking a balance that would obviate the need for future *legislation* designating "new conservation system units, new national conservation areas, or new national recreation areas" in no way implicates the executive branch's authority and discretion to make land management decisions under the Organic Act or MUSYA. *See* 16 U.S.C. § 3101(d). Nor

---

[11] Plaintiffs' constitutional arguments fail for the reasons described below in Part IV.

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.  36
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 49 of 80

does the language purport to limit *any* branch from taking any action beyond establishing new units of the three specifically listed types of conservation areas. *See id.* Contrary to Plaintiffs' arguments, the mere fact that Congress balanced certain interests in enacting ANILCA, and acknowledged that fact in the text of the statute, does not impliedly limit USDA's overarching land management discretion under the Organic Act or MUSYA. *See Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1067 (9th Cir. 2003) ("[R]egardless of any tradeoffs considered by Congress in enacting [a statute], we interpret and apply the language chosen by Congress, for that language was chosen in order to incorporate and effectuate those tradeoffs.").

Moreover, the policy statement that Congress believed, in 1980, that ANILCA would obviate the need for similar legislation cannot be held to rigidly prohibit any future shifts in land use and land management on the Tongass. The statement did not even prevent Congress itself from passing subsequent legislation shifting that balance. *See Murkowski* Br. 6 & n.5 (conceding that Congress established additional Wilderness Areas and Land Use Designation ("LUD") II management areas[12] in 1990 through the TTRA and established "eight additional LUD II Management Areas in the Tongass totaling

---

[12] LUD II is a land use designation originally identified under the 1979 Tongass Forest Plan and subsequently statutorily enacted in the TTRA; LUD II areas are managed in a roadless state to retain their wildland character. LUD II management is distinct from Roadless Rule management, however, as "[m]anagement direction of LUD II areas . . . would be afforded additional, regulatory protections by applying Roadless Rule protections." Fed. Reg. 88 at 5,260; FS01039513.

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   37
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 50 of 80

53,042" acres in the FY 2015 Defense Authorization Act).[13]

Plaintiffs rely on *Sturgeon v. Frost*, 587 U.S. 28 (2019), to argue that Congress's balancing efforts in ANILCA somehow strip USDA of its longstanding statutory authority and discretion to manage occupancy and use of NFS lands. *See Murkowski* Br. 5-7. But the Ninth Circuit has explained that, to the contrary, "*Sturgeon* reiterates that ANILCA vests the Secretary of the Interior with plenary authority 'to protect—if need be, *through expansive regulation*—the national interest in the scenic, natural, cultural and environmental values on the public lands.'" *Safari Club Int'l*, 31 F.4th at 1169 (emphasis added) (quoting *Sturgeon*, 587 U.S. at 58 (citation omitted)).

In sum, the policy statement discussing Congress's balancing efforts in § 101(d) of ANILCA does not preclude application of the Roadless Rule to the Tongass.

### ii. The Roadless Rule is not a "withdrawal" subject to ANILCA § 1326(a).

Plaintiffs next argue that the Roadless Rule constitutes an impermissible "withdrawal" of acres without the Congressional approval required by ANILCA's "no more" clause, 16 U.S.C. § 3213.[14] *See Murkowski* Br. 18-26. But courts have made clear

---

[13] And Congress has continued to take actions with respect to management of the Tongass since 1980, including to protect additional lands and convey lands out of the National Forest System. *See, e.g.*, H.R. 2596, 100th Cong. (1988) (Admiralty Island National Monument Management Act); Pub. L. No. 113-291, § 3002, 128 Stat. 3292, 3720 (2014) (Sealaska Land Entitlement Finalization); Pub. L. No. 115-31, 131 Stat. 135, *842A–7–A–16 (2017) (Alaska Mental Health Trust Land Exchange Act).

[14] Plaintiffs refer to this section as 1326(a), but for ease of access Federal Defendants provide citations to the codified version of ANILCA unless otherwise noted.

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.  38
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 51 of 80

that the Roadless Rule is not a "withdrawal" of lands from the operation of public land laws, and the plain text of the statute and its legislative history confirm as much.

ANILCA prohibits "executive branch action which withdraws more than five thousand acres, in the aggregate, of public lands within the State of Alaska" without the approval of Congress. 16 U.S.C. § 3213(a). This provision is widely understood to be a Congressional response to President Carter's designation of national monuments under the Antiquities Act in 1978.[15] No court has applied this provision to the normal operation of a federal agency's multiple-use management decision-making, and this Court should decline Plaintiffs' invitation to do so here.

Although Congress did not define "withdrawal" in ANILCA, the U.S. District Court for the District of Columbia has twice held that it carries the definition of withdrawal set forth in FLPMA, 43 U.S.C. § 1702: removing land from the operation of the public land laws that govern mineral leasing.[16] *Se. Conference v. Vilsack*, 684 F. Supp. 2d 135, 143-44 (D.D.C. 2010); *Alaska*, 273 F. Supp. 3d at 124. Moreover, the

---

[15] *See* Congressional Research Service, *National Monuments*, *and the Antiquities Act* (2010) ("As another example, President Carter's establishment of monuments in Alaska in 1978 also was challenged in the courts and led to a statutory requirement for congressional approval of land withdrawals in Alaska larger than 5,000 acres.") https://www.fas.org/sgp/crs/misc/R41330.pdf

[16] FLPMA defines "withdrawal" as "withholding an area of Federal land from settlement, sale, location, or entry, under some or all of the general land laws, for the purpose of limiting activities under those laws in order to maintain other public values in the area or reserving the area for a particular public purpose or program." 43 U.S.C. § 1702(j). In simpler terms, a withdrawal is an action that "exempts the covered land from the operation of public land laws" that govern mineral leasing. *Se. Conference*, 684 F. Supp. 2d at 143 (citing *New Mexico v. Watkins*, 969 F.2d 1122, 1124 (D.C. Cir. 1992)).

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   39
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 52 of 80

Supreme Court has held that "[w]here Congress employs a term of art obviously transplanted from another legal source, it brings the old soil with it." *George v. McDonough*, 596 U.S. 740, 741 (2022) (quoting *Taggart* v. *Lorenzen*, 587 U.S. 554, 560 (2019)) (cleaned up).

Plaintiffs fail to controvert the district court's persuasive reasoning and conclusion in *Alaska* that the 2001 Roadless Rule "does not withdraw the IRAs from the mineral leasing laws; it regulates the IRAs within the bounds of the mineral leasing laws." 273 F. Supp. 3d at 124. Indeed, when it promulgated the Roadless Rule USDA was explicit that the Rule does not prohibit the issuance of new mineral leases in IRAs. 66 Fed. Reg. at 3,256; RR5796 at 14. Rather than withdrawing IRAs from the operation of public land laws, the Roadless Rule simply imposes a discretionary restriction as to surface occupancy, an act well within USDA's authority under the mineral leasing laws. *See Rocky Mountain Oil & Gas Ass'n v. U.S. Forest Serv.*, 157 F. Supp. 2d 1142 (D. Mont. 2000) (upholding Forest Service decision not to make lands available for oil and gas leasing to help maintain their solitude and undeveloped character), *aff'd* 12 F. App'x, 498 (9th Cir. 2001) (unpublished); *see also Bob Marshall All.*, 852 F.2d at 1229-30 (holding that an agency decision not to issue mineral leases in certain areas was not a withdrawal). Just as the choice of whether to allow any leasing constitutes a discretionary decision under the mineral leasing laws, the choice to impose protective conditions regarding future discretionary actions within roadless areas (*i.e.*, limit road building) is discretionary and does not constitute a withdrawal.

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   40
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 53 of 80

The district court's decision in *Southeast Conference* is also instructive, even though it addressed land use decisions made at the forest plan level rather than through a rulemaking. In that case, the plaintiffs claimed the Forest Service violated ANILCA's prohibition on withdrawals by designating lands within the Tongass as old growth reserves, effectively closing those lands to timber harvest. 684 F. Supp. 2d at 144. The court held that Forest Plan land use designations simply implement the Forest Service's multiple-use planning responsibilities under NFMA; they are not withdrawals because "[t]hey neither exempt lands from the operation of public land laws, nor suspend the operation of those laws on certain lands." *Id.* The Court also rejected the plaintiffs' assertion that the land use designation should be considered a withdrawal because, as a practical matter, it closed the area to timber harvest. *Id.* at 145. So too here. While the 2023 Final Rule may result in reduced levels of development activities in IRAs as a practical matter, that fact does not make it a withdrawal under ANILCA.

Plaintiffs avoid grappling with this persuasive caselaw by asserting that although Congress "explicitly appl[ied] the classic FLPMA definition" to "specific subjects" in ANILCA, *Murkowski* Br. 19-20, Congress did not define "withdrawal" in § 1326(a) and thus must have intended a different meaning closer to a generalized dictionary definition. *Id.* at 20-25. But Congress never actually "defined" withdrawal in any of Plaintiffs' cited provisions. Those provisions discuss specific withdrawals of certain areas from the public lands laws that were affected through ANILCA, *see id.* at 19-20. But that Congress described certain specific withdrawals in detail does not mean that it intended any

*SOA v. USDA, et al.*, No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.  41
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 54 of 80

subsequent, more generalized use of the term "withdrawal" to carry a different meaning. To the contrary, a "provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . ." *United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988).

Plaintiffs' preferred interpretation is also belied by the statutory interpretation canon *in pari materia*, or "in the same matter." *See In pari materia*, BLACK'S LAW DICTIONARY (11th ed. 2019). In *Montana Wilderness Association*, on which Plaintiffs heavily rely, the Ninth Circuit noted that two nearby provisions of ANILCA were "in pari materia," providing tentative support for an interpretation of both provisions having the same geographic reach. *Mont. Wilderness Ass'n v. U.S. Forest Serv.*, 655 F.2d 951, 954-55 (9th Cir. 1981). Here, just four sections before § 1326(a) (codified at 16 U.S.C. § 3213(a)), Congress included § 3209, "Effect on prior withdrawals," which refers to withdrawals and reservations of the public lands in relation to the public lands laws and the establishment of conservation system units. *See* 16 U.S.C. § 3209(a). Plaintiffs' claim, that just four sections later Congress would use the same term, but intend it to carry a much broader definition encompassing any discretionary land use action or regulation without explicitly acknowledging the change, defies logic and established doctrines of statutory interpretation. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *Safari Club Int'l*, 31 F.4th at 1171 (noting that a provision in the National Wildlife Refuge regulations "has

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   42
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 55 of 80

several companion regulations that inform its meaning").

Plaintiffs urge the Court to ignore the provision's plain text and established doctrines of statutory interpretation and instead look to the legislative history surrounding ANILCA because the Ninth Circuit found legislative history determinative when interpreting an entirely unrelated provision of ANILCA in *Montana Wilderness Association. See Murkowski* Br. 20-23. But even in that case, the Ninth Circuit cautioned that "[a]bsent a *clearly expressed* legislative intent to the contrary, (the statutory) language must ordinarily be regarded as conclusive." *Mont. Wilderness Ass'n*, 655 F.2d 955 (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108, (1980) (emphasis added)). The scant legislative history Plaintiffs proffer does not come close to "clearly expressed legislative intent" to broaden ANILCA's definition of "withdrawal" in § 1326(a) to include any discretionary land management decision that would prohibit or reduce certain resource uses. *See Murkowski* Br. 24-25.

To the contrary, the remarks Plaintiffs rely on for their legislative history argument merely emphasize that the "no more" clause sought to prevent large withdrawals of land from the public land laws *for conservation system unit purpose*s without Congressional approval. *See id.* at 20-21 ("the purpose of the 'No More' clause was to 'provide congressional oversight for major modifications of areas *established or expanded by [ANILCA]* and to require congressional approval for future major executive withdrawals of certain public lands in Alaska" (quoting 126 Congressional Record S11504) (emphasis added)); *id.* at 21 ("Basically, [§ 1326(a)] provides that any future

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   43
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 56 of 80

executive withdrawal *for conservation system unit purposes* would terminate if not ratified by passing a joint resolution of Congress within one year after the notice of such withdrawal has been submitted to Congress." (quoting 126 CONG. REC. S11118 (daily ed. Aug. 18, 1980) (remarks of Sen. Tsongas) (emphasis added)).

A "conservation system unit" is defined in ANILCA as "any unit in Alaska of the National Park System, National Wildlife Refuge System, National Wild and Scenic Rivers Systems, National Trails System, National Wilderness Preservation System, or a National Forest Monument including existing units, units established, designated, or expanded by or under the provisions of this Act, additions to such units, and any such unit established, designated, or expanded hereafter." 16 U.S.C. § 3102(4). The Roadless Rule does not withdraw, reserve, or establish any such units of conservation lands or remove them from operation of the public land laws. The legislative history Plaintiffs proffer thus actually underscores that Congress intended "withdrawals" subject to § 1326(a) to mean withdrawals from the public land laws for the establishment of such conservation units—not any discretionary land management decision, like the Roadless Rule, that might reduce or prohibit certain uses in certain portions of NFS lands.[17]

---

[17] In addition, on November 14, 1979, the Senate Committee on Energy and Natural Resources released a committee report lamenting the fact that a prior version of the bill lacked a "no more" clause, which it described as a "critical provision." S. Rep. No. 96-413, at 446 (1979). The report described the purpose of such a clause as related to conservation system unit designations: "[A]bsent from this bill is a provision barring further conservation system designations through administration action such as the Antiquities Act. Obviously, the Congress could act again in the future if it were so inclined, but the arbitrary *permanent removal of federal lands from the public domain* can no longer be left to the Executive in Alaska." *Id.* (emphasis added).

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   44
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 57 of 80

Plaintiffs attempt to mount an argument that the FLPMA definition of "withdrawal" cannot apply to § 1326(a) because only the Secretary of the Interior has the authority to formally execute a withdrawal under the public land laws, and thus use of that definition in § 1326(a) would impermissibly exclude USDA from the prohibition. *See Murkowski* Br. 24 & n.15. This argument misses the mark, as § 1326(a) refers to the "executive branch" broadly—it does not purport to limit any particular agency or department because it limits withdrawals generally. *See* 16 U.S.C. § 3213(a). That withdrawals on NFS lands involve a request by the Secretary of Agriculture to the Secretary of the Interior to formalize the withdrawal, *see* 43 C.F.R. § 2310.1, does not suggest that this provision provides no meaningful limits unless it can be applied specifically to USDA's discretionary land management decisions. Plaintiffs may find use of the word withdrawal "unfortunate" because it does not support their preferred outcome, *Murkowski* Br. 24, but they point to no caselaw, tools of statutory interpretation, or plain language in the statute itself that supports their novel reading.

### iii. The Roadless Rule is not a "single purpose study" and does not violate ANILCA § 1326(b).

Plaintiffs point to no authority to support their bald assertion that the 2023 Final Rule reapplying the 2001 Roadless Rule to the Tongass is a "single purpose study" for "considering the establishment of a conservation system unit, national recreation area, national conservation area or for related or similar purposes," and thus barred by § 1326(b) of ANILCA. *See Murkowski* Br. 27-28 (quoting § 1326(b), codified at 16 U.S.C. § 3213(b)) (emphasis omitted). Even if the Court were to credit Plaintiffs' broad

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots. 45
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 58 of 80

reading of "related or similar purposes" as including IRAs, the 2023 Final Rule is a regulation, promulgated through the APA's notice and comment process. It is simply not a "study," and Plaintiffs offer no explanation, caselaw, or citation to support their meritless claim that it constitutes "a single purpose study, limited to doing nothing more than determining whether to repeal the 2020 Alaska Roadless Rule and reinstate the 2001 Roadless Rule . . . ." *Id.* at 28. The 2023 Final Rule does not "study" or "consider" repealing the 2020 Alaska Rule, it is the formal agency decision taking that action and explaining the rationale behind the decision. 88 Fed. Reg. at 5,252-72; FS01039505-25.

While "study" is not defined in ANILCA, the statute includes many provisions referencing studies, all of which make clear that the promulgation of a regulation is an entirely different action. *See, e.g.*, 16 U.S.C. § 3141 (section entitled "Overall study program" directing the completion of a study of Federal lands in Alaska to assess their oil and gas resources, wilderness characteristics, and wildlife resources); *id.* § 3200(b) (directing the Secretary to carry out a three-year study on "the desirability of establishing a Denali Scenic Highway" through a specified "study team"); *id.* § 3150(b) (indicating that regulations are distinct from studies by providing that activities carried out under a provision directing USDA to study mineral potential "shall be *subject to regulations* promulgated by the Secretary") (emphasis added). Plaintiffs offer no support for their assertion that a regulation promulgated by USDA is a single-purpose study. Nor do Plaintiffs explain why Congress, if it really intended § 1326(b) to prohibit all future rulemakings designed to further conservation goals on the Tongass, would not have said

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots. 46
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 59 of 80

so explicitly. "We presume that Congress 'says in a statute what it means and means in a statute what it says there.'" *Khatib v. Cnty. of Orange*, 639 F.3d 898, 902 (9th Cir. 2011) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)).

### iv. ANILCA § 708 does not prohibit the Roadless Rule.

Plaintiffs also argue that § 708 of ANILCA, which relates to the future review and consideration of NFS lands in the Tongass for their suitability as Wilderness Areas, precludes the 2001 Roadless Rule. *See Murkowski* Br. 29 (quoting Pub. L. No. 96–487, 94 Stat. 2371 § 708 (Dec. 2, 1980)). Plaintiffs are wrong. Section 708 sets forth several directions that are specific to areas being considered for inclusion in the National Wilderness Preservation System: it releases USDA from conducting any further review of potential Wilderness suitability of lands already reviewed during prior inventory processes, § 708(b)(2); it releases areas not chosen as Wilderness during that process from being managed to preserve their Wilderness suitability, *id.* § 708(b)(3); and it prohibits "any further statewide roadless area review and evaluation of [NFS] lands in the State of Alaska for the purpose of determining their suitability for inclusion in the National Wilderness Preservation System," *id.* § 708(b)(4). But nothing in the Roadless Rule or 2023 Final Rule involves management or further review of IRAs in the Tongass for inclusion in the National Wilderness Preservation System. In fact, the Tenth Circuit has already soundly rejected an argument that Roadless Rule management of IRAs is the equivalent of a Wilderness designation. *See Wyoming*, 661 F.3d at 1233 (concluding that "IRAs governed by the Roadless Rule are not de facto administrative wilderness areas").

*SOA v. USDA, et al.*, No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   47
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 60 of 80

Undeterred, Plaintiffs present a confused argument that Congress, through ANILCA § 708, preempted USDA's authority to issue the 2023 Final Rule because [1] the 2023 Final Rule constitutes an improper "single-purpose study" under § 1326(b), and [2] it constitutes an improper "further review" of statewide roadless areas under §708(b)(4). *Murkowski* Br. 28-31. Plaintiffs' argument is difficult to follow, but appears to depend once again on a mischaracterization of the Roadless Rule as either a "study," or a "further review" of IRAs for Wilderness suitability that would bring it under the purview of § 708. Again, the 2001 Roadless Rule does not designate or review any NFS lands for Wilderness suitability or inclusion in the National Wilderness Preservation System. And Federal Defendants have explained why arguments that either the 2001 Rule or the 2023 Final Rule constitute an "single purpose study" or "review" fail. Nothing in ANILCA § 708 implicates or prohibits reimposition of the 2001 Roadless Rule on the Tongass.

> ### v. Neither the Alaska Statehood Act, SAFETEA-LU, 16 U.S.C. § 524, 16 U.S.C. § 534, nor the "intent" of any of those statutes prohibits the Roadless Rule.

Finally, Plaintiffs' cursory argument that USDA "did not consider or take into account" the Statehood Act, SAFETEA-LU § 4407, 16 U.S.C. § 524, or 16 U.S.C. § 532 when it promulgated the 2023 Final Rule is wrong and identifies no violation of law. *Murkowski* Br. 33.

The 2023 Final Rule makes very clear that one of the exceptions to the Roadless Rule's prohibitions on road building in IRAs is an exception for statutory rights of

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots. 48
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 61 of 80

access. (36 C.F.R. § 294.12(b)(3) (2001). And the 2023 Final Rule's discussion of and response to comments states clearly that: "Section 4407 of Public Law 109–59, as amended, grants the State of Alaska a statutory right to the specific easements authorized in that Act, and the Roadless Rule recognizes such statutory rights ((36 CFR 294.12(b)(3)). Therefore, should the State of Alaska choose to proceed with road construction on these easements, the Roadless Rule would not prohibit that development." 88 Fed. Reg. at 5,267; FS01039520.

Plaintiffs also suggest that USDA disregarded 16 U.S.C. § 524, which provides rights of way for municipal or mining purposes and allegedly "preempt[s] and override[s]" the 2023 Final Rule. *Murkowski* Br. 33-34. This statutory provision was repealed by FLPMA in 1976, *see* Pub. L. No. 94-579 § 706(a), because it applied to the issuance of rights of way over, upon, under, and through the public lands and lands in the National Forest System.[18] Only valid existing rights-of-way in place in 1976 were not terminated, and all such valid statutory rights of access would be exempt from the 2001 Roadless Rule's prohibitions. (36 C.F.R. § 294.12(b)(3) (2001). The same is true of existing rights under the Federal Roads and Trails Act and the Alaska Statehood Act.

Unable to avoid the fact that the Roadless Rule recognizes, and exempts, existing statutory rights of access, Plaintiffs are left to argue that the mere existence of such

---

[18] The same is true of 43 U.S.C. § 932, the now-repealed statute that is the source of the "RS2744" rights of way referenced in Plaintiffs' opening brief, as well as the Alaska Omnibus Act, Pub. L. No. 86-70, 73 Stat. 141 (June 25, 1959). But Plaintiffs did not raise these claims nor ever mention RS2477 or the Omnibus Act in their Complaints, so any claims or arguments to that effect have been waived.

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   49
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 62 of 80

statutory rights prohibits application of the Roadless Rule to the Tongass because the statutory rights suggest that Congress generally supports road construction on NFS lands in Alaska. *Murkowski* Br. 33-34. But nothing in these statutes even comes close to suggesting that USDA cannot exercise its broad Organic Act and MUSYA authority to balance multiple uses by prohibiting additional road construction in certain portions of the Tongass.

At bottom, Plaintiffs' various statutory arguments fail to controvert USDA's well-established authority to administer, manage, and protect NFS lands or to show that the 2023 Final Rule is not a valid exercise of that authority. The Court should reject Plaintiffs' statutory claims and grant summary judgment for Federal Defendants.

## III. The "Major Questions" Doctrine is Not Implicated by the 2023 Final Rule

Plaintiffs' argument that the 2023 Final Rule violates the "major questions" doctrine also fails. In *West Virginia v. EPA*, the Supreme Court recognized a small category of "'extraordinary cases' in which the 'history and breadth of the authority that the agency has asserted,' and the 'economic and political significance' of that assertion [of authority], provide a 'reason to hesitate before concluding that Congress' meant to confer such authority." 597 U.S. 697, 721-23 (2022) (quoting *F.D.A. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159-60 (2000)). Here, the Secretary acted well within well-established statutory authority to promulgate a rule that does not have "vast economic and political significance." *Id.* at 721. Thus, the "major questions" doctrine does not apply.

In *West Virginia v. EPA*, and in the other cases referenced by the Court that

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   50
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 63 of 80

triggered the "major questions" doctrine, the agencies acted on never used, or rarely used, statutory authority. 597 U.S. at 724-25. Those principles have no application here. As discussed in detail above, USDA has long managed NFS lands under its Organic Act and MUSYA authorities, including to prohibit some uses to protect other uses.[19]

Furthermore, the "extraordinary cases" identified by the Court in *West Virginia v. EPA* involved regulations that were "broad [in] scope" and "impacted millions of people nationwide." *State of Alaska, Dep't of Fish & Game v. Fed. Subsistence Bd. and Organized Village of Kake ("Fed. Subsistence Bd.")*, No. 3:20-cv-00195-SLG, 2023 WL 7282538, at *7-8 (D. Alaska Nov. 3, 2023) (Gleason, J.) (surveying nationwide regulation at issue in cases referenced in *West Virginia v. EPA*). For that reason, this Court in *Federal Subsistence Board* ruled that the Board's localized decision to open emergency rural subsistence hunts on federal lands in Alaska is not a "decision of 'vast economic and political significance' that warrants application of the major questions doctrine." *Id.* (quoting *West Virginia v. EPA*, 597 U.S. at 716). Similarly, because the 2023 Final Rule implicates only a single National Forest, the "major questions" doctrine is not implicated by USDA's decision under the 2023 Rule to reinstate the Roadless Rule on the Tongass.

---

[19] The Roadless Rule and 2023 Rule also do not seek to regulate state or private conduct, as in the cases referenced by the Court in *West Virginia v. EPA*. *See, e.g.*, *Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.*, 594 U.S. 758, 764-65 (2021) (noting that doctrine is implicated by eviction moratorium that intruded into landlord-tenant relationship that was governed by state law). Instead, it functions as a Secretarial reservation of authority constraining Forest Service line officer discretion, and fully respects and accommodates any reserved or outstanding rights, and those provided by statute or treaty.

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   51
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 64 of 80

Plaintiffs seek to sidestep the localized nature of the 2023 Rule by asserting that the Roadless Rule—which the 2023 Rule reinstates for the Tongass—itself implicates the "major questions" doctrine. *See IPEC* Br. 12 (challenging Secretary's authority to impose Roadless Rule restrictions nationwide). But this case only involves the reinstatement of the Roadless Rule on the Tongass, not the nationwide application of the Roadless Rule (which itself was originally developed with a localized assessment of whether the prohibitions should be applied on the Tongass). And to the extent USDA's authority to promulgate the 2001 Roadless Rule is at issue, that Rule does not trigger the "major questions" doctrine. As noted above, the Roadless Rule follows a well-worn path of USDA managing a subset of NFS lands for less than all possible uses. The nationwide applicability of the Roadless Rule was also upheld by the Tenth Circuit, and the Supreme Court denied certiorari review of that decision. 568 U.S. 928 (Oct. 1, 2012).

The Court should thus reject Plaintiffs' attempt to invoke the "major questions" doctrine in attempting to invalidate the 2023 Final Rule.[20]

## IV. The Non-Delegation Doctrine is Not Implicated by the 2023 Rule

Plaintiffs' non-delegation challenge to the Rule fares no better. The nondelegation doctrine forbids Congress from transferring "powers which are strictly and exclusively legislative" to other branches of government. *Gundy v. United States*, 588 U.S. 128, 135 (2019) (internal citation omitted). Yet Congress "may 'obtain the assistance of its

---

[20] Even assuming USDA's application of the Roadless Rule to the Tongass, or the promulgation of the 2001 Rule, implicated the "major questions" doctrine, the rules fall clearly within USDA's well-established mandate to manage the NFS for multiple uses.

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   52
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 65 of 80

coordinate Branches'—and in particular, may confer substantial discretion on executive agencies to implement and enforce the laws." *Id*. (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)) (alterations in *Gundy*). "[I]n our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Mistretta*, 488 U.S. at 372.

A statutory delegation is "constitutionally sufficient if Congress clearly delineates" [1] "the general policy" to be pursued, [2] "the public agency which is to apply it," and [3] "the boundaries of th[e] delegated authority." *Am. Power & Light Co. v. Securities & Exch. Comm'n*, 329 U.S. 90, 104 (1946); *see also United States v. Melgar-Diaz*, 2 F.4th 1263, 1267 (9th Cir. 2021) ("This means that a delegation is permissible if Congress has made clear to the delegee the general policy [the delegee] must pursue and the boundaries of [the delegee's] authority.") (citations, quotations, and alterations omitted). A court engaged in a nondelegation inquiry looks to the statute to determine what task it delegates and what instructions it provides. *Gundy*, 588 U.S. at 136. "[A] nondelegation inquiry always begins (and often almost ends) with statutory interpretation. The constitutional question is whether Congress has supplied an intelligible principle to guide the delegee's use of discretion. So the answer requires construing the challenged statute to figure out what task it delegates and what instructions it provides." *Id*. at 135-36 (citations omitted).

"These standards are not demanding," and the Supreme Court has "repeatedly turned down many non-delegation challenges, including in cases involving very broad

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   53
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 66 of 80

conferrals of authority" upon agency rulemaking. *Melgar-Diaz*, 2 F.4th at 1267.[21] "In the history of the Court[,]" it has "found the requisite 'intelligible principle' lacking in only two statutes, one of which provided literally no guidance for the exercise of discretion, and the other of which conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.'" *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474 (2001) (quoting *Panama Refin. Co. v. Ryan*, 293 U.S. 388 (1935), and *A.L.A. Schecter Poultry Corp. v. United States*, 295 U.S. 495 (1935)).

Congress's delegation of authority to USDA to manage NFS lands plainly does not violate the non-delegation doctrine. The Property Clause of the U.S. Constitution empowers Congress "to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. And when it legislates under that authority, it is understood that "Congress exercises the powers both of a proprietor and of a legislature over the public domain." *Kleppe v. New*

---

[21] For example, the Supreme Court has upheld the delegation of broad conferrals of authority to agencies to regulate "in the public interest," *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 198-99, 226 (1943), to set "fair and equitable prices," *Yakus v. United States*, 321 U.S. 414, 426 (1944), to set "just and reasonable rates," *Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591, 611 (1944), and to issue air quality standards that are "requisite to protect the public health." *Whitman,* 531 U.S. at 475-76, 494-95; *see also Mistretta*, 488 U.S. at 374-77 (upholding delegation to the Sentencing Commission to promulgate then-binding Sentencing Guidelines establishing sentences for federal crimes); *Touby v. United States*, 500 U.S. 160, 165-67 (1991) (upholding delegation to the Attorney General to designate controlled substances temporarily, resulting in criminal penalties for unauthorized manufacture, possession, or distribution of such substances).

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   54
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 67 of 80

*Mexico*, 426 U.S. 529, 540 (1976). Congress delegated these property clause authorities over NFS lands to the USDA through the Organic Act and MUSYA, which, in turn, articulate the "intelligible principle"—multiple-use and sustained-yield management— that guides USDA's management of NFS lands. *See, e.g.*, *McMichael*, 355 F.2d at 285 (recognizing Secretary of Agriculture's statutory "authority to administer recreation and wildlife habitat resources of the national forest has been recognized in numerous appropriation acts and comes from the authority contained in the [Organic Act], to regulate the 'occupancy and use' of the national forest." (quoting S. Rept. No. 1407 at 7 and H. Rept. No. 1551, 86th Cong., 2d Sess.).

Undeterred, Plaintiffs maintain that the Secretary's authorit by USDAy to manage NFS lands on the Tongass is like the authority exercised in the two cases to have found an improper delegation, *Panama Refining* and *A.L.A. Schecter Poultry Corp.*. IPEC Br. 28-29, 32-34. But neither case involved a delegation of federal land management authorities. And, unlike in those cases, here Congress has certainly declared policies and laid down rules pursuant to which the Secretary acts. For that reason, the Supreme Court long ago rejected non-delegation challenges to the Secretary's exercise of authority under the Organic Act. In *Grimaud*, for example, the Court ruled that "[t]he subjects as to which the Secretary can regulate are defined" in the Organic Act—and include the power to protect NFS lands "'to regulate the occupancy and use and to preserve the forests from destruction.'" 220 U.S. at 522 (quoting Organic Act). Thus, unlike *Panama Refining* and *A.LA. Schecter Poultry Corp.*, the Organic Act limits the Secretary's delegated authority and provides the requisite

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.  55
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 68 of 80

intelligible principle; it does not authorize USDA to "make rules and regulations for any and every purpose." *Id.*

Contrary to Plaintiffs' suggestion, the Court's discussion in *Grimaud* was not limited to the authority to impose penalties on impermissible uses of public lands. *IPEC* Br. 30-31. The Court ruled that the Organic Act authorizes the Secretary to "'regulate the occupancy and use and to preserve the forests from destruction.'" 220 U.S. at 522. And that ruling was sufficient for the Court in *Light* to resolve any non-delegation argument about the Secretary's exercise of authority under the Organic Act. 220 U.S. at 534. And, even if *Grimaud* and *Light* were limited to the authority to impose penalties (which they are not), the Ninth Circuit has recognized that Congress may delegate the authority to regulate and protect NFS lands outside the penalty context. *See Dastervignes*, 122 F.30 at 34-35 (ruling that decision to prohibit pasturing of sheep on public lands does not violate the non-delegation doctrine).

Courts have similarly recognized that "[t]he standards in [MUSYA] are broad, but they do exist. [MUSYA] is not entirely discretionary." *Nat'l Wildlife Fed'n. v. U.S Forest Serv.*, 592 F. Supp. 931, 938 (D. Or. 1984), *amended by*, 643 F. Supp. 653 (rejecting non-delegation challenge); *cf. Perkins*, 278 F.2d at 806-07 (recognizing that Secretary of Agriculture's authority to protect NFS lands and property under MUSYA is subject to narrow review under the APA). Even where standards and limitations are broad, "Congress does not violate the Constitution merely because it legislates in broad terms, leaving a certain degree of discretion to executive or judicial actors." *Touby*, 500 U.S. at 165. Thus,

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots. 56
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 69 of 80

even statutes like MUSYA that "breathe discretion at every pore," can and do impose "limits which are capable of being exceeded." *Strickland v. Morton*, 519 F.2d 467, 469-70 (9th Cir. 1975). Indeed, it is impractical to expect Congress to delineate every conceivable way the Secretary of Agriculture could administer and manage 193 million acres of federal land to achieve the Organic Act and MUSYA statutes' specified purposes. Congress authorized the Secretary to exercise that discretion, which he properly exercised here.

## V.     USDA Adequately Explained its Change in Position in the 2023 Rule

Finally, the Court should reject Plaintiffs' contention that the Secretary acted in an arbitrary and capricious manner under the APA when he reinstated the Roadless Rule on the Tongass in 2023. *SOA* Br. 14-29. "Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). And the APA standard of review under Section 706 is no more stringent when an agency changes its position than in any other context." *Fox*, 556 U.S. at 514-15; *see also Alaska Indus. Dev. and Export Auth. v. State of Alaska*, No. 3:21-cv-00245-SLG, 2023 WL 5021555, at *21 (D. Alaska Aug. 7, 2023) (Gleason, J.) (recognizing that there is no "heightened review" when an agency changes position).

As discussed, the Supreme Court's *State Farm* decision sets forth the APA's standard of review. And "*State Farm* neither held nor implied that every action representing a policy change must be justified by reasons more substantial than those required to adopt a policy in the first instance." *Fox*, 556 U.S. at 514. A "policy change" complies with the APA if [1] the agency "display[s] awareness that it *is* changing

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   57
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 70 of 80

position," [2] "the new policy is permissible under the statute," [3] "there are good reasons for" the new policy, and [4] "the agency *believes* [the new policy] to be better." *See id.* at 515-16. Because USDA complied with each of these requirements in explaining its change in position from the 2020 Alaska Rule in the 2023 Final Rule, Plaintiffs' APA claim fails.

## A. USDA Provided a Reasoned Explanation for its Change in Position

First, USDA acknowledged its change in position in the 2023 Final Rule and ROD. "Like the 2020 Alaska Roadless Rule, [the 2023 Final Rule] is based on a reevaluation of the social value of the various uses of the Tongass." 88 Fed. Reg. at 5,255; FS01039508. USDA "now believes that the adverse consequences of exempting the Tongass from the 2001 Roadless Rule, particularly the increase in acreage available for timber production, the increase in road construction, and the lack of consideration for the views of Tribal Nations," favor reinstating the Roadless Rule on the Tongass. *Id.* USDA also believes that the "need for stability and predictability over two decades of shifting management . . . can best be served by restoring the familiar framework of the 2001 Roadless Rule." *Id.*

Second, as discussed, the new policy is permissible under USDA's organic statutes. *See supra* at 25-35*; see also*, 88 Fed. Reg. at 5,257; FS01039510 (2023 Final Rule relying on USDA's authority under those statutes "to determine the proper uses within any area, including the appropriate resource emphasis and mix of uses."). Indeed, Plaintiffs support the Secretary's promulgation of the 2020 Alaska Rule, which invoked and relied on the same broad authority as the 2023 Final Rule. *See* 85 Fed. Reg. at 68691; FS00813777 (2020 Alaska Rule) (recognizing Secretary's "broad authority to protect and administer the

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.  58
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 71 of 80

NFS through regulation" as provided for in the Organic Act and MUSYA).

Lastly, there are good reasons for the change of position, and USDA believes that reinstating the rule on the Tongass is better overall policy considering the multiple uses of the Forest. The Secretary explained in the preamble to the 2023 Final Rule that he believes reinstating the Roadless Rule on the Tongass "promote[s] the continued health and resilience of mature and old-growth forests" by removing 168,000 acres of old-growth forest from timber production. 88 Fed. Reg. at 5255; FS01039508. "Roadless areas on the Tongass are also the world's largest remaining, intact, old-growth temperate rainforest, which supports biodiversity and stores carbon." *Id.* The Secretary thus believes retaining the rule is the best way to ensure overall ecosystem health and to enhance climate resiliency. *Id.* Further, reinstating the Roadless Rule promotes "subsistence and cultural uses," "outdoor recreational opportunities," and "sustainable local economic development" in the area. *Id.* Restoring Roadless Rule protections on the Tongass also "responds to the unanimous input provided by Tribal Nations during government-to-government consultation sessions." 88 Fed. Reg. at 5256; FS01039509. The 2023 Final Rule thus honors that Nation-to-Nation relationship. *Id.* Lastly, reinstating the Roadless Rule on the Tongass provides "stability and predictability" in managing the Tongass into the future. *Id.*

**B. USDA's Change in Position Was Not Based on New Factual Findings.**

In urging that the Court invalidate the 2023 Final Rule, Plaintiffs assert that the Secretary's change in position rests on factual findings that contradict those underlying the prior 2020 Rule and so require greater explanation, as in *Organized Village of Kake. See*

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.  59
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 72 of 80

*SOA* Br. 7-30. But the situation before this Court is not analogous to the situation in *Village of Kake*. At issue there was USDA's 2003 rule exempting the Tongass from the Roadless Rule despite finding in the 2001 Roadless Rule that "wholly exempting the Tongass from the Roadless Rule and returning it to management under the Tongass Forest Plan 'would risk the loss of important roadless values,' and that roadless values would be 'lost or diminished' even by a limited exemption." 795 F.3d at 968 (internal citations omitted). The court invalidated the 2003 Tongass Exemption because the agency failed to provide a reasoned explanation reconciling its 2001 determination that exempting the Tongass would risk loss of roadless values with its 2003 determination that the "Roadless Rule was 'unnecessary to maintain the roadless values,' and [that] 'the roadless values in the Tongass [were] sufficiently protected under the Tongass Forest Plan.'" *Id*.

Here, by contrast, both USDA's 2020 and 2023 Final Rules rest on the *same* EIS and facts.[22] The 2020 EIS estimates that exempting the Tongass from the Roadless Rule would make 168,000 more acres of old-growth forest available for timber production. FS00812997. And the 2020 EIS estimates that exempting the Tongass from the rule would also increase road construction, from 994 miles to 1,043 miles over the next 100 years. FS00813116. Based on those facts, USDA decided in 2020 that the adverse environmental consequences of exempting the Tongass from the Roadless Rule were acceptable based on the goals of "increasing rural economic opportunity, decreasing federal regulation, and

[22] During the 2023 rulemaking, USDA considered whether any new information or changed circumstances materially affected the prior analysis and found that it did not. *See* FS01039368-72 (DNA).

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   60
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 73 of 80

streamlining government services." 85 Fed. Reg. at 68691; FS00813777. Based on the same facts, USDA now favors reinstating the Roadless Rule on the Tongass to ensure overall ecosystem health and to enhance climate resiliency; "subsistence and cultural uses" and "outdoor recreational opportunities" in the area; and "sustainable local economic development." 88 Fed. Reg. at 5255; FS01039508.

The Secretary is not required under the APA to further explain his change in position or explain why its position represents better policy. When an agency's change in position does not rest on new factual findings that contradict those that underlay a prior policy, as here, "it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *Fox*, 556 U.S. at 516.

Plaintiffs also suggest that the agency's 2020 EIS shows that the roadless values that the 2023 Final Rule seeks to protect could also be accomplished by managing the Tongass under the Forest Plan, rather than reinstating the Roadless Rule. *See SOA* Br. 7-9, 17-22. But "[t]he Final EIS is clear that Alternative 6 (full exemption of the Tongass from the 2001 Roadless Rule) would likely result in more degradation of roadless area characteristics than any of the other alternatives." 88 Fed. Reg. at 52709; FS01039523. As explained in the 2020 EIS, reinstating the Roadless Rule on the Tongass "would protect the most acres and existing management direction would provide the highest degree of protection, with the existing general prohibitions remaining in place." FS00812998.

The differences between reinstating and repealing the Roadless Rule on the Tongass

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.  61
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 74 of 80

are modest, but meaningful to USDA. 88 Fed. Reg. 5,270; FS1039523. The modest

differences in projected timber harvest between reinstating the Roadless Rule and repealing

the rule "reflect the additional flexibility the 2020 Alaska Rule was expected to provide in

making 188,000 more acres suitable for harvest, and project that there might be more high-

volume and large-tree old-growth harvested under Alternative 6 (the 2020 Alaska Rule

Alternative) because of that flexibility." *Id*. The 2023 Final Rule "reflects USDA's belief

that even a modest adverse effect of this type is undesirable, in light of the USDA's current

policy objectives." *Id*. These policy objectives include "prioritizing the values that roadless

areas on the Tongass hold for local communities and Native peoples, as reflected, among

other places, in the consultation with Tribal Nations, and the multiple ecologic, social,

cultural, and economic values supported by roadless areas on the Forest." *Id*. Reinstating

the Roadless Rule also has "not been an impediment to vital infrastructure and energy

projects, given that some infrastructure and energy development is allowed under various

statutes and projects have been approved consistent with the exemptions in the [Rule]." *Id*.

USDA similarly determined that even a modest increase in road construction was not

desirable considering current objectives because roads pose the greatest risk to fish and

aquatic resources, and less protection for high-value watersheds. 88 Fed. Reg. at 5,256,

5,266, and 5,270; FS01039509, FS01039519, and FS01039523; FS01039249;

FS01039253.

 Plaintiffs also seek to attack the other reasons given for USDA's change in

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots. 62
Case 3:23-cv-00203-SLG Document 44 Filed 06/26/24 Page 75 of 80

position.[23] Plaintiffs assert that USDA's 2023 finding that the change in position was necessary to address the view of Tribal Nations "grossly contradicts the record." *See SOA Br. 23-24.* On this point, the views of Tribal Nations are well expressed in the Administrative Record associated with the 2020 Alaska Rule exempting the Tongass from the Roadless Rule. Native Tribes were consulted and offered cooperating agency status as part of the 2020 rulemaking, but they felt their views—which favored continued application of the 2001 Roadless Rule or modest changes to that rule—were ignored. *See* Tribes' Oct. 2019 Ltr. from Tribal Cooperating Agencies, FS00011562-64; Tribal Ltr. Withdrawing from Cooperating Agency Status, FS00013304-06. By repealing the 2020 Alaska Rule and reinstating the Roadless Rule on the Tongass, USDA more heavily weighed the Tribal Nation's views and the roadless values in its decision-making.

Plaintiffs also assert that the need for "stability and predictability" in Forest

---

[23] As a threshold matter, Plaintiffs inexplicably devote three pages of their *Fox* argument to advancing a new and improperly asserted supplemental NEPA claim. *SOA* Br. 25-27. But whether USDA "adequately consider[ed] the impacts of the Roadless Rule on renewable energy projects when it repealed the Alaska Rule" implicates USDA's obligations under NEPA's environmental analysis requirements—it is not relevant to this Court's consideration of whether USDA adequately explained its change in position under the APA. No Plaintiff has brought any claim asserting any violation of NEPA in any of their three Complaints, let alone a claim that USDA "should have performed supplemental analysis to the FEIS" based on the Inflation Reduction Act. *Id.* at 32. Ninth Circuit precedent precludes the Court from considering this novel claim for the first time in summary judgment briefing. *See, e.g.*, *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Wasco Prods., Inc. v. Southwall Techs., Inc.,* 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.").

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots. 63
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 76 of 80

management is a "spurious" rationale for the change in position that should be rejected because the Roadless Rule has spawned two decades of litigation and changes in administration policy. *See SOA* Br. 28-29. But USDA cannot control when it is sued; returning operations to the status quo that existed between 2011 and 2020 is a reasonable stabilizing action. The Court should thus reject Plaintiffs' APA challenge to the decision.

## VI.    Should the Court Reach Remedy, Vacatur is Inappropriate

Finally, any remedy should be limited to remanding the matter to the agency for additional explanation, while leaving the 2023 Final Rule in place. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[i]f the record before the agency does not support agency action" "the proper course, except in rare circumstances, is to remand to the agency for additional . . . explanation.").

Furthermore, vacatur is a species of equitable relief, and courts are not mechanically obligated to vacate agency decisions that they find invalid.[24] "Although the district court has power to do so, *it is not required to set aside every unlawful agency action.* The court's decision to grant or deny injunctive or declaratory relief under the APA is controlled by principles of equity." *Nat'l Wildlife v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995) (emphasis added). In determining whether, and to what extent, vacatur is appropriate, courts weigh

---

[24] Federal Defendants note that some Justices on the Supreme Court have recently questioned whether vacatur is an available remedy under the APA at all. *See United States v. Texas*, 599 U.S. 670, 693-704 (2023) (Gorsuch, J., concurring); *see also United States v. Texas*, No. 22-58 (S. Ct.), Gov't Op. Br., 2022 WL 4278395, 40-44 (arguing "set aside" in APA Section 706 does not mean "vacate."); Gov't Reply Br., 2022 WL 17170668, at*16-20 (same). As explained in the text, however, controlling Ninth Circuit precedent treats vacatur as an available APA remedy in appropriate circumstances.

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   64
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 77 of 80

both how serious the agency's errors are and the disruptive consequences of the vacatur.

*California Communities Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012). And,

when vacatur is warranted, it must be narrowly tailored—like any equitable remedy—to

"be no more burdensome to the defendant than necessary to provide complete relief to the

plaintiffs." *Cal. v. Yamasaki*, 442 U.S. 682, 702 (1979). Accordingly, any remedy beyond

remand without vacatur should be informed by additional briefing addressing the

seriousness of the error found by the Court and the disruptive consequences of vacatur.

## CONCLUSION

The Court should thus uphold the 2023 Final Rule and grant summary judgment in

favor of Federal Defendants.

DATED this 26th day of June, 2024.

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*/s/    Paul G. Freeborne*
PAUL G. FREEBORNE
Trial Attorney
VA State Bar No. 33024
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 532-5271
Fax: (202) 305-0275
Email: paul.freeborne@usdoj.gov

*SOA v. USDA, et al.*, No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   65
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 78 of 80

EMMA L. HAMILTON
Trial Attorney
CA State Bar No. 325360
Natural Resources Section
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1361
Email: emma.hamilton@usdoj.gov

*Counsel for Federal Defendants*

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.   66
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 79 of 80

## CERTIFICATE OF SERVICE

I certify that on June 26, 2024, I filed the foregoing using the Court's ECF system, which will provide service to all counsel of record.

*/s/ Paul G. Freeborne*
PAUL G. FREEBORNE
Trial Attorney

*SOA v. USDA, et al.,* No. 3:23-cv-00203-SLG
Fed. Defs' Mot. & Mem. in Supp. of Cross-Mot. for Summ. J. & Opp'n to Pls.' Mots.  67
Case 3:23-cv-00203-SLG   Document 44   Filed 06/26/24   Page 80 of 80