Katharine S. Glover
Eric P. Jorgensen
EARTHJUSTICE
325 Fourth Street
Juneau, AK 99801
907.586.2751
kglover@earthjustice.org
ejorgensen@earthjustice.org

Ian Fein
Alexander Hall
NATURAL RESOURCES
DEFENSE COUNCIL
111 Sutter Street, 21st Floor
San Francisco, CA 94104
415.875.6147
ifein@nrdc.org
ahall@nrdc.org

Jeremy C. Lieb
EARTHJUSTICE
310 K Street Suite 508
Anchorage, AK 99501
907.277.2500
jlieb@earthjustice.org

Garett R. Rose
NATURAL RESOURCES
DEFENSE COUNCIL
1152 15th Street NW
Washington DC 20005
202.289.6868
grose@nrdc.org

*Attorneys for Intervenor-Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA *et al.* )<br><br>*Plaintiff,* )<br>v. )<br><br>UNITED STATES DEPARTMENT OF )<br>AGRICULTURE *et al.*, )<br><br>*Defendants,* )<br><br>*and* )<br><br>ORGANIZED VILLAGE OF KAKE *et al.*, )<br><br>*Intervenor-Defendants.* )<br>_____ ) | Case No. 3:23-cv-00203-SLG<br>(consolidated) |

| | |
|---|---|
| INSIDE PASSAGE ELECTRIC COOPERATIVE *et al.* | ) |
| | ) |
| Plaintiffs, | ) Case No. 3:23-cv-00204-SLG |
| v. | ) (consolidated) |
| | ) |
| UNITED STATES DEPARTMENT OF AGRICULTURE *et al.*, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| ORGANIZED VILLAGE OF KAKE *et al.*, | ) |
| | ) |
| Intervenor-Defendants. | ) |
| GOVERNOR FRANK H. MURKOWSKI, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Case No. 1:23-cv-0010-SLG |
| | ) (consolidated) |
| v. | ) |
| | ) |
| TOM VILSACK *et al.*, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| ORGANIZED VILLAGE OF KAKE *et al.*, | ) |
| | ) |
| Intervenor-Defendants. | ) |

**INTERVENOR-DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.   The Department Had Valid Statutory Authority to Issue the 2023 Final
     Rule. ......................................................................................................................... 3

     A.   The Organic Act and MUSYA Authorized the Rule. ................................... 3

          1.   The Organic Act independently authorized the Rule. ......................... 4

          2.   MUSYA confirms the Department's authority. ................................... 7

          3.   The Major Questions Doctrine does not apply. .................................. 9

     B.   Congress Permissibly Delegated Management Authority over
          National Forests to the Department. ............................................................ 11

II.  No Other Statute Prohibits the 2023 Final Rule. .................................................. 15

     A.   The 2023 Final Rule is Consistent with ANILCA. ..................................... 15

          1.   ANILCA § 1326 does not prohibit the Rule. .................................... 15

          2.   ANILCA § 708 does not prohibit the Rule. ...................................... 18

          3.   ANILCA § 101 does not prohibit the Rule. ...................................... 19

     B.   The 2023 Final Rule is Consistent with the Transportation-Related
          Statutes Plaintiffs Cite. ............................................................................... 20

III. The Department Adequately Explained its Change of Position in the 2023
     Final Rule. ............................................................................................................. 21

     A.   An Agency's Explanation for Changing Position Does Not Require
          Further Justification if it Does Not Contradict Prior Factual
          Findings. ...................................................................................................... 22

     B.   The 2023 Final Rule Does Not Rely on Factual Findings
          Contradicting those Underlying the 2020 Alaska Rule. .............................. 23

*State of Alaska et al. v. U.S. Dep't of Agric. et al.,*                                    i
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

1.     The 2020 and 2023 rules relied on the same facts related to the Tongass Forest Plan and environmental protections. ................. 24

2.     The Department's 2023 conclusions regarding the socioeconomic effects of the Roadless Rule do not rely on contradictory findings. ....................................................... 28

3.     The Department's policy choice to give greater weight to the views of Tribal Nations does not rely on contradictory factual findings. ............................................................................. 29

C.     The Department Properly Concluded that the 2023 Final Rule Increases Stability and Predictability and is More Responsive to Public Comments. ........................................................................ 30

1.     Reinstating the Roadless Rule will plausibly increase stability and predictability. ........................................................... 31

2.     That the 2023 decision is more responsive to public comments is a plausible factor supporting the decision. ................. 32

D.     Plaintiffs Waived Any Argument that the Department Must Conduct a Supplemental Environmental Analysis of Alleged Impacts on Renewable Energy Projects. ........................................................ 33

CONCLUSION ............................................................................ 34

CERTIFICATE OF COMPLIANCE WITH WORD LIMITS ......................................... 35

*State of Alaska v. U.S. Dep't of Agriculture et al.,*         ii
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 4 of 45

# TABLE OF AUTHORITIES

## CASES

*Alaska Indus. Dev. & Exp. Auth. v. Biden*,
685 F. Supp. 3d 813 (D. Alaska 2023) .................................................................... 10, 21

*Alaska v. Newland*,
No. 3:23-cv-00007-SLG, 2024 WL 3178000 (D. Alaska June 26, 2024).................. 10

*Alaska v. USDA*,
273 F. Supp. 3d 102 (D.D.C. 2017) .......................................................................... 16

*Alaska v. USDA*,
772 F.3d 899 (D.C. Cir. 2014) .................................................................................... 9

*California ex rel. Becerra v. Azar*,
950 F.3d 1067 (9th Cir. 2020) .................................................................................. 22

*Bradford v. U.S. Dep't of Labor*,
101 F.4th 707 (10th Cir. 2024) .................................................................................. 10

*Butte City Water Co. v. Baker*,
196 U.S. 119 (1905) .................................................................................................... 14

*Cal. Coastal Comm'n v. Granite Rock Co.*,
480 U.S. 572 (1987) ...................................................................................................... 5

*California v. Bergland*,
483 F. Supp. 465 (E.D. Cal. 1980) ............................................................................ 19

*Camfield v. United States*,
167 U.S. 518 (1897) .................................................................................................... 10

*Creech v. Tewalt*,
84 F.4th 777 (9th Cir. 2023) ......................................................................................... 4

*Ctr. for Biological Diversity v. USFS*,
80 F.4th 943 (9th Cir. 2023) ....................................................................................... 14

*Dastervignes v. United States*,
122 F. 30 (9th Cir. 1903) ............................................................................................ 11

*State of Alaska v. U.S. Dep't of Agriculture et al.*,                                                    iii
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 5 of 45

*Dep't of Fish & Game v. Fed. Subsistence Bd.*,
    --- F. Supp. 3d ---, No. 3:20-cv-00195-SLG, 2023 WL 7282538 (D. Alaska Nov. 3, 2023) .................................................................................................................. 9

*Earth Island Inst. v. USFS*,
    87 F.4th 1054 (9th Cir. 2023) ................................................................................. 33

*FCC v. Fox Television Stations*,
    556 U.S. 502 (2009) ........................................................................................... 22, 23

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021) .................................................................................................. 22

*Gundy v. United States*,
    139 S. Ct. 2116 (2019) ............................................................................................. 13

*Kootenai Tribe of Idaho v. Veneman*,
    313 F.3d 1094 (9th Cir. 2002) ................................................................................... 3

*Light v. United States*,
    220 U.S. 523 (1911) .................................................................................................. 10

*Mayes v. Biden*,
    67 F.4th 921 (9th Cir. 2023) .................................................................................... 10

*McMichael v. United States*,
    355 F.2d 283 (9th Cir. 1965) .............................................................. 4, 5, 11, 12, 13

*Mountain States Tel. & Tel. Co. v. United States*,
    499 F.2d 611 (Ct. Cl. 1974) ..................................................................................... 14

*Nat'l Ass'n of Home Builders v. EPA*,
    682 F.3d 1032 (D.C. Cir. 2012) ............................................................................... 21

*Nat'l Broadcasting Co. v. United States*,
    319 U.S. 190 (1943) .................................................................................................. 13

*Navajo Nation v. USFS*,
    535 F.3d 1058 (9th Cir. 2008) ................................................................................. 33

*Organized Vill. of Kake v. Vilsack*,
    Case No. 1:20-cv-00011-SLG (filed Dec. 23, 2020) ............................................... 27

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                                  iv
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 6 of 45

*Organized Village of Kake v. USDA*,
795 F.3d 956 (9th Cir. 2015) .................................... 2, 21, 22, 23, 24, 25, 29, 30, 31, 32

*Pub. Lands for the People, Inc. v. USDA*,
697 F.3d 1192 (9th Cir. 2012) ........................................................... 6

*Pulsifer v. United States*,
601 U.S. 124 (2024) ....................................................................... 16

*Sagebrush Rebellion, Inc. v. Hodel*,
790 F.2d 760 (9th Cir. 1986) ............................................................ 16

*Se. Conf. v. Vilsack*,
684 F. Supp. 2d 135 (D.D.C. 2010) ................................................ 16, 17

*Sierra Club v. Hickel*,
433 F.2d 24 (9th Cir. 1970) .............................................................. 15

*Sierra Club v. Lyons*,
No. J00-0009 CV (JKS), slip op. (Mar. 30, 2001) ..................................... 18

*So. Utah Wilderness Alliance v. BLM*,
425 F.3d 735 (10th Cir. 2005) .......................................................... 17

*Solar Energy Indus. Ass'n v. FERC*,
80 F.4th 956 (9th Cir. 2023) ................................................... 21, 22, 29

*United States v. Cassiagnol*,
420 F.2d 868 (4th Cir. 1970) ............................................................ 14

*United States v. Grimaud*,
220 U.S. 506 (1911) ...................................................................... 12

*United States v. Hatcher*,
656 F. Supp. 3d 1233 (D. Nev. 2023) .................................................. 14

*United States v. Hymans*,
463 F.2d 615 (10th Cir. 1972) ............................................................. 5

*United States v. Melgar-Diaz*,
2 F.4th 1263 (9th Cir. 2021) ............................................................. 13

*United States v. Moriello*,
980 F.3d 924 (4th Cir. 2020) ............................................................ 14

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                          v
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 7 of 45

*United States v. New Mexico*,
    438 U.S. 696 (1978) ................................................................................ 7

*United States v. Reeves*,
    39 F. Supp. 580 (W.D. Ark. 1941) ......................................................... 5

*United States v. Weiss*,
    642 F.2d 296 (9th Cir. 1981) .............................................................. 5, 6

*West Virginia v. EPA*,
    597 U.S. 697 (2022) ............................................................................ 10

*Wilderness Soc'y v. USFS*,
    630 F.3d 1173 (9th Cir. 2011) ............................................................... 3

*Wyoming v. USDA*,
    661 F.3d 1209 (10th Cir. 2011) ........................................... 3, 7, 8, 9, 19

## STATUTES

16 U.S.C. § 478 ......................................................................................... 6

16 U.S.C. § 528 .................................................................................... 7, 13

16 U.S.C. § 529 .................................................................................. 7, 8, 9

16 U.S.C. § 531 ................................................................................ 7, 8, 13

16 U.S.C. § 539(b) ................................................................................... 20

16 U.S.C. § 551 ............................................................................. 3, 4, 5, 12

16 U.S.C. § 3101 ................................................................................. 19, 20

16 U.S.C. § 3102(4) ................................................................................. 18

16 U.S.C. § 3209(a) ................................................................................. 17

16 U.S.C. § 3213 ......................................................................... 15, 17, 18

43 U.S.C. § 1702(j) .................................................................................. 16

43 U.S.C. § 1714 ..................................................................................... 17

*State of Alaska v. U.S. Dep't of Agriculture et al.*,             vi
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 8 of 45

Pub. L. No. 96-487, tit. VI, § 708, 94 Stat. 2371, 2421-22 (1980) .................................... 19

Pub. L. No. 101-626, § 202, 104 Stat. 4426, 4429 (1990) ................................. 20

## FEDERAL REGISTER NOTICES

43 Fed. Reg. 59,756 (Dec. 21, 1978)................................................................. 17

66 Fed. Reg. 3244 (Jan. 12, 2001)............................................................... 8, 18

68 Fed. Reg. 75,136 (Dec. 30, 2003)......................................................... 11, 32

85 Fed. Reg. 68,688 (Oct. 29, 2020) ...................................... 11, 24, 25, 26, 27, 28, 29, 30

88 Fed. Reg. 5252 (Jan. 27, 2023).................. 1, 6, 8, 10, 13, 16, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 1 ............................................................................ 14

## OTHER AUTHORITIES

G. Lawson, *Delegation and Original Meaning*,
88 Va. L. Rev. 327 (2002) ................................................................. 14

D. Schoenbrod, *The Delegation Doctrine: Could the Court Give It Substance?*,
83 Mich. L. Rev. 1223 (1985)........................................................... 14

C. F. Wheatley, Jr., II Study of Withdrawals and Reservations of Public Domain
Lands (1969) ............................................................................ 17

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                     vii
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 9 of 45

## INTRODUCTION

The 2001 Roadless Rule safeguards some of the most ecologically critical areas of the National Forest System by prohibiting most, but not all, logging and road construction in inventoried roadless areas. After exempting the Tongass National Forest from the Roadless Rule in 2020, the Department of Agriculture ("the Department") decided to reinstate those protections in the 2023 Final Rule challenged here. The Department did this after concluding, in light of its changed policy priorities, that reinstatement best balanced competing values and uses. *See* 88 Fed. Reg. 5252, 5255 (Jan. 27, 2023) (FS 01039508). Intervenors are Alaska Native Tribes, tourism businesses, a commercial fisheries advocacy group, and nonprofit environmental organizations. They rely on Tongass roadless areas for subsistence, fishing, hunting, guiding, and numerous other cultural and recreational uses, and have consistently advocated for maintaining the Roadless Rule safeguards for these areas. *See* Doc. 21 at 15-18. In their view, the 2023 Final Rule's protections are critical to maintaining the healthy ecosystems that support their ways-of-life, livelihoods, and other uses of the forest. *Id.* at 18-19.

Plaintiffs in these consolidated cases, by contrast, have been trying for more than two decades to upend these important protections in the Tongass. Their current efforts fare no better than their prior unsuccessful attempts. First, the Court may dispose of these cases at the outset because—as Federal Defendants argue—Plaintiffs have not the proffered the evidence required to establish their Article III standing. If the Court were to reach the merits, Plaintiffs mostly rehash old statutory and constitutional arguments that

*State of Alaska. v. U.S. Dep't of Agriculture et al.,*                                            1
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 10 of 45

prior courts have soundly rejected. The Ninth Circuit, for example, has affirmed the Department's authority to restrict timber harvest and road construction in roadless areas, and concluded that Congress's delegation of such forest management authority to the Department falls well within constitutional limits. Likewise, the U.S. District Court for the District of Columbia has explained that Tongass roadless protections do not "withdraw" federal land, in violation of the Alaska National Interest Land Conservation Act (ANILCA), because they still allow activities such as mining and mineral leasing in roadless areas. None of the other ANILCA provisions or transportation-related statutes that Plaintiffs cite preclude application of roadless protections in the Tongass either.

Finally, Plaintiffs' Administrative Procedure Act (APA) claim fails because the Department adequately explained its change of position in the 2023 Final Rule. Plaintiffs try to portray this case as the mirror image of *Organized Village of Kake v. USDA*, 795 F.3d 956, (9th Cir. 2015) (en banc)—a case many of the Intervenors brought that invalidated the 2003 exemption of roadless area protections from the Tongass. But the cases are not alike. In *Kake*, the exemption relied on factual findings that contradicted those in the preceding 2001 Roadless Rule decision. Here, by contrast, the Department's reinstatement did not rely on factual findings contradicting those in the 2020 Alaska Rule, but rather reflected a change in position based on a reevaluation of policy priorities—something *Kake* expressly recognized the agency could do. The Court should grant summary judgment in favor of Federal Defendants and Intervenors, deny Plaintiffs' motions for summary judgment, and uphold the 2023 Final Rule.

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                                    2
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 11 of 45

**ARGUMENT**

**I.      The Department Had Valid Statutory Authority to Issue the 2023 Final Rule.**

The Organic Act and Multiple-Use Sustained-Yield Act (MUSYA) authorize the

Department to restrict road construction and timber harvest in inventoried roadless areas

of the national forests. The major questions doctrine does not apply to this well-

established authority, and Congress's delegation of this authority to the Department falls

well within any constitutional limits.

**A.      The Organic Act and MUSYA Authorized the Rule.**

As Federal Defendants observe, Doc. 44 at 41, the Ninth and Tenth Circuits

rejected similar challenges to the Department's statutory authority in litigation contesting

the 2001 Roadless Rule. The Ninth Circuit held that the Department's "general

rulemaking authority [under] the 1897 Organic Act is sufficient to support the Roadless

Rule's promulgation to achieve the objects of our National Forest System." *Kootenai*

*Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1117 n.20 (9th Cir. 2002) (citing 16 U.S.C.

§ 551), *abrogated in part on other grounds by Wilderness Soc'y v. USFS*, 630 F.3d 1173

(9th Cir. 2011).[1] The Tenth Circuit later agreed, citing *Kootenai* and holding that the

Organic Act and MUSYA together "clearly authorized" the Department to protect

national forests "through restrictions on commercial logging and road construction."

*Wyoming v. USDA*, 661 F.3d 1209, 1235 (10th Cir. 2011).

---

[1] The abrogation in *Wilderness Society* addressed an entirely different issue—intervention
as-of-right in National Environmental Policy Act cases, 630 F.3d at 1177-81—and left
undisturbed the remaining parts of the *Kootenai* decision, 313 F.3d at 1111-26.

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                                3
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Plaintiffs' failure to acknowledge these decisions is striking. Plaintiffs cite *Wyoming* once as part of their nondelegation argument, Doc. 38 at 45, but they do not acknowledge that decision's resolution of the statutory question. And they never even mention, much less discuss, the Ninth Circuit decision in *Kootenai*. Because the statutory authority ruling was germane to the resolution of *Kootenai*, and the panel majority resolved it after reasoned consideration in a published opinion, the ruling is the "law of the circuit." *Creech v. Tewalt*, 84 F.4th 777, 788 (9th Cir. 2023) (cleaned up).

### 1. The Organic Act independently authorized the Rule.

The Department's rulemaking authority under the Organic Act allows it to restrict road construction and timber harvest in inventoried roadless areas of the Tongass. The Act authorizes the Department to make "rules and regulations" to "regulate [the national forests'] occupancy and use and to preserve the forests thereon from destruction." 16 U.S.C. § 551. Almost 60 years ago, in *McMichael v. United States*, 355 F.2d 283 (9th Cir. 1965), the Ninth Circuit held that this provision authorized the agency to adopt regulations that restricted the public's use—there, prohibiting motorized vehicle use—of national forest areas that the agency designated for increased protection. *Id.* at 284-86. Plaintiffs nowhere explain why, if the Department can do that under the Organic Act, it cannot restrict road construction and timber harvest in designated areas, too.

Instead, Plaintiffs base their Organic Act argument on an unjustifiably narrow interpretation of the word "destruction." Doc. 38 at 31-35. But the Ninth Circuit in *McMichael* held that the Department's rulemaking authority over forest "uses" included

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                      4
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 13 of 45

efforts to promote recreation and wildlife habitat, not merely to preserve the forests from "destruction." 355 F.2d at 285-86. The Tenth Circuit later relied on *McMichael* and rejected a similar "destruction"-based argument in affirming the Department's regulation that prohibited indecent conduct in national forests. *United States v. Hymans*, 463 F.2d 615, 617 (10th Cir. 1972). The court explained that the Department's "power to issue rules and regulations pertaining to the use and occupancy of the lands is not dependent upon"—but rather, is "in addition and independent of"—the separate "power to issue rules and regulations to preserve the forests from destruction." *Id.* (quoting *United States v. Reeves*, 39 F. Supp. 580, 583 (W.D. Ark. 1941)). Plaintiffs, again, ignore these Ninth and Tenth Circuit precedents.

Nothing in *United States v. Weiss*, 642 F.2d 296 (9th Cir. 1981), on which Plaintiffs rely, Doc. 38 at 31, suggests the Department's rulemaking authority is limited to preventing what Plaintiffs characterize as "destruction." To the contrary, *Weiss* affirmed the Department's authority to "minimize adverse environmental impacts on the surface resources of the national forests," and held that the Organic Act authorized the agency to regulate activities, including mining, in national forests. 642 F.2d at 298-99. When the Supreme Court implicitly endorsed *Weiss*'s holding a few years later, it described the Department's regulation of mining activity not as preventing "destruction," but rather as "use" regulations stemming from the agency's authority to "make 'rules and regulations' to 'regulate [the] occupancy and use' of national forests." *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 582 (1987) (quoting 16 U.S.C. § 551).

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                                              5
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 14 of 45

Another provision of the Organic Act cited by Plaintiffs, Doc. 38 at 32, 16 U.S.C. § 478, does not help them either. That provision directs that the Department shall not "prohibit any person from entering [on] national forests for all proper and lawful purposes," including "prospecting, locating, and developing the mineral resources." But the 2023 Final Rule does not prohibit anyone from entering the Tongass, or from engaging in the exploration or development of mineral resources, including in inventoried roadless areas. *See, e.g.*, 88 Fed. Reg. at 5262, 5264-65, 5267 (FS 01039515, 01039517-18, 01039520) (explaining the rule "does not prohibit many of the activities" cited by adverse commenters; allows access to mining claims; promotes fishing, hunting, outdoor recreation, and tourism; and provides road construction exceptions for federal aid highways). Moreover, the Organic Act provision also confirms that any person entering a forest "must comply with the rules and regulations covering such national forests," 16 U.S.C. § 478—reaffirming that the agency may restrict uses in national forests (as it did in the 2023 Final Rule) so long as it does not prohibit entry or mining altogether. *Weiss*, 642 F.2d at 298; *see also Pub. Lands for the People, Inc. v. USDA*, 697 F.3d 1192, 1197-98 (9th Cir. 2012) (affirming Department's Organic Act authority to "restrict motorized access to specified areas of the national forests, including mining claims").

Finally, any contention that the Department's rulemaking authority under the Organic Act requires factual findings applicable to "each forest" at the individual forest level, Doc. 38 at 34, is also incorrect. The regulations at issue in *McMichael* and *Weiss*, for example, both applied nationally. And in any event, the regulatory exceptions under

*State of Alaska v. U.S. Dep't of Agriculture et al.*,                                        6
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 15 of 45

the Roadless Rule allow, within each national forest, "varied managements actions and strategies depending on the particularized and localized conditions unique to each [inventoried roadless area]." *Wyoming*, 661 F.3d at 1267 (providing examples).

### 2. MUSYA confirms the Department's authority.

Although the Department's rulemaking authority under the Organic Act is "alone sufficient" to support its restrictions on road construction and timber harvest in inventoried roadless areas, MUSYA—which "reaffirmed the Forest Service's authority to manage national forests for a wide range of uses"—removes any doubt. *Id.* at 1235.

Congress enacted MUSYA in 1960 to "broaden the purposes for which national forests had previously been administered." *United States v. New Mexico*, 438 U.S. 696, 713-14 & n.21 (1978). The statute directs the Department to administer the national forests for multiple uses, including "outdoor recreation, range, timber, watershed, and wildlife and fish purposes." 16 U.S.C. § 528. Congress defined "multiple use" as, among other things, "making the most judicious use of the land for some or all of these resources" so that "they are utilized in the combination that will best meet the needs of the American people." *Id.* § 531(a). The statute also directs the Department to consider the "relative values of the various resources in particular areas," acknowledging that "some land will be used for less than all of the resources," and it makes clear that even highly protective wilderness areas are "consistent with the purposes and provisions of [the Act]." *Id.* §§ 529, 531.

These provisions confirm that the Department has authority to restrict road

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                                    7
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 16 of 45

construction and timber harvest in inventoried roadless areas, as it did in the 2023 Final Rule. Consistent with MUSYA's directive, the agency expressly determined that the rule "represents the best balance of multiple uses and values for the Tongass," 88 Fed. Reg. at 5256 (FS 01039509), explaining that the rule would provide "more durable protections" for outdoor recreation, watershed, and wildlife and fish purposes, *id.* at 5264-65 (FS 01039517-18). Although the rule restricts timber use in inventoried roadless areas, that is consistent with MUSYA's direction to consider the relative value of resources in particular areas, and to regulate the use of some areas for less than all resources. *See* 16 U.S.C. §§ 529, 531(a); *Wyoming*, 661 F.3d at 1268; 66 Fed. Reg. 3244, 3252 (Jan. 12, 2001) (FS 00013325) (explaining that "MUSYA does not envision that every acre of National Forest System land be managed for every multiple use, and does envision some lands being used for less than all of the resources").

It is not clear what Plaintiffs mean when they argue that MUSYA "[f]orecloses" the 2023 Final Rule. Doc. 38 at 35. Plaintiffs argue that "national forests should remain open for a multitude of uses," *id.*, but the 2023 Final Rule *does* leave the Tongass open for many uses. *See supra* p. 6 (noting that the rule allows many uses and activities including, among other things, mining, fishing, hunting, outdoor recreation, and tourism). Within inventoried roadless areas, "multiple uses will [still] be permitted to continue through the use of existing roads . . . and roads built or reconstructed under any of the exceptions enumerated in the rule, as well as through measures not requiring the construction or reconstruction of roads." *Wyoming*, 661 F.3d at 1268. As the Tenth

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                                    8
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 17 of 45

Circuit has explained, the Roadless Rule allows many more uses in inventoried roadless areas than are allowed in highly protective wilderness areas, *id.* at 1229-34—which Congress has confirmed are consistent with MUSYA, 16 U.S.C. § 529. Plaintiffs nowhere explain how, if wilderness areas are consistent with MUSYA, the 2023 Final Rule's more moderate use restrictions in inventoried roadless areas are not.

### 3. The Major Questions Doctrine does not apply.

Rather than engage with the prior court decisions addressing (and rejecting) their statutory authority argument, Plaintiffs invoke the major questions doctrine. Doc. 38 at 24-30. That attempt fails, for at least two reasons.

First, Plaintiffs improperly direct their major questions argument toward the 2001 Roadless Rule that applied to national forests across the country. *See, e.g.*, Doc. 38 at 22-23, 26-27. The agency action actually before this Court is the 2023 Final Rule that applies only to the Tongass. And the statute of limitations on challenges to the 2001 rule has long since expired. Challenges to the rule accrued initially for Plaintiffs in 2001, and then (per the D.C. Circuit) again in 2006. *Alaska v. USDA*, 772 F.3d 899, 900 (D.C. Cir. 2014). It has now been 18 years since then.

Plaintiffs do not—and could not—contend that the major questions doctrine applies to the Tongass-specific rule. As this Court has repeatedly explained, in all major questions cases "the broad scope of the challenged regulations impacted millions of people nationwide." *Dep't of Fish & Game v. Fed. Subsistence Bd.*, --- F. Supp. 3d ---, No. 3:20-cv-00195-SLG, 2023 WL 7282538, at *8 (D. Alaska Nov. 3, 2023), *appeal*

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                                    9
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 18 of 45

*docketed* No. 24-179 (9th Cir.); *see also Alaska Indus. Dev. & Exp. Auth. v. Biden*, 685 F. Supp. 3d 813, 835-36 (D. Alaska 2023) (similar). The 2023 Final Rule, by contrast, applies only to certain federal lands in Alaska. And it does not have anything resembling the type of economic impact implicated in major questions cases. *See, e.g.*, 88 Fed. Reg. at 5271 (FS 01039524) (determining the final rule is not a "major" rule based on economic impact). In short, no one has alleged that the rule would "affect millions of Americans or implicate billions of dollars." *Alaska v. Newland*, No. 3:23-cv-00007-SLG, 2024 WL 3178000, at \*9 (D. Alaska June 26, 2024).

Second, neither the 2023 Final Rule nor the 2001 Roadless Rule, for that matter, represented a "transformative expansion in [the agency's] regulatory authority." *West Virginia v. EPA*, 597 U.S. 697, 724 (2022) (cleaned up). For one thing, Plaintiffs have not demonstrated that the rules—which apply only to federal property in national forests— represent an exercise of the government's regulatory, as opposed to proprietary, authority. *See Mayes v. Biden*, 67 F.4th 921, 935 (9th Cir. 2023) (major questions doctrine inapplicable to exercises of proprietary authority), *vacated as moot*, 89 F.4th 1186; *accord Bradford v. U.S. Dep't of Labor*, 101 F.4th 707, 726 (10th Cir. 2024) (same); *see also Light v. United States*, 220 U.S. 523, 536 (1911) (explaining that the federal government "'has, with respect to its own lands, the rights of an ordinary proprietor,'" and may, "as an owner, object to its [national forests] being used for [certain] purposes") (quoting *Camfield v. United States*, 167 U.S. 518, 524 (1897)).

But even if the rules were an exercise of regulatory authority, they still would not

*State of Alaska v. U.S. Dep't of Agriculture et al.*,                                                    10
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 19 of 45

represent any transformative expansion. The use restrictions in designated areas of national forests that the Ninth Circuit upheld in *McMichael* date back to the 1930s. 355 F.2d at 284 n.2. And the court observed in that case that those restrictions reflected, as of 1965, the "consistent administrative interpretation" of the Department's Organic Act authority. *Id.* at 285. Furthermore, even though the Department under both the George W. Bush and Trump administrations sought to amend or rescind the use restrictions in Tongass inventoried roadless areas, *see* Doc. 38 at 29, neither administration asserted that those restrictions exceeded the agency's statutory authority. *See* 68 Fed. Reg. 75,136 (Dec. 30, 2003) (AE0401_ii301); 85 Fed. Reg. 68,688 (Oct. 29, 2020) (FS 00813774). So rather than any unheralded or transformative expansion, the use restrictions at issue in the 2023 Final Rule reflect the Department's consistent, decades-long understanding of its statutory authority.

## B. Congress Permissibly Delegated Management Authority over National Forests to the Department.

Circuit precedent also forecloses Plaintiffs' fallback claim that the Organic Act and MUSYA violate the nondelegation doctrine. Doc. 38 at 38-45. More than a century ago, the Ninth Circuit rejected a similar constitutional challenge to the Organic Act. *Dastervignes v. United States*, 122 F. 30, 33-35 (9th Cir. 1903). The court upheld a rule prohibiting grazing in national forests without a permit, concluding that the agency "acted simply as the arm that carries out the legislative will" regarding national forest management and "did not invade any of the functions of Congress." *Id.* at 34. Decades later, the Ninth Circuit reaffirmed in *McMichael* that Congress's delegation of authority

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                    11
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

to the Department to manage the use of national forests falls "well within the Constitutional limits." 355 F.2d at 284 n.4.

Although Plaintiffs ignore *Dastervignes* and *McMichael*, they do at least acknowledge *United States v. Grimaud*, 220 U.S. 506 (1911), which also rejected a nondelegation challenge to Department grazing regulations promulgated under the Organic Act. The Supreme Court explained that while "there is no act of Congress which, in express terms, declares that it shall be unlawful to graze sheep on a forest reserve," the Department—acting pursuant to its authority under the Organic Act—could promulgate a rule to protect forests from such harmful uses. *Id.* at 521. The Court held that the Department "could not make rules and regulations for any and every purpose" pursuant to the Act, but rather the "subjects as to which the [Department] can regulate are defined" and include the power to "'regulate the [forests'] occupancy and use.'" *Id.* at 522 (quoting 16 U.S.C. § 551). Ultimately, because the grazing rules at issue were "promulgated for the purpose of regulating the occupancy and use of the public forest," the Court found them to be "clearly indicated and authorized by Congress." *Id.* at 522-23. The same is true here.

Plaintiffs briefly attempt to distinguish *Grimaud* on the ground that the case involved "reasonable rules regulating grazing," rather than a "categorical prohibition on grazing" in designated areas. Doc. 38 at 41. But the 2023 Final Rule does not "categorically" prohibit road construction or timber harvest. As the Department explained, under the exceptions authorized by the 2001 Roadless Rule, it has approved all

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                            12
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 21 of 45

59 project proposals it received since 2009 that included road construction and/or tree removal in Tongass inventoried roadless areas. 88 Fed. Reg. at 5256 (FS 01039509). Plaintiffs thus do not provide any basis on which to distinguish the outcome here from that in *Grimaud*. Moreover, the rule at issue in *McMichael* was a categorical prohibition on motor vehicle use in designated forest areas, and the Ninth Circuit still found no nondelegation problem. 355 F.2d at 284 n.4. There is no basis to find one here, either.

Plaintiffs also complain about the discretion that Congress has afforded to the Department in MUSYA. Doc. 38 at 43-45. But, consistent with the "modest limitation" of the nondelegation doctrine, the Ninth Circuit has explained that Congress "'may confer substantial discretion on executive agencies to implement and enforce the laws.'" *United States v. Melgar-Diaz*, 2 F.4th 1263, 1266 (9th Cir. 2021) (quoting *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (plurality opinion)). MUSYA, furthermore, does provide the Department with guidance on how to manage the national forests. *See* Doc. 44 at 68-70. Among other things, the statute announces Congress's policy that forests "shall be administered for outdoor recreation, range, timber, watershed, and wildlife and fish purposes." 16 U.S.C. § 528. And it defines "multiple use" as management of the various forest resources in the combination that will "best meet the needs of the American people." *Id.* § 531(a). That instruction is not different in kind from other delegations—upheld by the Supreme Court—for an agency to regulate in the "public interest." *Nat'l Broadcasting Co. v. United States*, 319 U.S. 190, 214 (1943).

Finally, Plaintiffs' nondelegation argument does not account for the fact that the

*State of Alaska v. U.S. Dep't of Agriculture et al.*,                                    13
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 22 of 45

Organic Act and MUSYA are delegations of Congress's power under the Property Clause. *See Ctr. for Biological Diversity v. USFS*, 80 F.4th 943, 947 (9th Cir. 2023). Plaintiffs base their nondelegation claim on the Vesting Clause of Article I, which provides that "[a]ll legislative Powers *herein granted* shall be vested in a Congress of the United States." U.S. Const. art. I, § 1 (emphasis added); *see* Doc. 38 at 38. But the Property Clause is located in Article IV of the Constitution, not Article I. Plaintiffs fail to address the implications of this distinction. Nondelegation proponents have acknowledged that this structural distinction, among other historical and practical considerations, may allow Congress to delegate its Property (and Territory) Clause power under Article IV more freely than its authority under various clauses of Article I. *See* G. Lawson, *Delegation and Original Meaning*, 88 Va. L. Rev. 327, 391-94 (2002); D. Schoenbrod, *The Delegation Doctrine: Could the Court Give It Substance?*, 83 Mich. L. Rev. 1223, 1265-69 (1985).

Courts, too, have referenced the unique nature of Property Clause delegations in the nondelegation context. *See, e.g.*, *United States v. Moriello*, 980 F.3d 924, 933 (4th Cir. 2020) ("it is reasonable and constitutional to delegate to the agency charged with maintenance and protection of government property the right to fix . . . minimum acceptable conduct thereon" (alteration in original) (quoting *United States v. Cassiagnol*, 420 F.2d 868, 876-77 (4th Cir. 1970)); *United States v. Hatcher*, 656 F. Supp. 3d 1233, 1236-38 (D. Nev. 2023); *Mountain States Tel. & Tel. Co. v. United States*, 499 F.2d 611, 613-14 (Ct. Cl. 1974); *see also Butte City Water Co. v. Baker*, 196 U.S. 119, 126 (1905)

*State of Alaska v. U.S. Dep't of Agriculture et al.*,                                                     14
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 23 of 45

(congressional delegation of disposal power under Property Clause was "not of a legislative character"). As these cases recognize, "Congress may delegate the power to manage federal lands to the Executive." *Sierra Club v. Hickel*, 433 F.2d 24, 28 (9th Cir. 1970) (referencing the Organic Act's delegation of rulemaking authority over national forest uses), *aff'd sub nom. Sierra Club v. Morton*, 405 U.S. 727 (1972). Plaintiffs' nondelegation claim fails.

## II.     No Other Statute Prohibits the 2023 Final Rule.

Plaintiffs mistakenly contend that even if the Department had authority under the Organic Act and MUSYA to promulgate the Roadless Rule, other statutes—such as ANILCA—somehow preclude the rule's application in the Tongass. Their convoluted arguments rely on unsupported suggestions of congressional intent inconsistent with the statutory text to seek to undermine the Department's authority to manage national forest lands in Alaska. The 2023 Final Rule is consistent with ANILCA and the transportation-related statutes that Plaintiffs briefly mention.

### A.     The 2023 Final Rule is Consistent with ANILCA.

#### 1.     ANILCA § 1326 does not prohibit the Rule.

Plaintiffs first contend that the 2023 Final Rule violates ANILCA § 1326(a), which requires congressional approval for any executive branch "withdrawal" of greater than 5,000 acres in Alaska. 16 U.S.C. § 3213(a). The State and several of the Murkowski Plaintiffs made this very same argument in their earlier challenge to the 2001 Roadless Rule, but lost in the district court, because, as that court explained, the restrictions on

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                                                15
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 24 of 45

timber harvest and road construction in inventoried roadless areas do not constitute a "withdrawal." *Alaska v. USDA*, 273 F. Supp. 3d 102, 124 (D.D.C. 2017), *vacated as moot*, 17 F.4th 1224 (D.C. Cir. 2021).

A "withdrawal" removes or withholds federal land from the operation of public land laws that otherwise authorize the transfer of land to the private domain for private use. *Sagebrush Rebellion, Inc. v. Hodel*, 790 F.2d 760, 761 n.1 (9th Cir. 1986); *Se. Conf. v. Vilsack*, 684 F. Supp. 2d 135, 143 (D.D.C. 2010). Congress codified this definition of "withdrawal" four years prior to ANILCA in the Federal Land Policy Management Act of 1976 (FLPMA). 43 U.S.C. § 1702(j). Plaintiffs do not dispute that their claim fails if FLPMA's withdrawal definition controls, Doc. 37 at 26-33, because, under the 2023 Final Rule, laws authorizing the privatization of federal resources, such as the General Mining Act and Mineral Leasing Act, continue to apply in inventoried roadless areas. *See* 88 Fed. Reg. at 5263-65 (FS 01039515-17); *Alaska*, 273 F. Supp. 3d at 124 (explaining that the Roadless Rule "does not withdraw [roadless areas] from the mineral leasing laws; it regulates the [areas] within the bounds of the mineral leasing laws").

Plaintiffs assert that an "ordinary" definition—heretofore unrecognized by any court—of the technical term "withdrawal" should control instead. Doc. 37 at 27. But they admit that other ANILCA provisions unquestionably "apply the classic FLPMA definition of 'withdrawal.'" *Id.* at 26-27. Within a particular statute, of course, "the same term usually has the same meaning." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). The "statutory evidence, then, supports the application of [FLPMA]'s definition of

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                                16
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 25 of 45

withdrawal to ANILCA." *Se. Conf.*, 684 F. Supp. 2d at 144. And Plaintiffs' modifier "classic" rightly concedes that this definition "reflects the general use of the term in public land jurisprudence." *Id.* at 143 n.5; *see also So. Utah Wilderness Alliance v. BLM*, 425 F.3d 735, 784 (10th Cir. 2005) (citing C. F. Wheatley, Jr., II Study of Withdrawals and Reservations of Public Domain Lands at A–1 (1969)) (generally defining "withdrawal").

The purpose and history of ANILCA § 1326(a) also indicate that the classic FLPMA definition of "withdrawal" applies. Congress enacted ANILCA shortly after large withdrawals made by the Carter administration under FLPMA, 43 U.S.C. § 1714(e). *See* 16 U.S.C. § 3209(a); Public Land Order Nos. 5653 & 5654, 43 Fed. Reg. 59,756 (Dec. 21, 1978) (withdrawing 110 million acres). Given that Congress enacted the cited ANILCA provisions after these withdrawals, and had just passed FLPMA's sweeping consolidation and clarification of public land law four years prior, it is "reasonable to believe" that Congress drafted these provisions with FLPMA's withdrawal definition in mind. *Se. Conf.*, 684 F. Supp. 2d at 144 n.6. Indeed, ANILCA § 1326(a) builds off a related FLPMA provision regarding congressional approval procedures for withdrawals greater than 5,000 acres, tightening the approval required for such withdrawals in Alaska. *Compare* 16 U.S.C. § 3213(a), *with* 43 U.S.C. § 1714(c). Plaintiffs, by contrast, identify nothing in the text, context, purpose, or legislative history of ANILCA that justifies departing from the classic FLPMA definition of "withdrawal."

Plaintiffs also incorrectly argue that the 2023 Final Rule violates ANILCA

*State of Alaska v. U.S. Dep't of Agriculture et al.*,                    17
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 26 of 45

§ 1326(b), which requires congressional authorization for "studies . . . for the single purpose of considering the establishment of a conservation system unit, national recreation area, national conservation area, or for related or similar purposes." 16 U.S.C. § 3213(b); *see* Doc. 37 at 34-35. This argument fails because, as Federal Defendants explain, Doc. 44 at 59, the 2023 Final Rule is not a study. Further, the prohibition in 16 U.S.C. § 3213(b) addresses the establishment of conservation system units and similar areas. These categories of lands are dedicated to specific uses pursuant to statutory authority or presidential proclamations that describe those uses. *See* 16 U.S.C. § 3102(4) (defining "conservation system units"). The 2023 Final Rule, by contrast, was an exercise of the agency's traditional multiple-use management authority to allocate lands to different uses. *See* 66 Fed. Reg. at 3272 (FS 00013345) (purpose of 2001 Roadless Rule "is to provide, within the context of multiple-use management, lasting protection for inventoried roadless areas"). The agency's exercise of its traditional management authority is not similar or related to the purpose of establishing conservation system units and therefore, even if it were a study, the 2023 Final Rule is not barred by ANILCA § 1326(b). *Cf. Sierra Club v. Lyons*, No. J00-0009 CV (JKS), slip op. at 31-32 (Mar. 30, 2001) (AE10_014383) (ANILCA § 1326(b) does not prohibit studies as part of land management planning).

### 2. ANILCA § 708 does not prohibit the Rule.

Plaintiffs next contend the 2023 Final Rule violates ANILCA § 708, Doc. 37 at 36-38, but that provision concerns the designation of wilderness areas; it does not

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                    18
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 27 of 45

otherwise limit the Department's authority to manage inventoried roadless areas. *See* Doc. 44 at 60. Section 708 addressed the Department's second Roadless Area Review and Evaluation (RARE II), which evaluated roadless areas and recommended some for designation as wilderness. Subsections 708(b)(1) and (2) insulated national forests in Alaska from then-ongoing litigation over RARE II. *See California v. Bergland*, 483 F. Supp. 465, 471-72 (E.D. Cal. 1980), *aff'd in part, rev'd in part sub nom. Cal. v. Block*, 690 F.2d 753 (9th Cir. 1982). And section 708(b)(4) prohibited further statewide reviews of roadless areas in Alaska "for the purpose of determining their suitability for inclusion in the National Wilderness Preservation System." Pub. L. No. 96-487, tit. VI, § 708, 94 Stat. 2371, 2421-22 (1980). But the 2023 Final Rule does not implicate this provision because the rule applies only to the Tongass, not statewide, and does not review land for inclusion in the wilderness system. *See Wyoming*, 661 F.3d at 1233 (distinguishing Roadless Rule restrictions from wilderness designations). Moreover, while section 708(b)(3) provides that roadless areas "need not be managed for the purpose of protecting their suitability for wilderness designation," it does not prohibit the Department from doing so—much less bar the agency from merely restricting road construction and timber harvest in those areas, as it did in the 2023 Final Rule.

### 3. ANILCA § 101 does not prohibit the Rule.

Finally, Plaintiffs invoke ANILCA's statement of purpose, 16 U.S.C. § 3101, but that provision does not restrict the Department's existing authority to manage inventoried roadless areas. Section 101(d) expressed Congress's belief that ANILCA "obviated" any

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                    19
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 28 of 45

need for "future legislation" designating new conservation system units, or national

conservation or recreation areas. 16 U.S.C. § 3101(d). That "belief" did not hold true, as

Congress itself enacted future legislation designating new conservation system units in

Alaska. *See* Pub. L. No. 101-626, § 202, 104 Stat. 4426, 4429 (1990) (designating several

new wilderness areas); *see also* Doc. 44 at 50-51 & n.13 (identifying additional

legislation). But regardless, "future legislation" is not agency action. Section 101(d) does

not strip agencies of their obligations to manage public lands under other statutes. In fact,

when ANILCA added lands to the national forests in Alaska, it directed the Department

to administer those lands pursuant to its pre-existing management authority. *See* 16

U.S.C. § 539(b). Moreover, ANILCA § 101(d) refers only to designating new

conservation system units, national conservation areas, and national recreation areas—

none of which encompass management of inventoried roadless areas under the rule.

## B. The 2023 Final Rule is Consistent with the Transportation-Related Statutes Plaintiffs Cite.

Although Plaintiffs devote most of their attention to ANILCA, they contend in a

few short paragraphs that several transportation-related statutes—namely "SAFETEA-

LU § 4407, 16 U.S.C. § 524, 16 U.S.C. § 532, RS 2477[s,] and the easements or rights of

way granted by Congress to the State by quitclaim deed in the Statehood or Omnibus

Act," Doc. 37 at 39-41—preempt the 2023 Final Rule. Once again, they are mistaken. As

Federal Defendants explain, Doc. 44 at 61-63, the rule does not interfere with these

statutes, but rather allows for road construction and reconstruction as provided for by

statutory rights. *See, e.g.*, 88 Fed. Reg. at 5262, 5263, 5267 (FS 01039515, 01039516,

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                                      20
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 29 of 45

01039520).

### III. The Department Adequately Explained its Change of Position in the 2023 Final Rule.

Finally, Plaintiffs contend that the 2023 Final Rule was an arbitrary and capricious reversal of the 2020 Alaska Rule. *See* Doc. 39 at 22-37. But an agency is entitled to change position based on a reevaluation of policy priorities and to give more weight to particular facts. *Solar Energy Indus. Ass'n v. FERC*, 80 F.4th 956, 980 (9th Cir. 2023) (citing *Kake*, 795 F.3d at 968; *Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1038 (D.C. Cir. 2012)). That is precisely what the Department did here. It based the 2023 Final Rule on a "reevaluation of the social value of the various uses of the Tongass, rather than on new factual findings," and concluded that the rule "strikes a more appropriate balance among the relevant values and policy objectives." 88 Fed. Reg. at 5255-56 (FS 01039508-09).

Plaintiffs suggest that the Ninth Circuit's decision in *Kake* vacating the 2003 Tongass Exemption dictates the same result here. But Plaintiffs' focus on the superficial similarity between the 2003 and 2023 decisions—both of which rescinded previous decisions regarding the Roadless Rule's application in the Tongass—ignores the significant, and dispositive, differences between the rationales offered by the Department for changing course. Unlike in its 2003 decision, none of the Department's clear and detailed reasons for the 2023 reinstatement decision rely on factual findings contradicting those underlying the 2020 exemption decision. *See Alaska Indus. Dev. & Exp. Auth.*, 685 F. Supp. 3d at 852-53 (distinguishing *Kake* on this same ground). Nor are any of those

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                                21
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 30 of 45

reasons otherwise arbitrary.

### A. An Agency's Explanation for Changing Position Does Not Require Further Justification if it Does Not Contradict Prior Factual Findings.

Judicial review under the APA's arbitrary-and-capricious standard is "deferential": a court may not substitute its judgment for that of the agency, and agency action need only be "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Agency policy changes are not subject to heightened review. *California ex rel. Becerra v. Azar*, 950 F.3d 1067, 1096 (9th Cir. 2020). While an agency must supply a reasoned analysis for the change, it "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one." *FCC v. Fox Television Stations*, 556 U.S. 502, 514-15 (2009). Instead, an agency's policy change complies with the APA so long as the agency "(1) displays 'awareness that it is changing position,' (2) shows that 'the new policy is permissible under the statute,' (3) 'believes' the new policy is better, and (4) provides 'good reasons' for the new policy." *Kake*, 795 F.3d at 966 (quoting *Fox*, 556 U.S. at 515).

Plaintiffs' APA claim focuses on the fourth requirement: whether the Department provided "good reasons" for changing position in the 2023 Final Rule. Doc. 39 at 32-33. Importantly, the substance of this requirement depends on whether the agency's new policy "'rests upon factual findings that contradict those which underly its prior policy.'" *Kake*, 795 F.3d at 966 (quoting *Fox*, 556 U.S. at 515-16). If such a contradiction exists— or, if the agency's prior policy has "engendered serious reliance interests," *Solar Energy*, 80 F.4th at 980 (quoting *Fox*, 556 U.S. at 515)—then the agency "must include 'a

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                                    22
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 31 of 45

reasoned explanation . . . for disregarding facts and circumstances that underly or were engendered by the prior policy.'" *Kake*, 795 F.3d at 966 (quoting *Fox*, 556 U.S. at 515-16). But notwithstanding Plaintiffs' suggestion otherwise, Doc. 39 at 33, it is only in *those* scenarios that an agency's "good reasons" must include a "more detailed justification than what would suffice for a new policy created on a blank slate." *Fox*, 556 U.S. at 515-16. The "mere fact of policy change" does *not*, itself, demand any "further justification." *Id*.

As Federal Defendants explain, the 2023 Final Rule provided sufficient "good reasons" to support the Department's policy change. Doc. 44 at 71-77; 88 Fed. Reg. at 5255-56 (FS 0103508-09). It does not rely on factual findings that contradict findings underlying the 2020 decision (or implicate any serious reliance interests, which are not alleged here), and—unlike in *Kake*—none of the Department's reasons supporting its choice are otherwise "implausible." 795 F.3d at 969.

### B. The 2023 Final Rule Does Not Rely on Factual Findings Contradicting those Underlying the 2020 Alaska Rule.

In the 2023 Final Rule, the Department acknowledged and accepted the factual findings of the 2020 Alaska Rule, but came to a different policy decision. In both 2020 and 2023, the Department recognized that the Roadless Rule (1) provides ecological benefits in addition to those provided by the Tongass Forest Plan; (2) has a minimal effect on the timber industry, while providing neutral or slight benefits for recreation, tourism, and fishing; and (3) has the support of Tribal Nations. In 2020, the Department chose, as a policy matter, to balance those interests in favor of what it considered to be

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                                              23
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 32 of 45

"minimal" benefits for the timber industry, 85 Fed. Reg. at 68,698 (FS 00813784), while in 2023 it chose, as a policy matter, to strike the balance in favor of "modest" benefits for ecosystem protection and honoring its commitment to Tribal Nations, 88 Fed. Reg. at 5270 (FS 01039523). Under *Kake*, the "Department was entitled . . . to give more weight" to those concerns than it had previously, "even on precisely the same record." 795 F.3d at 968.

While Plaintiffs undoubtedly disagree with the Department's 2023 policy decision, they have not shown that it relied on any factual findings contradicting those underlying the 2020 rule. For example, Plaintiffs contend that the Department's 2023 statement recognizing "adverse consequences of exempting the Tongass from the Roadless Rule," 88 Fed. Reg. at 5255 (FS 1039508), conflicts with its 2020 statement that the Tongass could be exempted from the Roadless Rule "without *major* adverse impacts to the recreation, tourism, and fishing industries," 85 Fed. Reg. at 68691 (FS 813777) (emphasis added). *See* Doc. 39 at 24. But there is no contradiction: both statements are consistent with the Department's position in 2023 that adverse consequences were "modest," but nonetheless warranted a change "in light of the [Department's] current policy objectives." 88 Fed. Reg. at 5270 (FS 01039523).

        1.     **The 2020 and 2023 rules relied on the same facts related to the Tongass Forest Plan and environmental protections.**

As Plaintiffs acknowledge, Doc. 39 at 24-25, the 2020 and 2023 rules both rely on the same factual findings that exempting the Tongass from the Roadless Rule would make an additional 188,000 acres of the forest, including 168,000 acres of old growth,

*State of Alaska v. U.S. Dep't of Agriculture et al.,*        24
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 33 of 45

available for logging and result in an additional 49 miles of roads. *Compare* 88 Fed. Reg. at 5255 (FS 1039508), *with* 85 Fed. Reg. at 68,691, 68,700 (FS 813777, 81377786). In 2020, the Department described this as a "modest difference in potential environmental consequences." 85 Fed. Reg. at 68,691 (FS 00813777). In 2023, the Department reaffirmed its conclusion that the overall effect on roadless area characteristics was "modest," but concluded, as a policy matter, that "even a modest adverse effect of this type is undesirable." 88 Fed. Reg. at 5270 (FS 01039523); *see also id.* at 5255 (FS 01039508).

The Department's consistent characterization of "modest" adverse consequences here easily distinguishes this case from *Kake*. There, the Department's 2003 finding that exempting the Tongass from the Roadless Rule "poses only 'minor' risks to roadless values" was a "direct, and entirely unexplained, contradiction" of its earlier finding that exemption "posed a high risk to the 'extraordinary ecological values of the Tongass.'" 795 F.3d at 968. The Ninth Circuit faulted the Department for not explaining in 2003 why something that it found "posed a prohibitive risk to the Tongass environment only two years before now poses merely a 'minor' one." *Id.* at 969. Here, by contrast, the Department found in both 2020 and 2023 that the adverse environmental consequences of an exemption were "modest," but the Department decided to change how it addressed those modest consequences "in light of [its] current policy objectives." 88 Fed. Reg. at 5270 (FS 01039523). In other words, the Department "rebalance[d] old facts to arrive at the new policy"—just as *Kake* acknowledged it could. 795 F.3d at 968.

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                    25
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 34 of 45

Plaintiffs attempt to discredit the Department's policy choice by minimizing the additional acres available for logging as "miniscule," Doc. 39 at 28, but they show no contradiction between the numbers relied on in the 2020 and 2023 rules. Moreover, while the Department may have found, in both 2020 and 2023, the addition of 188,000 acres of forest suitable for logging to be "modest" in the context of the entire Tongass, that amount is not miniscule or meaningless. That acreage is equivalent to nearly 300 square miles, and it would nearly double the acreage currently designated suitable for logging forest-wide.[2] *See* FS 00813056, 00813065-66. As Federal Defendants explain, that difference is meaningful. Doc. 44 at 75.

Plaintiffs' emphasis on the 2020 Final Environmental Impact Statement's (2020 FEIS) estimates of roadless acres likely to be logged, rather than the total acres made available for logging, Doc. 39 at 27, is misplaced. While Plaintiffs fault the Department for not specifically referencing those estimates in the 2023 Final Rule, *id.*, they neglect to mention that the Department did not specifically reference them in its 2020 Alaska Rule, either. Instead, in both 2020 and 2023, the Department acknowledged that the Tongass Forest Plan will likely moderate logging in roadless areas below the total acres suitable for logging. *See* 85 Fed. Reg. at 68,699 (FS 00813785); 88 Fed. Reg. at 5260 (FS 01039513). But in both rules, the Department focused its ultimate decision on the

---

[2] Plaintiffs misleadingly quote the 2023 Final Rule's observation that that the Forest Plan's timber harvest suitability designations were not changed after the 2020 Alaska Rule. Doc. 39 at 26. But, as the Department explained, it would have completed the change in suitability designations directed by the 2020 Alaska Rule if it had not decided to reinstate the Roadless Rule in 2023. 88 Fed. Reg. at 5266 (FS 01039519).

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                    26
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 35 of 45

difference in acreage that would be made available for timber harvest. *Compare, e.g.*, 85 Fed. Reg. at 68,691 (FS 00813777) (2020 decision rationale listing total available acres added); *with* 88 Fed. Reg. 5255 (FS 01039508) (2023 decision rationale describing total available acres added).[3]

Furthermore, contrary to Plaintiffs' contentions, Doc. 39 at 26-28, the 2023 Final Rule, like the 2020 Alaska Rule, acknowledged the elements of the Tongass Forest Plan that work to mitigate environmental effects within the forest. For example, in both 2020 and 2023, the Department acknowledged that the Forest Plan's land use designations and young-growth transition would limit effects on roadless areas and watershed health. 88 Fed. Reg. at 5260 (FS 01039513); *see also* 85 Fed. Reg. at 68,693 (FS 00813779). Similarly, for ecosystem health, both rules acknowledged a "modest difference" among alternatives because of the Forest Plan's old-growth habitat conservation strategy. 88 Fed. Reg. at 5260 (FS 01039513); *see also* 85 Fed. Reg. at 68,693 (FS 00813779). In short, the 2023 Final Rule did not rely on factual findings about environmental consequences that contradicted the 2020 Alaska Rule, and the Department was entitled to reach a different policy decision.

---

[3] While the Department, in the 2020 and 2023 rules as well as the 2020 FEIS, consistently characterized the benefits of the Roadless Rule as "modest," Intervenors consider them significant. *See supra* p. 1. Many of the Intervenors alleged in their 2020 lawsuit, *Organized Vill. of Kake v. Vilsack*, Case No. 1:20-cv-00011-SLG (filed Dec. 23, 2020), that the environmental analysis underlying the 2020 Alaska Rule understated the benefits of the Roadless Rule and contradicted conclusions in the 2001 Roadless Rule. But those questions are not at issue in this lawsuit; only the Department's rationale for its decision in 2023. Intervenors agree with the Department that the 2023 Final Rule does not rest on factual findings that contradict those underlying the 2020 Alaska Rule.

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                                        27
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 36 of 45

## 2. The Department's 2023 conclusions regarding the socioeconomic effects of the Roadless Rule do not rely on contradictory findings.

The Department's 2020 and 2023 conclusions regarding the socioeconomic effects of applying the Roadless Rule in the Tongass do not rely on contradictory factual findings either. In fact, Plaintiffs do not allege any contradictory findings regarding the timber industry, mining, or community infrastructure projects. They argue only that the Department's assessment of potential benefits to recreation, fishing, and tourism rest on contradictory findings. *See* Doc. 39 at 29. But Plaintiffs identify no actual contradiction.

In 2020, the Department stated that exempting the Tongass from the Roadless Rule would not have "*major* adverse impacts to the recreation, tourism, and fishing industries." 85 Fed. Reg. at 68,691 (FS 00813777) (emphasis added). And in 2023, the Department explained that reinstating the Roadless Rule "would be beneficial at best or neutral at worst" for these industries. 88 Fed. Reg. at 5256 (FS 01039509). These statements are not in conflict. In the 2023 Final Rule, the Department did not project major impacts; it simply chose to "minimize . . . potential . . . adverse effects" on areas important for fishing, hunting, tourism, and recreation. 88 Fed. Reg. at 5255-56 (FS 01039508-09). In short, as the Department explained, it based its 2023 Final Rule on a "reevaluation of the social value of the various uses of the Tongass, rather than on new factual findings." 88 Fed. Reg. at 5255 (FS 01039508).

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                    28
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 37 of 45

3.    **The Department's policy choice to give greater weight to the views of Tribal Nations does not rely on contradictory factual findings.**

Plaintiffs next argue that the Department "grossly contradict[ed] the record" when it cited a prior "lack of consideration for the views of Tribal Nations" to support its policy change in the 2023 Final Rule. Doc. 39 at 30-31 (quoting 88 Fed. Reg. at 5255 (FS 01039508)). But Plaintiffs mischaracterize the record.

The Department did not base its 2023 Final Rule on a determination that the Department failed to "acknowledge[]" the views of Tribal Nations in 2020. Doc. 39 at 30. To the contrary, the 2023 Final Rule expressly referenced, and even quoted from, the 2020 Alaska Rule's discussion of Tribal Nations' views. 88 Fed. Reg. at 5255 (FS 01039508) (quoting 85 Fed. Reg. at 68,691 (FS 00813777)); *see also id.* at 5256 (FS 01039509). Instead, the Department based its 2023 Final Rule on, among other factors, a policy choice to give greater weight to the Tribal Nations' views rather than simply describing them. *See* 88 Fed. Reg. at 5256 (FS 01039509) (explaining that reinstating the Roadless Rule "honors the Nation-to-Nation relationship"). This is precisely the type of policy change that the APA allows a new administration to make. *See Solar Energy Indus.*, 80 F.4th at 980 (citing *Kake*, 795 F.3d at 968).

Nor is there any conflict between the Department's statements in 2023 and 2020 about the substance of the views of Tribal Nations. In both, the Department acknowledged that Alaska Native Tribes, particularly cooperating agencies, supported retaining the Roadless Rule in the Tongass. *See* 88 Fed. Reg. at 5268 (FS 01039521); 85

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                                    29
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 38 of 45

Fed. Reg. at 68,696 (FS 00813782). While the Department in 2020 acknowledged that Tribes had expressed interest in increased local control, 85 Fed. Reg. at 68,696 (FS 00813782), it stated explicitly that the majority of Tribes opposed the 2020 Alaska Rule and supported keeping the Roadless Rule in place. 85 Fed. Reg. at 68,694-955, 68,696 (FS 00813780-81,82) (acknowledging that the decision was "not the outcome the tribal cooperating agencies had hoped for"). And, although the Department held additional consultations before the 2023 decision, those added consultations provided "no new considerations," as Plaintiffs acknowledge, Doc. 39 at 31, because Tribes again expressed support for the Roadless Rule. 88 Fed. Reg. at 5272 (FS 01039525). Accordingly, the 2020 and 2023 decisions do not rely on contradictory factual findings about the views of Tribal Nations, only a difference in how the Department chose to address those views.

### C.  The Department Properly Concluded that the 2023 Final Rule Increases Stability and Predictability and is More Responsive to Public Comments.

Plaintiffs also take issue with two additional reasons the Department gave in support of the 2023 Final Rule—that reinstating the Roadless Rule's management framework in the Tongass would promote "stability and predictability," and be more responsive to public comments. Doc. 39 at 35-37. Plaintiffs do not contend that these reasons contradict previous factual findings. Instead, Plaintiffs attempt to portray these reasons as indistinguishable from rationales rejected as "implausible" by the court in *Kake*. 795 F.3d at 969. In fact, the reasons are quite different from those rejected in *Kake*, and each is more than plausible.

*State of Alaska v. U.S. Dep't of Agriculture et al.*,                                      30
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 39 of 45

### 1. Reinstating the Roadless Rule will plausibly increase stability and predictability.

Plaintiffs erroneously conflate the Department's conclusion that the 2023 Final Rule promotes "stability and predictability" with the earlier assertion, rejected in *Kake*, that the 2003 Tongass Exemption "'reduces the potential for conflicts regardless of the disposition of the various lawsuits over the Roadless Rule.'" Doc. 39 at 35 (quoting *Kake*, 795 F.3d at 970). These conclusions are not analogous.

The 2003 Tongass Exemption focused on purported litigation certainty. The *Kake* court concluded that the reason was implausible because, among other things, the Department "[a]t most . . . traded one lawsuit for another." 795 F.3d at 970. The Department's reliance on "stability and predictability" in the 2023 Final Rule, by contrast, is not about litigation certainty, but rather about the applicable management framework in the Tongass. The 2023 Final Rule described local communities' "need for stability and predictability after two decades of shifting management, which can best be served by restoring the familiar framework of the 2001 Roadless Rule." 88 Fed. Reg. at 5255 (FS 01039508). Similarly, the decision referenced "stability and predictability" as a reason for reinstating the Roadless Rule instead of adopting an environmentally preferable, but entirely new, management framework. *Id.* at 5256 (FS 01039509).

The 2023 Final Rule's rationale reflects the fact that the Department has managed the Tongass consistent with the Roadless Rule since its reinstatement in 2011. Plaintiffs try to undermine this stability by pointing to the 2020 Alaska Rule, Doc. 39 at 36, but they acknowledge elsewhere that the Tongass Forest Plan incorporated the Roadless

*State of Alaska v. U.S. Dep't of Agriculture et al.,*      31
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 40 of 45

Rule's restrictions, and—as of 2023—the Department had not yet amended the plan to remove them, *id.* at 13-14, 26; *see also supra* n.2. Indeed, as the 2023 Final Rule explains, "[t]he 2016 Forest Plan was designed to be consistent with the 2001 Roadless Rule," which the Forest Supervisor at the time concluded was "'the best way to bring stability to the management of roadless areas on the Tongass.'" 88 Fed. Reg. at 5256 (FS 01039509). The Department thus reasonably concluded in the 2023 Final Rule that reinstating the Roadless Rule would further promote such stability.

> **2.  That the 2023 decision is more responsive to public comments is a plausible factor supporting the decision.**

In the 2023 Final Rule, the Department also observed that reinstating the Roadless Rule is "more responsive to the vast majority of comments received as part of the 2020 rulemaking as well as . . . this rulemaking." 88 Fed. Reg. at 5256 (FS 01039509). Plaintiffs try to liken this to the 2003 Tongass Exemption's reliance on "comments received on the proposed rule" as a reason purportedly supporting the Department's change of position. *Kake*, 795 F.3d at 969. The *Kake* court found that reason "implausible" because the 2003 Tongass Exemption also acknowledged that the comments raised "no new issues" beyond those "already fully explored." *Id.* (quoting 68 Fed. Reg. at 75,139). Moreover, the 2003 decision implicitly conceded that the "vast majority" of comments supported maintaining the Roadless Rule—an outcome contrary to the decision the Department then took. 68 Fed. Reg. at 75,140.

Here, by contrast, the Department did not assert that new comments received on the proposed rule justified a different decision. Rather, it chose to give more weight to the

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                      32
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 41 of 45

views expressed in the "vast majority" of all comments in both the 2020 and 2023 rulemaking processes, "which reflect[ed] the extraordinary ecological values of the Tongass National Forest and the cultural, social, and economic needs of the local forest dependent communities in Southeast Alaska." 88 Fed. Reg. at 5256 (FS 01039509). The Department explained that the comments helped support its conclusion that reinstating the Roadless Rule "represents the best balance of multiple uses and values for the Tongass," *id.*—which, as explained above, (*supra* pp. 3-8), reflects the task Congress assigned the Department in managing the forest.

> **D.** **Plaintiffs Waived Any Argument that the Department Must Conduct a Supplemental Environmental Analysis of Alleged Impacts on Renewable Energy Projects.**

Finally, Plaintiffs briefly argue that, in light of the Inflation Reduction Act, the Department should have prepared a supplemental National Environmental Policy Act (NEPA) analysis to evaluate the 2023 Final Rule's alleged impacts on renewable energy projects. Doc. 39 at 38-40. As Federal Defendants explain, Doc. 44 at 76 n.23, because no Plaintiff raised a NEPA claim in their complaints, the argument is waived. *See Navajo Nation v. USFS*, 535 F.3d 1058, 1079-80 (9th Cir. 2008) (failure to plead NEPA claim not cured by briefing at summary judgment), *overruled on other grounds by Apache Stronghold v. United States*, 101 F.4th 1036 (9th Cir. 2024) (en banc); *see also Earth Island Inst. v. USFS*, 87 F.4th 1054, 1071-73 (9th Cir. 2023) (failure to amend complaint to add an additional NEPA claim not cured by briefing at summary judgment).

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                    33
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 42 of 45

**CONCLUSION**

The Court should grant summary judgment in favor of Federal Defendants and

Intervenor-Defendants, and deny Plaintiffs' motions for summary judgment.

Respectfully submitted this 22nd day of July, 2024,

s/ *Katharine S. Glover*

Katharine S. Glover (Alaska Bar No. 0606033)
Eric P. Jorgensen (Alaska Bar No. 8904010)
Jeremy C. Lieb (Alaska Bar No. 1810088)
EARTHJUSTICE

Ian Fein (California Bar No. 281394)
(*admitted pro hac vice*)
Garett R. Rose (D.C. Bar No. 1023909)
(*admitted pro hac vice*)
Alexander Hall (CA Bar No. 354050)
(*pro hac vice pending*)
NATURAL RESOURCES DEFENSE COUNCIL

*State of Alaska v. U.S. Dep't of Agriculture et al.,*                                                                 34
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 43 of 45

**CERTIFICATE OF COMPLIANCE WITH WORD LIMITS**

I certify that this document contains 8,973 words, excluding items exempted by

Local Civil Rule 7.4(a)(4), and complies with the word limits of Local Civil Rule

7.4(a)(1).

Respectfully submitted this 22nd day of July, 2024.

       *s/ Katharine S. Glover*
       Katharine S. Glover (Alaska Bar No. 0606033)
       EARTHJUSTICE

*State of Alaska v. U.S. Dep't of Agriculture et al.,*    35
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 44 of 45

**CERTIFICATE OF SERVICE**

I certify that on July 22, 2024, a copy of the foregoing INTERVENOR-DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT was served electronically on Paul G. Freeborne, Emma L. Hamilton, Thad Adkins, Ronald W. Opsahl, Luke A. Wake, Damien M. Schiff, Jeffrey W. McCoy, Charles T. Yates, and James F. Clark.

*s/ Katharine S. Glover*
Katharine S. Glover (Alaska Bar No. 0606033)
EARTHJUSTICE

*State of Alaska. v. U.S. Dep't of Agriculture et al.,*      36
Nos. 3:23-cv-00203-SLG, 3:23-cv-00204-SLG, 1:23-cv-0010-SLG (consolidated)

Case 3:23-cv-00203-SLG   Document 48   Filed 07/22/24   Page 45 of 45